

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE
200 VESEY STREET, ROOM 400
NEW YORK, NY 10281-1022

**Jorge G. Tenreiro**
WRITER'S DIRECT DIAL
TELEPHONE:  (212) 336-9145
TenreiroJ@sec.gov

October 17, 2019

Via ECF and Facsimile

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

Re:    SEC v. Telegram Group Inc. & TON Foundation Inc., No. 19 Civ. 9439 (PKC)

Dear Judge Castel:

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this letter in response to Defendants' Response in Opposition to the SEC's Emergency Application for Preliminary Injunction and their letter submitted earlier this morning to the Court (collectively, the "Opposition"), in advance of the hearing scheduled before the Court for October 24, 2019.

Defendants' Opposition asks the Court to deny the preliminary injunction without the benefit of the discovery or the hearing specifically contemplated by the Federal Rules of Civil Procedure, vacate the Temporary Restraining Order ("TRO") and Order to Show Cause ("OSC"), and permit Defendants to merely stipulate not to violate the law for the time being. Defendants' Opposition, however, does not even attempt to rebut the SEC's showing on the merits that interim relief is appropriate.  Defendants seek, instead, to short-circuit the specific procedures that govern the Court's consideration of the request for a preliminary injunction, while refusing to participate in the discovery needed to aid the Court's resolution of that request. The practical effect of Defendants' proposal would be to allow them to continue to engage in violative conduct after five months, and put the burden on the SEC to seek another TRO from the Court.  This is an extraordinary request for which there is no justification and would constitute a waste of judicial and public resources.  The request should therefore be denied.

## I.    Background

The SEC initiated this action on October 11, 2019 and sought a TRO and an OSC, requiring that Defendants show cause why a preliminary injunction barring them from additional and ongoing violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c) ("Section 5"), and other interim relief, should not be granted (D.E. 3) ("Motion").  The Court granted the emergency relief.  (D.E. 6).

Hon. P. Kevin Castel                                                    October 17, 2019
Page 2

## II.     The Court Should Grant the SEC a Preliminary Injunction or, Alternatively, Extend the TRO and Conduct a Preliminary Injunction Hearing

A preliminary injunction should be granted upon a proper showing of a *prima facie* case that Defendants have violated the securities laws and are likely to do so again. *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990). Moreover, as the Fifth Circuit held most recently, "cessation of the violations does not preclude a finding of reasonable likelihood of future violations, as it does not establish a lack of opportunities for future violations." *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017). It has thus been the law since the dawn of the securities statutes that a "defendant's abandonment of the actions sought to be enjoined subsequent to the filing of the suit, will not bar the issuance of the injunction." *SEC v. Lawson*, 24 F. Supp. 360, 365 (D. Md. 1938) (collecting cases in equity).

Here, the SEC has demonstrated that Defendants have violated Section 5 by showing that they sold Grams, which are "securities" under the Securities Act, to certain investors, including to purchasers in the United States, without any applicable exemption from registration. *See* SEC Mem. of Law in Supp. of Mot. at 16-25 (D.E. 5). Defendants' Opposition to this showing rests entirely on the conclusory allegation that "Grams will merely be a currency or commodity" and therefore not a security "once the TON Blockchain launches." D.E. 7 at 3. This claim, however, is insufficient to rebut the SEC's *prima facie* showing for two reasons. *First*, whatever Defendants contend Grams "will . . . be" at some future date says nothing about what Grams were in 2018 when Defendants offered and sold them without a registration statement, which is the heart of the SEC's claim that a *past* violation of Section 5 has occurred.[1] *Second*, with respect to whatever Grams were in 2018 or what they "will . . . be" whenever Defendants decide to distribute them, Telegram's mere assertion that Grams "will . . . be" a "currency" does nothing to cure the prior violation of law. The application of the Securities Act to Grams must "turn on the economic realities underlying [the] transaction, and not on the name appended" to them. *United Hous. Found., Inc v. Forman*, 421 U.S. 837, 849 (1975). "[S]imply labeling an investment opportunity as 'virtual currency' or 'cryptocurrency' does not transform an investment contract—a security—into a currency." *United States v. Zaslavskiy*, No. 17 Cr. 647 (RJD), 2018 WL 4346339, at *7 (E.D.N.Y. Sept. 11, 2018).

Moreover, Defendants' Opposition shows that it is likely that Defendants will again violate the securities laws. To determine the likelihood of future violations, courts look to "'whether the infraction is an 'isolated occurrence;' whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.'" *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) (quoting *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978)). First, the SEC has shown that Defendants' violation of Section 5, which occurred in two stages and involved over one hundred purchasers and billions of Grams, was far from an "isolated" occurrence. Second, Defendants in their Opposition continue

---

[1]     The SEC also argued in the Motion that Defendants are or were about to violate the law again, by completing their unlawful *distribution* of Grams to the public. The Court need not reach the merits of this claim to determine that a past violation has occurred or even, as explained below, that an additional violation is likely.

