UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
:
                        Plaintiff,  :      19-cv-9439 (PKC)
:
         - against -  :      ECF Case
:
TELEGRAM GROUP INC., and TON ISSUER INC.,  :
:
:
                      Defendants,  :
:
------------------------------------------------------------------ x

### SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEAL CERTAIN DOCUMENTS

Plaintiff Securities and Exchange Commission ("SEC") respectfully moves for an Order permitting it to file under seal, and in redacted form on ECF, certain documents that were submitted in support of its Emergency Application for an Order to Show Cause, Temporary Restraining Order and Order Granting Expedited Discovery and Other Relief (the "Application"). The proposed redactions fall into two categories: (1) the names and certain identifying information regarding investors in the Defendants' sale of digital tokens called "Grams;" and (2) confidential and proprietary information of certain entities concerning their analysis of the Defendants' Gram offering.

On October 11, 2019, the SEC filed a number of submissions in support its Application, including the Declaration of SEC attorney Daphna Waxman (the "Waxman Declaration"). Attached to the Waxman Declaration were Exhibits A through Z and AA through HH (the "Waxman Exhibits"). The Waxman Declaration stated that certain exhibits had been partially redacted for privacy and/or proprietary information reasons. The SEC provided the Court in Chambers with a binder containing unredacted copies of the Waxman Exhibits. The Court

granted the Application and entered the requested temporary restraining order ("TRO") later on October 11, 2019.

The SEC respectfully requests an Order permitting it to file under seal and in redacted form on ECF: (1) Exhibits L, M, N, R, S, Y, GG and HH (redacting investor names and certain identifying information) (the "Investor Information Exhibits"); and (2) Exhibits O, P, Q and AA (redacting certain privacy and proprietary information) (the "Confidential Information Exhibits"), collectively the "Proposed Redacted Exhibits." [1]

## ARGUMENT

### I. Applicable Standard for Sealing

Courts may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). In this case, the SEC seeks to protect certain privacy and proprietary information of third parties from disclosure, at this early stage of the litigation, that could result in "annoyance, embarrassment, oppression, or undue burden or expense" if that information was publically disclosed.

The Second Circuit, in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-120 (2d Cir. 2006), addressed the standard that must be met for a party's papers to be sealed. The court in *Lugosch* concluded that the "common law right" of public access attaches to materials that constitute "judicial documents." *Id.* at 119.

---

[1] The original and the SEC's proposed redacted copies of each of the Proposed Redacted Exhibits are attached to the Declaration of Kevin P. McGrath submitted in support of this Motion. The SEC respectfully requests permission to submit this set of exhibits *in camera* pending the Court's determination whether the original exhibits may be filed under seal and the Proposed Redacted Exhibits may be filed on ECF. Copies of the original and Proposed Redacted Exhibits will be provided to Defendants' counsel with the SEC's motion papers.

2

"In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Id.* (citation and quotations omitted). If a filing does in fact constitute a judicial document, a "common law presumption of access attaches" and the Court "must [then] determine the weight of that presumption," a consideration governed by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.*

The Second Circuit explained that "[g]enerally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (citation and quotations omitted). In the final step of the sealing/public access analysis, the "court must balance" any "countervailing factors" against "the weight of the presumption of access." *Id.* at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* at 120 (internal citations omitted)[2] "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "[T]the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation," which should take account of "the nature and degree of injury" at issue. *Amodeo II*, 71 F.3d at 1050-51.

More recently, the Second Circuit has clarified the *Lugosch* standard. In *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the court held: "A document is thus 'relevant to the

---

[2] *See also United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*").

performance of judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.* at 49 (emphasis in original). The court further noted that, if a district court determines that material is relevant to the exercise of judicial power, the weight to be given that material is governed by its role in the exercise of judicial power. *Id.* at 49-50. "Thus, while evidence introduced at trial or in connection with summary judgment enjoys a strong presumption of public access, documents that 'play only a negligible role in the performance of Article III duties' are accorded only a low presumption that 'amounts to little more than a prediction of public access absent a countervailing reason.'" *Id.* at 49-50 (internal citations omitted); *see also Trump v. Deutsche Bank AG,* 2019 WL 5075948, at *1, 3-4, __ F.3d ___ (2d Cir. Oct. 10, 2019) (concluding that the sealed names of two taxpayers, submitted on appeal of an order denying a preliminary injunction, were not "judicial documents" because they were "not relevant to any issue in the underlying appeal").

