JAITSECC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   SECURITIES AND EXCHANGE
    COMMISSION,
4
                    Plaintiff,
5
             v.                            19 CV 9439 (PKC)
6
    TELEGRAM GROUP, INC., et al.,
7
                    Defendants.
8
    ------------------------------x
9                                          New York, N.Y.
                                           October 18, 2019
10                                         10:30 a.m.

11  Before:

12                      HON. P. KEVIN CASTEL,

13                                         District Judge

14                          APPEARANCES

15  SECURITIES AND EXCHANGE COMMISSION
          Attorneys for Plaintiff
16  BY:  KEVIN McGRATH
          JORGE TENREIRO
17        DAPHNA WAXMAN

18  SKADDEN, ARPS, SLATE, MEAGHER & FLOM
          Attorneys for Defendants
19  BY:  ALEXANDER DRYLEWSKI
          SCOTT MUSOFF
20        CHRISTOPHER MALLOY

21

22

23

24

25

JAITSECC

1        (Case called)

2        THE COURT:  Good morning, good to see you all.

3        First question for the plaintiff is since my order of

4    late yesterday, have any agreements been reached?

5        MR. TENREIRO:  Good morning again, your Honor, thank

6    you.  Yes, we have been in conversations with counsel for the

7    defendants since your order of yesterday.

8        We believe we have an agreement at least with respect

9    to a schedule for conducting a hearing in this case and perhaps

10    a trial.  We also believe that we have an agreement that we

11    will continue to engage in as expedited discovery as possible,

12    and I think we have an agreement there should be what I think

13    in the Court's order was called a standstill, but there seems

14    to be some disagreement from the defendants between us as to

15    whether the defendants need to continue to be enjoined until

16    the resolution of this case.

17        And their hesitance to want to be enjoined while we

18    resolve this matter completely gives us some concern, because

19    on the one hand they're telling us that they don't plan to do

20    something, but on other hand they're telling us that they don't

21    want to be under a court injunction.  So I think that is the

22    biggest remaining issue of disagreement amongst the parties.

23        THE COURT:  All right.  Talk to me about the proposed

24    schedule and the like.

25        MR. TENREIRO:  Yes, your Honor.  So there is a slight

JAITSECC

1   disagreement between the parties as to whether this case can be

2   fully resolved as a legal matter or not, and we certainly

3   don't -- it's a little bit difficult for us to tell whether

4   there will be factual disputes as to what occurred in the past

5   or not.  But assuming that we can get to some sort of list of

6   stipulation of facts, we would propose what we have been

7   calling amongst ourselves sort of a joint PI/summary judgment

8   hearing.

9              THE COURT:  Well, I call it something different than

10   that, because in non-jury cases summary judgment is an

11   extremely inefficient tool.  You're going to have to put your

12   direct testimony in by affidavit for the preliminary injunction

13   hearing.  You will have to do that for the trial as well.  And

14   that's not a summary judgment procedure at all, that's a trial.

15             MR. TENREIRO:  Your Honor, that's correct, and we want

16   to have a jury trial, so we requested a jury trial.

17             THE COURT:  Of what issue?

18             MR. TENREIRO:  The issue of whether these are

19   securities or not might require a resolution of fact as to what

20   they told people they could expect from these investments.

21             THE COURT:  And that's, in your view, not an issue of

22   law, that's an issue of fact?

23             MR. TENREIRO:  It depends on whether there's a dispute

24   as to the facts.  If they dispute that they told people you can

25   expect this or that from this purchase, then yes, a jury has to

JAITSECC

1    resolve that factual dispute.  If we get to a point where

2    there's no dispute as to those facts, then yes, it's a purely

3    legal question.

4            THE COURT:  Let me find out from the defendants, first

5    off, if this is a case that should be tried to a jury.

6            MR. DRYLEWSKI:  Good morning, your Honor.  Alex

7    Drylewski for the defendants.

8            Our position is no.  The case law in this area is

9    clear, Judge Castel, that the issue of whether an instrument is

10   a security under the Howey Test, which is the test that both

11   parties agree applies here, is a legal one.  And in fact, we

12   have some case law saying that in the context of a civil

13   suit -- I'm quoting from a case called *SEC v. Thompson* (10th

14   Cir. 2013), "In the context of a civil suit, the ultimate

15   question of whether an instrument is a security is a question

16   of law and not of fact, such that submitting the question to a

17   jury was error."

18           So what we proposed to the SEC is let's have one

19   hearing, we can call it a preliminary injunction and summary

20   judgment hearing, where if your Honor would like to hear

21   evidence or receive affidavits of testimony, we can provide

22   that, but the parties will also brief in advance whether or not

23   this legal question can be resolved in one side's favor or

24   whether it's the other side's favor.

