UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,   :
                                                                              :
                                         Plaintiff,    :      19 Civ. 9439 (PKC)
                                                                       :
                                       - against -      :      ECF Case
                                                                         :
TELEGRAM GROUP INC. and TON ISSUER INC.,  :
                                                                       :
                                       Defendants.   :
                                                                              :
------------------------------------------------------------------- x

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO COMPEL
EVIDENCE FROM A UNITED KINGDOM
WITNESS PURSUANT TO THE 1970 HAGUE CONVENTION ON THE TAKING OF
<u>EVIDENCE IN CIVIL AND COMMERCIAL MATTERS</u>**

FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK TO THE JUDICIAL AUTHORITY IN THE UNITED KINGDOM, GREETINGS:

The United States District Court for the Southern District of New York, in the United States of America, presents its compliments to the Senior Master of the High Court (Queen's Bench Division) of England and Wales, and requests assistance in obtaining evidence to be used in a civil proceeding before this Court in the above-captioned matter (the "Action").

This request is made pursuant to, and in conformity with *the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters* (the "Convention"), to which both the United States and the United Kingdom are a party.

The purpose of this Letter of Request (the "Request") is to obtain testimony for use at trial from a non-party witness who resides within your jurisdiction, Mr. John Hyman, the former "Chief Investment Adviser" for Telegram Group Inc. (one of the Defendants) during the relevant period at issue in this lawsuit. The District Court considers that the evidence sought is directly

relevant to the issues in dispute and that the witness has been identified by Plaintiff as likely to have information and documents that may be used to support its claims against Defendants. It is expected, based on existing timetables, that the District Court will schedule a hearing on a motion for a preliminary injunction and other case dispositive motions on February 18 and 19, 2020, and a potential trial at a later date.

It has been demonstrated to this Court that justice cannot be done amongst the parties to the Action without the testimony of Mr. Hyman. In conformity with Article 3 of the Convention, this Court respectfully submits the following Request.

This Court requests the assistance of an appropriate English judicial officer to compel the appearance of Mr. Hyman to give oral sworn testimony and to produce documents on the subject matters and for the date ranges as described in this Request.

It is requested that the appropriate judicial officer of England and Wales issue such orders as are necessary to implement this Request for Mr. Hyman to appear before an examiner or other appropriate judicial authority in England and Wales to take his oral sworn testimony at deposition in conformity with the procedures of the U.S. Federal Rules of Civil Procedure or such other procedures as are acceptable to you.

The testimony and document production sought is material to the issues now pending in the Action. Plaintiff has approached Mr. Hyman, through his counsel in the United Kingdom, in order to ascertain whether he would be willing to testify voluntarily in the United States of America. Although counsel for Mr. Hyman at first indicated that Mr. Hyman would voluntarily sit for a deposition in this matter, he has since not responded to additional entreaties voluntarily to appear for a deposition.

This Court is authorized by Title 28, United States Code, sections 1781 and 1782 to extend similar assistance on request of the judicial authorities of England and Wales.

The United States District Court for the Southern District of New York, through the offices of the representatives of Plaintiff, is prepared to reimburse your court and/or office for all costs incurred in executing the instant Request and the assurance of its highest consideration.

The particulars of this Hague Evidence Request are as follows:

**I.**

| | | |
|---|---|---|
| 1. | SENDER | The Honorable P. Kevin Castel<br>United States District Judge<br>United States District Court for the Southern District of New York<br>Daniel Patrick Moynihan United State Courthouse<br>500 Pearl Street<br>New York, NY 10007-1312<br>United States of America |
| 2. | CENTRAL AUTHORITY OF THE REQUESTING STATE | Competent Authority for England and Wales<br>Senior Master of the Queen's Bench Division<br>High Court of Justice<br>Royal Courts of Justice<br>Strand<br>London, WC2A 2LL<br>United Kingdom |
| 3. | PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED | *Plaintiff's Legal Representative in the UK:*<br><br>Karen Denny, Esq.<br>CMS Cameron McKenna Nabarro Olswang LLP<br>Cannon Place, 78 Cannon Street<br>London EC4N 6AF<br>United Kingdom<br>T: +44 20 7524 6470<br>F: +44 20 7367 2000<br>E: karen.denny@cms-cmno.com<br><br>*On behalf of:*<br><br>Honorable P. Kevin Castel<br>United States District Judge |

        United States District Court for the Southern
District of New York
500 Pearl Street
New York, NY 10007-1312
United States of America

