## TELEGRAM – INDICATION OF INTEREST
## STAGE A OF THE SUBSEQUENT SALE

Except as otherwise provided, this Indication of Interest: (i) is intended as a statement of the parties' mutual intentions only; (ii) is not intended to be, and shall not constitute, a binding or enforceable agreement between the parties; and (iii) is not intended to impose any obligation whatsoever on either party.

| | |
|---|---|
| Deal Structure | • Issuance and sale by TON Issuer Inc (the "**Issuer**"), a wholly owned subsidiary of Telegram Group Inc. (the "**Parent**"), of a new cryptocurrency called "**Grams**", which will be issued following the development and launch of a new blockchain platform (the "**TON Network**"). |
| | • The Parent and the Issuer intend to use the proceeds raised from the offering for the development of the TON Blockchain, for the continued development and maintenance of Telegram Messenger and for general corporate purposes at Telegram Messenger. Such expenses are expected to include, among others, equipment, bandwidth, colocation, and user verification costs, as well as wages, offices, and legal and consulting services. |
| Gram Pricing | • The Issuer is offering subscriptions for Grams through an "**Initial Sale**" and a "**Subsequent Sale**." |
| | • The Initial Sale was completed in February 2018. Approximately 2.25 billion Grams were subscribed for in the Initial Sale. In accordance with the pricing formula for Grams described in Section A.4. of the "Telegram Open Network" technical white paper (the "**Technical White Paper**"), Grams subscribed for in the Initial Sale were priced at US$0.37756101 per Gram, for total gross proceeds of US$850 million. |
| | • The Subsequent Sale is currently expected to commence in late February 2018. While the number of Grams available for subscription in the Subsequent Sale is not currently known, the Issuer currently anticipates offering subscriptions for a maximum of US$1.7 billion worth of Grams in the Subsequent Sale. The Subsequent Sale will be conducted in two stages: "**Stage A**" and "**Stage B**." |
| | • The Issuer currently anticipates offering subscriptions for a maximum of US$850 million worth of Grams in Stage A. Assuming Stage A is fully subscribed, the pricing formula for Grams described in Section A.4. of the Technical White Paper implies an average price of US$1.33003701 per Gram subscribed for in Stage A (such average price as calculated based on the actual number of Grams subscribed for during Stage A, the "**Stage A Purchase Price**"). Each Gram subscribed for in Stage A will be priced at the Stage A Purchase Price. |
| Indicative Purchase Amount | • Based on the number of Grams you are interested in subscribing for in Stage A and the assumed Stage A Purchase Price set forth above, please indicate on the signature page hereto your total assumed purchase |

| | |
|---|---|
| | amount ("**Indicative Purchase Amount**"). |
| Purchase Agreement | ■ If the Issuer determines in its sole discretion to offer you the ability to subscribe for Grams in Stage A, you will be required to enter into a purchase agreement with the Issuer and the Parent (the "**Purchase Agreement**"). Prior to entering into the Purchase Agreement, among other things, you will be required to provide to the Issuer and its representatives (1) certain "know your customer" information and related documentation and (2) certain information and related documentation demonstrating your ability under applicable securities laws to participate in Stage A. |
| | ■ The Purchase Agreement shall provide for (i) the payment of the Purchase Amount (as set forth in the Purchase Agreement) by you on or prior to the payment date set forth therein and (ii) upon the terms and subject to the conditions of the Purchase Agreement, the issuance of Grams by the Issuer on the date (the "**Network Launch Date**") of the public release of a version of the TON Network after completion of the test launch and security audits, as determined by the Issuer in its sole discretion (the "**Network Launch**"). |
| No Assignment | ■ The Purchase Agreement will contain a "no assignment" provision under which each purchaser (a "**Purchaser**") shall agree and undertake that from the date of the Purchase Agreement to the Network Launch Date, such Purchaser shall not, without the prior written consent of the Issuer: |
| | (a) offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, or otherwise transfer, encumber or dispose of, directly or indirectly (through a direct or indirect transfer, encumbrance or disposition of any interest in any entity), the investment contract represented by the Purchase Agreement (or any interest therein) or any Grams, or any securities convertible into or exercisable or exchangeable for the investment contract represented by the Purchase Agreement or any Grams, or publicly disclose the intention to make any such offer, sale, pledge or disposition; or |
| | (b) enter into any swap or other agreement that transfers, directly or indirectly, in whole or in part, any of the economic consequences of ownership of the investment contract represented by the Purchase Agreement (or any interest therein) or any Grams, |
| | whether any such transaction described in paragraphs (a) or (b) above is to be settled by delivery of the investment contract represented by the Purchase Agreement or any Grams, in cash or otherwise; provided, however, that the above restrictions shall not apply to transfers of Grams to an affiliate (as defined in the Purchase Agreement) of such Purchaser to the extent that such affiliate agrees in writing with the Issuer and the Parent to be bound by transfer restrictions substantially identical to the above. |
| | ■ The Purchase Agreement shall not contain any restriction on the |

