UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,    :

   :

            Plaintiff,    :      **19 Civ. 9439 (PKC)**

   :

      - against -    :      **ECF Case**

   :

TELEGRAM GROUP INC. and TON ISSUER INC.,    :

   :

          Defendants.    :

   :

---------------------------------------------------------------------x

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO STRIKE TELEGRAM'S FIRST AFFIRMATIVE DEFENSE**

Jorge G. Tenreiro
Kevin P. McGrath
Ladan F. Stewart

*Counsel for the Plaintiff*
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-9145 (Tenreiro)

January 13, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 2

   I.   The SEC's DAO Report and Actions Involving Digital Assets Before the Offering. ....... 2

   II.  Telegram's Awareness That the Federal Securities Laws May Apply to Grams
      When Conducting Its Unregistered Offers and Sales of Grams. ....................................... 4

   III. The SEC's Investigation Into Telegram's Conduct. ........................................................... 4

   IV. Procedural Background: The SEC's Enforcement Action and Telegram's Answer. ......... 5

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT ............................................................................................................................. 7

   I.   "Investment Contract" Is Not Unconstitutionally Vague As Applied To Telegram. ........ 8

      A.   Standard for Unconstitutional Vagueness. ............................................................. 8

      B.   The Second Circuit and Other Federal Courts Have Uniformly Rejected
          Vagueness Challenges to the Statutory Term "Investment Contract." .................... 9

      C.   The Term "Investment Contract" and *Howey* Standard Provide Sufficient
          Notice to People of Ordinary Intelligence, and Telegram Had Actual
          Notice that Grams Could Be Treated as Securities. ............................................... 11

      D.   The Securities Act Does Not Invite Arbitrary Enforcement. ................................. 12

   II.  Telegram's Contention that the SEC Must Issue Further Guidance Before Bringing
      Enforcement Actions Involving Digital Assets Is Meritless. .......................................... 15

   CONCLUSION ................................................................................................................... 17

**Page(s)**

**Cases**

*Advance Pharm., Inc. v. United States*, 391 F.3d 377 (2d Cir. 2004).........................12

*Arriaga v. Mukasey,* 521 F.3d 219 (2d Cir. 2008)...........................................8

*Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952)........................14

*Continental Mktg. Corp. v. SEC*, 387 F.2d 466 (10th Cir. 1967)......................11

*Copeland v. Vance*, 893 F.3d 101 (2d Cir. 2018) ...............................8, 11, 13

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ..............................8, 15

*Fabi Constr. Co. v. Sec'y of Labor*, 508 F.3d 1077 (D.C. Cir. 2007)....................16

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006)............................8, 13, 14

*FCC v. Fox Television Studios, Inc.*, 567 U.S. 239 (2012)...........................16

*Gen. Elec. Co. v. EPA*, 53 F.3d 1324 (D.C. Cir. 1995) ..............................16

*Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273 (2d Cir. 1997) .................11

*General Media Comms v. Cohen*, 131 F.3d 273 (2d Cir. 1997).........................9

*GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92 (2d Cir. 2019)..........7

*Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027 (2d Cir. 1974) ............10

*Graham v. SEC*, 222 F.3d 994 (D.C. Cir. 2000)....................................16

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................15

*Hill v. Colorado*, 530 U.S. 703 (2000) ...........................................8

*Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144 (1991)............16

*Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149 (2d Cir. 2009) ...................9

*Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820 (9th Cir. 2012)....................16

*Reves v. Ernst & Young*, 494 U.S. 56 (1990).......................................14

*SEC v. AriseBank*, No. 18 Civ. 186 (N.D. Tex. Jan. 30, 2018) ........................3

*SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047 (2d Cir. 1973)............9, 10, 11

*SEC v. Feng*, 935 F.3d 721 (9th Cir. 2019) .......................................11

*SEC v. KPMG LLP*, No. 03 Civ. 671, 2002 WL 21976733 (S.D.N.Y. Aug. 20, 2003) ........7

*SEC v. PlexCorps*, No. 17 Civ. 7007 (E.D.N.Y. Dec. 1, 2017)..........................3

*SEC v. REcoin Group, Inc.*, No. 17 Civ. 5725 (E.D.N.Y. Sept. 29, 2017)..................3

*SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019)..................................11

*SEC v. SG Ltd.*, 265 F.3d 42 (1st Cir. 2001)......................................11

*SEC v. W.J. Howey & Co.*, 328 U.S. 293 (1946) .................................................. passim

*United Hous. Found. Inc. v. Forman*, 421 U.S. 837 (1975) ....................................... 15

