# Exhibit J

### Skadden, Arps, Slate, Meagher & Flom LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111
———
TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

DIRECT DIAL
(202) 371-7900
EMAIL ADDRESS
Colleen.Mahoney@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

October 11, 2019

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**VIA FEDERAL EXPRESS AND E-MAIL**

Daphna A. Waxman, Esq.
Morgan Ward Doran, Esq.
c/o ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

      RE:   Telegram Group Inc. (MNY-9820)

Dear Ms. Waxman and Mr. Doran:

      On behalf of Telegram,[1] we write in response to your letter dated October 9, 2019 ("Letter"), which states that you "disagree with many of the assertions" in Telegram's October 8, 2019 letter, and requests that Telegram respond to ten additional questions. Telegram responds to the questions as follows, without conceding the relevance of any question to the analysis of whether Grams should be considered securities:

1. **What is the exact date that Telegram will launch the TON Blockchain and deliver Grams to investors?**

   - As addressed in detail in Telegram's last letter, the exact date of the launch is not yet known and depends on a number of variables, including, among other things, completion of all testing and verification processes. The launch is most likely to occur on October 30 based on the current status of these efforts. Telegram will keep the Staff apprised on the precise timing of the launch date once it is known.

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meanings ascribed in Telegram's previous submissions in this matter. The statements contained herein are based on information provided by Telegram and which, to the best of our knowledge, are accurate as of the date of this letter.

Daphna A. Waxman, Esq.
Morgan Ward Doran, Esq.
October 11, 2019
Page 2

2.  **If the exact date of the launch is still not known, when does Telegram expect to have that information?**

    - Please refer to Response 1 above and Telegram's October 8, 2019 letter.

3.  **If the exact date of the launch is still not known, what is the earliest likely date?**

    - Please refer to Response 1 above and Telegram's October 8, 2019 letter.

4.  **Does Telegram have a process in place to ensure that the Grams it delivers will be sent solely to the original investors in the offering?**

    - TON Issuer has prepared a verification process by which it will confirm the identity of the Private Placement purchasers prior to the delivery of Grams.

5.  **How will Telegram ensure that initial investors' interests in Grams have not, before the delivery, been sold, transferred, or assigned to a third party?**

    - As the Staff is aware, all Private Placement purchasers are prevented by the terms of their purchase agreements from assigning their interests in Grams prior to the launch of the TON Blockchain.  Each purchaser must sign a certificate prior to deliver of any Grams in which they are required to bring down the representations made in the purchase agreement and specifically acknowledge that they have not transferred any entitlements to Grams in violation of the transfer provisions contained in the purchase agreements.  To the extent Telegram learns of any purported assignment, TON Issuer can refuse delivery of the Grams to the assignee.  Other than certain prior instances, which were rectified and previously disclosed to the Staff, Telegram is currently unaware of any assignments or the need to refuse delivery of Grams.

6.  **Has Telegram established the TON Foundation and, if so, when was it established and in what jurisdiction?**

    - Local counsel is still in the process of establishing the TON Foundation. On October 1, Telegram voluntarily produced to the Staff draft versions of the TON Foundation Memorandum of Association and Articles of Association. (Ltr. from A. Drylewski to D. Waxman dated 10/1/2019;

Daphna A. Waxman, Esq.
Morgan Ward Doran, Esq.
October 11, 2019
Page 3

> *see also* Ltr. from C. Mahoney to D. Waxman dated 10/8/2019 at 2.) As previously disclosed and as reflected in those documents, the TON Foundation will be governed by Cayman law. (*See* email from A. Drylewski to D. Waxman dated 9/9/2019.)

7. **What is the basis for Telegram's claims that it sold securities to foreign purchasers pursuant to Regulation S?**

    - As disclosed in our prior correspondence with the Staff, the purchase agreements were entered into with a limited number of highly sophisticated, high net worth investors, with all offers and sales made pursuant to Rule 506(c) of Regulation D and/or Regulation S under the Securities Act. For purposes of Regulation S, we note that each of Telegram and TON Issuer Inc is a "foreign issuer" as defined in Rule 902 of Regulation S. Further, no directed selling efforts were made in the United States in connection with the Private Placement and no substantial U.S. market interest in any securities of Telegram Group Inc. or TON Issuer Inc existed at the commencement of the applicable tranche of the private placement. Therefore, the entry into purchase agreements in connection with the Private Placement where the offer was not made to persons in the United States and where Telegram and TON Issuer Inc reasonably believed that such persons were outside the United States at the time the buy order was originated were made in compliance with Rule 903 of Regulation S.[2]

8. **Is there any relationship between Telegram, including its principals and employees, and the following entities and individuals: Gram Vault; Blackmoon Crypto; Blackmoon Financial Group; TON Board; Sergey Vasin; Oleg Seydak; Alexander Filatov; or Ilya Perekopsky?**

    - Ilya Perekopsky has been a document custodian in this matter and Telegram voluntarily produced communications from his accounts over a year ago. (*See* Telegram Ltr. and Production dated 10/3/2019.) For the avoidance of doubt, Mr. Perekopsky is an employee of Telegram.

    - We understand that Blackmoon Financial Group is a company in which Mr. Perekopsky is currently a shareholder but does not have any active role. Blackmoon Crypto is a company which Mr. Perekopsky has advised in the past but he has never been a shareholder and does not

---

[2] Certain terms used in this response are defined in Rule 902 of Regulation S.

Daphna A. Waxman, Esq.
Morgan Ward Doran, Esq.
October 11, 2019
Page 4

- currently have any active role.  We understand that Oleg Seydak is the CEO of both companies and Sergey Vasin is his deputy.

- Neither Gram Vault, Alexander Filatov nor the TON Board are affiliated with Telegram or its employees.  We understand that certain purchasers may look to use Gram Vault as a means to store their Grams following launch.  We also understand that Mr. Filatov may be affiliated with TON Labs, about which Telegram has previously answered the Staff's questions.  (*See* email from A. Drylewski to D. Waxman dated 9/27/2019.)

9. **Which investors, both foreign and domestic, have submitted a deposit address to Telegram for delivery of Grams?**

   - Telegram is continuing to consider this request in light of data privacy and other concerns.

10. **What is Telegram's current business address?**

    - Craigmuir Chambers, Road Town
      Tortola, Virgin Islands, VG1110

\* \* \*

Finally, regarding the Staff's statement that it disagrees with many of Telegram's assertions in its last letter, unfortunately, Telegram has little ability to meaningfully respond without further details.  Telegram would appreciate any information from the Staff regarding what its disagreements are so that Telegram can attempt to engage and resolve any issues.

Very truly yours,

/s/ Colleen P. Mahoney

cc: Valerie A. Szczepanik;
Alexander C. Drylewski