UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
:
                            Plaintiff,  :    19 Civ. 09439 (PKC)
:
                - against -  :    ECF Case
:
TELEGRAM GROUP INC. and TON ISSUER INC.  :
:
                        Defendants.  :
:
------------------------------------------------------------------ x

**NON-PARTY ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEAL**
**ITS CONFIDENTIAL DOCUMENT**

Non-Party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (identified herein as "Investor F")[1] respectfully moves for an Order maintaining under seal a certain document the Securities and Exchange Commission ("SEC") lodged with the Court by as Exhibit PX31 to the Declaration of Ladan F. Stewart (ECF No. 81) ("Stewart Decl.") in support of the SEC's Motion for Summary Judgement (ECF No. 79) ("Motion"). PX31 is Investor F's highly confidential and proprietary investment memorandum for the Telegram deal, which Investor F produced to the SEC pursuant to the protective order entered in this action (ECF No. 36) ("Protective Order") in response to a request for documents. Investor F requests that the Exhibit PX31 be maintained under seal in its entirety, which is the only way to preserve Investor F's confidential, proprietary, and trade secret information and thus protect Investor F from competitive harm.

---

[1] The SEC previously filed a motion requesting an Order to file under seal and in redacted form on ECF materials reflecting investor names. (ECF No. 28.) This document continues to redact this information, and related identifying information. We respectfully submit that these redactions should be maintained for the reasons stated in the SEC's prior motion. Moreover, we were subsequently identified with the pseudonym "Investor F" in the Declaration of Ladan F. Stewart (ECF No. 81) ("Stewart Decl."). This memorandum continues to use that pseudonym for the Court's convenience and to avoid confusion.

1

I. **FACTUAL BACKGROUND**

Investor F is a venture fund and its business is substantially predicated on its ability to evaluate opportunities and make corresponding investment decisions. (Declaration of ▓▓▓▓ ("Investor F Decl.") at 2.) Venture funds like Investor F operate in a highly competitive market and their processes for evaluating opportunities and making final investment decisions are critical differentiators that separate them from the competition. (*Id*.)

Investor F's internal process for evaluating opportunities and making final investment decisions has been carefully honed over two decades based on its experience and expertise and at considerable expense to Investor F. (*Id*. ¶ 3.) Investor F has implemented that internal process in part through its internal investment memorandum template, which is designed to allow a tightly controlled subset of its principals and employees to evaluate opportunities and make decisions based on various key factors and considerations. (*Id*.) Investor F derives a distinct competitive advantage from that internal process and the structure of its internal investment memorandum template, and Investor F attributes its success in part to having this process in place. (*Id*. ¶ 4.) Moreover, Investor F has not shared its process or investment memorandum template with other investors or the public at large, and both the internal process and internal investment memorandum template remain confidential business secrets. (*Id*.) If Investor F's internal process or internal investment memorandum template were to be publicly disclosed, then Investor F would lose a competitive advantage in the market. (*Id*. ¶ 5.)

In response to the SEC's request for documents in October 2019, Investor F produced a confidential copy of its internal investment memorandum for the Telegram deal ("Investment Memo") to the SEC pursuant to the Protective Order. (*Id*. ¶ 6.) The Investment Memo was produced to the SEC with stamps that read "CONFIDENTIAL – SUBJECT TO PROTECTIVE

ORDER" and "FOIA CONFIDENTIAL TREATMENT REQUEST." (*Id*.) The Investment Memo is based on the template described above and reflects Investor F's proprietary analysis of the Telegram deal and the cryptocurrency space more generally. (*Id*.) Disclosure of the Investment Memo would allow other venture funds to emulate Investor F's approach to the cryptocurrency space, and for the same reasons outlined above Investor F has taken steps to ensure the Investment Memo remains confidential. (*Id*. ¶¶ 7, 9.) Indeed, Investor F has diligently and consistently communicated to SEC through counsel that the Investment Memo is highly confidential and proprietary, and it should be treated as such pursuant to the Protective Order. (*Id*. ¶ 6.)

On January 15, 2020, the SEC lodged a copy of the Investment Memo with the Court as Exhibit PX31 to the Stewart Declaration. (ECF No. 81.) Consistent with the Protective Order, the SEC did not file any portion of the Investment Memo on the public docket.

