UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,         :
                                            :
                            Plaintiff,   :   19 Civ. 9439 (PKC)
                                            :
        - against -                        :   ECF Case
                                            :
TELEGRAM GROUP INC. and TON ISSUER INC.,    :
                                            :
                        Defendants.     :
                                            :
------------------------------------------------------------------ x


**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION
TO STRIKE TELEGRAM'S FIRST AFFIRMATIVE DEFENSE**

Jorge G. Tenreiro
Kevin P. McGrath
Ladan F. Stewart
Alison R. Levine

*Counsel for the Plaintiff*
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-9145 (Tenreiro)

January 27, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.   Telegram's Constitutional Vagueness Challenge Is Legally Insufficient, and Defendants Do Not Dispute That No Court Has Embraced Such a Challenge. ................ 2

        A.   Telegram Cannot Distinguish the Second Circuit Cases Rejecting "As-Applied" Vagueness Challenges to the Term "Investment Contract" ..................... 2

        B.   Telegram Cannot Distinguish the Recent District Court Case Rejecting a Vagueness Challenge "As Applied" to a So-Called Cryptocurrency ...................... 3

        C.   The Term "Investment Contract" Is Not Unconstitutionally Vague as Applied to Telegram's Offering. ............................................................................. 4

    II.  Telegram's Constitutional Vagueness Defense Is a Disguised Estoppel Defense. ........... 8

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arriaga v. Mukasey*, 521 F.3d 219 (2d Cir. 2008) ................................................................... 3

*Betancourt v. Bloomberg*, 448 F.3d 547 (2d Cir. 2006) ........................................................... 6

*Consol. Buchanan Mining Co. v. Sec'y of Labor*, 841 F.3d 642 (1st Cir. 2016) ...................... 6

*Copeland v. Vance*, 893 F.3d 101 (2d Cir. 2018) .................................................................... 5

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) ................................................... passim

*Exxon Mobil Corp. v. Mnuchin*, No. 17 Civ. 1930, 2019 WL 7370430
   (N.D. Tex. Dec. 31, 2019) ..................................................................................................... 6

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006) ..................................................................... 5, 8

*GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92 (2d Cir. 2019) ......................... 9

*Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027 (2d Cir. 1974) .................. 2, 3, 4

*Reves v. Ernst & Young*, 494 U.S. 56 (1990) ............................................................................ 7

*SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047 (2d Cir. 1973) .................................. 2, 3

*SEC v. Culpepper*, 270 F.2d 241 (2d Cir. 1959) ....................................................................... 9

*SEC v. Keating*, No. 91 Civ. 6785, 1992 WL 207918 (S.D.N.Y. July 23, 1992) ..................... 9

*SEC v. Kik Interactive*, No. 19 Civ. 5244 (AKH) (D.E. 36) (S.D.N.Y. Nov. 12, 2019) ....... 5, 9

*SEC v. Morgan, Lewis & Bockius*, 209 F.2d 44 (3d Cir. 1953) ................................................ 9

*SEC v. SG Ltd*, 265 F.3d 42 (1st Cir. 2001) .............................................................................. 4

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) ................................................................. passim

*Thibodeau v. Portuondo*, 486 F.3d 61 (2d Cir. 2007) .............................................................. 4

*United Housing Found. v. Forman*, 421 U.S. 837 (1975) ........................................................ 8

*United States v. Halloran,* 664 Fed. App'x 23 (2d Cir. 2016) .................................................. 8

*United States v. Zaslavskiy*, No. 17 CR. 647 (RJD), 2018 WL 4346339
   (E.D.N.Y. Sept. 11, 2018) ............................................................................................ 3, 4, 6, 7

Plaintiff SEC respectfully submits this memorandum of law in further support of its motion to strike Telegram's "void for vagueness" defense.  For the reasons set forth below and in the SEC's moving papers, the Court should grant the SEC's motion and strike the defense.[1]

## PRELIMINARY STATEMENT

Congress enacted the Securities Act in 1933 to adapt to "the limitless scope of human ingenuity" when it comes to raising capital for an enterprise.  Thirteen years later, the Supreme Court enumerated the shared characteristics of the term "investment contract" as used in the Securities Act, in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).  In the decades since, courts have applied the term to many different then-novel profit-sharing enterprises that shared these characteristics—regardless of what the promoters chose to call the interests they provided.  Companies offering digital assets are simply the latest in a long line of such enterprises.  Whether they offer an "investment contract" depends on whether the arrangements meet these characteristics based on the circumstances.

