# Exhibit 1

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

```
1                UNITED STATES DISTRICT COURT
2                SOUTHERN DISTRICT OF NEW YORK
3
4   SECURITIES AND EXCHANGE          )
    COMMISSION,                      )
5                                    )
                     Plaintiff,      )
6                                    ) 19 Civ. 9439 (PKC)
           - against -               )
7                                    )
    TELEGRAM GROUP INC. and          )
8   TON ISSUER INC.,                 )
                                     )
9                    Defendants.     )
    _____)
10
11       **CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**
12
13           Videotaped deposition of PAVEL DUROV (as
14   30(b)(6) corporate representative of Defendants and
15   also in his personal capacity), Volume 1, taken on
16   behalf of Plaintiff at Hadef & Partners, LLC, Emaar
17   Square, Building 3, Level 5, Downtown Dubai, Dubai,
18   United Arab Emirates, beginning at 11:21 a.m. and
19   ending at 9:54 p.m., on Tuesday, January 7, 2020,
20   before LEAH WILLERSDORF, Member of the British
21   Institute of Verbatim Reporters, Accredited Verbatim
22   Reporter, Qualified Realtime Reporter - Level 2,
23   International Participating Member NCRA.
24
25   JOB No. 200107LWI
```

1

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

```
16:54:35   1              MR. TENREIRO:  I'll try to keep 15 minutes
16:54:36   2   in mind.
16:54:37   3              MR. DRYLEWSKI:  Thank you.
16:54:38   4              MR. TENREIRO:  Let's mark 46, please.
16:54:42   5              (Exhibit 46 marked for identification.)
16:54:45   6              MS. CHARMANI:  Jorge, could you tell me
16:54:47   7   the Bates number, please?
16:54:49   8              MR. TENREIRO:  Yeah, 15-17.  It's the
16:54:52   9   sales agent services agreement with Pacific Spirit.
16:55:10  10              MS. CHARMANI:  Thank you.
16:55:14  11   BY MR. TENREIRO:
16:55:14  12         Q.   So, Mr. Durov, my question, with respect
16:55:16  13   to this document, is going to be if you recognize your
16:55:19  14   signature on the third page?
16:55:29  15         A.   Yes.
16:55:29  16         Q.   Okay.  And is it fair to say that
16:55:33  17   Telegram -- at least one Telegram entity entered into
16:55:36  18   an agreement on or around January 15, 2018, with an
16:55:40  19   entity called Pacific Spirit Ltd.?
16:55:45  20         A.   I think this is what this agreement says,
16:55:54  21   yes.
16:55:54  22         Q.   Okay.  I just want to get some context
16:55:56  23   from you.  What was the purpose of this agreement?
16:55:59  24   I understand there's a clause there that says
16:56:03  25   "Purpose," but from your perspective what was the
```

146

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

```
16:56:06   1   purpose of the agreement?
16:56:07   2            MR. DRYLEWSKI:  Objection to form.
16:56:08   3            Just to clarify, his personal?
16:56:11   4            MR. TENREIRO:  No, Telegram's.
16:56:13   5            MR. DRYLEWSKI:  Thank you.
16:56:13   6            MR. TENREIRO:  Telegram's.
16:57:19   7            THE WITNESS:  I think at that period of
16:57:21   8   time we discussed with Ilia potential terms of our
16:57:44   9   work together, including, of course, the rights and
16:58:12  10   guarantees that he would enjoy as a person working
16:58:21  11   with me on the TON-related offering, and this
16:58:42  12   agreement represents a draft that was created in the
16:58:53  13   process of trying to find an appropriate way to
16:59:03  14   achieve this goal; however, this was an early version
16:59:25  15   of our potential -- of the terms of our potential
16:59:43  16   collaboration.
16:59:47  17            It was never acted upon and was discarded,
16:59:58  18   replaced by, I think, another document.
17:00:04  19   BY MR. TENREIRO:
17:00:05  20       Q.   Okay.  So Pacific Spirit, do you know what
17:00:15  21   that is?  Pacific Spirit Limited?
17:00:22  22       A.   I understand it is an offshore entity
17:00:26  23   based in Seychelles and my understanding at the time
17:00:30  24   was that it was a vehicle used by Ilia to make sure he
17:00:54  25   could structure the terms of our work together in a
```

