

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

February 4, 2020

Eva Ciko Carman
T +1 212 596 9039
eva.carman@ropesgray.com

**BY ECF (WITHOUT EXHIBITS) AND HAND DELIVERY (WITH EXHIBITS)**

The Honorable P. Kevin Castel
Daniel Patrick Moynihan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1412

Re: **Securities and Exchange Commission v. Telegram Group Inc. and TON Issuer Inc. 19-cv-9439; Non-Party Investor A's Application to Seal**

Dear Judge Castel:

We write on behalf of non-party Investor A[1] pursuant to Paragraph 8 of the Stipulation and Protective Order ("Protective Order") (ECF No. 36, enclosed as Exhibit A) and the Court's January 22, 2020 Order (ECF No. 108) to request that the Court maintain under seal certain limited portions of (i) the Declaration of an employee of Investor A (Exhibit PX1, filed at ECF Nos. 81 and 122), (ii) seven documents produced by Investor A (Exhibits PX1-A-G, filed at ECF Nos. 81 and 122),[2] and (iii) the corresponding quotations to the proposed redacted sections in the parties' statements and/or counter-statements of facts (as relevant here, filed at ECF Nos. 99 and 120) (collectively, the "Proposed Redacted Material").[3] In an effort to facilitate public review of judicial documents, Investor A does not seek to seal any portion of either party's memorandums of law on any issue. Instead, Investor A simply seeks to protect its own proprietary and confidential information that has

---

[1] Investor A is a pseudonym used by the SEC to refer to one of the investors in Grams. Because this application seeks to seal the identity of the investor, we have used the same pseudonym herein.

[2] Two of the seven documents produced by Investor A (Exhibits PX1-B and PX1-D, filed at ECF Nos. 81 and 122) contain proprietary internal work product of an employee of Investor A reflecting his notes and analysis from Investor A's research and diligence calls related to their investment in Grams. The proposed redactions to the remaining five documents are solely to preserve the identity of Investor A.

[3] In an effort to streamline public docketing, Investor A has enclosed with this letter versions of the "Proposed Redacted Material"—identified with yellow highlighting—that have been provided to the Court and the Parties but not publicly filed.

ROPES & GRAY LLP

- 2 -                                                                                                February 4, 2020

been submitted to the Court but that neither side has deemed sufficiently relevant to cite to or quote from in their legal briefs. More specifically, Investor A seeks to seal information that (i) would disclose its identity (and thus correspondingly disclose proprietary and confidential information about itself), or (ii) constitutes its trade secrets and confidential research and investment analysis. As a non-party to this case, Investor A's privacy interests are entitled to great weight. *See, e.g., Doe v. City of New York*, No. 15-cv-117, 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) ("In the redaction analysis, courts take the privacy interests of third-parties seriously."); *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y.) ("[T]he privacy interests of third parties carry great weight in the balancing of interests."), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013).

Investor A's purported relevance to this case is that it was one of 171 investors who allegedly made initial investments in Grams. Investor A is in the business of investing client capital pursuant to confidential and proprietary investment procedures and protocols. In other words, Investor A's decisions concerning how and why to invest capital is Investor A's "secret sauce." At the request of the SEC, an employee of Investor A provided a declaration concerning Investor A's investment in Grams. Limited parts of this declaration and two exhibits thereto disclose information that is proprietary and confidential with respect to Investor A's investment approach.

Unrestricted public access to the Proposed Redacted Material would deeply injure Investor A's privacy interests, including by causing Investor A significant competitive injury, such that narrowly-tailored sealing is appropriate. As set forth more fully below, Investor A believes that sealing of the Proposed Redacted Material is justified under controlling legal precedent, including the Second Circuit's decision in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

**I.    Investor A's Identity is Not a "Judicial Document" and is Appropriately Sealed**

Under the three-part inquiry laid out by the Second Circuit in *Lugosch*, a court considering whether to seal documents must *first*, determine whether the documents at issue are "judicial documents," to which a presumption of public access attaches; *second*, determine the applicable weight of the presumption that may apply; and *third*, after determining such weight, balance "countervailing factors" against it, including the "privacy interests" of interested parties. *See* 435 F.3d at 119-20.

Critically, judicial documents are *only* those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 119. The *Lugosch* court acknowledged that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Id.*; *see also United States v. Amodeo*, 71 F. 3d 1044, 1050 (2d Cir. 1995) ("[D]ocuments that play no role in the performance of Article III functions . . . lie entirely beyond" the presumption of public access); *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, No. 13-cv-6073, 2013 WL 6171315, at *7 (S.D.N.Y. Nov. 25, 2013) (determining that

ROPES & GRAY LLP

- 3 -    February 4, 2020

the documents were non-judicial because they "played no role in [the] Court's adjudication of the parties' respective motions . . . ." and "were immaterial to the analysis . . . ."), aff'd, 776 F.3d 126 (2d Cir. 2015); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, No. 10-cv-8663, 2012 WL 1382557, at *1 (S.D.N.Y. Apr. 20, 2012) (same).

