UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
:
                           Plaintiff,    :      19 Civ. 09439 (PKC)
:
    - against -                           :      ECF Case
:
TELEGRAM GROUP INC. and TON ISSUER INC.  :
:
                           Defendants.  :
:
-----------------------------------------------------------------x

## NON-PARTY ▮▮▮▮▮▮
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEAL
## ITS CONFIDENTIAL DOCUMENT

Non-Party ▮▮▮▮▮▮ (identified herein as "Investor G[1]") respectfully moves for an Order permitting the Securities and Exchange Commission ("SEC") to file under seal a document lodged with the Court as Exhibit PX7 to the Declaration of Ladan F. Stewart (ECF No. 81) ("Stewart Decl.") in support of the SEC's Motion For Summary Judgement (ECF No. 79) ("Motion"). Exhibit A to PX7 is Investor G's confidential and proprietary investment memorandum for the Telegram deal, which Investor G produced to the SEC pursuant to the protective order entered in this action (ECF No. 36) ("Protective Order") in response to a third party subpoena for documents. Investor G requests that the SEC be permitted to file Exhibit A to PX7 under seal in its entirety, to preserve Investor G's confidential and proprietary information and protect Investor G from competitive harm.

---

[1] The Declaration of Ladan F. Stewart (ECF No. 81) ("Stewart Decl.") identified non-party as "Investor G." For the Court's convenience and to avoid confusion that same pseudonym is used here. Moreover, in accordance with the SEC's previously filed motion requesting an Order to file under seal and in redacted form on ECF documents reflecting investor names (*see* ECF No. 28), this document and its related documents continue to redact this and related identifying information.

1

## I. FACTUAL BACKGROUND

Investor G is a venture capital firm. (Declaration of ▓▓▓▓ ("Investor G Decl.") at 2.) Venture capital firms like Investor G operate in a highly competitive market and their processes for evaluating opportunities and making investment decisions are a big part of what separates them from the competition. (*Id.*)

Investor G has been in operation for over a decade and has invested in hundreds of portfolio companies during that time. Each investment is accompanied by a sourcing, due diligence and analysis process conducted by its partners and employees. (*Id.* at 3.) Investor G's internal sourcing, due diligence and analysis process for evaluating opportunities and making final investment decisions has been developed and carefully honed over that time based on its extensive and unique experience and expertise. (*Id.*) As part of its sourcing, due diligence, and analysis process, Investor G has implemented an internal investment memorandum template (the "Investment Memo"). (*Id.*) The Investment Memo is designed to allow certain of its principals and employees to evaluate opportunities and make decisions based on various key factors and considerations. (*Id.*)

Investor G derives a distinct competitive advantage from its sourcing, due diligence, and analysis process and and the structure of its Investment Memo. (*Id.* at 4.) Investor G has not shared its sourcing, due diligence, and analysis process or Investment Memo with other investors or the public at large, and both the sourcing, due diligence, and analysis process and Investment Memo remain our confidential business information. (*Id.*) Moreover, if Investor G's sourcing, due diligence, and analysis process or Investment Memo were to be publicly disclosed, then Investor G would lose a significant competitive advantage. (*Id.* at 5, 6.)

In response to the SEC's third party subpoena, dated October 2019, Investor G produced a confidential copy of its internal investment memorandum for the Telegram deal to the SEC

pursuant to the Protective Order. (*Id*. at 7.) The Investment Memo was produced to the SEC with stamps that read "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER." (*Id*.) The Investment Memo is based on the template described above and reflects Investor G's confidential and proprietary analysis of the Telegram deal. (*Id*.) Disclosure of the Investment Memo would give other venture capital firms insights into our analysis and may allow other venture capital firms to emulate our investment approach, and for the same reasons outlined above Investor G has taken steps to ensure the Investment Memo remains confidential. (*Id.* at 6.) Moreover, Investor G followed up through counsel to remind the SEC that the Investment Memo is highly confidential and proprietary, and it should be treated as such pursuant to the Protective Order. (*Id*. at 7.)

On January 15, 2020, the SEC lodged a copy of the Investment Memo with the Court as Exhibit A to PX7 to the Stewart Declaration. (ECF No. 81.) Consistent with the Protective Order, the SEC did not file any portion of the Investment Memo on the public docket.

