UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,    :    19 Civ. 09439 (PKC)
                                        :
                    Plaintiff,          :    ECF Case
                                        :
        - against -                     :
                                        :
TELEGRAM GROUP INC. and TON ISSUER INC. :
                                        :
                    Defendants.         :
                                        :
------------------------------------------------------------------------x

**NON-PARTY INVESTOR I'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEAL**

**I.     INTRODUCTION**

Non-Party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (identified herein as "Investor I")[1] respectfully moves for an Order maintaining under seal its name and other identifying information that the U.S. Securities and Exchange Commission ("SEC") has filed in Exhibit R to the October 11, 2019 declaration of Daphna Waxman (ECF No. 16) (the "Waxman Declaration") and Exhibit PX152 to the January 21, 2020 Declaration of Ladan Stewart (ECF No. 97) (the "Stewart Opposition Declaration"). Exhibit R is a list of every US-based purchaser of Grams, which counsel for Telegram Group Inc. and Ton Issuer Inc. provided to the SEC during discovery in this litigation. PX152 is an internal email between employees of Investor I's investment advisor, ▮▮▮▮▮▮▮▮▮▮ ("▮▮▮▮▮▮"), which Investor I produced to the SEC first in response to a voluntary request for production, and then again in response to a compulsory subpoena, with

---

[1] The SEC previously filed a motion requesting an Order to file under seal and in redacted form on ECF materials reflecting the names and other identifying information of Gram purchasers, including non-parties the SEC identified as Investors A through H. (*See* SEC's Mot. to Seal, ECF No. 28 (Oct. 23, 2019); Decl. of Ladan Stewart in Support of SEC's Mot. for Sum. Judg., ECF No. 81 (Jan. 15, 2020).) This document continues to redact that identifying information, using the pseudonym "Investor I" for the Court's convenience and to avoid confusion.

1

the expectation of confidential treatment by the SEC. Both of these documents contain private information, including the identity of Investor I and related non-parties, that should be sealed.

Pursuant to *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 113 (2d Cir. 2006), Investor I requests that its name and other identifying information be sealed in Exhibit R, Exhibit PX152, and any other filings where they may appear without the knowledge of Investor I. Specifically, the Court should permit the parties to redact the names of the following non-parties: Investor I, Investor I's manager (███████████), Investor I's investment advisor (██████████), that advisor's employees, and the initials of the beneficiary to the trust owning Investor I (identified in PX152). Investor I provided its full cooperation in the SEC's investigation into the defendants, under an expectation that the SEC would protect Investor I's confidentiality, including its identity and the nature of its purchase of Grams. Sealing this identifying information is the only way to preserve Investor I's privacy and to ensure that other innocent third-parties continue to cooperate in voluntary investigations by the SEC.

## II. STATEMENT OF FACTS

On March 29, 2018, the SEC served Investor I's independent manager, ███████████, with a voluntary request for the production of records regarding an investigation into the defendants. (Declaration of Andrew Escobar ("Escobar Decl.") ¶ 2.) On June 25, 2018, Investor I made a voluntary production of documents in response to the SEC's request. (*Id.* ¶ 3.) Investor I requested confidential treatment for all of those documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, marking them with an endorsement designated "Confidential Treatment Under FOIA Requested by [Investor I]." (*Id.*)

On October 17, 2019, the SEC served Investor I with a compulsory subpoena commanding the re-production of those same files, along with additional records regarding Telegram Group Inc.

and Ton Issuer Inc. (*Id*. ¶ 4.) On November 8, 2019, Investor I responded with a production of records to the SEC. (*Id*. ¶ 5.) Once again, Investor I requested confidential treatment for all of those documents under FOIA, marking them with an endorsement designated "Confidential Treatment Under FOIA Requested by [Investor I]." (*Id*. ¶ 5.) The endorsement on PX152 does not mention the Court's November 12, 2019 protective order (ECF No. 36) only because that order was not entered until four days after the document was produced. (*Id*. ¶ 6.) Investor I, through counsel, has diligently and consistently communicated to SEC that its records are highly confidential and should be treated as such. (*Id*.)

The SEC has filed under seal at least two documents referencing the identity of Investor I and related third-parties. *First*, on October 11, 2019, the SEC filed the Waxman Declaration in support of its emergency motion for an order to show cause regarding a temporary restraining order and other relief. Later, on October 17, 2019, the SEC filed a limited form of that same declaration via ECF, without publicly filing a copy of Exhibit R. (ECF No. 16.) Investor I does not have access to Exhibit R, but according to the Waxman Declaration, the document contains a complete "list of United States based Grams purchasers, partially redacted for privacy/propriety [*sic*] information reasons." Similarly, Exhibit S to the Waxman Declaration apparently contains a complete "list of non-United States based Grams purchasers, partially redacted for privacy/ propriety [*sic*] information reasons." (ECF No. 16 ¶¶ 37–38.)

