

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE
200 VESEY STREET, ROOM 400
NEW YORK, NY 10281-1022

Jorge G. Tenreiro
WRITER'S DIRECT DIAL
TELEPHONE: (212) 336-9145
TenreiroJ@sec.gov

February 10, 2020

<u>Via ECF and Overnight Delivery</u>

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  <u>SEC v. Telegram Group Inc. & TON Issuer Inc., No. 19 Civ. 9439 (PKC)</u>

Dear Judge Castel:

Plaintiff Securities and Exchange Commission ("SEC") respectfully writes to direct the Court's attention to certain additional evidence developed after the conclusion of the briefing on the SEC's application for a preliminary injunction (and on the parties' other pending motions), including deposition testimony on February 4, 2020, by Telegram's former chief investment officer.  The SEC may refer to this evidence at the oral argument of February 19, 2020.  The evidence supports the SEC's contention that Telegram sold an investment contract that includes Grams in 2018, including to underwriters working to facilitate the successful public distribution of Grams.  The Court may consider this evidence because it was not available to the SEC when it filed the reply brief on its Application (D.E. 98).[1]  *See generally Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) (district court properly admitted evidence on reply that was not a surprise to the opposing party).

## I.  Procedural History Relating to Newly Developed Evidence.

On December 6, 2019, the SEC sought a Request for International Judicial Assistance to compel the testimony of John Hyman, Telegram's Chief Investment Adviser during the offering of Grams.  D.E. 44.  On December 9, 2019, the Court granted the request.  D.E. 46.  On December 16, 2019, the SEC filed an application with the courts in the United Kingdom for an order directing Mr. Hyman to give testimony and produce evidence.  The courts granted the application on December 19, 2019, and ordered Mr. Hyman to sit for a deposition on January 17, 2020.  Both sides agreed with Mr. Hyman to defer the deposition until February 4, 2020.

---

[1]  "Application" refers to the SEC's Application for a Preliminary Injunction (D.E. 3), and "TRO Br." refers to the SEC's Memorandum of Law in Support of Emergency Application (D.E. 4).

**II.    Mr. Hyman's Testimony Further Supports the SEC's Application.**

At his deposition on February 4, Mr. Hyman testified to or confirmed the following facts that support the SEC's arguments that Telegram "sold" investment contracts, including Grams, to investors in 2018, and that that is what investors reasonably believed they were buying:

- That "███████████████████████████████████████████████████████████████ ███████████████████████████████." Tr. of Dep. of John Hyman (Ex. A) ("Hyman Tr.") at 49:10-17; TRO Br. at 18-19 (arguing that the efforts-of-others *Howey* prong was met because Telegram "emphasized the quality of its 'team'"); and

- That Telegram viewed the moment an investor signed an "Indication of Interest" letter as ███████████████████████████████████████████████████████████████████ ██████████████████████" Hyman Tr. at 52:15-53:14; 67:17-68:17.

Mr. Hyman also testified to the following facts that support the SEC's arguments that Telegram sold Grams to underwriters working to facilitate their public distribution:

- That any payments by Telegram to investors in order to find other investors (███ ██████████████████████████ which Telegram's CEO had previously admitted the company had done) would be "██████████████████████████████████████████ ██████████████████." *Id.* at 81:21-82:16; and

- That "█████████████████████████████████████████████████████████████████ ████████████████████████████████████" *id.* at 130:10-25; *see also id.* at 135:6-136:5, for Gram Vault's "████████████" and "███████" services with respect to Grams; *id.* at 154:17-155:22, █████████████████████████████████ ██████████████████████████████, *id.* at 148:4-11.

Finally, Mr. Hyman testified to or confirmed the following facts that support the SEC's arguments that investors reasonably expected third parties affiliated with Telegram to continue to make efforts on the TON project even after the TON ecosystem launches:

- That individuals associated with the entities known as "Blackmoon," including Oleg Seydak and Mr. Perekopsky, were "████████████████████████████" since 2017, ████████████████████████████. *Id.* at 10:23-12:25;

- That these individuals, including Mr. Seydak, Alexander Filatov, and Michel Lejnev, later became, with Mr. Hyman, ███████████████████████████████████████." *Id.* at 122:24-124:8; *see also* PX 89 at 4 (Gram Vault marketing deck sent to Telegram investor: "Gram Vault founders become advisers to the [sic] Telegram on its token sale");

- That Mr. Filatov—who is also associated with the largest investor in Grams by dollars invested, "Globe Bridgers," PX 92 (along with Mr. Lejnev, *see* PX99 at 3)—██████ ████████████████████████████████████████████████. Hyman Tr. at 151:12-17;

- That Messrs. Filatov, Lejnev, and Hyman 

  ." *Id.* at 148:12-151:8;

- That Mr. Hyman told at least one Telegram investor that Mr. Filatov's company, █████
  ████████████████████," *see* Ex. B (June 7, 2019 email of
  Hyman to Telegram investor). *Cf.* Hyman Tr. at 169:9-170:15 (███████████
  ████████████████████████████); and

- That TON Labs is ████████████████████████████████
  ████████████████████" Hyman Tr. 153:9-16; 162:19-
  163:13.

Additionally, the SEC respectfully requests that the Court consider an additional
technical whitepaper issued by Telegram the day before Mr. Hyman's deposition.  *See* Ex. C
("New Whitepaper"); *see also* Ex. D (article of Feb. 5, 2020 describing relationship between
Telegram's New Whitepaper and TON Labs' research); Ex. BB to Decl. of Daphna Waxman in
Supp. of Application (D.E. 16-23) (also submitted as PX108 to SEC's Motion for Summary
Judgment) (Blackmoon touted that it would give "[T]raders . . . access to Gram tokens on the
Blackmoon Exchange right after [TON] launch.  Real on-chain Grams, available for withdrawal .
. . .  No lock-up.  No futures of other derivatives").

For the foregoing reasons, the SEC respectfully requests that the Court consider the
additional evidence submitted herewith as part of the record on the SEC's Application.[3]

Respectfully submitted,

Jorge G. Tenreiro

---

[3] The SEC notes that it may seek to reopen certain depositions if this case proceeds to trial after the
February 19 hearing.  With its reply brief to its motion for summary judgment, Telegram submitted (1) an
email and attachment that Telegram had not previously produced to the SEC, and (2) an English
translation of a document that Telegram had first produced to the SEC in Russian after the deposition of
Mr. Perekopsky, and on the eve of the deposition of Telegram's CEO, Pavel Durov, the individuals who
engaged in the conversations reflected in the document.  *See* D.E. 121-2; D.E. 121-3.  After the SEC
asked why the first document had not been produced, Defendants' counsel stated that, although
Defendants believed the document had been sent to them prior to the litigation, Defendants had not been
able to locate it.  With respect to the second document, the SEC was unable to question Mr. Durov or Mr.
Perekopsky about it, given the timing of its production.  As a result of similar, earlier concerns as to the
belated production of other documents, the SEC met and conferred in good faith with Defendants.  The
SEC then agreed to not seek to reopen the depositions of Telegram's employees before the February 19
hearing but informed Defendants that, should this case proceed to trial after the hearing, the SEC would
seek to reopen those depositions on documents produced immediately before or after these depositions.