

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE
200 VESEY STREET, ROOM 400
NEW YORK, NY 10281-1022

February 13, 2020

By Hand and ECF

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

      Re:    SEC v. Telegram Group Inc. & TON Issuer Inc., No. 19 Civ. 9439 (PKC)

Dear Judge Castel:

      Plaintiff Securities and Exchange Commission (the "SEC") respectfully submits this omnibus response to motions filed by Defendants Telegram Group Inc. and TON Issuer Inc. (collectively "Telegram") (Dkt. 158, 164-171) and nine third-party investors to seal or redact portions of exhibits or documents that the parties have submitted to the Court in connection with their pending motions (the "Sealing Motions").  The Sealing Motions involve documents containing information that falls into three broad categories:  1) investor identifying information; 2) purportedly highly confidential business information; and 3) financial records.  As described in more detail below, for the pre-trial purposes of only the pending dispositive motions and preliminary injunction application (the "Substantive Motions"), the SEC consents to sealing information identifying certain investors but not others whose roles stretched beyond mere investment, opposes sealing most of the business information at issue, and consents to sealing the financial records on certain conditions.

      For the convenience of the Court, the SEC attaches as Exhibit A chart reflecting the SEC's position regarding the proposed sealed and redacted documents of the investors who have filed motions ("Investor Chart").  Attached as Exhibit B is a chart setting forth the SEC's position regarding Telegram's proposed sealed and redacted documents ("Telegram Chart").  For ease of reference, we have included in the Investor Chart Telegram's position on each document, as set forth in the Telegram Chart, so the two Charts overlap to that extent.[1]

**I.    Procedural History**

      On January 22, 2020, the Court entered a Stipulation and Protective Order (the "Protective Order") (Dkt. 36) governing the use of documents and information produced in this litigation.  Pursuant to the Protective Order, certain entities designated their documents

---

[1]    Where the SEC disagrees with proposed redactions and has an alternative version of proposed redactions, it will file a redacted version of such documents on the public docket and a version with the proposed redactions highlighted for the Court on the docket under seal.

Hon. P. Kevin Castel  February 13, 2020
Page 2

"Confidential – Subject to Protective Order." On January 28, the SEC then gave notice (Dkt. 108) to any entities that had produced documents with the "Confidential" designation that they had until February 4 to file with the Court any application to seal or redact the documents the SEC had filed in connection with the pending motions. The SEC noted that it would redact investor names and other personal identifying information before filing those documents. Nine third parties, identified in the chart below, filed motions to seal or redact various documents.

**Table A**

| Investor Entity | Identifier | Docket Entry of Motion to Seal | SEC Document(s) at Issue in Sealing Motion |
|---|---|---|---|
| ▮ | Investor A | 135 | PX1-B; PX1-D |
| ▮ | Investor B | 142 | PX2-D; PX2-E |
| ▮ | Investor E | 157, 159-161, 162 | PX5, PX5-A; PX5-B, PX28, Dkt Nos.: 43-3, 43-7, and 44-1 |
| ▮ | Investor F | 105-107 | PX6; PX31 |
| ▮ | Investor G | 139-141 | PX7-A |
| ▮ | Investor H | 138 | PX8-A |
| ▮ | Investor I | 143 - 146 | No dispute |
| ▮ | Investor X | 148-151 | PX32 |
| ▮ | Investor Z | 152 - 156 | PX94 |
| ▮ | Telegram | 158, 164-171 | PX5-A, PX5-B, PX7-A, PX8-A, PX 28, PX55, PX30, PX31, PX32, PX33, PX77, PX 115, PX123, PX 136, PX148, PX 194, |

## II.     Legal Framework

In *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-120 (2d Cir. 2006), the Second Circuit set forth a three-part inquiry for courts to undertake when considering whether to seal documents. *First*, a court should determine whether the documents at issue are "judicial documents," to which a presumption of public access attaches. "'[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Id.* at 121; *accord Joy v. North*, 692 F.2d 880, 893 (2d Cir.1982). *Second*, a court should determine the applicable weight of that presumption. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) with alteration in original); *see also Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013) (a court considers "the degree of judicial reliance on the document in question and the relevance of the document's specific contents to the nature of the proceeding"). *Third*, after determining such weight, a court must balance the "countervailing factors" against it. *Lugosch*, 435 F.3d at 119-20. These countervailing factors include, among others, the danger of impairing law enforcement or judicial efficiencies, and the privacy interests of those resisting disclosure. *See United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995).

