# Skadden, Arps, Slate, Meagher & Flom LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2129
DIRECT FAX
(917) 777-2129
EMAIL ADDRESS
ALEXANDER.DRYLEWSKI@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

February 14, 2020

**VIA ECF**

The Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

RE:    *SEC v. Telegram, et al.*, No. 19-cv-9439(PKC) (S.D.N.Y.)

Dear Judge Castel:

Pursuant to the Court's Order (ECF No. 183), we respectfully write in response to the February 10, 2020 letter submitted by Plaintiff Securities and Exchange Commission ("SEC"). The SEC's letter seeks to create a material issue of fact where none exists by highlighting out-of-context deposition testimony by John Hyman and issues that are irrelevant to the legal questions in this case.

***Telegram's Statements About its Development Team Are Irrelevant Under* Howey**

First, the SEC asserts that Mr. Hyman confirmed that Telegram's development team was a "major selling point in the offerings." It should come as no surprise that the bona fides of Telegram's development team would be discussed in the context of the Private Placement, which Defendants expressly treated as a securities offering and whereby Telegram committed to attempt to build the TON Blockchain with investors' funds. (Def. Opp. Br. 21.)[1] Even assuming such statements are relevant to what *future* Gram purchasers will expect following launch of the blockchain — *i.e.*, after all of Defendants' promises under the Purchase Agreements have terminated (JX11 §7.1(a)) — the SEC does not explain why they meaningfully differ from the way any other manufacturer of a consumer product may tout its ability to make a useful and desirable product.

***The SEC's Position Regarding When Grams Were "Sold" Is Irrelevant and Incorrect***

Second, the SEC argues that Mr. Hyman's testimony supports its view that Defendants "sold" Grams to investors in 2018. This is factually inaccurate and legally irrelevant. (*See* Def. SJ Br. 7; Def. Opp. Br. 12-16; Def. Reply Br. 1.) Putting that aside, Mr. Hyman's testimony does not support the SEC's contention. Although the SEC states that "Telegram viewed the moment an investor signed an 'Indication of Interest' letter as the moment

---

[1] Mr. Hyman also reconfirmed that all promotional materials were provided to private investors under expectations of confidentiality, and all private investors further disclaimed any reliance on them in their Purchase Agreements. (Ex. 1 at 175:3-177:23.)

The Hon. P. Kevin Castel
February 14, 2020
Page 2

Telegram had sold Grams and the steps remaining to perfect the transaction as 'a mechanical requirement,'" in fact, Mr. Hyman was testifying about the steps to accept the investor into the Private Placement, including execution of the Purchase Agreements and completion of the Know-Your-Customer process.  (Def. 56.1 ¶¶ 209-212; Ex. 1 at 53:15-54:22.)  That does not mean the future creation and delivery of Grams was viewed as "mechanical" by anyone. Rather, the private investors and Telegram took on significant risk that Telegram's team would not be able to build a functioning TON Blockchain platform and thus deliver Grams, let alone by the Deadline Date in the Purchase Agreements.  (Def. Reply Br. 13.)  These were significant risks and contingencies that some potential purchasers chose not to assume.  (*Id.*)

### The SEC's Arguments About Liquidity and Custody Solutions Are Misplaced

Third, the SEC asserts that "a number of" investors were "committed to use Gram Vault" for "'market making' and 'liquidity' services."  This assertion, even if true, is irrelevant.  Gram Vault is an unaffiliated third party (JSF ¶¶ 183, 199, 202; *see also* Ex. 3, Parekh Dep. at 104:17-106:6), and as Mr. Hyman testified, Gram Vault has offered custody solutions to private investors who may need a cryptographic wallet to secure their Grams upon launch, but was not a "market maker" itself.  (Ex. 1 at 125:15-126:4; 126:19-128:7).  It is hardly surprising that entities like Gram Vault may be looking to capitalize on the anticipated launch of the TON Blockchain by creating their own profit-seeking businesses. That is the entire point of the decentralized blockchain, and the incentive for parties to develop such products and services is one reason why post-launch Grams should not be considered "securities."  (Def. SJ Br. 32; Def. Reply Br. 8-9, 10.)  Moreover, as SEC Commissioner Peirce has explained, liquidity and secondary trading are recognized as "necessary" to the consumptive use of digital tokens, "both to get tokens into the hands of people that will use them and offer developers and people who provide services on the network a way to exchange their tokens for fiat or crypto currency."  (ECF No. 177 Ex. A at 7-8; *accord* McKeon Ex. 1 ¶ 72 ("In order to facilitate purchases for consumptive uses, it is important that the asset is listed at trading venues").)

