

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE
200 VESEY STREET, ROOM 400
NEW YORK, NY 10281-1022

February 18, 2020

By ECF and fax

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    SEC v. Telegram Group Inc. & TON Issuer Inc., No. 19 Civ. 9439 (PKC)

Dear Judge Castel:

    Plaintiff Securities and Exchange Commission (the "SEC") respectfully submits this letter brief in opposition to: (1) the motion of the TON Community Foundation ("Foundation"), filed on February 14, 2020, for leave to file an *amicus curiae* ("amicus") brief in this case, Dkt. 192; Dkt. 192-1 ("Foundation Br."); and (2) the Foundation's motion for leave to file a corrected amicus brief, correcting certain typographical errors, filed on February 17, 2020, Dkt. 195.

    The Foundation claims to be "a non-profit association of Telegram Open Network ("TON") ecosystem participants, including developers, validators, founders and employees of TON-based commercial and non-commercial projects." Dkt. 192 (Notice of Mot.) at 1. The Foundation states: "The purpose of the Foundation's brief is to state the position of TON Blockchain developers (sic) the TON Blockchain is fully operational, with a state-of–the art prelaunch security and a developed suit (sic) of services, and is ready to be launched in a matter of seconds." *Id.* And, indeed, the brief consists of a litany of factual claims regarding the alleged state of the TON Blockchain that are not attributed to any specific person, not supported by any evidence, and all explicitly respond to the Expert Report of Professor Maurice Herlihy, one of the SEC's designated experts, regarding the TON Blockchain.

    The SEC respectfully requests that the Court deny the Foundation's motions to file an amicus brief for four reasons. First, the proposed amicus brief does not address issues unaddressed by the parties: Telegram, ably represented by experienced counsel, has already submitted three expert reports regarding the TON Blockchain and Grams, including two expert rebuttal reports in response to Professor Herlihy's report. Second, the conclusory, unsupported factual claims put forward by the Foundation's lawyer should not be given any evidentiary weight by the Court, because the amicus brief makes numerous factual claims that are not attributed to any specific person, not supported by any underlying verifiable evidence, and not

subject to cross-examination or verification under the Federal Rules of Evidence and applicable caselaw. Third, the Foundation includes individuals and entities with a significant financial interest in the outcome of this litigation, including certain investors in Grams, such that the Foundation is not a disinterested party and is essentially seeking to intervene and offer unsworn evidence under the guise of an amicus brief. Finally, given the amicus brief's extensive unsworn and unverified factual claims two business days before the preliminary injunction and summary judgment hearing set for February 19, 2020, the brief unfairly prejudices the SEC, which is unable to adequately respond to all of the factual claims before the hearing.

Standard for Considering Amicus Briefs

"There is no governing standard, rule or statute 'prescrib[ing] the procedure for obtaining leave to file an amicus brief in the district court.'" *Onandaga Indian Nation v. State of New York*, No. 97–CV–445, 1997 WL 369389, at *2 (N.D.N.Y. June 25, 1997) (quoting *United States v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991)). As such, the decision to grant leave to file an amicus brief is in a court's discretion. *Jamaica Hosp. Med. Ctr., Inc. v. United Health Gp., Inc.*, 584 F. Supp. 2d 489, 497 (E.D.N.Y. 2008).

The Federal Rules of Appellate Procedure include a rule for filing amicus briefs during appeals. Under Rule 29, "[a]ny [non-U.S. agency or state] amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing." Fed. R. App. P. 29(a). "A court may grant leave to appear as an amicus if the information offered is 'timely and useful.'" *Waste Mgmt. of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995) (citing *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J.1985), *aff'd.*, 782 F.2d 1033 (3d Cir. 1986)).

The Seventh Circuit has set forth a test for deciding when an amicus brief is useful:

> An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case ... or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an amicus curiae brief should be denied.

*Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997).

