

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

February 18, 2020

Eva Ciko Carman
T +1 212 596 9039
eva.carman@ropesgray.com

**BY ECF**

The Honorable P. Kevin Castel
Daniel Patrick Moynihan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1412

Re: **Securities and Exchange Commission v. Telegram Group Inc. and TON Issuer Inc. 19-cv-9439; Non-Party Investor A's Application to Seal**

Dear Judge Castel:

      We write on behalf of non-party Investor A in reply to the SEC's February 13 omnibus response (ECF No. 190) to sealing applications filed by Investor A (ECF No. 135), other non-parties (ECF Nos. 106, 138, 140, 144, 149, 153), and Telegram (ECF No. 159).  The substance of the dispute between the SEC and Investor A pertains to certain redactions on two documents: PX1-B and PX1-D, both of which contain internal notes of an employee of Investor A during the process of researching and diligencing an investment in Grams.[1]  As with the non-party investor information that the SEC sought to seal earlier in this case, none of the Proposed Redacted Material on PX1-B and PX1-D has been cited or quoted in any legal brief filed by any party.  *See* ECF No. 28 at 4 (arguing that sealing the redacted material is appropriate because the SEC did not cite any of the redacted material in its memorandum of law).

      At a minimum, Investor A respectfully requests that the Court defer judgment on Investor A's sealing application until after the Court has ruled on the pending substantive motions so that the Court can evaluate whether the Proposed Redacted Material in PX1-B and PX1-D played any role in the Court's exercise of its Article III authority.

---

[1] The SEC also objects to redactions to a quote from each of PX1-B and PX1-D that appear in two paragraphs in the Plaintiff's 56.1 counterstatement and the Defendants' response thereto.  *See* ECF No. 99 at ¶¶ 18, 98; ECF No. 120 at ¶¶ 18, 98.  In addition, the SEC states that it agrees with Investor A's proposed redactions to PX1-E, ECF No. 190-1 at 2, but the SEC's submission to the Court appears to inadvertently omit one redaction that Investor A proposed.

ROPES & GRAY LLP

- 2 -                                                                                                                  February 18, 2020

I.   **The Legal Standard**

As an initial matter, the SEC's omnibus opposition conflates the legal standard for sealing applications by parties and non-parties. The SEC does not dispute that Investor A is a non-party to this case and the law is clear that a non-party's privacy interests are entitled to great weight. *See, e.g.*, *Doe v. City of New York*, No. 15-cv-117, 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019); *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y. 2011). By filing an omnibus response to the sealing applications of both Defendants and the non-parties, the SEC blurs this significant distinction. Indeed, only three of the cases cited by the SEC even address sealing requests by non-parties and none of those cases are helpful to the SEC's position here.

In addition, to the extent the SEC argues that every piece of paper is automatically a "judicial document" simply because it was filed by a party as an exhibit to a declaration that is nominally in support of or in opposition to summary judgment, that is not the law. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.").

For a more detailed recitation of the applicable legal standard, Investor A respectfully refers the Court to its original submission. *See* ECF No. 135 at 2–5.

II.  **Investor A's Privacy Interests Outweigh Any Presumption of Public Access to the Proposed Redacted Material**

A.   **The Proposed Redacted Material on PX1-B and PX1-D Is Not Relevant**

As set forth in more detail in ECF No. 135, even assuming, *arguendo*, that PX1-B and PX1-D are judicial documents and that a *Lugosch* weighing test is appropriate, PX1-B and PX1-D's relevance to the pending motions is limited. The SEC does not dispute that the portions of PX1-B and PX1-D that Investor A seeks to redact are not quoted or cited in any legal brief filed by any party. This is compelling evidence that the Proposed Redacted Material on PX1-B and PX1-D is not relevant to, or at least not important to, resolution of any pending motion.