Hon. P. Kevin Castel                                                    October 17, 2019
Page 3

to maintain that their conduct was blameless, seeking to instead blame the SEC for the way it conducted the investigation of Defendants' conduct. D.E. 7 at 1-3. The law is clear, however, that the burden is on would-be issuers to comply with the registration requirements. Third, Defendants' position as the holder of all existing Grams under a self-imposed contractual obligation to distribute Grams means that they are in a position where future violations not only can be anticipated, but are virtually guaranteed.

Defendants argue that an injunction is unnecessary based on their promise to delay delivery of Grams for five months, and, thereafter, only upon 30 days-notice to the SEC. *See* D.E. 7 at 1-3. Defendants' self-serving assurance that they have no plans to issue Grams—for now—shows the opposite; that interim relief is required. "The court's power to grant injunctive relief survives discontinuance of the illegal conduct" because the "purpose of an injunction is to prevent future conduct." *United States v. W.T. Grant. Co.*, 345 U.S. 629, 633 (1953). Indeed, the Second Circuit has held that an "injunction should issue against future" violations even where a defendant claimed to have discontinued past illegal action before the filing of the lawsuit but, then, in its answer, "denied the validity" of the plaintiff's claim. *Blisscraft of Hollywood v. United Plastics Co.*, 294 F.2d 694, 702 (2d Cir. 1961). Here, Defendants do not contend that they will entirely refrain from future, likely illegal conduct. Instead, their proposal would allow Defendants to resume their violative conduct upon notice to the SEC. This will have the practical effect of requiring renewed emergency filings and postponing the hearing for five months. Moreover, this Court's Order contemplated that the parties would engage in expedited discovery before a hearing on the SEC's request for a preliminary injunction. The Court should not vacate the temporary restraining order before the SEC has an opportunity to highlight any additional information it learns in discovery. Defendants cannot replace their discovery obligations with a promise not to violate the law. As such, the need for a preliminary injunction is particularly pronounced here.

Because Defendants do not appear to dispute the merits of the SEC's *current* entitlement to a preliminary injunction and appear unwilling to participate in a hearing (or in discovery in aid of such a hearing), the Court may enter the preliminary injunction. Alternatively, Fed. R. Civ. P. 65(b) gives the Court authority, upon a finding of good cause, to extend the TRO for fourteen additional days. The SEC is amenable to an extension to address the scope of discovery.

## III.   Defendants' Additional Requests Should Be Denied

Defendants further request that the Court permit the TRO to expire, undo the discovery schedule, and resolve the "merits" of this lawsuit at some unspecified later date. Defendants base this request on a hodgepodge of unavailing arguments including that (1) the SEC filed the Motion *ex parte* (D.E. 7 at 1, 2), and (2) the SEC's requests for documents and depositions constitute "burdensome 'emergency discovery'" (*id.* at 2).

A "motion for an order vacating [a] temporary restraining order" is governed by the same "'standard [used] in deciding whether or not to grant the preliminary injunction.'" *Green v. Gaskell*, No. 87 Civ. 3861, 1988 WL 42323, at *1, *3 (S.D.N.Y. Apr. 21 1988) (quoting *In Re Feit & Drexler, Inc.*, 760 F.2d 406, 415 n.2 (2d Cir. 1985)). Rule 65 additionally provides certain specific mechanisms for modifying or extending injunctions when a court has entered an

Hon. P. Kevin Castel                                      October 17, 2019
Page 4

emergency order and is about to consider interim relief.  For example, the Court may find good cause to extend a TRO for an additional fourteen days and do so on its own accord.  *See* Fed. R. Civ. P. 65(b)(2).  Alternatively, a party subject to temporary relief may consent to extending such relief beyond that timeframe.  *See id.*  Moreover, a party subject to a TRO issued without notice (not the case here, as explained below), may move for its dissolution "on 2 days' notice to the party who obtained the order without notice."  Fed. R. Civ. P. 65(b)(4).  Defendants' request here is quite extraordinary—that the Court grant relief not contemplated by the Rules and essentially dissolve the TRO without a proper showing.  Neither of Defendants' proffered reasons suffice to entitle it to the relief they seek.  The request should therefore be denied.

*First*, Defendants' statement that the SEC filed the Motion *ex parte* is incorrect.  As Defendants are aware, SEC Assistant Regional Director John O. Enright called and left a voicemail for Defendants' counsel Colleen Mahoney of Skadden Arps Slate Meagher & Flom LLP ("Skadden") before SEC staff arrived at the District Court Clerk's office to initiate this action.  Immediately after failing to reach Ms. Mahoney, but before the action was instituted, Mr. Enright spoke to Alexander Drylewski, also of Skadden, and informed him of the impending lawsuit and of the SEC's Motion.  Mr. Drylewski asked Mr. Enright what causes of action the SEC was alleging and what relief it sought, and Mr. Enright provided responsive answers.  Mr. Drylewski did not tell Mr. Enright that he or anyone else intended to appear at the courthouse on behalf of Defendants, nor did he ask Mr. Enright to communicate to Your Honor that defense counsel wanted to be heard in connection with the SEC's application.[2]  Further, Mr. Enright told Mr. Drylewski that he would immediately email him the SEC's papers, and then did so when they hung up.  Thus, Rule 65(b)(4), which speaks to *ex parte* applications, is inapplicable here.