**II.     The Proposed Redacted Documents May Not Be Judicial Documents Subject to the Presumption of Public Access**

As a threshold matter, the proposed redacted portions of the Proposed Redacted Exhibits may not be "judicial documents" subject to the *Lugosch* balancing test at all. While the SEC submitted each of these documents to the Court in unredacted form, it did not refer to a number of the documents in its Memorandum of Law in support of its Application ("Memorandum"). For those documents the SEC did cite, it did not cite any of the proposed redacted information in support of its Application.[3]

---

[3] The SEC's Application sought a TRO that would prevent Defendants from offering, selling or distributing billions of digital tokens known as Grams. The fact that numerous U.S.-based

Specifically, the Waxman Declaration generally described the nature of the exhibits in question without revealing the names of the individuals or entities communicating therein (aside from the Defendants and Coinbase) and without revealing any privacy/proprietary information, except as to Exhibit AA (Coinbase was identified as the entity that produced the meeting notes constituting Exhibit AA). The SEC did not refer to any of the investors by name in its Memorandum.[4]

Similarly, the Memorandum did not cite any of the Confidential Documents except for Exhibit AA. The Memorandum (at page 9) cited Exhibit AA, and quoted three short phrases from Exhibit AA concerning Coinbase's view of Grams as a high visibility asset that it wanted to support and referenced the Grams' likely unmatched distribution and high expected retail interest. *See also* Memorandum at 12 (referencing again high interest from retail investors). The SEC does not seek to redact these references.

Thus, to the extent that the Proposed Redacted Information was not relevant to the Court's determination to grant the Application—"whether it would reasonably have the *tendency* to influence a district court's ruling on a motion…," *Brown,* 929 F.3d at 49—the Court need not engage in the balancing test required under *Lugosch* to grant this motion. *See Lugosch*, 435 F.3d at 119 ("[T]he mere filing of a paper or document with the court is insufficient to

---

individuals and entities had invested in the Grams and were seeking to make a sizeable profit from their subsequent resale to the investing public was relevant to whether the Grams were securities under the test set forth in *SEC v. W.J. Howey,* 328 U.S. 293 (1946), and subject to registration under Section 5 of the Securities Act of 1933 ("Section 5"). However, the SEC did not cite the specific identity of those investors or specifically cite proposed redacted proprietary information to support that analysis.

[4] In addition, Exhibits O, P, Q, S, GG and HH were not cited in the Memorandum, Exhibits L and M were cited only as part of a number of "Offering Documents," Exhibits N and R had other citations for support, and Exhibit Y was cited only at page 12 of the Memorandum for the fact that entities had sought to list Grams on popular U.S.-based digital asset platforms. The investors' names were not relevant to the reasons why any of these documents were cited.

render that paper a judicial document subject to the right of public access." (quotations and citation omitted)).

**III. Given the Limited Relevance, If Any, of the Redacted Information to the SEC's Application, the Third-Parties' Privacy and Proprietary Interests Outweigh the Public's Right to Access at This Stage of the Litigation**

Assuming that any of the Proposed Redacted Documents are judicial documents, the weight to be given the presumption of public access depends on the degree of their relevance to the Court's determination and must be counterbalanced by "higher values," including the privacy interests and trade secrets of non-parties. As non-parties to this case at this time, the investors' and other non-parties' privacy and proprietary interests carry weight. *See Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y. 2011) ("[T]he privacy interests of third parties [also] carry great weight in the balancing of interests."), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013); *see also Doe v. City of New York*, No. 15-CV-117 (AJN), 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) ("In the redaction analysis, courts take the privacy interests of third-parties seriously.")

Furthermore, the Second Circuit has expressly held that "trade secrets may be sufficient to defeat the presumption [of public access]." *Hardy v. Equitable Life Assurance Soc'y of United States*, 697 F. App'x 723, 725 (2d Cir. 2017) (Summary Order); *see also Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999) (describing "trade secrets" and "confidential research" as categories that are "commonly sealed"). For example, in *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015), the court held that information concerning "trading strategies, objectives and transactions" overcame the presumption of confidentiality even with respect to the higher standard applicable to summary judgment. Finally, because the Application only asked the Court to rule on whether a TRO

6

should be granted, rather than on the ultimate merits, these documents are further removed from the summary judgment filings at issue in *Lugosch*.

### A. The Investors' Names and Identifying Information Should be Redacted from Exhibits L, M, N, R, S, X, GG and HH

The Defendants have requested that the SEC move to redact the names and certain identifying information concerning the investors identified in Exhibits L, M, N, R, S, Y, GG and HH and the SEC does not oppose this request. As discussed above, courts recognize that non-parties have legitimate privacy interests that should be given weight by the court, including the nature and amount of their investments. Even assuming that the Investor Information falls into the category of "judicial documents," their relevance to the TRO standard was likely minimal. While the identity of the investors and the amounts they invested may well become more relevant at later stages of this litigation—including in connection with the hearing scheduled for February 18, 2020, any motions for summary judgment, or trial—publicly disclosing who the investors are and how much they have invested in the Grams at this stage of the litigation unnecessarily risks exposing them to "annoyance, embarrassment, oppression, or undue burden or expense."