25           Now we asked for a bench trial.  The SEC has said that

JAITSECC

 1    it will not consent to a bench trial, it wants a jury trial.

 2              THE COURT:  All right.  Thank you.

 3              Is that correct, the SEC will not consent to a bench

 4    trial in this case?

 5              MR. TENREIRO:  That is correct, your Honor.

 6              THE COURT:  Okay.  So how do you respond to the cited

 7    case that suggests that it is error to submit the question of

 8    whether an instrument is a security to a jury?

 9              MR. TENREIRO:  Your Honor, I would cite to *SEC v.*

10    *Jensen* from the Ninth Circuit, the citation is 835 F.3d 1100,

11    where the Ninth Circuit said that it was reversible error for

12    the district court to not permit the SEC to have a jury trial

13    because the SEC had brought claims for disgorgement and civil

14    penalties, as we have here.

15              THE COURT:  Let's take a look at that.  I take it, by

16    citing that case you concede there is no Supreme Court or

17    Second Circuit precedent on the issue.

18              MR. TENREIRO:  Not that I'm aware of, your Honor.

19              THE COURT:  So 835 F.3d 1100.

20              Maybe I'm misreading this, but this stands for the

21    proposition that there are claims in which the SEC is entitled

22    to a jury trial, right?

23              MR. TENREIRO:  Correct.

24              THE COURT:  I think that's right.  I agree with that.

25    That's not the question we're discussing.

JAITSECC

1          MR. TENREIRO:  Your Honor, the point that --

2          THE COURT:  So that case, do you agree, it does not

3     address whether the SEC is entitled to a jury trial on the

4     question of whether an instrument is a security, correct?

5          MR. TENREIRO:  Your Honor, I think the case stands for

6     the proposition that the district court should be careful in

7     not depriving a civil litigant the right to jury trial if they

8     have made the demand for a jury trial.  We agree, I think

9     perhaps --

10         THE COURT:  Why don't you answer the question that I

11    asked.

12         MR. TENREIRO:  We agree that if there --

13         THE COURT:  No, why don't you answer the question that

14    I asked.

15         MR. TENREIRO:  That case does not stand for the

16    proposition that a Howey question has to be, or not, submitted

17    to a jury.

18         THE COURT:  Okay.  I thought you were citing it to me

19    for that proposition.

20         MR. TENREIRO:  I apologize, your Honor.  I was trying

21    to explain that our position is that if there are no actual

22    factual disputes, then absolutely the Court can and should

23    decide the question of Howey as a matter of law.

24         At this stage in the litigation, though, we don't know

25    that that will be the case, because the Court's application of

JAITSECC

1    law always turns on what the underlying facts are, and if the

2    defendants say certain things to the market and to potential

3    investors, that colors the Court's analysis of what a

4    reasonable investor should or should not have expected from the

5    purchase of Grams.

6            THE COURT:  I hope you will promise me that if I grant

7    you a preliminary injunction you won't turn around and change

8    course and say now I don't want a jury.

9            MR. TENREIRO:  It really, your Honor, depends on

10   whether there's disputes of facts, that's all.

11           THE COURT:  No, but you're taking this position now

12   and for all time, you don't want a jury in this case, correct?

13           MR. TENREIRO:  Well, we're taking the position that we

14   would like a jury.

15           THE COURT:  You want a jury in this case in all

16   respects, you're not going to back off that position two months

17   from now, is that correct?

18           MR. TENREIRO:  That's correct, only on factual

19   disputes.

20           THE COURT:  That's what I wanted to know.  That's what

21   I wanted to know.  Thank you.

22           So tell me the schedule that you're proposing.

23           MR. TENREIRO:  So we were proposing January 20 for a

24   hearing before the Court in which any purely legal questions as

25   which there are no factual disputes may be resolved.

JAITSECC

1          THE COURT:  Say that again?

2          MR. TENREIRO:  A hearing before the Court at which any

3    purely legal questions as to which there are no factual

4    disputes may be resolved.

5          THE COURT:  I got a question for you:  Why would I

6    need a hearing for that?

7          MR. TENREIRO:  I'm sorry?

8          THE COURT:  Why would I need a hearing for that?

9          MR. TENREIRO:  We think we need a preliminary

10   injunction hearing because we have made a showing that there is

11   likelihood of success on the merits.  The defendants would like

12   to submit the question to the Court, and we are agreeing to

13   that proposal based on their request.

14         THE COURT:  So what would I hear at such a hearing?

15         MR. TENREIRO:  I think, your Honor, respectfully, I

16   believe that's a question for the defendants.  We want to

17   present at that hearing our showing of likelihood of success on

18   the merits and an entitlement to a preliminary injunction.

19         THE COURT:  But I thought you just told me something

20   else, that would be a hearing at which you would present

21   whatever it was that could be decided as an issue of law.  I'm

22   paraphrasing, but that's what I understood you to be saying.