## II.

4. IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

5. (a) REQUESTING JUDICIAL AUTHORITY (ARTICLE 3(A))

    Honorable P. Kevin Castel
    United States District Judge
    United States District Court for the
    Southern District of New York
    Daniel Patrick Moynihan United States Courthouse
    500 Pearl Street
    New York, NY 10007-1312
    United States of America

   (b) TO THE COMPETENT AUTHORITY OF THE UNITED KINGDOM (ARTICLE 3(a))

    The United Kingdom of Great Britain and Northern Ireland

6. NAMES AND ADDRESSES OF THE PARTIES AND THEIR REPRESENTATIVES:

    (a) Plaintiff

    U.S. Securities and Exchange Commission, Plaintiff

    *Represented in the U.S. by:*
    Jorge G. Tenreiro, Esq.
    Kevin P. McGrath, Esq.
    Ladan F. Stewart, Esq.
    U.S. Securities and Exchange Commission
    200 Vesey Street, Suite 400
    New York, NY 10281-1022
    United States
    Tel.: +1 212.336.9145 (Tenreiro)
    Email: tenreiroj@sec.gov

    *Represented in the U.K. by:*
    Karen Denny, Esq.
    CMS Cameron McKenna Nabarro Olswang LLP

|  |  |  |
|---|---|---|
|  |  | Cannon Place, 78 Cannon Street<br>London EC4N 6AF<br>United Kingdom<br>T: +44 20 7524 6470<br>F: +44 20 7367 2000<br>E: karen.denny@cms-cmno.com |
| (b) | Defendants | Telegram Group Inc.<br>TON Issuer Inc.<br><br>*Represented in the U.S. by*:<br>Alexander C. Drylewski, Esq.<br>Thania Charmani, Esq.<br>Christopher P. Malloy, Esq.<br>Andrew R. Beatty, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, N.Y. 10036-6522<br>T: +1 212.735.3278<br>F: +1 917.777.3278 |

7. NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS

The Plaintiff United States Securities and Exchange Commission ("SEC") is the United States agency charged, *inter alia*, with the civil enforcement of the federal securities laws of the United States of America. In a civil lawsuit pending in the United States District Court for the Southern District of New York for which oral testimony is sought pursuant to this request, the Plaintiff alleges that Defendants violated certain provisions of the United States' federal securities laws by conducting an unregistered offer and sale of digital assets that are securities under the federal securities laws of the United States.

Defendants Telegram Group Inc. and TON Issuer Inc. ("Telegram" or "Defendants") are British Virgin Islands incorporated companies, with principal places of business in Dubai and Tortola, respectively.

The SEC alleges that, from January to March 2018, Telegram raised more than $1.7 billion from 171 investors (the "Initial Purchasers"), including $424.5 million from 39 United States investors, through an unregistered offer and sale of digital assets known as "Grams" (the "Offering"). Initial Purchasers entered into agreements pursuant to which Telegram promised to deliver 2.9 billion Grams (out of five billion minted). The SEC further alleges that those offers and sales, which were not registered with the SEC, were the first step in achieving Telegram's stated goal—the mass distribution of Grams to the investing public worldwide.

The SEC further alleges that Grams are "investment contracts" and, therefore, "securities" under United States federal securities laws. The SEC alleges that Telegram's

5

marketing materials reasonably led purchasers of Grams to view them as an investment into a common enterprise from which they could hope to profit based on Telegram's efforts to develop a business and, therefore, as "investment contracts." The SEC alleges that Telegram led reasonable investors to expect that they would be able to profit from their investment in Grams in various ways. The SEC alleges that Telegram intended all along that the Initial Purchasers would act as conduits for distributing Grams into the secondary market, and did not take reasonable steps to ensure that Initial Purchasers were purchasing Grams not with a view to resell them. The SEC also alleges that, to the contrary, Telegram intended all along that Initial Purchasers distribute their Grams as broadly as possible. Telegram's sale of Grams were part of Telegram's project, known as the "TON Blockchain," to create an "ecosystem" of applications revolving around Grams.

The SEC further alleges that Telegram did not register the Offering of Grams with the Commission, and that no exemption from the registration requirements of the Securities Act applies to Grams. The SEC also alleges that Telegram did not prepare, file, or distribute any registration statement or disclosure document required under the federal securities laws.

The SEC seeks a judgment permanently enjoining Telegram from future violations of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c)]; an order that Telegram disgorge ill-gotten gains received from the violative conduct and prejudgment interest thereon; civil monetary penalties; and such other equitable relief as the Court deems just and proper.