2

| | |
|---|---|
| | transferability of Grams once they are delivered to the Purchaser. |
| Termination | - The obligation to issue Grams pursuant to the Purchase Agreement shall automatically terminate upon the earlier of:<br><br>(a) the occurrence of (i) a voluntary termination of operations of the Issuer; (ii) a general assignment for the benefit of the creditors of the Issuer; or (iii) any other liquidation, dissolution or winding up of the Issuer, whether voluntary or involuntary (each of clauses (i), (ii) and (iii), a "**Dissolution Event**"); and<br><br>(b) 31 October 2019 (the "**Deadline Date**"), if the Network Launch has not occurred as of such date,<br><br>provided that, subject to certain exceptions enumerated in the Purchase Agreement, the Issuer and the Parent shall repay to the Purchaser the Termination Amount (as defined in the Purchase Agreement) upon the occurrence of a Dissolution Event or immediately following the Deadline Date, as applicable.<br><br>- The Issuer and the Parent may at any time by giving notice in writing to a Purchaser terminate the Purchase Agreement of such Purchaser with immediate effect in the event that the Issuer has not received the Purchase Amount on or prior to the applicable payment date set forth in the Purchase Agreement. |
| Purchaser's Warranties | - The Purchaser warrants to the Issuer and the Parent that each of its responses on the signature page hereto is true, accurate and not misleading as at the date indicated on the signature page.<br><br>- The Purchaser warrants to the Issuer and the Parent that the Purchaser has the full legal capacity, power and authority to execute this Indication of Interest and any person executing this Indication of Interest is duly authorized by the Purchaser to do so. |
| Expenses | - No expense reimbursement shall be provided by the Issuer or the Parent for your counsel or for any other expenses incurred by you or your representatives. Each party shall be liable for its own costs in investigating and negotiating the transaction (including this Indication of Interest and any binding transaction documentation). |
| Confidentiality | - You undertake (a) to keep this Indication of Interest and any other information provided to you or your representatives by or on behalf of the Issuer or the Parent secret at all times, except with the prior written consent of the Issuer and the Parent, (b) not to disclose such information or allow such information to be disclosed in whole or in part to any third party without the prior written consent of the Issuer and the Parent, and (c) not to use such information in whole or in part for any purpose other than in connection with your subscription for Grams. You undertake to take all reasonable measures to ensure the confidentiality of this Indication of Interest and any other information provided to you or your |