*United States v. Bowdoin*, 770 F. Supp. 2d 142 (D.D.C. 2011) .................................. 10

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011) .............................................. 13

*United States v. Farris*, 614 F.2d 634 (9th Cir. 1979) ................................................ 10

*United States v. Kay*, 513 F.3d 432 (5th Cir. 2007) .............................................. 14, 15

*United States v. Leonard*, 529 F.3d 83 (2d Cir. 2008) .......................................... 11, 14

*United States v. Smith*, 985 F. Supp. 2d 547 (S.D.N.Y. 2014) ................................. 8, 9

*United States v. Zaslavskiy*, No. 17 Cr. 647, 2018 WL 4346339
   (E.D.N.Y. Sept. 11, 2018) ................................................................................. passim

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489 (1982) ......... 9, 12, 14

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ............................ 7

**Statutes**

15 U.S.C. § 77b .......................................................................................................... 9

15 U.S.C. § 77e .......................................................................................................... 5

15 U.S.C. § 77s ........................................................................................................ 16

15 U.S.C. § 77t ........................................................................................................ 16

15 U.S.C. § 78u ..................................................................................................... 2, 16

15 U.S.C. § 78z ........................................................................................................ 16

**Rules**

Fed. R. Civ. P. 12(f) ............................................................................................... 1, 7

**Other Authorities**

*In re Matter of Munchee Inc.*, Exchange Act Rel. No. 10445, 2017 WL 6374434
   (Dec. 11, 2017) ........................................................................................................ 3

Jay Clayton and J. Christopher Giancarlo, *Regulators are Looking at Cryptocurrency*,
   Wall St. J., Jan. 24, 2018, *available at* https://www.wsj.com/articles/regulators-are-
   looking-at-cryptocurrency-1516836363 ................................................................... 3

Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934:
   The DAO, Release No. 81207, 2017 WL 7184670 (July 25, 2017).................. 3, 4, 12

SEC Chairman Jay Clayton, Statement on Cryptocurrencies and Initial Coin Offerings
   (Dec. 11, 2017),
   https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11 ........... 3

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in support of its motion under Fed. R. Civ. P. 12(f) to strike Telegram Group Inc. and TON Issuer Inc.'s ("Telegram") first affirmative defense of "void for vagueness." For the reasons set forth below, the Court should grant the SEC's motion and strike the defense.

## PRELIMINARY STATEMENT

This emergency action to stop Telegram from flooding U.S. markets with billions of digital tokens called Grams requires the Court to determine whether Grams are "investment contracts" and thus "securities" under the Securities Act of 1933 ("Securities Act"). Telegram asserts that the Court cannot reach the question because the statutory term "investment contract" did not provide Telegram notice that Grams are securities or "adequately cabin" the SEC's discretion in carrying out its enforcement responsibilities, and is thus unconstitutionally vague.

This void-for-vagueness affirmative defense is legally insufficient and should therefore be stricken. To the SEC's knowledge, no federal court has ever accepted a defendant's argument that the term "investment contract" is unconstitutionally vague; indeed, the Second Circuit has twice rejected that argument. Telegram contends that this Court should nevertheless be the first in the nearly 87-year history of the Securities Act to declare the term unconstitutionally vague. In doing so, Telegram fails to acknowledge that the Supreme Court's decision in *SEC v. W.J. Howey & Co.*, 328 U.S. 293 (1946) ("*Howey*"), has for decades provided a workable definition of "investment contract," providing persons of ordinary intelligence with notice of the scope of the statute's application and foreclosing arbitrary enforcement, as courts addressing the issue— including another district court in this Circuit in the digital asset context—have uniformly found.

Telegram's suggestion, in its lengthy preamble to its affirmative defenses, that the SEC must issue regulations or issue more guidance before it can exercise the discretion Congress gave

it to enforce the securities statutes also has no merit, as it finds no support in the Due Process Clause, the Supreme Court's void-for-vagueness jurisprudence, or any other principle of law.

Moreover, although the void-for-vagueness defense's legal insufficiency alone is enough to warrant its striking, Telegram cannot dispute that, as a factual matter, it *was* on notice that the term "investment contract" could apply to Grams. Telegram's unregistered offering occurred after the SEC had issued a Report of Investigation in 2017, pursuant to Section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(a), regarding an "Initial Coin Offering" ("ICO") for so-called "DAO Tokens." In that report, the SEC made clear that it would apply long-standing legal principles (including *Howey*'s standard) to determine whether issuers of digital assets were subject to the federal securities laws. Telegram's CEO admits that he knew about the report before Telegram's "private placement," and friends and advisors even warned him that Telegram's sale of Grams could raise regulatory concerns. Later, the SEC contacted Telegram during its fundraising efforts (though Telegram ultimately refused to accept service of an SEC investigative subpoena). Finally, Telegram's suggestion that the SEC should have notified Telegram that it was violating the law before filing this action is also legally meritless.