## II. ARGUMENT

### A. It is Appropriate to Seal Confidential and Proprietary Information Where Disclosure Would Cause a Party or Non-Party Competitive Harm

Courts are empowered to seal judicial documents where the sealing is "narrowly tailored" to the interests in question and "essential to preserve higher values." *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 82 n. 1 (S.D.N.Y. 2017); *see also* Fed. R. Civ. P. 26(c) (upon a showing of "good cause," courts may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Although there is a general presumption of public access to judicial documents, sealing is appropriate where there are "countervailing factors" which may include "the privacy interests of those resisting disclosure, such as trade secrets and sources of business information that might harm a litigant's competitive standing." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154

3

(S.D.N.Y. 2015) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)); *see also Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018) (granting request to seal private financial materials that would harm the business interests of non-parties).

Importantly, the Investment Memo does not need to qualify as a trade secret in order to warrant sealing protection. Courts have repeatedly granted confidential treatment to sensitive business information where disclosure would cause the producing party competitive harm. *See, e.g., In re Digital Music Antitrust Litig.*, 321 F.R.D. at 82 n. 1 (sealing confidential information relating to "competitive pricing" and "strategy"); *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2017 WL 1331288, at *11 (S.D.N.Y. Apr. 4, 2017) (granting request to seal information including "the terms of private securities transactions involving non-parties"). That said, "trade secret law is instructive in gauging whether information constitutes sensitive business information." *Id.* Accordingly, courts frequently consider the following trade secret factors when considering whether information should be filed under seal:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.*

Each of these trade secret factors weigh in favor of sealing the Investment Memo as both a trade secret and sensitive business information. First, the Investment Memo is confidential and is not known or shared outside of Investor F's business. (Investor F Decl. ¶¶ 4, 9.) Second, the

4

Investment Memo and the template on which it is based are only made available to those employees of Investor F who play a role in evaluating opportunities and/or making investment decisions. (*Id.* ¶ 9.) Third, Investor F has taken precautions to guard the secrecy of the Investment Memo and the underlying template, including requiring its employees to sign non-disclosure agreements and tightly controlling who has access to these materials. (*Id.*) Fourth, the information contained in Investment Memo is highly valuable. The underlying template contains the factors that Investor F considers in evaluating an investment opportunity, as well as how those factors are structured within Investor F's overall analysis. (*Id.* ¶ 4.) This goes to the heart of Investor F's business as a venture fund. Moreover, the Investment Memo contains specific information about Investor F's views of Telegram, the cryptocurrency space, and related investment opportunities. (*Id.* ¶ 7.) Therefore, disclosure of the Investment Memo would allow Investor F's competitors to both emulate its overall investment framework and its implementation of that framework in the cryptocurrency space. (*Id.* ¶ 8.) That would make it easier for competitors to attract capital away from Investor F and/or make investments that Investor F would have otherwise made. (*Id.* ¶ 5.) Disclosure would also give competitors fodder to disparage Investor F as it competes for future deals. (*Id.*) Fifth, Investor F has spent considerable resources over two decades to develop its investment process, in addition to resources spent developing the Investment Memo and Investor F's particular views regarding Telegram and the cryptocurrency space. (*Id.* ¶¶ 3, 7.) Sixth, and finally, it would be difficult for Investor F's competitors to duplicate Investor F's investment process, the template of the Investment Memo, and Investor F's specific analysis of Telegram and the cryptocurrency space, because each venture fund takes its own approach and there are innumerable methodologies that could be used to evaluate a potential venture investment. (*Id.* ¶ 8.)

Therefore, the Investment Memo qualifies as both trade secret and sensitive business information. In either case, it should be sealed in its entirety to protect Investor F from harm to its "competitive standing" and from "annoyance, embarrassment, oppression, or undue burden or expense." *Digital Music*, 321 F.R.D. at n. 1; Fed. R. Civ. P. 26(c).

### III. ALTERNATIVELY, THE COURT SHOULD ALLOW THE SEC TO SUBMIT A REDACTED VERSION OF THE INVESTMENT MEMO

Sealing the entire Investment Memo is necessary to protect Investor F from harm because even the template of the document is confidential, proprietary, and a trade secret—including the factors to be considered and how those factors are structured within Investor F's overall investment analysis. Therefore, this is not a case where redaction can be used to adequately protect the producing party, and sealing the entire document is the "narrowly tailored" approach. *Digital Music*, 321 F.R.D. at n. 1.

However, if the Court is inclined to deny this motion to seal, then Investor F respectfully requests that the SEC (working in conjunction with Investor F) be allowed to redact any identifying information from the Investment Memo, including Investor F's name, the names of its employees, and other references throughout the document that would enable Investor F's competition to discern its true identity.

### IV. CONCLUSION

For the foregoing reasons, Investor F respectfully requests that the Court enter the attached, proposed Sealing Order for good cause shown.

Dated: New York, New York
January 22, 2020

Respectfully submitted,

*/s/ Philip M. Bowman*

Philip M. Bowman
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

*Attorneys for Non-Party Investor F*