That digital assets are recent inventions does not therefore mean that the Securities Act is unconstitutionally vague as to whether sales of Grams (or any other particular digital assets) are sales of an "investment contract," as Defendants contend.  Indeed, Defendants do not deny that every court addressing the issue with respect to a then-novel profit-sharing arrangement has declined to find the term void for vagueness.  That the SEC did not specifically advise Telegram before filing this action that it was offering an "investment contract" (the type of fact-specific

---

[1] The same short forms used in the SEC's Memorandum of Law in Support of its Motion to Strike Defendants' First Affirmative Defense (D.E. 76) ("MTS Br.") are used here.  In addition, "MTS Def. Br." means Defendants' Memorandum of Law in Opposition to the SEC's Motion to Strike (D.E. 96).  Telegram's summary judgment briefs are referred to as "Def. Summ. J. Br." for its moving brief (D.E. 71), and "Def. Opp." for its brief opposing the SEC's motion (D.E. 93).  "SEC Opp." is the SEC's Brief in Opposition to Defendants' Motion for Summary Judgment (D.E. 98).

legal advice that enforcement agencies are not required to provide before filing an enforcement action) also does not render the term unconstitutionally vague. The Constitution does not require every possible defendant to receive specific notice that its conduct may be the subject of an enforcement action. Telegram's arguments to the contrary are an attempt to re-litigate the merits of its claims, not show that the term "investment contract" is unconstitutionally vague under applicable law. And, the same is true with respect to Telegram's claim that the SEC must issue specific regulations (with notice and comment) before it can seek to enforce the securities laws as to novel instruments—there simply is no such requirement in the Constitution or elsewhere.

*Howey*'s "investment contract" standard is not vague as applied to Grams, just as it is not vague as to any other then-novel profit-sharing arrangement courts have considered since *Howey* was decided. The Court should therefore strike Defendants' affirmative defense.

## ARGUMENT

**I.     Telegram's Constitutional Vagueness Challenge Is Legally Insufficient, and Defendants Do Not Dispute That No Court Has Embraced Such a Challenge.**

In its moving brief, the SEC cited several decisions, including two Second Circuit cases, rejecting void-for-vagueness challenges to the term "investment contract" and noted that it was aware of no case concluding that the term was unconstitutionally vague. MTS Br. at 9-10 (citing cases). Defendants have found no such case either. Instead, they try to distinguish the cases rejecting such challenges on grounds that fail to stand up to even cursory scrutiny.

**A.     Telegram Cannot Distinguish the Second Circuit Cases Rejecting "As-Applied" Vagueness Challenges to the Term "Investment Contract."**

In its moving brief, the SEC explained that the Second Circuit had twice rejected constitutional vagueness challenges to the term "investment contract." *Id.* (citing *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052 n.6 (2d Cir. 1973); *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1029, 1033-35 (2d Cir. 1974)). Defendants try

2

to distinguish these cases by arguing that they addressed facial challenges, not challenges "as applied" to the agreements at issue.  MTS Def. Br. at 16-17.  Defendants misread these cases.

Although the Second Circuit did not explicitly state whether it was addressing a facial or an "as applied" challenge in those cases, the decisions themselves make clear that each involved "as applied" challenges, not facial challenges, to then-novel arrangements.  In *Brigadoon Scotch*, the appellant argued that "the current definition of a security, which includes the term 'investment contract,' cannot possibly be construed to cover either negotiable warehouse receipts . . . or non-negotiable documents of title . . . ."  *Brigadoon Scotch*, 480 F.2d at 1052.  Similarly, in *Glen-Arden*, the appellants argued that "what they were selling were 'certificates of interest' in (tangible) property, and that neither expressly nor inferentially can the statute, as amended, include either negotiable warehouse receipts or non-negotiable documents of title . . . ."  *Glen-Arden*, 493 F.2d at 1033.  Thus, in both cases the appellants argued that the Securities Act, *as applied* to each of them, did not cover their conduct, not that the statute was on its face unconstitutional.  The Second Circuit therefore in fact rejected "as applied" challenges.[2]

### B. Telegram Cannot Distinguish the Recent District Court Case Rejecting a Vagueness Challenge "As Applied" to a So-Called Cryptocurrency.