147

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

| | | |
|---|---|---|
| 18:30:48 | 1 | MR. DRYLEWSKI:  Objection to form. |
| 18:30:57 | 2 | THE WITNESS:  The nature of this |
| 18:31:09 | 3 | arrangement related to finders' fees implied that the |
| 18:31:27 | 4 | other party would introduce us to potential purchaser. |
| 18:31:50 | 5 | We never authorized any third party to use any |
| 18:32:02 | 6 | marketing materials or promotional materials for the |
| 18:32:07 | 7 | purposes of this activity. |
| 18:32:15 | 8 | BY MR. TENREIRO: |
| 18:32:16 | 9 | Q.  Okay.  But -- so were you aware of ATON's |
| 18:32:19 | 10 | marketing materials? |
| 18:32:21 | 11 | MR. DRYLEWSKI:  Objection to form. |
| 18:32:32 | 12 | THE WITNESS:  I think it's important to |
| 18:32:33 | 13 | clarify, as I mentioned before, that there are |
| 18:32:37 | 14 | different legal entities that starts with ▓▓▓ and |
| 18:32:44 | 15 | we can easily get confused here. |
| 18:32:47 | 16 | To answer your question, I think I have |
| 18:32:55 | 17 | reviewed a document that is related to what you are |
| 18:33:00 | 18 | describing in preparation for this deposition. |
| 18:33:05 | 19 | MR. TENREIRO:  Let's mark -- |
| 18:33:06 | 20 | MR. DRYLEWSKI:  To clarify, is your |
| 18:33:08 | 21 | question whether he, meaning Telegram -- |
| 18:33:09 | 22 | MR. TENREIRO:  Telegram. |
| 18:33:10 | 23 | MR. DRYLEWSKI:  -- was aware at the |
| 18:33:11 | 24 | time -- |
| 18:33:11 | 25 | MR. TENREIRO:  At any time. |

176

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

```
19:45:30   1   Group Limited.
19:45:31   2           Q.   Right, so -- which is also listed as a
19:45:34   3   beneficial owner in this form that we are looking at
19:45:37   4   of ▇▇▇▇▇▇▇▇▇▇▇▇?
19:45:54   5           A.   Yes, I think it's not unimaginable that
19:45:58   6   certain legal entities can share beneficiaries.
19:46:03   7           Q.   Sure.  My question is, in Exhibit 43
19:46:15   8   we see that Telegram had already entered into a
19:46:17   9   purchase agreement with ▇▇▇▇▇▇▇▇▇▇▇▇ in March of
19:46:21  10   2016, which is before the finder's fee agreement with
19:46:27  11   ▇▇▇▇▇▇▇▇▇▇▇▇ in June.  So why is ▇▇▇▇▇▇▇▇▇▇▇▇
19:46:31  12   billing Telegram, then, in September and November for
19:46:37  13   finding a fund that Telegram already had a
19:46:40  14   relationship with?  That's what I don't understand.
19:46:44  15                MR. DRYLEWSKI:  I'm going to object.
19:46:46  16   Object to the scope.
19:47:35  17                THE WITNESS:  As you can see from this
19:47:37  18   document, ▇▇▇▇▇▇▇▇▇▇ is not the sole beneficiary of
19:47:56  19   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and I guess that ▇▇▇ was
19:48:41  20   helpful in having other beneficiaries of that fund
19:48:59  21   enter into additional purchase agreements later in
19:49:10  22   2018, for which he, as a manager representing ▇▇▇▇
19:49:25  23   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇, was entitled to a fee in
19:49:30  24   accordance to the finder's fee agreement.
           25   ///
```