Investor A's identity is not a judicial document. It has not been relied upon by any party in its briefs and no party has contended that it has any relevance to the outcome of any of the motions currently pending before the Court. While the SEC has argued that "[t]he fact that numerous U.S.-based individuals and entities had invested in the Grams and were seeking to make a sizeable profit from their subsequent resale to the investing public [i]s relevant to whether the Grams were securities under the test set forth in *SEC v. W.J. Howey*, 328 U.S. 293 (1946)" (ECF No. 28 at 4, note 3), it has not argued that the specific identity of investors is relevant to the *Howey* analysis.[4] Defendants not only attribute no relevance to the identity of the investors, they argue that the investors are largely irrelevant to the case entirely. *See, e.g.,* ECF No. 71 at 5 (arguing that whether initial investors expected to profit from the Private Placement is "beside the point" and that "the SEC's focus on private communications between Telegram and Private Placement investors in early 2018, many of which were subject to confidentiality obligations, is completely misplaced . . . .").

Where documents are not judicial, "there is no presumption of public access" to overcome, and thus the movant must "only make a baseline showing of good cause" to justify maintaining the documents under seal. *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 73 (S.D.N.Y. 2007), aff'd, 347 F. App'x. 615 (2d Cir. 2009). Under a good cause standard, even a "minimal showing of possible harm from disclosure" of the information sought to be sealed is sufficient to meet this burden and "trigger a sealing order." *Dorsett*, 762 F. Supp. 2d at 519. Here, disclosure of Investor A's identity would result in the corresponding disclosure of sensitive proprietary business information which Investor A's competitors could seek to improperly exploit to Investor A's disadvantage. This Court should protect Investor A from such an inequitable result. *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are "sources of business information that might harm a litigant's competitive standing.").[5]

---

[4] The SEC has sought relief from the Court that would allow them to file documents in redacted form so as to protect the anonymity of the investors in Grams. *See* ECF Nos. 28 and 100. For the reasons cited in the SEC's papers and herein, Investor A agrees that its identity should be maintained confidentially.

[5] To the extent the Court concludes that Investor A's identity *does* constitute a judicial document, it is still appropriately sealed. Investor A's identity provides little additional value and redaction protects privacy interests. *See, e.g., Cohen v. Gerson Lehrman Grp. Inc.*, No. 09-cv-4352, 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15, 2011) (allowing redactions that were "narrowly tailored to conceal clients' identit[ies]"); *In re SunEdison, Inc. Sec. Litig.*, No. 16-cv-7917, 2019 WL 126069, at *2-4 (S.D.N.Y. Jan. 07, 2019) (finding that the "[t]he public interest in the names of the [entities

ROPES & GRAY LLP

- 4 -                                                              February 4, 2020

## II. Investor A's Privacy Interests Outweigh any Presumption of Public Access to the Proposed Redacted Material.

Assuming, *arguendo*, that certain limited portions of the Proposed Redacted Material constitute "judicial documents" because they were cited in certain statements or counter-statements of facts (but, notably, not the parties' briefs), any presumption of public access is strongly outweighed by non-party Investor A's significant privacy interests.

*First*, little weight should be afforded to any presumption of public access because of the "negligible role" this information plays in adjudicating the question of whether Grams are securities. *Amodeo*, 71 F.3d at 1050 ("[W]here . . . documents play only a negligible role in the performance of Article III duties, the weight of the presumption [of access] is low . . . ."); *see also GoSMiLE*, 2012 WL 1382557, at *1 (noting that even if documents found to be "immaterial" to the court's analysis *were* "viewed as judicial documents, the presumption of access is slight . . . .") (emphasis added). Here, none of the Proposed Redacted Material was cited or quoted in any party's briefs. At most, the Proposed Redacted Material has tangential relevance because it either happens to be contained within a document cited for another purpose or was cited for some limited discrete purpose in one of the statements or counter-statements of facts (including, for example, to explain its lack of probative value). Quite simply, Investor A's investment research and approach bears little, if any, relevance to the legal questions before the Court.