## II. ARGUMENT

### A. The Court Should Seal Confidential and Proprietary Information Where Disclosure Would Cause a Non-Party Competitive Harm

Where the sealing of a judicial document is "narrowly tailored" to the interests in question and "essential to preserve higher values" courts may order the sealing of such documents, despite the presumption of public access. *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 82 n. 1 (S.D.N.Y. 2017). Indeed, upon a showing of "good cause," courts may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Sealing is appropriate where there are "countervailing factors" which may include "the privacy interests of those resisting disclosure, such . . . sources of business information that might harm a litigant's competitive standing." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154 (S.D.N.Y. 2015) (quoting *Lugosch v. Pyramid*

3

*Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)); *see also Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018) (granting request to seal private financial materials that would harm the business interests of non-parties). In fact, Courts have repeatedly granted confidential treatment to sensitive business information where disclosure would cause the producing party competitive harm. *See, e.g., In re Digital Music Antitrust Litig.*, 321 F.R.D. at 82 n. 1 (sealing confidential information relating to "competitive pricing" and "strategy"); *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2017 WL 1331288, at *11 (S.D.N.Y. Apr. 4, 2017) (granting request to seal information including "the terms of private securities transactions involving non-parties").

Here, the document in question warrants sealing as sensitive business information. The Investment Memo is confidential and is not known or shared outside of Investor G's business. (Investor G Decl. at 4.) Indeed, Investor G treats its Investment Memos as confidential information and takes the same precautions to guard the secrecy of its Investment Memos as it does all of its confidential and proprietary information. (*Id.* at 9.) Each Investment Memo is made available only to the employees of Investor G who play a role in the specific investment being considered. (*Id*.) The information contained in the Investment Memo is also very valuable to Investor G. Each venture capital firm takes its own approach to investments and there are innumerable methodologies that could be used to evaluate a potential venture investment. (*Id*. at 6.) Each investor may consider different risks, financial or other information, projections, and other factors in evaluating a potential investment and/or may assign a different priority or weight to each such factor. (*Id.*) The ability of Investor G's investment professionals to successfully analyze and synthesize such information to form an investment thesis has been carefully

4

developed over years of experience and memorialized in its Investment Memos. (*Id.*) The Investment Memo also contains specific information about Investor G's views of Telegram, the cryptocurrency space, and related investment opportunities. (*Id*. at 8.) Therefore, disclosure of the Investment Memo would allow Investor G's competitors insights into its analysis and may allow other venture capital firms to emulate its investment approach, both generally and in the cryptocurrency space. (*Id*. at X.) That would make it easier for competitors to (1) compete with Investor G in specific investment opportunities by giving them insight into its investment analysis and thesis, (2) make investments that Investor G would have otherwise made, and (3) attract capital away from Investor G. (*Id.* at 6.) Investor G has spent considerable resources to develop its investment process, the Investment Memo, and its particular views regarding Telegram and the cryptocurrency space. (*Id.* at 8.) The information and analysis contained in the Investment Memo reflects not only time spent on the Telegram deal, but the application of years of unique experience to Investor G's sourcing, due diligence, and analysis process. (*Id.* at 3, 6.)

Given these considerations, the Investment Memo qualifies as sensitive business information. As such, it should be sealed in its entirety to protect Investor G from harm to its "competitive standing" and from "annoyance, embarrassment, oppression, or undue burden or expense." *Digital Music*, 321 F.R.D. at n. 1; Fed. R. Civ. P. 26(c).

### III. ALTERNATIVELY, THE COURT SHOULD ALLOW REDACTION OF THE INVESTMENT MEMO

Investor G maintains that this is not a case where redaction can adequately protect the producing party. However, if the Court is inclined to deny its motion to seal, then Investor G respectfully requests that the SEC (working in conjunction with Investor G) be allowed to redact any identifying information from the Investment Memo, including Investor G's name, the names

5

and initials of its employees, and other references throughout the document that would enable Investor G's competitors to discern its true identity.

IV. **CONCLUSION**

For the foregoing reasons, Investor G respectfully requests that the Court enter the attached, proposed Sealing Order for good cause shown.


Dated: New York, New York
February 4, 2020

Respectfully submitted,

*/s/ Daniel P. Roy III*
Daniel P. Roy III
COOLEY LLP
55 Hudson Yards
New York, NY  10001-2157
(212) 479-6000

*Attorneys for Non-Party Investor G*