*Second*, on January 21, 2020, the SEC filed under seal the Stewart Opposition Declaration. The SEC filed a version of that same declaration via ECF, without publicly filing a copy of Exhibit PX152. (ECF No. 97.) Based on the description of Exhibit PX152, Investor I knows it to be an email chain produced by that non-party.

## III. ARGUMENT

The Court should permit narrowly tailored redactions sealing Investor I's identity and other identifying information under Fed. R. Civ. P. 26(c), because revealing that information would subject Investor I to "annoyance, embarrassment, oppression, or undue burden or expense." Investor I is not seeking to seal the entirety of Exhibit R and Exhibit PX152, wholesale. Instead, Investor I requests specific findings that seal the identity of Investor I and other identifying information that can be linked to its identity and investments, including the names of its manager, its investment advisor, that advisor's employees, and the initials of the beneficiary to the trust owning Investor I.

As explained in *Lugosch*, the Second Circuit uses a three-party test to determine whether documents should be placed under seal. 435 F.3d at 113. ***First***, although there is a presumptive right of public access to court records, that presumption attaches only to "judicial documents," which are court records actually "relevant to the performance of the judicial function and useful in the judicial process." *Id*. at 119 (quoting *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). Before any presumption of public access can attach, "a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Id*.

***Second***, "[o]nce the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Id.* The weight of the presumption "fall[s] somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")). Judicial documents at the low end of the continuum are entitled to little weight. *Id*.

***Third***, after determining the weight of the presumption, the court must "balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (quoting *Amodeo II* at 1050 (internal quotation marks omitted)). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id*.

In this instance, sealing Investor I's confidential information serves several countervailing factors, including the privacy interests of Investor I and the SEC's ability to promote cooperation with its voluntary requests for production. "If release is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Amodeo II*, 71 F.3d at 1050. By contrast, there is only a low weight to any presumption of access to Investor I's identity and other identifying information in Exhibit R and Exhibit PX152. As such, the Court should seal Investor I's name and other identifying information, including the names of its manager, its investment advisor, that advisor's employees, and the initials of the beneficiary to the trust owning Investor I, in any filings where they appear.[2]

---

[2] In this motion and the supporting filings, Investor I has provided the Court with more details about its identity and purpose than those already filed in Exhibit R and Exhibit PX152. In no event should the Court treat this motion or any supporting materials as a judicial document requiring a public filing, because "[t]he presumption of public access does *not* apply to material that is submitted to the court solely so that the court may decide whether that same material must be disclosed in the discovery process or shielded by a Protective Order." *Brown v. Maxwell*, 929 F.3d 41, 50 n.33 (2d Cir. 2019) (emphasis original); *see also S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001) ("We are not aware . . . of any common-law principle that documents submitted to a court *in camera* for the sole purpose of confirming that the refusal to disclose them to another party was proper, are to be deemed judicial records open to the public.") (quotation omitted).

**A. There Is No Presumption of Public Access to Investor I's Identity in Exhibit R, and Only a Weak Presumption Regarding Exhibit PX152.**

There is no presumption of public access to Exhibit R, and only a weak presumption of access to Exhibit PX152. In Exhibit R, although there is no relevant reason to do so, the SEC filed a declaration attaching a complete "list of United States based Grams purchasers" in support of its request for a temporary restraining order.³ Adding that irrelevant information to another filing does not turn Exhibit R into a judicial document. In Exhibit PX152, the SEC filed other wholly irrelevant information by including an email between employees of Investor I's investment advisor, who speculated about the actions of other third-parties. Although immaterial to any question before the Court, Exhibit PX152 briefly references the initials of the beneficiary to the trust owning Investor I. That identifying information should all be sealed.

> *1. There Is No Presumption of Public Access to Investor I's Identity in Exhibit R.*

Because Investor I's identity is not used as a judicial document in Exhibit R, the presumption of public access does not attach to that record. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Amodeo I*, 44 F.3d at 145. "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Trump v. Deutsche Bank AG*, 940 F.3d 146, 151 (2d Cir. 2019) (quoting *Lugosch*, 435 F.3d at 119). In *Trump*, for example, the Second Circuit sealed the names of two taxpayers in briefing about a preliminary injunction, because the names were "not relevant to any issue in the underlying appeal" and therefore were not "judicial documents." *Id*. Similarly, there was no valid reason for the SEC to include a complete list of every Gram purchaser in Exhibit R, because

---

3 The SEC filed a similar "list of non-United States based Grams purchasers" as Exhibit S to the Waxman Declaration.

nothing about those identities is relevant to the Court's decision about injunctive relief (or to summary judgment). This Court's Local Rules already recognize that a party should not file exhibits when they are irrelevant to the Court:

> A party . . . making or opposing any . . . motion or application, shall quote or attach ***only those portions*** of the . . . interrogatories . . . or other discovery or disclosure materials . . . ***that are the subject of the discovery motion or application***, or that are cited in papers submitted in connection with any other motion or application.