Hon. P. Kevin Castel  
Page 3
February 13, 2020

### III. The Commission's Position as to the Sealing Motions

#### A. Investor Identities

Investors A, B, C, D, E, F, G, H, I, X and Z have filed motions or otherwise communicated with the SEC seeking to keep their names, status as investors, and personal identifying information out of the public record.[2] Telegram has agreed to those redactions, although in some cases identified in the SEC's charts, Telegram has missed redacting certain investor identifying information. The SEC agrees that the names of certain investors and prospective investors who played no role in the Telegram offering other than as investors are not relevant to any judicial determination of the Substantive Motions. Therefore, "the privacy interests of those resisting disclosure" outweigh the presumption of disclosure at this stage of the litigation. *Lugosch*, 435 F.3d at 120; *see also In re SunEdison, Inc. Sec. Litig.*, No. 16-civ-7917 (PKC), 2019 WL 126069, at *2 (S.D.N.Y. Jan. 7, 2019) (finding low public interest in the names of specific email senders and recipients and identities of entities referenced and granting motion to redact such information). The SEC has indicated in the Investor Chart and the Telegram Chart the proposed name redactions in certain documents to which it does not object.[3]

However, Telegram has proposed further redacting investor identifying information for *all* investors, including those who played a further role in Telegram's offering, for example, by marketing Grams to others. Telegram has also proposed redacting identifying information for certain non-investor third parties who were otherwise involved in the offering or in the development of the TON Blockchain. The SEC objects to redacting the names of any investors or any non-investor third parties who have engaged in additional activities, such as marketing and selling Grams or Gram interests or developing applications for the TON ecosystem (including those whose efforts were or are coordinated with Telegram). The communications and other actions of those investors or third parties are highly relevant to issues relating to the Substantive Motions, including the "efforts of others" prong of the *Howey* test as to whether Grams are securities and whether Telegram's offering may qualify for an exemption from registration under the Securities Act of 1933.

Attached as Exhibit C is a table that lists the investor and non-investor third parties whose conduct in the offering involved more than merely investing and summarizes their roles. Because the actions of these third parties are at issue in the Substantive Motions, the presumption weighs heavily in favor of disclosure. Significantly, none of those investors or third parties have moved to seal or redact their names or articulated any privacy interests—it is Telegram who seeks to protect their unarticulated "privacy" interests despite the fact that many of these entities have made public statements connecting them to Grams and Telegram. The identities of the third parties in Exhibit C should therefore not be redacted.

---

[2]   Investors C and D did not file sealing motions, but their counsel informed the SEC that they request that any information identifying them as investors be redacted in any public filings. The SEC worked with counsel for Investors C and D and agreed to proposed redactions of investor identifying information from their documents. Documents reflecting such agreed upon redactions are being filed with the Court.

[3]   The SEC agrees to these and all other redactions identified herein for purposes of the Substantive Motions only. The balancing test may change as the case proceeds. For example, certain investors may be called to testify at trial. At that time, their identity as investors should be publically disclosed.

### B. Purported Confidential Business Information.

"[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Doe v. City of New York*, No. 15-CV-117 (AJN), 2019 WL 4392533, at *1 (S.D.N.Y. Sept. 13, 2019) (citing *Lugosch*, 435 F.3d at 123). Because the documents at issue in the Sealing Motions were all submitted to the Court by the parties in connection with moving for, or opposing, summary judgment, they are judicial documents, and there is a strong presumption in favor of public disclosure of these documents. *See In re Petrobras Sec. Litig.*, 393 F. Supp. 3d 376, 387 (S.D.N.Y. 2019) (citing *Giuffre v. Maxwell*, No. 18-2868, 2019 WL 1150037, at *1 (2d Cir. Mar. 11, 2019)). Judicial documents "should not remain under seal absent the most compelling reasons." *Joy*, 692 F.2d at 893. To rebut the strong presumption of access, a party seeking sealing has the burden to offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). Applying these standards, the SEC objects to most of the requests to seal internal investor memoranda and other business-related documents.