### The SEC's Claim that Telegram Sold Grams to "Underwriters" Is Unfounded

Fourth, the SEC continues to fail to articulate how a finder's fee agreement turns a party into an "underwriter."  As the record reflects, these agreements were used to help Telegram replace some Purchase Agreements that had fallen through after they were executed, (Ex. 2 Durov Dep. at 170:5-171:12), and permitted the finder to identify potential investors located only in agreed-upon jurisdictions (which excluded the U.S.) subject to all applicable laws and regulations.  (PX112; PX138; PX174.)  As Mr. Hyman also confirmed, "Telegram never authorized anybody, [in] Russia or anywhere else, to create marketing materials."  (Ex. 1 at 172:18-20; *see also* Musoff Ex. 1, Durov Depo Tr. at 176:2-7.)

### The SEC's Speculation Regarding "Affiliated" Third Parties Is Incorrect and Insufficient

Finally, the SEC claims that Mr. Hyman's testimony "confirmed" that "investors reasonably expected third parties affiliated with Telegram to continue to make efforts on the

The Hon. P. Kevin Castel
February 14, 2020
Page 3


TON project even after the TON ecosystem launches." There is no basis in the record to claim that any entity mentioned in the SEC's letter is "affiliated with Telegram," let alone that Telegram marketed such third parties' efforts to potential Gram buyers, the relevant inquiry under *Howey*. To the contrary, these entities are all unaffiliated. (JSF ¶¶ 182, 199, 200, 202, 203.)[2] Although the SEC attempts to connect Telegram and Gram Vault because Mr. Hyman went to work at Gram Vault a year after leaving Telegram, Mr. Hyman testified that he "was always very clear with people" that he "had left Telegram the year before, [and he] was helping a couple of businesses who were looking to be involved in the [TON] ecosystem and network." (Ex. 1 at 140:1-13.) Similarly, Telegram has explained that "TON Labs [is] an independent company who have been assisting Telegram with the testing [of the TON testnet]. They aren't a subsidiary or affiliate of Telegram," and TON Labs has publicly confirmed the same. (PX110; *see* Ex. 3, Parekh Dep. 104:17-106:6; https://cryptobriefing.com/telegram-ton-labs/.) In any event, TON Labs is only one of many third party developers contributing to the TON blockchain, which has been fully tested and is ready to launch. (*See* Drylewski Ex. 2, Durov Dep. at 258:9-14, 316:14-24.)

The SEC also takes liberties with the content of Exhibit B to its letter, characterizing it as a "June 7, 2019 email of Hyman to Telegram investor." To the contrary, this is a purely internal email at one investor from November 2018 and does not appear to involve Mr. Hyman at all. It also bears noting that Exhibit B undercuts the SEC's positions on summary judgment because it reflects that: (1) some Private Placement purchasers were interested in the consumptive use of Grams by "staking" their holdings as validators on the platform; and (2) Defendants canceled Purchase Agreements of certain purchasers who were "busted" for violating their contractual warranties by seeking to resell their interests in Grams.

In sum, none of the issues raised by the SEC's letter are relevant under *Howey*, which focuses on what Defendants promised purchasers. (Def. Reply at 3-4); *see, e.g., Davis v. Rio Rancho Estates, Inc.*, 401 F. Supp. 1045, 1050 (S.D.N.Y. 1975).[3]

Respectfully submitted,

Alexander C. Drylewski

cc:     All counsel of record (via ECF)

---

[2] "Blackmoon Crypto" has publicly stated that it has no relation to Ilya Perekopsky nor anyone else employed by Telegram. (*See* PX107.)

[3] Although the SEC suggests that it may seek to reopen depositions, any such request would be without merit. The documents to which the SEC cites on this point appear to be incorrect, as Dkt. No. 121-2 was produced by the SEC to Defendants and Dkt. No. 121-3 was produced by Defendants in December 2019. Defendants stand ready to respond should the SEC formally make such a request.