"The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties." *Auto. Club of N.Y., Inc. v. Port Authority of N.Y. and N.J.*, No. 11 Civ. 6746, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (citing *United States v. El–Gabrowny*, 844 F. Supp. 955, 957 n.1 (S.D.N.Y.1994)). But "[t]he named parties should always remain in control, with the amicus merely responding to the issues presented by the parties. An amicus cannot initiate, create, extend, or enlarge issues . . . ." *Waste Mgmt.*, 162 F.R.D. at 36 (quoting *Wyatt by and through Rawlins v. Hanan*, 868 F. Supp. 1356, 1358–59 (M.D.Ala.1994)); *Andersen v. Leavitt*, NO. 03–CV–6115, 2007 WL 2343672, at *2 (E.D.N.Y. Aug 13, 2007) ("[A]n amicus curiae brief should not be used to address wholly new issues not

raised by the parties.") (internal quotation marks and citation omitted); *see also Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.* 12 Civ. 7935, 2014 WL 265784, at *1-2 (S.D.N.Y. Jan. 23, 2014) (adopting this approach).

These considerations are particularly important in an SEC enforcement action such as this one, where courts are skeptical of attempts by third parties to embroil themselves in the litigation. *See, e.g.*, *SEC v. Bear, Stearns & Co., Inc.*, No. 03 Civ. 2937, 2003 WL 22000340, at *2, 6 (S.D.N.Y. Aug. 25, 2003) (noting courts refuse request to intervene in SEC cases "where such intervention would cause undue delay, complexity or confusion in a case" and refusing both requests to intervene and to act as amicus curiae noting that the proposed amici were not an "objective, neutral, dispassionate 'friend of the court,'" and that "[c]onferring *amicus* status on such partisan interests is inappropriate" (quoting *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972)); *see also Gotti*, 755 F. Supp. at 1159.

The Court Should Deny the Foundation's Motion to File a Last-Minute Amicus Brief <u>Laden with Unsworn Evidentiary Claims</u>

First, the proposed amicus brief addresses purported factual arguments that the parties have addressed at length in their own submissions. Telegram, ably represented by experienced counsel, has vigorously defended this lawsuit, including by submitting a 76-page Expert Report of Stephen McKeon, dated December 27, 2019, concerning the TON Blockchain and Grams. *See* PX126.[1] Telegram has also submitted two expert reports in rebuttal to the report of the SEC's expert, Maurice Herlihy. *See* PX129, PX198. In addition, Telegram, as the TON Blockchain's developer, is in the best position to offer evidence as to the state of the TON Blockchain (though it has tellingly not done so). Furthermore, the Foundation's amicus brief repeats arguments already made by Telegram's experts, such as challenging Professor's Herlihy's concern that the TON Blockchain lacks adequate security proofs, *compare* Foundation Br. at 14-23 *with* PX198 (Expert Rebuttal of Lewis-Pye) at 5-13, and thus is duplicative of Telegram's expert reports.

Second, the amicus brief also includes many broad factual claims, not attributed to any specific person, that the Foundation asks the Court to accept on their face as evidence and to which the Court should not give any weight. For example, the Foundation provides a list of 25 examples of "suitse[s] of services, tools and smart contracts that successfully run on the current testnet implementation of the Blockchain and will eventually be purchasable by Grams." Foundation Br. at 23-24. However, the brief lacks any description as to what specific services, tools or smart contracts are contained on the listed internet sites, who created these items, what their expertise to do so is, how developed the items are, what testing has been done to determine how well they will in fact run on the actual TON Blockchain when launched, which such items will be purchasable by Grams, and the likelihood that anyone will be willing to buy Grams to purchase any such services. In addition, the brief seeks to rebut Professor Herlihy's concerns that the "publicly-released 'testnet' version of the TON Blockchain code . . . lacks critical components that would be required in a fully developed and running system," *id.* at 4 (quoting

---

[1]      Citations to "PX" refer to the Exhibits to the Declaration of Ladan Stewart in Support of the SEC's Motion for Summary Judgment (Dkt. 81) and the Declaration of Ladan Stewart in Opposition to Telegram's Motion for Summary Judgment (Dkt. 97).

from Herlihy Report), by making more unattributed, unverified conclusory claims, *see, e.g.*, *id.* at 9-13.[2] The brief further alleges, without any factual support or attribution, that "many additional developed services are stored in private repositories." *Id.* at 24.

This type of unsworn, unattributed and unverified information, replete throughout the brief, is entitled to no weight by the Court, particularly given that the SEC has not had a reasonable opportunity to test the information. This sort of unsworn "quasi" expert opinion does not comply with Fed. R. Civ. P. 26(a)(2), regarding disclosure of expert testimony, and is not subject to testing under Fed. R. Evid. 702 or *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Neither Telegram nor the purported amici should be able to introduce evidence or expert opinions and conclusions through the improper channel of an amicus brief.