The SEC argues that PX1-B and PX1-D contain notes of what John Hyman of Telegram told an employee of Investor A that are relevant to the argument that Telegram "sold" investment contracts to investors in 2018 and that investors "reasonably expected to profit from selling Grams in secondary markets based on statements from Telegram." ECF No. 190 at 8. Even accepting this characterization, Defendants admit that Telegram "sold" investment contracts and that investors hoped to profit, so these issues are not in dispute.[2] Similarly, an employee of Investor A submitted

---

[2] *See* ECF No. 93 at 26 ("[T]he SEC puts forward a number of arguments as to why the Private Placement purchasers expected profits from the efforts of Defendants, which revolve around

ROPES & GRAY LLP

- 3 -					February 18, 2020

an affidavit attesting that one reason Investor A "invested in the [Grams] was to make a profit." ECF No. 81, PX1 at ¶ 14. Exhibits PX1-B and PX1-D add nothing more to the analysis of these issues and the SEC has not put forth a credible reason as to why these internal notes are sufficiently relevant to warrant the erosion of third-party privacy interests, especially since none of the Proposed Redacted Material on either document was cited in any party's legal briefs. Quite simply, the Proposed Redacted Material on PX1-B and PX1-D has, at best, extremely limited relevance.

### B. The Redacted Portions of PX1-B and PX1-D Contain Highly Sensitive Proprietary Information

The SEC argues that notes of a conversation between a potential investor and a Telegram employee cannot be confidential to the investor because they reflect information that the potential investor was told by a third party. That is not the law. Courts regularly hold that research and diligence constitutes protectable information even though research and diligence almost always involves obtaining information from an outside source. For example, in *New York v. Actavis, PLC*, the court sealed "documents and unpublished drafts" containing "non-public strategies," finding that sealing was warranted because the information belonged to a company "engaged in a highly competitive industry" and the company had historically "deliberately . . . . shielded such information from its competitors." 2014 WL 5353774, at *3 (Oct. 21, 2014); *see also Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999) (describing "confidential research" as a category of information that is "commonly sealed.").

The SEC suggests that the notes at issue are akin to a transcript because the note-taker affirmed that his notes were "detailed and contemporaneous." ECF No. 190 at 8. That is not the case as even "detailed and contemporaneous" notes reflect the employee's judgment and mental impressions on what information warrants recording, his mental process in assessing the various factors related to an investment opportunity, his process of weighing such factors, and the confidential and specific diligence steps that Investor A may take. These decisions, analyses, and mental processes are precisely what constitute Investor A's proprietary investment strategy, and are all central to Investor A's competitive standing in the industry. This is what trade secret law aims to protect.

---

communications between Telegram and these private purchasers two years ago and under expectations of confidentiality. To start, all of these arguments apply to the Private Placement purchasers and Purchase Agreements, which Defendants agree should be treated as investment contracts — indeed, that is why the Private Placement was treated as a security and was conducted pursuant to exemptions from registration."); *id*. at 7 ("[T]he SEC advocates at length for the unremarkable proposition that the Private Placement investors hoped to profit from their Purchase Agreements. Of course they did.")

ROPES & GRAY LLP

- 4 -                                                                                                  February 18, 2020

The employee of Investor A who took the notes at issue had every reasonable expectation to assume that his internal thought-process would remain confidential. Conversely, requiring public disclosure of these internal notes taken in connection with the investigation of a new potential investment would divulge Investor A's confidential strategy, analysis, and approach. Where, as here, internal research and diligence notes are not those of a party to the litigation, are not as reliable as a verbatim transcript, and add no cumulative value beyond what has already been established in the litigation, their utility plainly cannot outweigh the strong interest in protecting the privacy of non-parties.

The SEC attempts to argue that the information Investor A seeks to seal is not "akin to trade secrets or 'sources of business information that might harm a litigant's competitive standing,' to which courts have denied public access." ECF No. 190 at 8. But courts have consistently denied public access to protected business information including "confidential research, development, or commercial information," specifically noting that this "open-ended series of terms . . . . need not be limited to true trade secrets." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (internal quotations omitted).