*Second*, Defendants' contention that the SEC's discovery requests are burdensome is insufficient to entitle them to vacatur of the TRO and OSC.  As Defendants concede, the SEC offered to meet and confer with Defendants regarding expedited discovery.  *See* D.E. 8-2 at 2.[3]  Defendants' request for relief from pending discovery obligations without seeking to engage with the SEC in a good faith meet and confer illustrates an underlying theme of Defendants' Opposition—that they do not view themselves bound by the Court's OSC and do not wish to comply with it.  Indeed, as of the time of the filing of this letter, and prior to making their application to the Court to vacate the TRO, Defendants have refused to produce documents in response to the SEC's properly issued document requests, despite being under this Court's Order that they do so.  *See* OSC ¶ IV; *see also In re Criminal Contempt Proceedings Against Crawford*, 329 F.3d 131, 139 (2d Cir. 2003) (affirming criminal contempt against appellants bound by a TRO who "disobey[ed]" the court's order before even "ask[ing] the district court to issue an order vacating the TRO").

---

[2]      Approximately one hour and twenty minutes later, and approximately fifteen minutes after this Court had entered the TRO and OSC, Mr. Drylewski emailed Mr. Enright to ask that the SEC inform Your Honor that he wished to be heard by the Court.

[3]      Defendants, on the one hand, label the SEC's request for expedited discovery as unnecessary, but, at the same time, argue that expedited discovery is necessary so that the "merits" of this lawsuit may be resolved in five months.  *See* D.E. 7 at 4.

Hon. P. Kevin Castel                                                                October 17, 2019
Page 5

*Third,* Defendants' request that the Court dissolve the TRO and deny the SEC the right to a preliminary injunction hearing while unilaterally refusing to participate in discovery is contrary to the express provisions of the Federal Rules of Civil Procedure. The thrust of Defendants' requests is to deny the SEC the relief it seeks without a hearing and without even attempting to rebut the basis for that relief. Further, Defendants seek to put the burden on the SEC to institute another emergency action when Defendants decide to move forward with their violative conduct, which they clearly intend to do.

Defendants indicated to the undersigned that they wish to engage in full-fledged, expedited discovery that, they hope, will resolve the merits of this litigation in a bench trial in lieu of a preliminary injunction hearing. Defendants' request, however, is that they soon be allowed to engage in a distribution that will be impossible to undo pending a full adjudication of the SEC's claims that such distribution is unlawful. To be sure, Fed. R. Civ. P. 65(a) provides that a preliminary injunction hearing may be consolidated with a hearing on the merits. A preliminary injunction hearing, however, only determines whether interim relief is proper pending the full resolution of the litigation. Regardless of the outcome of that hearing, the SEC will still be entitled to seek summary judgment after the completion of full-fledged discovery, Fed. R. Civ. P. 56, and, should facts remain in dispute thereafter, also be entitled to a jury trial to resolve the merits of its claims. *See* U.S. CONST. AMDT. VII. Defendants' "solution," then inures only to their benefit while potentially depriving the SEC of effective relief.

## IV.     Conclusion

Defendants' request that they skip the preliminary injunction phase and short-circuit the rules should be denied, particularly given Defendants' untenable position that all of this unorthodox procedure should take place without the interim relief to which the SEC is entitled. To be sure, the SEC is amenable to a speedy a resolution of the merits of this litigation. But, in the interim, and in furtherance of the SEC's right to a hearing on its preliminary injunction motion, if Defendants find the SEC's discovery requests too burdensome, they should meet and confer with the SEC about them. Moreover, if Defendants do not wish to proceed to a hearing before the Court at this time, they may consent to the entry of a preliminary injunction until this matter is resolved (or until a later time, as they remain free to seek relief from a preliminary injunction upon a proper showing), a proposal they have so far rejected. Absent such an agreement, the SEC is prepared to move forward with the preliminary injunction hearing, but is amenable to a fourteen-day extension of the hearing date as contemplated by Rule 65(b)(2), so that discovery can be completed in a reasonable time frame. What Defendants may not do is seek an end-run around the procedural rules that apply to all litigants in such cases and dictate the rules of the road by themselves.

For the foregoing reasons, the Court should reject the requests in Defendants' Opposition in their entirety and require Defendants to abide by the requirements the Court has ordered.

Respectfully submitted,

Jorge G. Tenreiro