### B. The Confidential, Proprietary Information Should Be Redacted from Exhibits O, P, Q and AA

The proposed redacted portions of the Confidential Documents reveal non-party Entity A's identity and certain proprietary information regarding how Entity A and Coinbase internally evaluate digital token offerings. These entities have advised the SEC that allowing public disclosure of this sensitive information, including to their business competitors could unduly harm these entities.

1. **Exhibits O, P and Q**

Exhibits O, P and Q were created by Entity A, a large American venture capital firm in the business of investing client capital pursuant to confidential and proprietary investment procedures and protocols. Entity A has advised the SEC that it considers its decisions concerning how and why to invest capital to be its "secret sauce." Although Exhibits O, P and Q were attached to the Waxman Declaration that was submitted to the Court in chambers, the SEC's Memorandum did not cite any of these exhibits in support of the Application.

Prior to the commencement of this lawsuit, Entity A provided documents concerning the Defendants to the SEC with confidentiality requests seeking to restrict the documents' use and access. Exhibit O is a two-page document consisting of three emails between various Entity A employees evaluating the Gram offering, including evaluating Telegram's technical expertise, the technical hurdles and prospects for success of the Gram blockchain, and further due diligence Entity A should undertake. Exhibit P is a two-page document consisting of two substantive emails between Entity A employees and one email merely forwarding those two emails to a third Entity A employee. The initial substantive email is a duplicate of the initial email in the Exhibit O email chain. The second substantive email contains an internal assessment of the prospects for success of the Gram project, an assessment of Telegram's engineering team, a comparison to other digital tokens, and an estimate of potential investment return. Exhibit Q consists of a four-page internal memorandum assessing the Gram project in more detail than the emails and three one-page Appendices. Exhibit Q contains internal assessments of digital coins and platforms generally and the Gram project specifically, internal assessments of the hurdles and prospects for Gram's success, and Entity A's estimated return on investment.

Counsel for Entity A has advised the SEC that, in Entity A's view, its proposed redacted portions of Exhibits O, P and Q contain "significant confidential and proprietary information;" that public disclosure of this information would deprive Entity A of an important business advantage in terms of how it analyzes and selects its investments; and that such public disclosure would materially harm Entity A's business operations and by extension the interests of its clients, including non-profit institutions.

Entity A has asked the SEC to seek redaction of certain information concerning Entity A's identity, and what it considers its unique evaluation of the Gram offering and its proprietary due diligence analysis on the ground that disclosure of such information could potentially harm its interests. The SEC does not oppose this request at this early stage of the litigation, given the likely limited relevance, if any, this information had to the court's judicial determination whether to grant the TRO, although this information may well become more relevant and subject to public disclosure at later stages of this litigation, including at any later hearing, summary judgment motion, or trial.

2. **Coinbase Exhibit AA**

Coinbase is a cryptocurrency trading platform that describes itself as a place "to buy, sell, and manage your cryptocurrency portfolio." Exhibit AA consists of a three-page summary of an internal Coinbase meeting discussing the pros and cons of supporting the Gram project on its platform, and includes what it has indicated is its unique internal scoring analysis of risks, references to its internal priorities, and internal analysis of whether to proceed.

The Memorandum cited Exhibit AA twice. First, at page 9, the Memorandum quoted three short phrases from Exhibit AA to the effect that Coinbase viewed Grams as a high visibility asset that it wanted to support, and referenced the Grams' likely unmatched distribution and high

expected retail interest. Second, at page 12, the Memorandum cited Exhibit AA to the effect that Coinbase's internal documents noted "a high interest from retail investors to invest in grams." The SEC does not seek to redact the three phrases referenced in its Memorandum but Coinbase has requested that the SEC seek to redact the remainder of this document on the ground that disclosure of what it considers its unique proprietary analysis could cause it undue commercial harm. The SEC does not oppose the proposed redactions at this early stage of the litigation for the reasons discussed above.

In sum, while it may become appropriate to unseal some or all of the Proposed Redacted Exhibits at later stages of this litigation, the SEC submits that the proposed sealing order is narrowly tailored to protect certain privacy and proprietary information interests of non-parties and that those interests outweigh the presumption of public access to that information, if any, at this stage of the litigation.

## CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court enter the attached, proposed Sealing Order for good cause shown.

Respectfully submitted,

Dated: October 23, 2019         /s/ Kevin P. McGrath

Kevin P. McGrath
Securities and Exchange Commission
New York Regional Office
200 Vesey Street
New York, N.Y. 10281
Tel: (212) 336-0533
Fax: (703) 813-9544
mcgrathk@sec.gov
*Attorney for Plaintiff*