23         MR. TENREIRO:  That's correct, your Honor.

24         THE COURT:  So there's no evidence to be taken on

25   that, correct?

JAITSECC

1          MR. TENREIRO:  We would present evidence that entitles

2     such a preliminary injunction.  The defendants seek to present

3     evidence to the Court at a hearing and have the Court, based on

4     that evidence, issue a ruling on the entire merits of the case.

5     We believe that that's called a motion for summary judgment,

6     and --

7          THE COURT:  Well, but what you're advocating, and I

8     understood you and the defendants were agreeing that on this

9     January 20th proposal -- and I should mention that that's not

10    available, in fact I have a jury trial that week, but that's a

11    small problem, I will take care of finding an appropriate date.

12         But what I'm not getting is why you would call it a

13    hearing if it's for the Court to decide only a legal issue and

14    none other.

15         MR. TENREIRO:  Your Honor, if I may take a step back.

16    If the defendants are enjoined, as we requested and as we

17    believe we're entitled to, they're enjoined from violating

18    Section 5 for the remainder of the litigation, then we can

19    have -- I wouldn't call it a hearing, I would call it a summary

20    judgment or oral argument, and the Court would not take

21    evidence, it would only look at undisputed facts, and that's

22    what we would call it.

23         THE COURT:  And that's what you're proposing for

24    January 20.

25         MR. TENREIRO:  Not quite, because the defendants are

JAITSECC

1    not agreeing to be enjoined for the rest of the litigation, so

2    that's the problem, but if we --

3              THE COURT:  But that's not part of the agreement then.

4    Just confine yourself to what is part of the agreement.

5              MR. TENREIRO:  The agreement would be that at that

6    date we get to present our case for a preliminary injunction

7    and they get to argue that they're entitled to summary

8    judgment.  That's the agreement we have reached.

9              THE COURT:  And you're not going to move for summary

10   judgment?

11             MR. TENREIRO:  We haven't decided.  We might

12   simultaneously move for summary judgment.  It's too soon for us

13   to know.

14             THE COURT:  And what would be the course of expedited

15   discovery?

16             MR. TENREIRO:  The course of expedited discovery would

17   be along the lines of what we have in the order to show cause,

18   which we would attempt in good faith to -- we have already been

19   talking about meeting and conferring on some of these issues,

20   we would have some depositions and document discovery over the

21   course of the next couple of months, and we would submit to the

22   Court the undisputed facts for resolution of legal issues.

23             THE COURT:  All right.  Let me hear from the

24   defendants.

25             MR. DRYLEWSKI:  Thank, your Honor, Alex Drylewski for

JAITSECC

1   the defendants again.

2          We think that this hearing should be akin to a summary

3   judgment argument.  We are confident at this point, and we

4   suspect strongly there will be no issues of fact.  And this is

5   again a legal issue that the case law is clear, the Howey Test

6   is a legal question that this Court can decide without taking

7   any evidence.

8          So we have been talking about putting together a

9   schedule where we will seek and give expedited discovery in aid

10  of that hearing and in advance of that hearing that we hope to

11  do by mid January, if your Honor's schedule permits.

12          In terms of the discovery deadlines themselves, what I

13  hear counsel for the SEC saying is it would like the same

14  emergency deadlines to remain in effect in this case, which

15  were under your Honor's order that was entered last Friday, I

16  believe three days for document productions and four days for

17  deposition witness production.  We would like to go back and

18  meet and confer.  This is the first we're hearing that this is

19  what they would like the discovery schedule to look like.  We

20  would rather meet and confer and come up with reasonable

21  timelines for that.

22          THE COURT:  Okay.  Now talk to me about the

23  standstill.  I think I understand the bid and the asked on

24  this, and let me hear from the SEC on this.  Your understanding

25  is that the defendant is looking for paragraph one of its

JAITSECC

1    proposed order, which reads "Plaintiff's request for a

2    preliminary injunction is hereby denied without prejudice."

3    That's what you're objecting to, is that correct?

4            MR. TENREIRO:  Your Honor, thank you, that is correct.

5    We're also objecting to the standstill only lasting for five

6    months and then us having to come back.

7            THE COURT:  Understood.  Thank you.  It seems to me

8    that the way to do this, there are a number of moving parts,

9    they're not novel or unusual moving parts, they're the everyday

10   thing of what goes on in this courthouse.  But what I see is an

11   order that lays out the expedited discovery, a schedule, a

12   reasonable schedule with reasonable deadlines for production of

13   documents and depositions and for briefing, and then it can

14   recite in that same order that upon the agreement of the

15   parties, defendant shall not offer, sell, or deliver Grams to

16   any person or entity pending the hearing of the preliminary

17   injunction motion.  Now on the day of the hearing, somebody can

18   stand up and ask for a continuation of that, somebody can ask

19   for a dissolution of that, but it seems to me you don't need

20   paragraph one at all, you don't need that.