The Defendants' Answer

Defendants substantially deny Plaintiff's allegations and/or deny knowledge or information sufficient as to form a belief as to the truth or falsity of those allegations, or state that the Complaint contains conclusions of law to which no response is required.

Current Schedule for Resolution of this Matter

This action was commenced on October 11, 2019 with the filing of a Complaint and of an Emergency Application by the Plaintiff for a Temporary Restraining Order and a Preliminary Injunction enjoining Defendants from ongoing and future violations of Sections 5(a) and 5(c) of the Securities Act. Based on current timetables, a hearing on the Plaintiff's motion for a preliminary injunction, and on any other motions as the parties may file based on current court schedules, is expected to take place on February 18 and 19, 2020. A trial in this matter could take place thereafter.

Relevance of the Evidence Sought

The SEC seeks the testimony of, and to obtain documents from, John Hyman ("Hyman"). Mr. Hyman was employed by Defendants during parts of the period at issue in this lawsuit, and was described by Defendants' founder as Telegrams' "Chief Investment

Adviser" with respect to Grams.  During his time as Telegram's Chief Investment Adviser, Mr. Hyman communicated with potential and actual investors in Grams about that investment.  Mr. Hyman is currently employed by "Gram Vault," an entity that appears to be "a provider of safekeeping, trading and staking services to investors in the Telegram blockchain."  The evidence sought from this witness thus pertains to this Court's determination of whether Defendants violated United States securities laws.

<u>The Witness From Whom Testimony is Sought</u>

Mr. Hyman was the "Chief Investment Adviser" for Telegram during the Offering.  Attached as Exhibit A are emails showing Mr. Hyman's involvement in the Offering.  Mr. Hyman communicated with one investor about the "grey market" (or, secondary trading market) for Grams, even before Grams were distributed to Initial Purchasers.  Attached as Exhibit B is a transcript of these communications.  Mr. Hyman is currently employed at Gram Vault.  Attached as Exhibit C is an email discussing Gram Vault and Mr. Hyman's relationship to Telegram and Grams.  Mr. Hyman also appears to have invested in Grams himself, as Exhibit D appears to show.

The subject matter for the examination of Mr. Hyman will relate to his knowledge of and/or involvement in the following:

(1)   Mr. Hyman's educational background, employment history, professional qualifications, personal preparation for the deposition (to include who has paid for his legal expenses related to the deposition, and any contacts he may have had with the parties, their lawyers, insurers or representatives, but excluding any privileged communications);
(2)   Mr. Hyman's role at Telegram;
(3)   Instructions given to Mr. Hyman in relation to the Offering of Grams;
(4)   Telegram's inducements to potential investors during the Offering of Grams;
(5)   Mr. Hyman's investment in Grams;
(6)   Mr. Hyman's view of Telegram's activities;
(7)   Mr. Hyman's understanding of the TON Blockchain;
(8)   Mr. Hyman's communications and statements with potential and actual Initial Purchasers of Grams;
(9)   Mr. Hyman's understanding of secondary market trading in Grams;
(10)  Mr. Hyman's discussions with other individuals at Telegram regarding the secondary market trading in Grams;
(11)  Telegram's efforts to ensure that Initial Purchasers invested Grams for their own accounts, and not for resale;
(12)  Compensation paid by Telegram to third parties with respect to the Offering and/or Grams;
(13)  Telegram's non-privileged attempts, if any, to determine the legality of the Offering;
(14)  Telegram's use of funds raised in the Offering;
(15)  Telegram's efforts to develop uses for Grams;
(16)  Telegram's efforts to create a secondary market for trading in Grams;

(17) The activities of other Grams stakeholders to create a secondary market for trading in Grams;
(18) His investment in Grams;
(19) The expectations of investors in purchasing Grams;
(20) The sales or offers to sell Grams by any Initial Purchasers to third parties;
(21) Telegram's planned future and ongoing efforts with respect to Grams and the TON Blockchain;
(22) Gram Vault's involvement with Telegram and Grams;
(23) Gram Vault's efforts with respect to Grams and the TON Blockchain;
(24) Telegram's communications with potential and actual investors in Grams;
(25) Gram Vault's communications with potential and actual investors in Grams;
(26) Mr. Hyman's compensation for his work at Telegram and Gram Vault;
(27) The ownership and corporate structure of Gram Vault; and
(28) Gram Vault's communications with any third parties with respect to Grams.