3

|  |  |
|---|---|
|  | representatives by the Issuer or the Parent. |
| Non-Binding Nature | ■ Save for the sections "Purchaser's Warranties", "Expenses", "Confidentiality", "Non-Binding Nature" and "Governing Law and Dispute Resolution", this Indication of Interest shall not be a binding or legally enforceable agreement or commitment by the parties to negotiate towards or conclude any agreement in relation to the transactions contemplated hereby and shall not give rise to any other legal consequences or create any binding obligations on any of the parties. |
|  | ■ The content of any executed Purchase Agreement as expressly set out therein shall represent the entire understanding and will constitute the entire agreement among you, the Issuer and the Parent in relation to the subject matter thereof and the transactions contemplated thereby, and shall supersede all previous agreements, understandings or arrangements (whether express, implied, oral or written (whether or not in draft form)) among you, the Issuer and/or the Parent with respect thereto. |
| Governing Law and Dispute Resolution | ■ This Indication of Interest and any claim, dispute or difference (including non-contractual claims, disputes or differences) arising out of, or in connection with, this Indication of Interest or its subject matter shall be governed by, and construed in accordance with, English law. |
|  | ■ Any dispute, controversy or claim arising out of or in connection with this Indication of Interest, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by binding arbitration under the Rules of Arbitration of the London Court of International Arbitration. The place of arbitration shall be London, England. There shall be three arbitrators, and the parties agree that one arbitrator shall be nominated by the Issuer and the Parent and one arbitrator shall be nominated by you, in each case for appointment by the LCIA Court in accordance with the LCIA Rules. The third arbitrator, who shall act as the chairperson of the tribunal, shall be nominated by agreement of the two party-appointed arbitrators within fourteen days of the confirmation of the appointment of the second arbitrator, or in default of such agreement, appointed by the LCIA Court. |

FOIA Confidential Treatment Requested by Telegram Group Inc.	TG-005-00012567

**For and on behalf of the Purchaser**

Legal Name of Purchaser: Luminescence LLC

By: *[signature]*

Name: Joshua Hong

Title: Manager

Address: 2618 San Miguel Drive #240
Newport Beach, CA 92660 USA

Date: February 22, 2018

| Purchaser Contact Information | Name | Email | Phone |
|---|---|---|---|
| Primary Business Contact: | Joshua Hong | joshuahong80@gmail.com | +1 773 793 8078 |
| Additional Business Contact(s): | Redacted – Privacy | | |
| Legal / Operational Contact(s): | Eric Kim | ericjdkim@gmail.com | +1 949 394-6066 |

1. Indicative Purchase Amount: US$ 100,000,000

    - *Natural persons (including those subscribing as Purchaser Investors (as defined below)) must subscribe for a minimum of US$1 million worth of Grams*
    - *Entities must subscribe for a minimum of US$10 million worth of Grams*

2. Please indicate whether the Purchaser is an entity or natural person:

    ☐ Natural Person – Please indicate principal jurisdiction of residency: _____

    ☑ Entity – Please indicate jurisdiction of formation: State of Delaware, USA

3. If the Purchaser is an Entity, was the Purchaser formed for the purpose of entering into the Purchase Agreement and/or purchasing Grams:

    ☑ No *(note that by selecting this box, you are deemed to represent that (i) the Purchaser will be entering into the Purchase Agreement and purchasing Grams on its own behalf and not for the*

5

*account or benefit of any other person and (ii) the Purchaser has not solicited investors and will not solicit investors to participate in this investment)*

☐ Yes - If "yes", please provide the following information in respect of each person who holds an equity interest in the Purchaser (each, a "**Purchaser Investor**") (*if any Purchaser Investor was itself formed for the purpose of entering into the Purchase Agreement and/or purchasing Grams, please provide the information in the table below in respect of each person who holds an equity interest in the Purchaser Investor*):

| Name | Natural Person / Entity | Jurisdiction of Residency / Formation | Indicative Purchase Amount* |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

- *Natural persons must subscribe for a minimum of US$1 million worth of Grams*
- *Entities must subscribe for a minimum of US$10 million worth of Grams*

4. Please describe any approvals (shareholder, regulatory or otherwise) that will be required prior to executing the Purchase Agreement, as well as the timeframe necessary for meeting all conditions and obtaining all approvals.

> Based on our legal counsel's recommendation, we may create a dedicated entity for this investment outside of current jurisdiction, ~~such as Cayman Island, to execute the Purchase Agreement. We~~ anticipate that the total amount of time required to establish such structure would be approximately 30-60 days.

FOIA Confidential Treatment Requested by Telegram Group Inc.

TG-005-00012569

For and on behalf of TON Issuer Inc

By: *[signature]*
Name: PAVEL DUROV
Title: DIRECTOR
Date: 20 Feb 2018

For and on behalf of Telegram Group Inc.

By: *[signature]*
Name: PAVEL DUROV
Title: DIRECTOR
Date: 20 Feb 2018

7

FOIA Confidential Treatment Requested by Telegram Group Inc.    TG-005-00012570