Based on longstanding judicial precedent and Telegram's contemporaneous awareness that the federal securities laws could apply to Grams, among other reasons detailed below, the Court should grant the SEC's motion and strike Telegram's void-for-vagueness defense.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The SEC's DAO Report and Actions Involving Digital Assets Before the Offering.

On July 25, 2017, the SEC's publicly-issued report concerning so-called "DAO Tokens" considered the particular circumstances presented by the offer and sale of those digital tokens and concluded that they were securities. *See* Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, Release No. 81207, 2017 WL 7184670 (July

25, 2017) (the "DAO Report").  Based on long-standing legal principles, including *Howey*, the DAO Report concluded that the offers and sales of the DAO Tokens were subject to the federal securities laws' registration requirements.  The DAO Report further explained that issuers of cryptographically-secured (or "blockchain") technology-based securities must register offers and sales of such securities unless a valid exemption from registration applies.  The automation of certain functions through "smart contracts" or other technology, the DAO Report concluded, does not remove conduct from the purview of the federal securities laws.  The SEC's message to issuers in this space was clear:  the use of distributed ledger or blockchain technology to raise capital does not alter the need to comply with the federal securities laws.

After the SEC issued the DAO Report and before and while Telegram raised funds, the SEC continued to actively enforce the federal securities laws in the digital asset space, including with respect to unregistered transactions in such assets.  *See SEC v. AriseBank*, No. 18 Civ. 186 (N.D. Tex. Jan. 30, 2018) (emergency action to halt unregistered ICO); *SEC v. PlexCorps*, No. 17 Civ. 7007 (E.D.N.Y. Dec. 1, 2017) (same); *SEC v. REcoin Group, Inc.*, No. 17 Civ. 5725 (E.D.N.Y. Sept. 29, 2017) (same); *In re Matter of Munchee Inc.*, Exchange Act Rel. No. 10445, 2017 WL 6374434 (Dec. 11, 2017) (settled administrative proceeding against unregistered ICO).

In addition, the SEC Chairman repeatedly gave market participants notice that the SEC could view some digital assets as securities.  *See* Jay Clayton and J. Christopher Giancarlo, *Regulators are Looking at Cryptocurrency*, Wall St. J., Jan. 24, 2018, *available at* https://www.wsj.com/articles/regulators-are-looking-at-cryptocurrency-1516836363 ("some products that are labeled virtual currencies have characteristics that make them securities"); SEC Chairman Jay Clayton, Statement on Cryptocurrencies and Initial Coin Offerings (Dec. 11, 2017), https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11 (same).

## II.    Telegram's Awareness That the Federal Securities Laws May Apply to Grams When Conducting Its Unregistered Offers and Sales of Grams.

Telegram's principal business is running the messaging application "Messenger," considered a leading messaging application for the blockchain technology community. Stips. ¶ 26.[1] In 2017, Telegram needed money to fund servers for Messenger, *see* Ex. A at 1 (Message of Pavel Durov on Aug. 14, 2017), and began exploring raising funds from investors. Telegram had been contemplating "selling equity," Ex. B at 1, and, later, considered a private and "public sale" of digital assets called Grams. Ex. C (Teaser) at 1, 2. Telegram eventually carried out a purportedly private placement sale of Grams (the "Offering") to fund the creation of a new blockchain, called the "TON Blockchain," as well as to fund Messenger. *E.g.*, Ex. D (Presale Primer) at 16; Ex. E (Feb. 13, 2018 Form D) at 5; Ex. F (Mar. 29, 2018 Form D) at 5.

Telegram was aware that the securities laws could apply to its Offering. Its CEO knew of and understood what the DAO Report was about, Ex. K (Excerpts of Dep. of Pavel Durov dated Jan. 7-8, 2020) ("Durov Dep.") at 108:23—110:14, and a friend warned him "to be mindful of [the] regulatory environment" in this space. Ex. A at 5 (Chat of Oct. 26, 2017). Indeed, as it later told numerous parties, Telegram changed the structure of the Offering from a private/public to a "private" sale, precisely because of "regulatory reasons." *E.g.*, Ex. B at 3-4; L; M; N at 2.