In its moving brief, the SEC also cited *United States v. Zaslavskiy*, No. 17 CR. 647 (RJD), 2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018), which rejected a vagueness challenge to *Howey*'s application to a claimed cryptocurrency.  As the court noted:  "[T]he test expounded in *Howey* has – for over 70 years – provided clear guidance to courts and litigants as to the

---

[2] Moreover, as the SEC explained in its moving brief, because the Second Circuit has repeatedly held that facial challenges are disfavored unless First Amendment or fundamental rights are implicated—not so here—these cases are properly understood as as-applied challenges.  MTS Br. at 8 (citing *Dickerson v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010); *Arriaga v. Mukasey*, 521 F.3d 219, 223-24 (2d Cir. 2008) ("Claims of facial invalidity are generally limited to statutes that threaten First Amendment interests.")).

definition of 'investment contract' . . . ." *Id.* at *9 (citing *SEC v. SG Ltd*, 265 F.3d 42, 47 (1st Cir. 2001)). *Zaslavskiy* shows that Telegram's offering is no more immune from the application of *Howey* than the offerings of countless other defendants who have sold a novel "investment contract" to the public and failed to convince courts that the term is vague as applied to them.

Defendants nevertheless seek to distinguish the decision by arguing that it involved a "straight-forward application of *Howey*," that the case involved allegations of fraud, and that the court concluded that "[w]hether or not the investments . . . are cryptocurrencies is beside the point." MTS Def. Br. at 16-17 (quoting *Zaslavskiy*, 2018 WL 4346339, at *2). In fact, however, the *Zaslavskiy* decision engaged in an extensive, closely reasoned analysis of whether the term "investment contract" is unconstitutionally void for vagueness when applied to the defendant's conduct, which involved the fraudulent sale of supposed digital assets. In concluding that the term "investment contract" was not vague as applied to such conduct, the court referenced SEC guidance dealing with cryptocurrency and blockchain technology, as well as cases involving "a kaleidoscopic assortment of pecuniary arrangements that defy categorization in conventional financial terms." *Zaslavskiy*, 2018 WL 4346339, at *8-10. This extensive void-for-vagueness analysis would not have been necessary if the court were focused only on the fraud aspect of defendant's conduct and not on the fact that it also involved a purported cryptocurrency.

### C. The Term "Investment Contract" Is Not Unconstitutionally Vague as Applied to Telegram's Offering.

An "as applied" challenge to a statute is an objective inquiry. It turns on "'whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed,' not whether a particular plaintiff actually received a warning that alerted him to the danger of being held to account for the behavior in question." *Dickerson*, 604 F.3d at 745-46 (citing *Thibodeau v. Portuondo*, 486 F.3d 61, 67 (2d Cir. 2007)).

4

The courts conducting such inquiries in *Brigadoon Scotch*, *Glen-Arden*, and *Zaslavskiy* all necessarily concluded that "investment contract" provides sufficient notice, and also that the term passes the second test for vagueness—whether the law adequately cabins law enforcement discretion.  *See Copeland v. Vance*, 893 F.3d 101, 114 (2d Cir. 2018); MTS Br. at 8.  Because the same objective principles are applicable and controlling here, these cases show that "investment contract" satisfies the Due Process Clause.  *See also* Order in *SEC v. Kik Interactive*, No. 19 Civ. 5244 (AKH) (D.E. 36) (S.D.N.Y. Nov. 12, 2019) (Ex. A hereto) ("*Kik* Order") (refusing defendant's request, when defendant had raised funds via agreements similar to the Purchase Agreements, to seek discovery from the SEC on defendant's vagueness challenge to the term "investment contract," because whether the law is vague "can be argued objectively").  For this reason, Telegram's "as applied" challenge fails as a matter of law.

But even if the court were to analyze anew the unconstitutional vagueness test "as applied" to Telegram's offering, Telegram's defense would fail.  As noted, the test asks whether the challenged law provides notice—standards to ascertain what is prohibited—and a meaningful limit on law enforcement discretion.  *See* MTS Br. at 8 (citing *Copeland*, 893 F.3d at 114; *Farrell v. Burke*, 449 F.3d 470, 486 (2d Cir. 2006)).  Telegram's opposition does not address these standards at all, or why the term "investment contract" does not comport with them.

Indeed, with respect to notice, Telegram plainly identifies the standards that govern its conduct:  it cites *Howey* over two dozen times in its brief seeking summary judgment, Director Hinman's "When *Howey* Met *Gary* (*Plastic*)" speech three times, and the staff's "Framework for 'Investment Contract' Analysis of Digital Assets" six times, all in *support* of its claims.  *See* Def. Summ. J. Br. at 7, 21, 24, 28, 40, 41; *see also* Def. Opp. at 4, 17 (Hinman speech).  Telegram even quotes from an SEC No Action Letter and Investor Bulletin purportedly in support of its

5

contention that it acted properly. *See* Def. Opp. at 14. Telegram's insistence that the SEC has "failed" to provide "meaningful guidance," MTS Def. Br. at 1-5, is at best hyperbole.