202

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

```
19:56:14   1   October 2018.
19:56:23   2          A.   Yes.
19:56:23   3          Q.   Do you see that?
19:56:24   4          A.   I see that.
19:56:25   5          Q.   Okay.  These three documents together, can
19:56:26   6   you explain to me, as a corporate representative of
19:56:29   7   Telegram, what's happening here when, in February,
19:56:34   8   ██████████ has entered into a purchase agreement,
19:56:37   9   signed by ██████████, and then in June you enter into
19:56:41  10   a finder's fee agreement with ██████████ signed by
19:56:45  11   the same person, who then bills you in October for
19:56:48  12   a finder's fee agreement for an entity, ████
19:56:51  13   ██████████, that Telegram already had a relationship
19:56:54  14   with?
19:57:02  15          A.   Yes.  First of all, I think it's worth
19:57:06  16   noting that in the small financial world in Russia,
19:57:24  17   it is not unimaginable for the same director to work
19:57:33  18   at different legal entities, so I am not surprised by
19:57:40  19   the fact that we have the same person signing
19:57:51  20   different agreements.
19:57:59  21               Second, as I mentioned earlier when we
19:58:08  22   were discussing the question related to ██████████
19:58:21  23   ████, those legal entities investing in Telegram may
19:59:00  24   have multiple beneficiaries, some of which could
19:59:19  25   have been hesitant to increase their interest in
```

206

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 19:59:35 | 1 | Grams, and even though this investor participated in |
| 20:00:09 | 2 | the private investment -- sorry, placement prior to |
| 20:00:22 | 3 | summer 2018, additional efforts may have been required |
| 20:00:48 | 4 | to reintroduce those beneficiaries to the offering, |
| 20:01:03 | 5 | to make them aware that there was still an opportunity |
| 20:01:11 | 6 | to invest due to the fact that certain purchasers |
| 20:01:15 | 7 | failed to meet their contractual obligations.  And we |
| 20:01:27 | 8 | thought it was fair, and in the spirit of the finder's |
| 20:01:31 | 9 | fee agreement, to reward those efforts. |
| 20:01:36 | 10 | Q.  And what sort of policies or checks did |
| 20:01:39 | 11 | Telegram have in place to make sure that further |
| 20:01:43 | 12 | efforts had in fact been required before paying these |
| 20:01:46 | 13 | finders' fees? |
| 20:01:47 | 14 | MR. DRYLEWSKI:  Before?  I'm sorry, |
| 20:01:48 | 15 | I missed it. |
| 20:01:49 | 16 | BY MR. TENREIRO: |
| 20:01:49 | 17 | Q.  Before paying these finders' fees, with |
| 20:01:52 | 18 | respect to entities that already had a relationship |
| 20:01:54 | 19 | with Telegram? |
| 20:01:55 | 20 | A.  As you can see, looking at the dates when |
| 20:02:24 | 21 | those events were taking place, we had waited |
| 20:02:52 | 22 | a substantial amount of time to allow the potential |
| 20:03:06 | 23 | purchasers to -- that have entered into the purchase |
| 20:03:11 | 24 | agreements, to transfer funds and also to allow the |
| 20:03:15 | 25 | existing investors to increase their interest in Grams |

207

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 15:10:13 | 1 | BY MR. TENREIRO: |
| 15:10:14 | 2 | Q.  Okay.  Now, in order for the vision of TON |
| 15:10:17 | 3 | and Grams that Telegram has, is it necessary for Grams |
| 15:10:21 | 4 | to trade on exchange of digital-asset platforms such |
| 15:10:31 | 5 | as Coinbase? |
| 15:10:32 | 6 | MR. DRYLEWSKI:  Objection; scope, and |
| 15:10:39 | 7 | form. |
| 15:11:04 | 8 | THE WITNESS:  The vision for Grams is that |
| 15:11:06 | 9 | of a mass-market, multipurpose currency used by a big |
| 15:11:23 | 10 | number of consumers.  This currency would be not |
| 15:11:36 | 11 | unlike other popular cryptocurrencies and digital |
| 15:11:51 | 12 | currencies, and in that sense, for consumers to be |
| 15:12:07 | 13 | able to transact in Grams freely and use Grams as |
| 15:12:13 | 14 | a means of exchanging value, there would need to be |
| 15:12:23 | 15 | certain services or platforms that would allow |
| 15:12:36 | 16 | consumers to obtain Grams from the market; so it was |
| 15:12:57 | 17 | our expectation that just like currencies such as |
| 15:13:05 | 18 | Bitcoin and Ethereum are listed and traded on |
| 15:13:23 | 19 | exchanges such as Coinbase and similar services, Grams |
| 15:13:49 | 20 | would be likewise convertible to other currencies, |
| 15:13:59 | 21 | as we believe it is a fundamental characteristic of |
| 15:14:08 | 22 | currency to be exchangeable. |
| 15:14:13 | 23 | It must also be noted that from a purely |
| 15:14:23 | 24 | theoretical perspective, there could be other ways for |
| 15:14:35 | 25 | consumers to exchange one currency into the other |