*Second*, as a non-party to this case, Investor A's privacy interests are entitled to great weight. *See, e.g.*, *Amodeo*, 71 F.3d at 1050 ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."); *Doe*, 2019 WL 4392533, at *2 ("In the redaction analysis, courts take the privacy interests of third-parties seriously."); *Dorsett*, 762 F. Supp. 2d at 521 ("[T]he privacy interests of third parties carry great weight in the balancing of interests."). *Lugosch* recognizes that "the privacy interests of those resisting disclosure" are a valid factor countervailing the right of public access. *Lugosch*, 435 F.3d at 120 (internal citations omitted); *see also Cooksey v. Digital*, No. 14-CV-7146, 2016 WL 316853, at *3 (S.D.N.Y. Jan. 26, 2016) (finding that protecting reputational and privacy interests "constitute sufficiently substantial interests so as to overcome a presumption of access").

*Third*, the information that Investor A seeks to seal implicates privacy interests sufficiently significant to outweigh any corresponding presumption of public access. Specifically, the Proposed Redacted Material on two exhibits constitutes an Investor A employee's notes, mental impressions, and analysis from research and diligence calls concerning Investor A's approach to a potential investment. Investor A has proposed targeted redactions to protect the specific, confidential

---

and individuals] is low."); *MacroMavens, LLC v. Deutsche Bank Sec., Inc.*, No. 09-cv-7819, 2011 WL 1796138, at *2 (S.D.N.Y. Apr. 27, 2011) (granting the application of redactions to customer information that was "not material" to the motion, and noting that customer identities may be "replaced with designations such as 'Customer # 1.'").

research, diligence, and analysis that Investor A engaged in as part of its confidential and proprietary investment process. The release of this information would divulge aspects of Investor A's research and diligence process, including its methodology for questioning, weighing and evaluating information about investments. By contrast, limited redactions would protect confidential trade secret information that, if exposed to the public, could be exploited by competitors who may seek to mimic Investor A's proprietary approach. Such access would cause Investor A significant injury. *See, e.g., In re Dig. Music Antitrust Litig.*, 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017) (sealing "information relating to competitive . . . strategy" even when located within "judicial documents" because "the privacy interests of the affected non-parties are sufficient to overcome the presumption of access"); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 608, 614 (S.D.N.Y. 1998) (sealing"[c]onfidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit."). Similarly, Investor A's competitors could exploit the Proposed Redacted Material in the two internal documents to attempt to undermine Investor A's ability to compete in the marketplace.

Indeed, the Second Circuit has expressly held that "trade secrets may be sufficient to defeat the presumption [of public access]." *Hardy v. Equitable Life Assurance Soc'y of United States*, 697 F. App'x 723, 725 (2d Cir. 2017); *see also In re New York Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 n.4 (2d Cir. 2009) ("When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved."); *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999) (describing "trade secrets" and "confidential research" as categories that are "commonly sealed"). For example, in *Dodona I, LLC v. Goldman, Sachs & Co.*, this Court held that information concerning "trading strategies, objectives and transactions" overcame the presumption of confidentiality even when cited in summary judgment motions. 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015).

Disclosure of trade secrets in the Proposed Redacted Material would reveal to the world, including Investor A's competitors, Investor A's "market predictions," "intelligence," and "strategy"—a cognizable harm for which this District has previously sealed filings. *See, e.g., Tropical Sails Corp. v. Yext, Inc.*, No. 14-cv-7582, 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016) (sealing documents which defendant alleged disclosure of would result in the "specific harm" of "exposure to [] competitors of [the company's] market predictions and intelligence, product comparisons, and strategy."); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, No. 10-cv-6100, 2012 WL 3114855, at *15-16 (S.D.N.Y. July 31, 2012) (granting a motion to seal documents containing "business trade secrets which could be used adversely by competitors.").

In short, the Proposed Redacted Material conveys information about non-party Investor A's proprietary approach to evaluating investments along with its confidential research and diligence processes. Allowing public disclosure of this highly sensitive information, including to Investor A's business competitors, would unfairly harm Investor A. Therefore, we respectfully submit that sealing is appropriate. *See Nixon*, 435 U.S. at 598.

ROPES & GRAY LLP

- 6 -                                                              February 4, 2020

\*   \*   \*

  For the foregoing reasons, non-party Investor A respectfully requests that the Court grant its application to seal the Proposed Redacted Material and direct the Parties to file versions of PX1, PX1-A-G, and the corresponding quotations in the parties' statements of facts, that have been redacted in the same way as proposed in yellow highlighting in the exhibits to this letter.

             Respectfully submitted,

             Eva Ciko Carman

Enclosures

cc (by email and mail):

Alexander C Drylewski, Esq. (counsel for Defendant)
Thania Charmani, Esq. (counsel for Defendant)
Alison Rose Levine, Esq. (counsel for Plaintiff)
Jorge Gerardo Tenreiro, Esq. (counsel for Plaintiff)