LCR 5.1. Investor I has valid privacy interests in the information filed as Exhibit R, and the Court should not allow the SEC to destroy those interests—even inadvertently—simply by attaching a list of extraneous information to its motions.[4] The presumption of public access does not apply in instances, such as this one, when parties have filed exhibits that are irrelevant to the performance of the judicial function and useless in the judicial process. *Trump*, 940 F.3d at 151. Because there was no reason to file Exhibit R, there is no presumption of public access to Investor I's identity in that record.

### 2. *There Is Only a Weak Presumption of Public Access to Investor I's Identity in Exhibit PX152.*

Although Exhibit PX152 is an exhibit to the SEC's motion for summary judgment, the identity of Investor I is irrelevant to the questions before the Court, meaning the weight of the presumption to public access to Investor I's information in that record is extremely weak. Although the Second Circuit has held "there is a presumption of access to documents submitted

---

[4] Among other remedies, courts can protect against unnecessary disclosure of confidential information by rejecting or striking materials that should not have been filed. *See Maxwell*, 929 F.3d at 51–52 (explaining that under Fed. R. Civ. P. 12(f), "[t]he district court may strike such material from the filings on the grounds that it is 'redundant, immaterial, impertinent, or scandalous.'"). "Because such rejected or stricken material is not 'relevant to the performance of the judicial function' it would not be considered a 'judicial document' and would enjoy no presumption of public access." *Id*. (quoting *Amodeo I*, 44 F.3d at 145).

7

on a summary judgment motion," that presumption is a weak one when judicial documents "come within a court's purview solely to insure their irrelevance." *Lugosch*, 435 F.3d at 121 (quoting *Amodeo II,* 71 F.3d at 1049).[5] At this far end of the continuum, "where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.'" *Id*. And, no matter where on the continuum information may fall, "documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120–121. In this instance, Investor I is seeking exactly this sort of narrowly tailored sealing, supported by specific findings outweighing the weak presumption of access to irrelevant records.

### B. Sealing Investor I's Identifying Information Protects the Privacy Interests of Investor I and Other Irrelevant Non-Parties.

Investor I's significant privacy interests outweigh any presumption to public access. Courts take the "privacy interests of third-parties seriously." *Doe v. City of New York*, No. 15-CV-117 (AJN), 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019). "These concerns are legitimate and the Court will err on the side of caution to protect the interests of innocent third parties." *Id.* Reasons for sealing third-parties' personal information include "the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing, combined with the inability of those third parties to clear their names at trial." *United States v. Smith*, 985 F. Supp. 2d 506, 526 (S.D.N.Y. 2013). In this instance, the SEC has argued that all initial purchasers are acting

---

[5] Even the general rule in *Lugach* was based on an assumption that parties properly file only "admissible evidence and non-frivolous argument" in support of summary judgment proceedings. *Id*. at 122. The Second Circuit later clarified that when the district court has "found that assumption inapplicable . . . the categorical rule in *Lugosch* may not apply." *Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019).

8

as "essentially Telegram's underwriters" for an unregistered offering in Grams. (ECF No. 4 at 9 (Oct. 11, 2019).) Although the reasons for that accusation are unclear, it appears the SEC has included Investor I within the scope of its argument. Yet, neither Investor I nor any other initial purchasers are actually parties to this proceeding, and they have no ability to defend themselves or their actions against any accusations by the SEC. Applying similar concerns, the court in *Dodona I, LLC v. Goldman, Sachs & Co.* agreed to allow narrow redactions for names and other identifying information, finding that the privacy interests in "personal information of current and former employees of the parties and the affected third-parties" outweighed "the presumption for public disclosure." 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015).

"In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. In particular, "financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id*. Those privacy concerns are apparent in this instance, as Investor I is a privately held LLC, wholly owned by a private trust. There is no public interest in its financial state, its purchase decisions, the name of its manager and investment advisor, or any other identifying information that could allow the public to invade Investor I's privacy interests.

Indeed, Investor I is owned by a trust whose beneficiary is a successful venture capitalist, and the beneficiary's prior purchases have attracted significant attention from competitors and curious onlookers alike. (Declaration of ▭ ("▭ Decl.") ¶¶ 2–6.) In the past, members of the public have published personal information about that beneficiary online, resulting in invasive comments and disparagement from community members. (*Id*. ¶ 5.) In one recent

example, a website published detailed information about that beneficiary's home, along with a meticulous description of the property and where to find it. (*Id.*) Due to prior invasions of privacy, Investor I is right to protect against intrusion.