#### 1. Internal Investor Memoranda.

Investors B, E, F, G, H, X have moved to seal certain internal investment memoranda, or emails, containing the investors' investment analyses (identified in Table A) on the grounds that they are trade secrets or highly confidential business information and that making these documents public could be exploited by competitors and cause injury. Telegram joins in these motions and has also moved to seal investment memoranda of other investors who did not themselves move to seal these documents. *See* Table A. Except with respect to several limited exceptions, the SEC objects to sealing or redacting this information.

First, a substantial portion of these memoranda consist of summaries of Telegram's marketing materials, followed by an analysis of their investment prospects. While some of these analyses are more granular than others, or engage in more substantial or wider ranging considerations, none of them brings to bear unique investment algorithms or proprietarily derived investment formulas. Instead, they primarily consist of the type of thorough, but not novel or surprising, analysis one would expect any sophisticated, diligent investor to engage in. And while each investor argues vigorously that their investment analysis is unique such that its disclosure would give away the equivalent of trade secrets, in reality, especially when the various investment memoranda are viewed collectively, they are very similar in approach. Investors cannot reasonably lay any proprietary claim to the portions of these memoranda that essentially just summarize marketing material Telegram provided to them.[4]

Second, the SEC refers to all these investor memoranda in connection with its pending motions, including citing directly to portions of them in its Rule 56.1 statements of fact and its briefs (*e.g.*, Reply Brief, Dkt. 113 at 8-9). These documents are highly relevant to the SEC's

---

[4] Moreover, in considering whether sealing is appropriate, "an important consideration is, of course, whether the information sought to be kept confidential is already public." *United States v. Avenatti*, No. 19 Cr. 373, 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020) (citing *In re New York Times*, 828 F.2d at 116 (holding that "wholesale sealing" was not appropriate where "much of the ... material contained in the papers [in question] has already been publicized")). Here, most, if not all, of Telegram's marketing materials are available on the Internet.

argument that Telegram's offer and sale of Grams was an investment contract under *SEC v. W. J. Howey*, 328 U.S. 293 (1946), in part because the investors purchased Grams based on a reasonable expectation of profit based on the efforts of Telegram and others, including efforts after the blockchain's launch.  While the reasonable expectation of profit prong of the *Howey* test is an objective test, the expectations of profit by the sophisticated investors in this case should inform the Court's determination whether there was a reasonable expectation of profits based on Telegram's efforts to develop and launch the blockchain.  More importantly, a court conducting the *Howey* analysis must consider all the terms of the offering, the promises and representations made, and the nature of the instrument given by the promoter in commerce.  Thus, the investor memoranda—which contain highly relevant evidence of these sophisticated investors' expectations of profit and which in some instances are the only evidence of what Telegram communicated to potential investors—go to the heart of a central question before the Court: whether the Grams were part of an investment contract and therefore a security.  As such, they are judicial documents for which there is a strong presumption of public access.  *See, e.g., Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 167–68 (S.D.N.Y. 2018) (denying motion to seal where "[t]he documents comprise a significant proportion of the . . . record before the Court and they pertain to matters that 'directly affect' the Court's adjudication") (citations omitted); *Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 Civ. 4352 (PKC), 2011 WL 4336679, at *3 (S.D.N.Y. Sept. 15, 2011) (denying motion to seal compliance guidelines because the parties' summary judgment motions directly implicated the company's guidance on compliance, thereby raising a strong presumption of public access to these materials).  As the court explained in *Saks Inc. v. Attachmate Corp.*, No. 14 Civ. 4902 (CM), 2015 WL 1841136, at *17 (S.D.N.Y. Apr. 17, 2015), in declining to seal a firm's compliance policies and settlement offers:

> Significantly, not everything that a business would rather keep secret qualifies as the sort of information that the Federal Rules allow a litigant to keep secret.  The information that [defendant] principally seeks to keep under wraps is not the formula for Coca Cola or McDonald's Secret Sauce.  It is not a pattern or device of any sort.  And it is not a compilation of information, or research or development . . . . .  It goes without saying that this information is of no value to [defendant's] *competitors,* and . . . it mounts no effective argument about why public disclosure of this information would give other software sellers any advantage. Instead, [defendant] principally argues that disclosure of this information would give its *customers* information that they might be able to use to their advantage. . . . [Defendants] make no specific, and hence no convincing, argument about why their enforcement 'process' . . . . [is] or ought to be kept secret when [it is] the basis for claims asserted and adjudication in a court of law.

The cases Telegram and the investors cite to overcome the presumption of access that attaches to this information are unavailing.  In *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015), the court agreed with the parties and a third party that a non-party customer's internal corporate documents concerning investment strategies, information regarding proprietary modeling assumptions, customer names, and pricing information, overcome the presumption of public access and should be redacted.  Here, however, the investor memoranda do not disclose proprietary models, formulas, or pricing information such that the investors' business could be affected if competitors had them.  Rather, they are summaries of the Telegram offering materials and standard investment analyses that do not rise to the level of

trade secrets. *See also In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017) (redacting actual proprietary information); *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (redacting "highly proprietary" information about marketing strategies, product development, costs or budgeting).[5]

In addition, "that business documents are secret . . . does not automatically warrant" protection. *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). The party opposing disclosure must "make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id.*; *see also Salomon Smith Barney, Inc. v. HBO & Co.*, 98 Civ. 8721, 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001) ("Implicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public."). Here, no investor has described with sufficient specificity how they will suffer substantial injury if their investment memoranda are made public, particularly where the investments have already been made. *See Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010) (denying motion to seal the circumstances that gave rise to an employee termination where there was no evidence such disclosure would result in an injury sufficiently serious to warrant protection).

Merely articulating the factors they considered in making an investment is not proprietary and confidential information that can overcome the strong presumption of public access here. For example, in *Kulig v Midland Funding, LLC*, No. 13 Civ. 4715 (PKC), 2014 WL 8060586, at *1 (S.D.N.Y. Aug. 13, 2014), this Court denied a party's motion to seal documents it claimed contained proprietary and confidential information that would be valuable to their competitors in the debt collection industry. The Court held that information relating to defendants' policies regarding the calculation of statute of limitations was material to the judicial function of deciding a pending motion and denied defendants' motion to seal because there was no "particular and specific demonstration of fact showing disclosure would result in an injury sufficiently serious to warrant protection." *Id.*

Other information investors seek to seal exemplifies this. For example, Investor E has moved to seal PX28, an email chain containing questions Investor E put to John Hyman of Telegram on January 12, 2018, and Hyman's response, which includes declining to answer the investor's questions. Statements by Telegram to investors and investors' questions to Telegram do not reveal unique due diligence techniques or unique, proprietary investment strategies or analysis. Moreover, evidence of statements that Telegram made to prospective investors at the time of the Telegram offering and the types of information investors were looking for from Telegram are central to the issues before the Court.

There are two limited instances where an investor's memorandum contains arguably unique, proprietary investment analysis that goes beyond an analysis of the Telegram investment and reveals the investor's general approach to an investment area or specific due diligence guidelines. The SEC does not oppose redacting that information. Specifically, Investor F seeks

---

[5] And because the SEC agrees that these investor's names and their investment amounts can be kept under seal at this time, these documents will not reveal as to these investors "the terms of private securities transactions involving non-parties." *See In Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ. 4394, 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018).