Third, the Foundation includes individuals and entities with an interest in the outcome of this litigation. Indeed, the Foundation's claim that its members are not affiliated with Telegram does not reveal the entire picture. Three of the purported contributors to the brief are employees of TON Labs. Foundation Br. at 4. One of the owners of TON Labs, Alexander Filatov, is an indirect investor in approximately $95 million of Grams. PX92, PX96-99. Filatov and Michel Lejnev, another indirect Initial Purchaser, *see id.*, are co-founders of Gram Vault, a proposed Gram custody company. PX89 at 4, 8. More importantly, Telegram licensed TON Labs' "sister company," PX94, to use the TON name, *see* Joint Stips. of Undisputed Facts (Dkt. 72) at ¶ 178. TON Labs, also founded by Filatov and Lejnev, Dep. of John Hyman (Dkt. 180-1) at 151:12-17, PX92, PX99, hired one of the key Telegram employees involved in the Telegram offering, John Hyman, *id.* at 10:5-7; and Telegram employees such as Shyam Parekh referred questions from Initial Purchasers about the TON Blockchain to TON Labs. PX110.

Another of the Foundation's members is DaVinci Capital, through Oleg Jelezko. *See* Members, TON Community Foundation, https://ton-foundation.org/members.html (last visited Feb. 18, 2020). As the SEC has shown, Mr. Jelezko and DaVinci entered into purchase agreements with Telegram totaling $72 million worth of Grams, PX171-173, as well as into a finder's fee agreement with Telegram to find other investors, PX174, and created marketing decks about the expected prices for Grams post-TON launch. PX 117. "Conferring amicus status on such partisan interests is inappropriate." *Bear, Stearns*, 2003 WL 22000340, at *6 (quoting *Long Island Soundkeeper Fund, Inc. v. New York Athletic Club*, No. 94 Civ. 0436, 1995 WL 358777, at *1 (S.D.N.Y. June 14, 1995) ("Denial of leave to appear as amicus in a situation such

---

[2]  In attempting to rebut Professor Herlihy, the Foundation concedes that neither Telegram nor anybody else can predict with any certainty whether the TON Blockchain will be fully functional immediately post-launch. Foundation Br. at 14 ("As shown above, Prof. Herlihy admittedly could not understand the TON Blockchain protocol. The people who do – the developers represented by the Foundation – do not try to predict if TON will meet its performance and scalability goals simply because it is impossible to predict for this or any other system or software."). Moreover, even if the TON Blockchain is "fully operational" (whatever that may mean) and ready to launch "in five seconds" (presumably such that it can support the transfer of Grams to it), that does not eliminate the likelihood that purchasers of Grams in the secondary market will still have a reasonable expectation that their Grams will increase in value based on the essential managerial and entrepreneurial efforts of Telegram and other third parties to increase demand for Grams.

as this, in which the applicant appears to have its own particular interests in the outcome of the litigation, is far from unprecedented."))).

Finally, particularly given the unsworn, unverified claims described above, the Foundation's eleventh-hour amicus brief unfairly prejudices the SEC, which does not have sufficient time to respond to the brief's factual claims. In the little time the SEC has had to look into the numerous factual claims in the brief, the SEC has some concerns about their accuracy. For example, the Foundation claims that there are two working versions of the TON Blockchain testnet, Br. at 17, and suggests that the "detected differences in these separate implementations have greatly contributed to the TON Blockchain's reliability and dependability." *Id*. However, the TON Labs version of the testnet appears to have been uploaded approximately two weeks ago, at least calling into question how long the two purported versions have been available for comparison testing and debugging.

For all the foregoing reasons, the SEC respectfully requests that the Court deny the Foundation's motion to file an amicus brief.[3]

						Respectfully submitted,

						/s/ Kevin P. McGrath
						Kevin P. McGrath

cc:	Alexander Drylewski, Esq.
	Counsel for Defendants

	Dimitry Joffe, Esq.
	Counsel for TON Foundation Community

---

[3] Should the Court grant the Foundation's motion and accept its amicus brief, the SEC respectfully requests permission to submit a rebuttal expert report and to depose any persons claimed to be the source of the statements contained therein.