The SEC cites *Saks v. Attachmate* to argue that the information Investor A seeks to seal is akin to the "compliance policies and settlement offers," which the court in *Saks* declined to seal, finding that it was dissimilar to the definition of a trade secret and that defendants made no showing in support of a possible competitive harm. No. 14-cv-4902, 2015 WL 1841136, at *17 (S.D.N.Y. Apr. 17, 2015). However, Investor A's specific and confidential research, diligence, and analysis that it engaged in as part of its confidential and proprietary investment strategy fits squarely into the definition of a trade secret, which *Saks* defines as "[a] compilation of information which is used in one's business, and which gives . . . . an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* at *17 (citing Restatement (First) of Torts § 757 cmt. B). Further, unlike defendants in *Saks*, Investor A has demonstrated that it operates in a highly competitive industry, and disclosure of such information would be detrimental to its business because it would allow competitors to exploit its proprietary investment approach.

The SEC also attempts to distinguish the information at issue here from the internal pricing strategies and competitive pricing data that warranted sealing in *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64 (S.D.N.Y. 2017) by arguing that the information in the Proposed Redacted Material is not "internal" and "do[es] not reflect any proprietary or otherwise secret internal information about Investor A." ECF. No. 190 at 8. However, the pricing information at issue in *Digital Music* is not solely "internal" information either and confidential research information can absolutely constitute proprietary information even if obtained from third parties. *See, e.g.*, *Vesta Corset Co. v. Carmen Founds.*, No. 9-cv-5139 (WHP), 1999 WL 13257, at *2 (S.D.N.Y. 1999) (refusing disclosure of confidential commercial information including ". . . .dealings with a common customer.").

ROPES & GRAY LLP

- 5 -                                                                February 18, 2020

      The only three cases that the SEC cites that involve sealing applications by non-parties do not support the SEC's position here.  First, the decision in *Newsday LLC v. Cty. of Nassau* supports Investor A's position.  730 F.3d 156 (2d Cir. 2013).  The *Newsday* court granted a non-party's request to seal portions of a document, explaining that "it would be absurd" to conclude that a court must place the entirety of a "lengthy, sensitive document" into the public record where it contained "confidential material" that was "not at issue in the [court] proceeding."[3]  *Id*. at 167.  The SEC cites *United States v. Avenatti* for the uncontroversial position that, in evaluating a sealing application, the Court should consider whether the information sought to be sealed is already public.  No. 19-cr-373, 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020).  The SEC does not argue, however, that the Proposed Redacted Material on PX1-B and PX1-D is already public.  Finally, the SEC cites *Salomon Smith Barney, Inc. v. HBO & Co.*, which holds that sealing is appropriate when a non-party makes "some showing that the disclosure of the information in question would cause some harm, either to the disclosing party or someone else."  No. 98 Civ. 8721, 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001).  As explained in ECF No. 135 and herein, Investor A clearly meets this test.

      Finally, the need to protect the proprietary information of the non-parties is not obviated by the fact that they are, at least for now, being identified anonymously.  This is particularly true given that their identities could become known, especially with the benefit of the clues available from the parties' redaction and metadata filing mistakes in this case to date.[4]

*    *    *

      For the foregoing reasons, non-party Investor A respectfully requests that the Court grant its application to seal the Proposed Redacted Material as identified in the exhibits submitted in connection with ECF No. 135.

      Respectfully submitted,

/s/ Eva Ciko Carman
Eva Ciko Carman

---

[3] The *Newsday* court rejected a request to seal portions of a court transcript since the court concluded that the hearing transcript did not disclose confidential information.  *Newsday*, 730 F.3d at 165–66.  This holding is inapposite as Investor A does not seek to seal any hearing transcript or, indeed, any information that was cited or quoted in any party's legal briefs.

[4] As the SEC acknowledges, it has filed several documents with what it describes as "inadvertent redaction or metadata errors."  ECF No. 190 at 7, n.6.