21           Now the other items, three and four and seven, some

22   reservation of rights for both sides, and seven sounds always a

23   fine thing to do, it doesn't hurt, you probably reserve those

24   rights whether you put the language in or not.  So that sounds

25   good.

JAITSECC

```
1          And let me see whether I can get you a date that would
2   work.  I have a criminal trial starting the week of January 20
3   and a criminal trial starting the week of February 3rd, so I
4   would propose to have the briefing, the injunction hearing,
5   everything on February 17 at -- we'll begin on the 17th, we'll
6   begin at 11:00 a.m., and I'll set aside the 17th and the 18th,
7   if parties think that is going to be enough for the hearing on
8   the preliminary injunction.  And the parties may, of course,
9   move or cross move for summary judgment.
10         The requirement would be that all the final last brief
11  of any sort by anyone on anything, that includes reply,
12  surreply, sur, sur surreply or any other denominated filing
13  would be in hand by January 27 so that the Court can adequately
14  prepare for the hearing.
15         MR. DRYLEWSKI:  Your Honor, if I may.
16         THE COURT:  Yes.
17         MR. DRYLEWSKI:  Just one point, February 17 is
18  Presidents' Day.  We're fine on that day, but if the Court
19  isn't open --
20         THE COURT:  No, all right, thank you.  We'll make it
21  the 18th and 19th.  Again we'll start at 11:00 on the 18th,
22  we'll start at 10:00 on the 19th.
23         And what I'll do is I will keep the date we have on
24  now, which is the 24th, and I anticipate vacating that as soon
25  as I get a stipulation which lays out the schedule and includes
```

JAITSECC

1    what I call a standstill.

2            All right?  Does that work for everybody?

3            MR. TENREIRO:  Yes, your Honor.  May I seek

4    clarification on one point?

5            THE COURT:  Sure.

6            MR. TENREIRO:  On the language of the standstill, I

7    think I understood the Court in terms of timing.  What we would

8    request -- and we can take this back to defendants, we already

9    requested it -- language that says or "otherwise violates

10   Section 5," because I don't know that distributing Grams is the

11   only way that they can violate Section 5.

12           THE COURT:  Here's the problem you have, and it has

13   been very much on my mind:  You look at Rule 65(d) and the

14   Second Circuit's case law in this area, and a temporary

15   restraining order or preliminary injunction should describe the

16   act or acts restrained, and the Court has specifically

17   condemned an injunction which requires the subsequent

18   determination of whether a law has been violated.

19           Now I understand in consent injunctions that's done

20   every day, but those are consent injunctions, and the Second

21   Circuit noted specifically that point.  So that's my problem

22   with Section 5.

23           Now I will tell you this, that you have the ability --

24   you need to reserve for your client the ability to come in on a

25   moment's notice if facts change.  I am not foreclosing that

JAITSECC

1    possibility, and if something develops, I am sure you will be

2    here quite quickly.

3            MR. TENREIRO:  Thank you, your Honor.

4            THE COURT:  All right.  What else?

5            MR. DRYLEWSKI:  Nothing from the defendants, your

6    Honor.

7            THE COURT:  All right.

8            MR. TENREIRO:  Nothing from us, your Honor.

9            THE COURT:  So I'm not anticipating seeing you on the

10   24th, but I'm holding that possibility open, and for the -- I

11   should say for the preliminary injunction hearing, it will be

12   done by direct testimony by affidavits.  So you have to work

13   out a schedule on that for all witnesses under a party's

14   control.

15           MR. TENREIRO:  Thank you, your Honor.  Are we

16   permitted to put in any live testimony of a witness if the

17   witnesses are here and willing to show up and testify, or do

18   everything by affidavit?

19           THE COURT:  If it's a witness who you can control,

20   they're coming voluntarily, then that should be direct

21   testimony by affidavit.

22           MR. TENREIRO:  By affidavit.

23           THE COURT:  If it's an adverse witness, then it can't

24   be, obviously.  And you will find some guidance in my

25   individual practices on this.  They spell out how this should

JAITSECC

1   be done.  And the party with the burden of proof would go

2   first, then the defendants, and, of course, you have the right

3   to put in a rebuttal declaration as you would in any hearing.

4              MR. TENREIRO:  Thank you, your Honor.

5              THE COURT:  Okay.  I think that's probably it.

6              Anything else from the defendants?

7              MR. DRYLEWSKI:  Nothing, your Honor, thank you.

8              THE COURT:  Thanks for coming in on very short notice,

9   I appreciate it.  And I think this is shaping up to be a

10  sensible way to proceed.  Thank you.

11             MR. TENREIRO:  Thank you, your Honor.

12             MR. DRYLEWSKI:  Thank you.

13             (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25