| | | |
|---|---|---|
| 8. | EVIDENCE TO BE OBTAINED OR OTHER JUDICIAL ACT TO BE PERFORMED | The taking of testimony for use in court of John Hyman concerning his prior employment by Telegram and the unregistered offering Plaintiff alleges Defendants engaged in.  <u>This individual is not a Defendant and is only a witness in this matter.  The SEC is not seeking any relief against this individual.</u> |

**III.**

| | | |
|---|---|---|
| 9. | IDENTITY AND ADDRESS OF PERSONS TO BE EXAMINED | <u>John Hyman</u><br>114a Cromwell Road, 3rd Floor<br>London SW7 4AG<br>United Kingdom |
| 10. | QUESTIONS TO BE PUT TO PERSONS TO BE EXAMINED OR STATEMENT OF THE SUBJECT MATTER ABOUT WHICH THEY ARE TO BE EXAMINED | The subject matter for the examination of Mr. Hyman will relate to his knowledge of and/or his involvement in matters (1) – (28) as listed in Section 7 above under the heading "The Witness from Whom Testimony is Sought". |
| 11. | DOCUMENTS OR OTHER PROPERTY TO BE INSPECTED | The SEC requests that Mr. Hyman produce to the Examiner and to Plaintiff's Counsel, no later than 7 |

calendar days before the date on which the Examination is due to commence:

1. The communications via texts or messaging apps, between January 1, 2018, and the present, between Hyman and any of the following Telegram employees who participated in the Offering: Pavel Durov, Shyam Parekh, and Ilya Perekopsky;

2. The communications, between January 1, 2018, and the present, between Hyman and the entities who invested in the Offering for whom he served as chief investor advisor to Telegram;

3. Communications, between May 1, 2018, and the present, between Hyman and any employee of Gram Vault with respect to the Offering or to Grams;

4. Documents, dated between February 1, 2018, and the present, regarding Hyman's own investment in Grams; and

5. The written agreements, and communications evidencing agreements, governing the relationship between Hyman and Telegram.

| | | |
|---|---|---|
| 12. | ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION AND ANY SPECIAL FORM TO BE USED | The Witness should be examined under oath or affirmation, or in the alternative, should be instructed of the consequences for the giving of untruthful and false answers under the laws of England and Wales |

13. SPECIAL METHODS OR PROCEDURES TO BE FOLLOWED

The District Court respectfully requests, with respect to the oral testimony and production of documents being sought:

(1) that the High Court appoint an Examiner for the purpose of compelling oral testimony from the witness for use at trial;
(2) that the parties' representatives or their designees, a court reporter and a videographer be permitted to be present during the examination; that their representatives or designees be permitted to examine and cross-examine the witness directly; and that a court reporter and videographer be permitted to make a verbatim record of the proceedings; and

|  |  |  |
|---|---|---|
|  | (3) in connection with the taking of testimony of the witness, Plaintiff has permission to refer the witness to documents previously produced or available in the Action. | |
| 14. | REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE EXECUTION OF THE REQUEST | It is requested that testimony be taken at such place, date, and time as ordered by the Senior Master and/or as otherwise scheduled by the representatives of the witness and the respective representatives of the parties. |
| 15. | REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF THE LETTER OF REQUEST | None. |
| 16. | SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE | In relation to claims for privilege under the laws of the United States or the laws of England and Wales, regard shall be had to Section 3 of the Evidence (Proceedings in Other Jurisdictions) Act 1975.

For the avoidance of doubt, under the laws of the United States, a witness has privilege to refuse to give evidence if the evidence discloses a confidential communication between that party and an attorney for that party that was made for the purpose of obtaining legal advice.

Parties also enjoy limited privileges on other ground not relevant here such as communications between physician and patient, psychotherapist and patient, husband and wife, or clergy and penitent.

U.S. laws also recognize a privilege against criminal self-incrimination.

Outside the strict area of privilege, certain limited immunities are available that may place restrictions on the giving of evidence, such as the limited protection of documents created as the work-product of attorneys during or in anticipation of litigation. |

| | | |
|---|---|---|
| 17. | FEES AND COSTS (ARTICLE 14) | The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by the *U.S. Securities and Exchange Commission.* |
| 18. | DATE OF REQUEST | December ___, 2019 |
| 19. | SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY | UNITED STATES OF AMERICA<br>United States District Court<br>for the Southern District of New York |

[SEAL]

By: _____
      Hon. P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007
United States