## III.    The SEC's Investigation Into Telegram's Conduct.

On approximately January 8, 2018, SEC staff learned that Telegram was planning a sale of digital tokens. Decl. of Daphna Waxman, dated Oct. 11, 2019 (D.E. 16) at ¶ 8 ("Waxman Decl."). On approximately January 29, 2018—the same day as the "Date of First Sale" stated in one of Telegram's Form D, Ex. E at 4—SEC staff began contacting potential Grams purchasers

---

[1]    Citation to "Stips." are to the Stipulation of Undisputed Facts filed today. Citations to "Ex. [ ]" are to Exhibits to the Declaration of Kevin P. McGrath in support of this motion.

to obtain information about the sale and Telegram's counsel contact information, *see* Waxman

Decl. ¶ 9.  The SEC staff was unable to identify Telegram's counsel, but asked that their names

be conveyed to Telegram's counsel.  *See, e.g.*, Ex. G.  On February 2, 2018—only after the SEC

had already reached out to potential Grams purchasers and tried to identify Telegram's

counsel—counsel emailed and called an SEC staff member to discuss the SEC's "interest in . . .

Telegram."  Ex. H.  Though Telegram states that it "attempted to receive SEC guidance and

feedback on the TON Blockchain," Answer (D.E. 37) ("Ans.") at 28 (¶ 35), it did not do so

before it made its first sales to investors.  Durov Dep. (Ex. K) at 158:5—159:17

The SEC then conducted a non-public investigation into whether Telegram had violated

the federal securities laws.  Although Telegram provided information about its dealings with

U.S.-based investors, *see generally id.* at 28-31 (¶¶ 35-40), it eventually refused to accept service

of an investigative subpoena.  *See* Ex. I (Sept. 30, 2019 Letter to Staff).  On October 11, 2019,

less than three weeks before the planned rollout of $1.7 billion worth of Grams, Telegram told

the SEC staff that, while Telegram anticipated that the launch would take place prior to October

31, 2019 and would keep the SEC apprised of the precise timing, it did not know "the exact date

of the launch."  *See* Ex. J (Oct. 11, 2019 Letter).

## IV.    Procedural Background: The SEC's Enforcement Action and Telegram's Answer.

The SEC sued Telegram on October 11, 2019, alleging that the Offering violated and will

continue to violate the registration requirements of Sections 5(a) and (c) of the Securities Act, 15

U.S.C. §§ 77e(a), (c).  *See* Compl. (D.E. 1) ¶¶ 119-21.  On November 12, 2019, Telegram

answered.  *See* D.E. 37.  Telegram's Answer raises an affirmative defense titled "Constitutional

Violation, Void for Vagueness/Lack of Notice."  Ans. at 16-32 (¶¶ 2-49).  The Answer precedes

that and other defenses with a sixteen-page argument focused not on how the term "investment

contract" is impermissibly vague, but on whether *the SEC* has acted properly in bringing this

action.  For example, while Telegram acknowledges that the Supreme Court's construction of the term "investment contract" in *Howey* is "open-ended," it insists that "the application of *Howey* to digital assets raises unique issues that require more specific guidance to avoid trapping the unwary." *Id.* at 17 (¶ 5).  Telegram also alleges that the SEC has failed "to provide consistent and meaningful guidance on whether and how it will regulate cryptocurrencies." *Id.*; *see also id.* at 19 (¶ 13) (application of U.S. securities laws to digital assets is a "new and developing area of the law where the SEC has failed to provide any concrete public guidance").

Telegram's Answer also asserts that post-Offering commentary by certain SEC officials support Telegram's "good faith" belief that the Offering "was compliant with the U.S. securities laws," Ans. at 19 (¶ 13); *see also id.* at 19-24 (¶¶ 13-26).  The Answer then concludes that, despite the DAO Report and other pre- to early 2018 enforcement actions, post-Offering speeches do not "provide Telegram with legally and constitutionally required notice as to whether its conduct violated federal securities laws, and have led to arbitrary enforcement efforts whereby Bitcoin and Ethereum are presumed to not be securities while other cryptocurrencies with the same or substantially similar characteristics are . . . ." *Id.* at 24 (¶ 26); *see also id.* at 26-27 (¶ 31) ("SEC's position that [Grams] fit[] into the definition of a 'security' based on existing frameworks is clearly unreasonable, particularly since Grams align with other cryptocurrencies the SEC has not deemed securities").

Telegram's Answer further criticizes this SEC action as "regulation by enforcement," *id.* at 24 (¶ 27), that is purportedly "inconsistent with the SEC's publicly expressed desire to engage with developers in the area." *Id.* at 25 (¶ 29).  It insists that "formal rulemaking or at the very least an interpretation or policy statement from the SEC itself, with commentary from the public, is necessary for a paradigm shift such as this." *Id.* at 27 (¶ 32).