Nor does the Act fail to provide limits on law enforcement, as "meticulous specificity" at "the cost of 'flexibility and reasonable breadth'" is not required. *Dickerson*, 604 F.3d at 747 (quoting *Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006)). Indeed, a case Telegram repeatedly quotes, MTS Def. Br. at 16, 18-19, 24, recognizes that "a rule requiring explicit notice of any conceivable violation as a condition of imposing civil sanctions would leave open 'large loopholes allowing conduct which should be regulated to escape regulation.'" *Exxon Mobil Corp. v. Mnuchin*, No. 17 Civ. 1930, 2019 WL 7370430, at *5 (N.D. Tex. Dec. 31, 2019) (quoting *Consol. Buchanan Mining Co. v. Sec'y of Labor*, 841 F.3d 642, 649 (1st Cir. 2016)).[3]

Instead, Telegram's void-for-vagueness argument rests entirely on its contention that it did not have sufficient notice that *its* novel attempt to bypass a straightforward sale of digital tokens by offering Purchase Agreements for the sale of to-be-delivered Grams might run afoul of the securities laws. Telegram argues that, because the facts of its case are different than the facts of past digital asset cases the SEC has brought (in other enforcement actions) or commented on (in the DAO Report), the term must be unconstitutionally vague as applied to Telegram. For example, Telegram contends that other actions, such as *Zaslavskiy* and the DAO Report, are "wholly dissimilar" because they involved an "offer [of] digital assets to the public," but not a

---

[3] *Exxon* is otherwise not applicable here. Though Telegram quotes it at length, the case, like many Telegram cites in its Answer, involves the "fair notice" standard applicable to federal regulations, not a "void for vagueness" attack on a federal statute, a distinct inquiry, as the *Exxon* court explained. *Exxon*, 2019 WL 7370430, at *11; *see also* MTS Br. at 16. At issue in *Exxon* was a regulation that included the undefined term "service," for which the implementing agency did not provide any guidance until the conduct at issue took place. *Id.* at *7. Here, by contrast, the Supreme Court's *Howey* decision decades ago, not to mention the wealth of cases applying *Howey* to a wide range of potential investment contracts since then, provide all the interpretation required to understand the term "investment contract."

claimed exemption under Regulation D, MTS Def. Br. at 19-20; and that its "Public Notice" to investors of January 6, 2020, "fundamentally set this case apart from others." *Id.* at 21.

These arguments do not meaningfully address the cases rejecting vagueness challenges to "investment contract" or the standards for evaluating "as applied" challenges. Rather, Telegram confuses *the merits of its defense* with a claim that the term "investment contract" is *unconstitutionally vague* in this application—an argument that circumvents the Second Circuit's instruction that this vagueness inquiry must be objective. *E.g.*, *Dickerson*, 604 F.3d at 745-46.

Telegram's argument that the term "investment contract" is unconstitutionally vague because *it* did not receive specific notice from the SEC that its conduct could be deemed illegal, *e.g.*, MTS Def. Br. at 19 (arguing that the Due Process Clause requires giving notice as to "what conduct *is* prohibited" (emphasis added)), is also problematic because a statute's constitutionality does not turn on whether a "particular [litigant] actually received a warning that alerted him or her to the danger of being held to account for the behavior" at issue—it turns on whether the term provides "objective" notice to a "reasonably intelligent person." *Dickerson*, 604 F.3d at 745-46. That is particularly true here, where *Howey* purposefully crafted a flexible approach, "capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." 328 U.S. at 299; *see also Reves v. Ernst & Young*, 494 U.S. 56, 60-61 (1990) (the Securities Act is capable of adapting to "the limitless scope of human ingenuity, especially in the creation of 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits'") (citing *Howey*, 328 U.S. at 299). As the court in *Zaslavskiy* noted, it is irrelevant that "'the facts at issue in [p]rior decisions [are] not 'fundamentally similar' or 'materially similar' to the facts of the defendant's case . . . so long as the prior decisions gave reasonable warning.'" *Zaslavskiy*, 2018 WL

7

4346339, at *8 (quoting *United States v. Halloran,* 664 Fed. App'x 23 (2d Cir. 2016)). There is simply no requirement, in the Constitution or elsewhere, that every time a defendant devises a new way of violating the Act, the SEC must first issue regulations barring that conduct.