324

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| 16:38:30 | 1 | BY MR. TENREIRO: |
| 16:38:31 | 2 | Q.   Did Telegram issue any sort of public |
| 16:38:33 | 3 | statement about what was happening with the Liquid |
| 16:38:37 | 4 | exchange? |
| 16:38:38 | 5 | MR. DRYLEWSKI:  Objection; scope. |
| 16:38:56 | 6 | THE WITNESS:  On a few occasions |
| 16:39:03 | 7 | we published statements that would inform the public |
| 16:39:08 | 8 | that there had been a lot of fraudulent activity |
| 16:39:22 | 9 | in relation to Grams and we warned our users and |
| 16:39:42 | 10 | the public at large that all sales in ICOs involving |
| 16:40:03 | 11 | Grams were fraudulent and not real in any case. |
| 16:40:28 | 12 | By this, I mean public sales in ICOs.  And users |
| 16:40:35 | 13 | should be looking at our official website, |
| 16:40:44 | 14 | telegram.org, if they were seeking a confirmation that |
| 16:40:59 | 15 | a certain sale indeed was related to Telegram. |
| 16:41:14 | 16 | And without such an official announcement |
| 16:41:17 | 17 | from Telegram posted on its website, no report related |
| 16:41:35 | 18 | to public sale of Grams should be trusted.  I believe |
| 16:41:46 | 19 | that such announcements were helpful to warn the |
| 16:42:01 | 20 | public from participating in activities such as the |
| 16:42:17 | 21 | one conducted by the Liquid exchange. |
| 16:42:31 | 22 | In addition, in this specific case |
| 16:42:55 | 23 | we were, in a certain way, grateful for the press |
| 16:43:09 | 24 | to point out that a Liquid sale was not official and, |
| 16:43:31 | 25 | based on that, I don't believe we published any |

348

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

```
16:43:43   1   additional announcement that would specifically relate
16:43:49   2   to Liquid as similar topics have been addressed before
16:44:05   3   in our public announcements, and this specific
16:44:16   4   incident was addressed in some of the media reports.
16:44:24   5              (Exhibit 77 marked for identification.)
16:44:28   6              MR. TENREIRO:  Can we take a look at
16:44:30   7   Exhibit 77, please.  007-73455.
16:45:13   8   BY MR. TENREIRO:
16:45:13   9        Q.   Mr. Durov, the question is, is this one
16:45:17  10   of the emails where someone reached out to Telegram
16:45:24  11   to inquire about potential resales for Grams?
16:45:39  12              MR. DRYLEWSKI:  Objection; scope.
16:45:50  13              THE WITNESS:  I'm not sure what this email
16:45:57  14   is about.  It is confusing that it uses terms such as
16:46:09  15   "IEO."
16:46:16  16   BY MR. TENREIRO:
16:46:17  17        Q.   Is that "initial exchange offering,"
16:46:20  18   as far as you understand how that term is used in the
16:46:23  19   digital-asset world?
16:46:25  20        A.   My understanding of this term is that
16:46:29  21   "IEO" is the offering that is relevant for tokens of
16:46:42  22   an exchange.  I don't see how this term could be
16:46:53  23   applicable for TON because TON does not represent
16:47:04  24   an exchange; rather, it is a blockchain network
16:47:10  25   similar to Bitcoin and Ethereum, but more efficient.
```

349