Protecting Investor I's identity is even more important in light of the intense—but legally unprotected—curiosity about block-chain technology among individuals in the cryptocurrency community. (*Id.*) Curious spectators and venture capital competitors could easily use Investor I's identifying information—including the identity of its manager, investor advisor, or the beneficiary of the trust owning Investor I—to piece together Investor I's investment strategy, its strategic goals, and its long-term plans for investments in block-chain technology. (*Id.*) Yet there is little public interest in revealing that information about a non-party, which only serves to "gratify spite or promote scandal." *Amodeo I*, 44 F.3d at 146.

Investor I has taken significant efforts to preserve its privacy interests, which the Court should not negate by unsealing confidential records. For example, Investor I agreed to produce PX152 only on the condition of confidentiality, specifically requesting protection against disclosure. Investor I also structured its purchase to promote confidentiality through an LLC controlled by an independent manager. (▮ Decl. ¶¶ 2–6.) That manager's role as a trusts and estates attorney means that her legal advice and strategic decisions are also subject to the protections of the attorney-client privilege. (*Id.* ¶ 7.) Although the name of an attorney alone is not privileged, revealing the identity of Investor I's manager, in combination with its investment advisor and the beneficiary of the trust owning Investor I, would allow onlookers to deduce the results of the advice the attorney provided to clients, along with investment decisions that, while not privileged, are certainly private and protected under *Lugosch*, 435 F.3d at 113.

### C. Sealing Investor I's Identifying Information Protects the SEC's Ability to Promote Voluntary Cooperation With Law Enforcement.

In addition to private interests, sealing Investor I's identifying information protects the public interest in promoting voluntary cooperation with the SEC. As recognized in *Amodeo II*, the public interest in cooperation with law enforcement weighs against the competing interest in access to court records. 71 F.3d at 1050. The public interest in law enforcement is prevailing, because when "confidentiality cannot be assured, cooperation will not be forthcoming." *Id*.

In this instance, Investor I originally produced Exhibit PX152 and other records in response to the SEC's voluntary request for a production of records regarding its investigation into the defendants. (Escobar Decl. ¶ 3.) The SEC's voluntary request for production enclosed a copy of SEC Form 1662, which explained that "[t]here are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information." *Id*.

Although it was not required, Investor I voluntarily provided relevant records in an effort to aid the SEC. The SEC then served a compulsory subpoena requiring Investor I to reproduce the same materials, and other useful records, for use in this litigation. Investor I produced not just PX152, but also numerous other relevant records, with the expectation that the SEC would treat those records as confidential, and that the SEC would protect Investor I's privacy interests against invasion by third-parties. Filing those records publicly would betray that confidence, discouraging future cooperation from third-parties like Investor I. Sealing those records is needed to assure that witnesses continue to cooperate with the SEC's voluntary requests.

As the congested docket suggests, the SEC conducted its pre-suit investigation into the defendants in an accelerated matter, resulting in an emergency application for a temporary restraining order and permission to conduct expedited discovery. Voluntary pre-suit cooperation from Investor I and other non-parties was integral to the SEC's ability to advance this litigation in

a timely manner. The SEC could not have obtained the same results using compulsory process, which would have taken far longer, required far more resources, and led to an uncertain result. *See Amodeo II*, 71 F.3d at 1050 (Despite the "compulsory process available to compel the giving of evidence or the production of documents, cooperation is . . . often essential to judicial efficiency.").

In one illustrative decision, *City of New York*, the court agreed that "the danger of impairing law enforcement or judicial efficiency" outweighed the presumption of public access to records. 2019 WL 4392533, at *2. In that case, the Court granted a request to redact not just names of witnesses who participated in internal investigations, but also statements that could indirectly reveal their identity. *Id*. The exact same analysis weighs in favor of sealing Investor I's identity, along with other information—like the names of Investor I's manager, its investment advisor, that advisor's employees, and the initials of the beneficiary to the trust owning Investor I—that could reveal the identity of Investor I or related non-parties. The public interest in cooperation with law enforcement outweighs any weak presumption of access to the information narrowly redacted from those records.

## IV. CONCLUSION

For the foregoing reasons, Investor I respectfully requests that the Court enter the attached, proposed Sealing Order for good cause shown.

Dated: February 4, 2020

Respectfully submitted,

*s/ Andrew Escobar*
Andrew Escobar
701 Fifth Avenue, Suite 6900
Seattle, Washington 98104
Tel: 206.839.4800
Fax: 206.839.4801
E-mail: andrew.escobar@us.dlapiper.com

*Attorney for Non-Party Investor I*

12