Hon. P. Kevin Castel                                                                                   February 13, 2020
Page 7

to seal PX31, its five-page investment memo, in its entirety. Applying the analysis above, the SEC does not agree that the entire document should be sealed. Pages 1, 2, 3, and 5 contain a summary of the Telegram offering, information from Telegram's marketing materials, and some analysis of the investment opportunity and associated risks. These pages should not be redacted because this information is largely public and does not reveal unique due diligence techniques or unique, proprietary investment strategies or analysis. However, page 4 contains an investment thesis, and the SEC proposes to narrowly redact one paragraph that discusses the investor's particular investment strategy generally.

      Similarly, Investor X moved to seal PX32, a seven-page investment memorandum, which Investor X argues reveals its "investment criteria in the cryptocurrency space, the due diligence it performed on Telegram and its rationale for investing" and is "highly sensitive," competitive information. (Dkt. 149, Mem. of Law at 3). This memo largely contains a summary of the Telegram offering, comparisons to other blockchains and crypto-assets, and an analysis of the investment opportunity. Again, all of this information is relevant to the Substantive Motions but does not reveal unique, proprietary investment strategies or analysis. However, the SEC agrees that certain portions of this document can be narrowly redacted. The document contains a "Due Diligence Checklist" at page 0000006, which could divulge this firm's proprietary investment criteria to its competitors and cause competitive harm, and other specifics as to how Investor X internally funded its Gram investment. The SEC does not object to redacting these narrow portions and has proposed these redactions for the Court to consider.

      Finally, Telegram has additionally moved to seal PX30, PX33, and PX77, which are investment memoranda produced to the SEC by investors. The SEC provided notice to counsel for the Investors who produced PX30 and PX33, and each responded that they did not intend to move to seal these documents and that they agreed to the filing of these documents on the public docket with the SEC's proposed redactions only of investor identifying information. PX77 was produced to the SEC by a third-party investor who received it from ▓▓▓, an offshore entity involved in reselling interests in Grams in 2019. The producing party told the SEC that it did not intend to move to seal this document and agreed to the SEC's proposed redactions. Accordingly, because Telegram has no rational countervailing interest in keeping these documents sealed, the SEC asks the Court to order these documents be filed on the public docket with appropriate redactions for investor identifying information.[6]

### 2. Other Business Documents

      First, Investor A seeks to seal PX1-B and PX1-D, notes of an Investor A employee's call with Hyman of Telegram on two separate occasions. The SEC opposes these redactions. As this employee stated in his own declaration, "[I]t was my practice to try to type detailed and contemporaneous notes of calls I have about investments and email those notes to myself at

---

[6] A number of investors claim that they have been injured by insufficient redactions of identifying information in filings in this case. The SEC has attempted in good faith to correct all such inadvertent redaction or metadata errors. However, the names of numerous venture capital firms investing in Gram offering have been made public by the press since the time of the Telegram offering in February 2018, prior to all such filings in this litigation. And while it is understandable that investors may generally wish to keep their investment positions private, there is nothing inherently harmful to a business reputation by merely being identified as an investor in the Telegram offering nor has any investor provided any evidence that they have actually been harmed financially by any such disclosures.

Hon. P. Kevin Castel                                                                                          February 13, 2020
Page 8

some later date." PX1 at ¶ 11.  The information contained in those notes includes what Hyman told Investor A about the Telegram investment opportunity and its messenger platform (in PX1-B) and what Hyman told Investor A about Telegram several months after the investment (PX1-D).  That information is highly relevant to the SEC's arguments that Telegram "sold" investment contracts, including Grams, to investors in 2018, and that investors reasonably expected to profit from selling Grams in secondary markets based on statements from Telegram.  Moreover, the information that investor A seeks to protect is not akin to trade secrets or "sources of business information that might harm a litigant's competitive standing," to which courts have denied public access.  *Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715 (PKC), 2014 WL 8060586, at *1 (S.D.N.Y. Aug. 13, 2014) (quoting *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978)).  The Court in *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017), which Investor A cites in support of its motion, found that the nature of the information at issue, which concerned internal pricing strategies and competitive pricing data, was sufficiently sensitive to warrant redaction.  Here, by contrast, these documents reflect contemporaneous notes of what a Telegram employee said to an investor and do not reflect any proprietary or otherwise secret internal information about Investor A.  Therefore, any countervailing privacy interests are low and the Court should deny Investor A's motion to seal these documents.