Telegram's Answer then selectively alleges facts concerning its interaction with SEC staff. The Answer vaguely states that "counsel for Telegram reached out to the SEC regarding the TON Blockchain platform," *id.* at 28 (¶ 36). The Answer fails to mention that Telegram made no attempt to do so before it began raising millions of dollars from investors or that Telegram reached out to the SEC only after the SEC staff had tried to contact Telegram.

## STANDARD OF REVIEW

A district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An affirmative defense may be stricken if it does not plausibly allege enough facts to support it. *See GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 97-98 (2d Cir. 2019). Moreover, "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claim." *Id.* at 98. "[P]rejudice may be considered and, in some cases, be determinative." *Id.* at 98-99; *see also SEC v. KPMG LLP*, No. 03 Civ. 671, 2002 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003) (if "the defense is insufficient as a matter of law, [it] should be stricken to eliminate . . . delay and unnecessary expense"); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) ("The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.") (citation omitted).

## ARGUMENT

Though Telegram purports to bring an "as applied" vagueness challenge to the term "investment contract," the thrust of its allegations is that the SEC has chosen to bring an enforcement action rather than issue regulations regarding the status of *all* digital asset investments under the federal securities laws. Whichever way Telegram articulates it, the void-

for-vagueness affirmative defense is legally insufficient and, as a matter of law, cannot prevent the SEC from succeeding on its claim.

## I.  "Investment Contract" Is Not Unconstitutionally Vague As Applied To Telegram.

### A.  Standard for Unconstitutional Vagueness.

Telegram's challenge has no First Amendment implications and is otherwise unrelated to any assertion of constitutionally-protected rights.  It must thus be evaluated as the Securities Act is applied to Telegram's circumstances.  *See Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010) (concluding that parties were "limited to an as-applied vagueness challenge under the Fourteenth Amendment" where neither First Amendment nor other fundamental rights were implicated); *Arriaga v. Mukasey,* 521 F.3d 219, 224-25 (2d Cir. 2008) ("Claims of facial invalidity are generally limited to statutes that threaten First Amendment interests.").

"A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  *Copeland v. Vance*, 893 F.3d 101, 114 (2d Cir. 2018) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)); *see also Farrell v. Burke*, 449 F.3d 470, 486 (2d Cir. 2006) (Sotomayor, J.) ("[A] court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it.") (internal quotation marks omitted)).

"Importantly, it is not only the language of a statute that can provide the requisite fair notice; judicial decisions interpreting that statute can do so as well."  *United States v. Smith*, 985 F. Supp. 2d 547, 588 (S.D.N.Y. 2014) (collecting cases).  Whether by statute or judicial gloss, "a law need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth."  *Dickerson*, 604 F.3d at 747 (internal quotation marks omitted).  "[T]he

unavoidable ambiguities of language do not transform every circumstance in which judicial construction is necessary into a violation of the fair notice requirement." *Smith*, 985 F. Supp. 2d at 587-88 (quoting *Ortiz v. N.Y.S. Parole in Bronx, N.Y.*, 586 F.3d 149, 159 (2d Cir. 2009)).

Furthermore, "[t]he degree of linguistic precision . . . varies with the nature—and in particular, with the consequences of enforcement." *General Media Comms. v. Cohen*, 131 F.3d 273, 286 (2d Cir. 1997). Laws implicating First Amendment and other constitutionally protected rights receive "more stringent" analysis. *Id.* By contrast, as the Supreme Court has explained:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982) (internal citations omitted); *see also General Media*, 131 F.3d at 286 (noting lower "standards of certainty" for statutes "depending primarily upon civil sanction for enforcement").

### B. The Second Circuit and Other Federal Courts Have Uniformly Rejected Vagueness Challenges to the Statutory Term "Investment Contract."

No federal court has ever accepted Telegram's argument that the term "investment contract" as used in the Securities Act, 15 U.S.C. § 77b(a)(1), or as construed by the Supreme Court in *Howey*, is unconstitutionally vague in any context. The Second Circuit has twice rejected vagueness challenges to the statute. In *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973), the Court found "untenable" any claim that the term "investment contract" was void for vagueness "in light of the many Supreme Court decisions defining and applying the term." The Court reached that conclusion despite the defendant's claims that it was merely selling interests in a usable physical commodity (whisky caskets) and that the SEC had

9

issued conflicting guidance as to the applicability of the securities laws to such instruments. *Id.* at 1052 n.3. The Second Circuit reiterated that conclusion in *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1029, 1033-35 (2d Cir. 1974), affirming a preliminary injunction enjoining the sale of certain contractual instruments that the defendants contended were not investment contracts on the ground that they were contracts for the future delivery of a product.