Telegram and the SEC may disagree as to whether the way Telegram conducted its fundraising met the strictures of the Securities Act. But this disagreement cannot change that Telegram—as its own actions, such as structuring the Offering and filing Forms D with the SEC, reflect—knew it was engaged in conduct at the very core of what the Act regulates. In addressing these challenges, courts may "look to see 'if the statute's meaning has a clear core,'" such that if the "particular enforcement at issue [is] consistent with the 'core concerns' underlying the statue," there is no constitutional problem. *Dickerson*, 604 F.3d at 748 (citing *Farrell*, 449 F.3d at 493). Here, there is no dispute that "[t]he primary purpose of the Acts of 1933 and 1934 was to eliminate serious abuses in a largely unregulated securities market. The focus of the Acts is on the capital market of the enterprise system[]." *United Housing Found. v. Forman*, 421 U.S. 837, 849 (1975). Telegram does not dispute that it raised funds from investors to capitalize its business ventures—the core type of activity that is the subject and concern of the Act. That suffices to constitutionally apply "investment contract" to Telegram.

## II.     Telegram's Constitutional Vagueness Defense Is a Disguised Estoppel Defense.

Telegram's purported constitutional defense is really an equitable estoppel defense in disguise: Telegram's brief opposing this motion reads less like a legal argument and more like a list of grievances with the SEC. Telegram describes the extensive SEC guidance in the digital asset space as insufficient (though it also complains at times that the SEC gave too many factors in its guidance, MTS Def. Br. at 21), and complains about the perceived unfairness of the SEC's investigation leading to this action. *E.g.*, *id.* at 4; *see also id.* at 22 (stating that the SEC has not brought actions against Bitcoin and Ether "despite the undeniably strong parallels").

8

Yet vagueness claims have nothing to do with how an agency conducts a pre-enforcement action investigation. Any claim that the SEC has acted improperly in investigating Telegram—wholly misplaced here—cannot render a statute unconstitutional. Decades ago, the Second Circuit was confronted with the argument that a defendant's interaction with the SEC staff before the SEC filed suit left the defendant unable to understand whether the SEC viewed its conduct as legal or not. In rejecting the argument, the Second Circuit explained that "'the Commission may not waive the requirements of an act of Congress nor may the doctrine of estoppel be invoked against the Commission.'" *SEC v. Culpepper*, 270 F.2d 241, 248 (2d Cir. 1959) (quoting *SEC v. Morgan, Lewis & Bockius*, 209 F.2d 44, 49 (3d Cir. 1953)). Thus, "in the context of a civil enforcement action by the SEC, courts have flatly rejected the estoppel defense." *SEC v. Keating*, No. 91 Civ. 6785, 1992 WL 207918, at *3 (S.D.N.Y. July 23, 1992). Nor has Telegram established any factual basis for its claim that Grams are like Bitcoin or Ether.

Moreover, in the context of deciding whether to grant a motion to strike an affirmative defense, "prejudice may be considered and, in some cases, be determinative." *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019); *see also* MTS Br. at 7. Here, Telegram's improper defense, under the guise of a vagueness challenge, has necessitated the filing of dozens of pages of briefing by the parties in the midst of a breakneck litigation schedule. *See also* SEC Opp. at 34-35. The Court should put an end to Telegram's "wasteful forays" (*Kik* Order at 1) into improper and insufficient arguments by striking its first affirmative defense.[4]

---

[4] Telegram's insistence, as part of its "vagueness" defense, that the SEC's actions with respect to other digital assets are relevant, *e.g.*, MTS Def. Br. at 22-23, has served as the basis for it to seek plainly irrelevant and burdensome discovery about the SEC's views as to all sorts of other digital assets. *E.g.*, Ex. B (Requests Nos. 2, 3, 4; 10, 11); Ex. C (Interrogatory No. 4). This has resulted in countless hours wasted on discovery on these subjects, including various meet-and-confer sessions and lengthy letters.

## CONCLUSION

For the foregoing reasons, the Court should strike Defendants' first affirmative defense.

Dated: New York, New York
January 27, 2020

/s/ Jorge G. Tenreiro

Jorge G. Tenreiro
Kevin McGrath
Ladan F. Stewart
Alison R. Levine
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-9145 (Tenreiro)
TenreiroJ@sec.gov