      Next, Investor Z has moved to seal PX194, an email chain between several prospective investors at venture capital firms discussing the Telegram offering.  Investor Z argues that the document identifies Investor Z as a Grams purchaser, describes in detail the information Investor Z gathered from its network as part of its analysis of the Grams purchase, and contains trade secrets. (Dkt. 154, Mem. of Law at 6.)  The SEC has agreed to redact Investor Z's name but disputes that the email discussion in this chain involves trade secrets.  To the contrary, the email chain largely contains an analyst's scathing critique of the Telegram offering.  That analyst published that same critique in a blog post on the internet entitled "600 Million TONs of Crap." (*See* PX145, also available at https://tokeneconomy.co/a-ton-of-crap-b1e264c36802).  The discussion of the Telegram investment opportunity among the firms also does not reveal unique due diligence techniques or proprietary investment strategies or analysis and is relevant to the Substantive Motions.  PX194 should therefore be publically disclosed, except as to certain personal identifying information.

      Finally, Telegram has moved to file Exhibits PX55 and PX123 under seal and to place them on the public docket with redactions, arguing that they contain "future business plans and strategies of Defendants, the release of which could harm Defendants' competitive standing." (Dkt. 158, Mot. at 4.)  The SEC opposes these redactions.  In PX55, Telegram seeks to redact a statement that goes to the heart of the Substantive Motions: a statement from a third-party digital asset exchange regarding working together with Telegram in the future.  Telegram offers no specific evidence of how releasing this information about the possibility of working with a digital asset exchange could harm Telegram's competitive standing.  Similarly, in PX123, Telegram seeks to redact an investor's notes of a call with Shyam Parekh of Telegram on October 18, 2019, where Parekh provided a "business update."  The SEC provided notice to this investor that it intended to file this document on the public docket, redacting only personal identifying information, and the investor agreed.  Statements that Telegram employees made to investors, including about Telegram's messaging activity and future expenditures, go to the heart of the questions before the Court in the Substantive Motions.

Hon. P. Kevin Castel                                                          February 13, 2020
Page 9

### C.   Banking Records

The SEC does not oppose Telegram's motion to file PX136 (consisting of 62 pages of bank account statements) under seal in its entirety, on the condition that the SEC can rely on information from PX136 in its public filings.  We think this is consistent with Telegram's position.  For example, the SEC has cited to PX136 in paragraph 183 of its Rule 56.1 Statement (Dkt. 80) and paragraph 109 of its Rule 56.1 Counter-Statement (Dkt. 99) and Telegram has not moved to redact those references.  The information in those paragraphs (and similar information in any future filings) should be publically available without redactions, subject to the strictures of Fed. R. Civ. P. 5.2.  (*See* Def. Mot. at 5.)  The SEC reserves the right to oppose the sealing of PX136, however, if Telegram takes a contrary position.

Telegram also seeks to seal PX115, a one-page document reflecting certain payments to an investor who appears to have participated in marketing and selling Grams to third parties.  Yet this document can be easily redacted to remove any sensitive banking information covered by Fed. R. Civ. P. 5.2.  The document should therefore be publically filed with the SEC's proposed redactions.

For these reasons, the SEC respectfully requests that the Court deny the non-parties' and Telegram's motions to seal or redact documents except to the extent the SEC consents, as set forth in more detail in the Investor Chart and the Telegram Chart.

 

                                                                                Respectfully submitted,

                                                                                /s/ Kevin P. McGrath
                                                                                Kevin P. McGrath
                                                                                 Alison R. Levine
                                                                                Jorge Tenreiro
                                                                                 Landan Stewart

cc:     Alexander Drylewski, Esq.