The Ninth Circuit has reached the same conclusion in a criminal proceeding. Relying on *Brigadoon Scotch*, in *United States v. Farris*, 614 F.2d 634, 642 (9th Cir. 1979), it rejected the vagueness challenge and explained that "[t]here are numerous authorities on the definition of a 'security', enough to give [the defendant] 'a reasonable opportunity to know' the bounds of the federal offense," and that it was "too late in the day more than 32 years after the Supreme Court's decision in [*Howey*] to say that the term 'security' is impermissibly vague." *Id.*

More recently, two district courts also rejected similar challenges, including one in the Second Circuit in a case involving digital assets. In *United States v. Zaslavskiy*, the court, relying partly on *Brigadoon Scotch*, rejected the argument that "the United States securities laws are unconstitutionally vague ('void for vagueness') as applied to cryptocurrencies." No. 17 Cr. 647, 2018 WL 4346339, at *8 (E.D.N.Y. Sept. 11, 2018). The court explained: "[T]he abundance of caselaw interpreting and applying *Howey* at all levels of the judiciary, as well as related guidance issued by the SEC as to the scope of its regulatory authority and enforcement power, provide all the notice that is constitutionally required." *Id.* at *9. The court in *United States v. Bowdoin* reached a similar conclusion, even though the defendant's failure to abide by the law allegedly "'resulted from a bona fide mistake as to the law.'" 770 F. Supp. 2d 142, 147-48 (D.D.C. 2011). The *Bowdoin* court rejected the argument that it was "far from clear how to uniformly apply the *Howey* test to novel fact patterns." *Id.* (citing *Howey*, 328 U.S. at 300).

### C. The Term "Investment Contract" and *Howey* Standard Provide Sufficient Notice to People of Ordinary Intelligence, and Telegram Had Actual Notice that Grams Could Be Treated as Securities.

The decades of precedent described demonstrates the legal insufficiency of Telegram's vagueness defense. Yet even if the Court were to set aside these cases and write on a clean slate, as a legal matter *Howey* and decisions applying it provide sufficient notice as to the scope of the term "investment contract." *Copeland*, 893 F.3d at 114. And, Telegram *in fact had* fair notice that it could be offering and selling investment contracts: before the Offering, it expressed concern that, at the very least, the federal securities laws could potentially apply.

*Howey* and its progeny provide clear, explicit standards that courts have applied for decades. *See Brigadoon Scotch*, 480 F.2d at 1052 n.6; *see also Zaslavskiy*, 2018 WL 4346339, at *4 ("Though 'investment contract' has not been defined by Congress, the test for whether a 'given financial instrument or transaction constitutes an 'investment contract' under the federal securities laws,' has long been settled.") (citing *United States v. Leonard*, 529 F.3d 83, 85 (2d Cir. 2008); *Howey*, 328 U.S. at 293). Thus, courts have had no difficulty applying the standard to new and even unconventional investment instruments. *See, e.g.*, *SEC v. Feng*, 935 F.3d 721, 730-31 (9th Cir. 2019) (investment packages to secure EB-5 visas); *SEC v. Scoville*, 913 F.3d 1204, 1219-22 (10th Cir. 2019) (online ad services); *SEC v. SG Ltd.*, 265 F.3d 42, 46-47, 51 (1st Cir. 2001) (electronic tokens to use with online games); *Continental Mktg. Corp. v. SEC*, 387 F.2d 466 (10th Cir. 1967) (program for purchase and future delivery of beavers); *see generally Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 287 (2d Cir. 1997) (rejecting vagueness challenge in part because "[m]any of the terms employed in the [challenged statute], read in light of the explanatory directive implementing it, have been found by the courts to be sufficiently clear for constitutional purposes"). Thus, a "person of ordinary intelligence would have sufficient notice that the charged conduct was proscribed." *Zaslavskiy*, 2018 WL 4346339, at *8.

In fact, Telegram itself was on notice that the Grams could be "investment contracts" and therefore securities. The SEC guidance in the DAO Report added an unusual level of transparency and notice to issuers of digital assets. DAO Report, 2017 WL 7184670, at *9. Indeed, Telegram's CEO admits he knew of the DAO Report before the Offering. *See supra* at 4. Moreover, the SEC contacted Telegram at the initial stages of the Offering. Having had fair notice, Telegram cannot now complain that this enforcement action was surprising or arbitrary. *See Advance Pharm., Inc. v. United States*, 391 F.3d 377, 397 (2d Cir. 2004) ("[B]usinesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.") (quoting *Village of Hoffman Estates*, 455 U.S. at 498-99); *see also Zaslavskiy*, 2018 WL 4346339, at *9 (finding that the DAO Report was relevant regulatory guidance).

If there were any doubt that Telegram had constitutionally sufficient notice that it might be offering and selling investment contracts, Telegram's own acts—actively planning for the potential application of *Howey* to the Offering—eviscerate this doubt. Telegram's CEO was warned to be "mindful" of securities regulators, Ex. A at 5, and so, in the following months, Telegram considered these risks and decided to restructure the Offering for that very reason (in a manner that nevertheless failed to satisfy the requirements of Securities Act Section 5). *E.g.*, Ex. B at 3-4, L, M, N at 2 (Chat of Jan. 16, 2018). Although Telegram clearly had "the ability to clarify the meaning of the regulation by its own inquiry" with the SEC, *Village of Hoffman Estates*, 455 U.S. at 498-99, it deliberately and knowingly chose not to do so.

### D. The Securities Act Does Not Invite Arbitrary Enforcement.

Telegram's vagueness defense fares no better under the second prong of the constitutional analysis: whether statutory language "authorizes or even encourages arbitrary and

discriminatory enforcement." *Copeland*, 893 F.3d at 114. A vagueness challenge can fail this second prong for either of two reasons. First, a statute "will not be deemed unconstitutionally vague if, as a general matter, it provides sufficiently clear standards to eliminate such a risk" of arbitrary enforcement. *United States v. Farhane*, 634 F.3d 127, 139 (2d Cir. 2011) (internal quotation marks omitted). Second, "even in the absence of such standards, a statute will survive an as-applied vagueness challenge if the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *Id.* at 139-40 (internal quotation marks omitted).

Telegram's vagueness defense need fail only one of these two tests to be stricken as legally insufficient, but it fails both. First, as the *Zaslavskiy* court found, "*Howey* and its progeny set forth the standards needed to cabin [Section 5's] enforcement relative to investment contracts." 2018 WL 4346339, at *9 (quoting *Farrell*, 449 F.3d at 492-95). The term "investment contracts" is therefore sufficiently clear to eliminate the risk of arbitrary enforcement. Second, Telegram's admitted conduct plainly "falls within the core of the statute's prohibition," *Copeland*, 893 F.3d at 119 (quoting *Farrell*, 449 F.3d at 494), as the core purpose of the Securities Act is to ensure "full and fair disclosure" to investors through registration. Short on cash, Telegram raised money from investors without disclosing information about its financial conditions. Telegram received $1.7 billion from investors by entering into Purchase Agreements, which it characterizes as giving a conditional right to receive Grams in the future, and admits that the Purchase Agreements are a "security." *See, e.g.*, Ex. E, F. Although the SEC contends that Telegram's Offering (including the "rights" to receive Grams) were part of one Offering of Grams, the Court need not resolve the parties' conflicting views on these issues for

13

purposes of this motion; the relevant, undisputed fact here is that Telegram's use of the Purchase Agreements demonstrated its awareness of the potential applicability of the Securities Act and the term "investment contract."  It is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *United States v. Kay*, 513 F.3d 432, 442 (5th Cir. 2007) (citing *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952)).  "Stripped of the 21st-century jargon," Telegram engaged in a straightforward fund raise "replete with the common characteristics" of other such endeavors. *Zaslavskiy*, 2018 WL 4346339, at *3; *see also Reves v. Ernst & Young*, 494 U.S. 56, 60-61 (1990) (Congress crafted "a definition of 'security' sufficiently broad to encompass virtually any instrument that might be sold as an investment").

Telegram's Answer also seems to contend that the Act permits arbitrary enforcement by attempting to compare Grams to Bitcoin and Ether and complaining that the SEC has not brought enforcement actions with respect to those assets.  But, as the *Zaslavskiy* court explained, "[w]hether a transaction or instrument qualifies as an investment contract is a highly fact-specific inquiry."  2018 WL 4346339, at *4 (citing *Howey*, 328 U.S. at 293).  "This is especially true in the context of 'relatively new, hybrid vehicle[s],' which require 'case-by-case analysis into the economic realities of the underlying transaction[s]."  *Id.* (quoting *Leonard*, 529 F.3d at 88-89). Simply incanting "Bitcoin" and "Ether" does not answer the ultimate question of whether *Grams* are investment contracts.  Regardless, such comparison does not show arbitrary enforcement because discretion to enforce a business regulation is not the same as inviting arbitrary enforcement.  *See Village of Hoffman Estates*, 455 U.S. at 503; *Farrell*, 449 F.3d at 493-94.  As the Second Circuit explained in *Copeland* rejecting a claim of unconstitutional vagueness, even a "pattern of discriminatory enforcement, without more, would not show that the statute is

unconstitutionally vague.  What [is needed] is that the statute, as drafted by the legislature and interpreted by the courts, *invites* arbitrary enforcement . . . by turn[ing] on the law enforcement officer's unguided and subjective judgment."  893 F.3d at 120 (emphasis added); *see also Kay*, 513 F.3d at 442 (rejecting vagueness claim based on alleged similar misconduct by competitor companies noting that "multiple violations of a law do not . . . create vagueness in the law").

## II.    Telegram's Contention that the SEC Must Issue Further Guidance Before Bringing Enforcement Actions Involving Digital Assets Is Meritless.

Telegram also contends that the SEC must issue "formal rulemaking or at the very least an interpretation or policy statement," *id.* at 27 (¶ 32), before enforcing the securities laws as to digital assets.  There is no such requirement, which would be contrary to the Supreme Court's relevant jurisprudence and incompatible with the text and structure of the federal securities laws.

*First*, Telegram ignores *Howey*'s flexible approach, "capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."  328 U.S. at 299.  By emphasizing elasticity in the regulation of securities, Congress and the Supreme Court predicted that issuers would devise new investment vehicles to raise funds from the public.  The Due Process Clause in no way limits this elasticity; in fact, the Supreme Court's vagueness jurisprudence has long been marked by "flexibility and reasonable breadth" over "meticulous specificity."  *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972); *accord Dickerson*, 604 F.3d at 747.  Telegram's invented requirement that the SEC make a global determination of whether cryptocurrencies are securities focuses improperly on their label and not their individual substance.  *See, e.g.*, *United Hous. Found. Inc. v. Forman*, 421 U.S. 837, 849 (1975) ("Congress intended the application of these statutes to turn on the economic realities underlying a transaction, and not on the name appended thereto.").  *Howey* and the Securities Act eschew a broad pronouncement that all digital assets are securities, or that they are not.

*Second*, Telegram's contention is contrary to a statute wherein Congress has granted the SEC broad discretion to undertake investigations, 15 U.S.C. § 78u(a)(1), bring enforcement actions, *id.* §§ 77t(b), 78u(d)(1), and make regulations. *Id.* at § 77s(a). There is nothing that remotely suggests that the SEC must issue regulations as a prerequisite to an enforcement action.

*Third*, Telegram's cherry-picked quotes from cases applying Due Process vagueness jurisprudence to an agency's interpretation of its own regulations, *see* Ans. 16-17, 32-33 (¶¶ 2-5, 44-49), do not support imposing a "regulation before enforcement" requirement. Several cases stand only for the unremarkable proposition that the Due Process Clause may be implicated if an agency issues a rule and guidance with respect to its applicability, and later changes that guidance to apply retrospectively. *E.g.*, *FCC v. Fox Television Studios, Inc.*, 567 U.S. 239, 254 (2012) (noting "abrupt" change between regulations "in force when [the conduct] occurred" and a "changed course" "issued after" the conduct); *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1332 (D.C. Cir. 1995) (noting that the agency's "position regarding the basis for . . . liability had subtly shifted"). Other cases deal with inapposite administrative law issues of deference to an agency's interpretation of its regulations, *e.g.*, *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 158 (1991); *Fabi Constr. Co. v. Sec'y of Labor*, 508 F.3d 1077, 1088 (D.C. Cir. 2007), or with an agency request for deference for its litigation position. *E.g.*, *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 830-31 (9th Cir. 2012). Neither situation is present here.[2]

---

[2]      Telegram's complaint that the SEC should have told Telegram it was violating the law before bringing this action is also meritless. "No action or failure to act by the [SEC] . . . shall be construed to mean that the [SEC] has in any way passed upon the merits of, or given approval to, any security or transaction." 15 U.S.C. § 78z. Thus, "the SEC's failure to prosecute at an earlier stage does not estop the agency from proceeding once it finally accumulated sufficient evidence to do so." *Graham v. SEC*, 222 F.3d 994, 1007–08 (D.C. Cir. 2000).

## CONCLUSION

For the foregoing reasons, the Court should strike Defendants' first affirmative defense.

Dated: New York, New York
       January 13, 2020

Jorge G. Tenreiro
Kevin McGrath
Ladan F. Stewart

Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-9145 (Tenreiro)
TenreiroJ@sec.gov