UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Plaintiff,　　　　　:　　19 Civ. 09439 (PKC)
　　　　　　　　　　　　　　　　　　　　:
　　　　- against -　　　　　　　　　　　:　　ECF Case
　　　　　　　　　　　　　　　　　　　　:
TELEGRAM GROUP INC. and TON ISSUER INC.　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendants.　　　　:
　　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------------------x

**NON-PARTY ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEAL**
**ITS CONFIDENTIAL DOCUMENT**

Non-Party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (identified herein as "Investor F")[1] respectfully moves for an Order maintaining under seal portions of a certain document the Securities and Exchange Commission ("SEC") lodged with the Court by as Exhibit B to the Letter of Jorge G. Tenreiro (ECF No. 181) ("Tenreiro Letter") regarding additional evidence in support of the SEC's Application for a Preliminary Injunction (ECF No. 98). Exhibit B to the Tenreiro Letter is an internal Investor F email analyzing Investor F's participation in the Telegram deal, including the amount of its potential investment, whether to participate as a validator, how to handle technical issues like custody of Grams, and how to combine these issues into an overall investment strategy. This email contains highly confidential and commercially sensitive information related to Investor F's analysis of and participation in the Telegram deal, which

---

[1] The SEC previously filed a motion requesting an Order to file under seal and in redacted form on ECF materials reflecting investor names. (ECF No. 28.) This document continues to redact this information, and related identifying information. We respectfully submit that these redactions should be maintained for the reasons stated in the SEC's prior motion. Moreover, we were subsequently identified with the pseudonym "Investor F" in the Declaration of Ladan F. Stewart (ECF No. 81) ("Stewart Decl."). This memorandum continues to use that pseudonym for the Court's convenience and to avoid confusion.

1

Investor F produced to the SEC pursuant to the protective order entered in this action (ECF No. 36) ("Protective Order") in response to a request for documents. Investor F requests that information reflecting Investor F's sensitive business information, as well as all information that would reveal Investor F's identity, be redacted from Exhibit B to protect Investor F's interests.

## I.   FACTUAL BACKGROUND

Investor F is a venture fund and its business is substantially predicated on its ability to evaluate opportunities and make corresponding investment decisions. (Declaration of ▮▮▮ ("Investor F Decl.") ¶ 2.) That evaluation process requires Investor F's personnel to have frank and open internal discussions about investment strategy—including by email—which may touch on the amount of Investor F's potential investments, the benefits and risks of certain investments, and how to handle technical issues that may be unique to certain opportunities. (*Id.*) Venture funds like Investor F operate in a highly competitive market and these internal discussions about investment strategy are commercially sensitive. (*Id.*) The disclosure of these kinds of strategic discussions could pose competitive harm to Investor F. (*Id.* ¶ 6.)

Exhibit B to the Tenreiro Letter is a good example of such a confidential and commercially sensitive document, the disclosure of which would pose competitive harm to Investor F. This document reflects a lengthy and substantive internal discussion during November 2018 among Investor F personnel relating to the Telegram deal. (*Id.* ¶ 4.) Large sections of the email exchange reflect the type of strategy discussion outlined above. For example, Exhibit B shows Investor F personnel analyzing whether Investor F should participate as a validator on the Telegram network—a novel issue for venture funds in the age of cryptocurrency which presents unique benefits and risks. (*Id.*) Likewise, Exhibit B shows Investor F personnel analyzing how to handle custody of Grams, which cannot be stored in a traditional bank or brokerage account—another

novel issue for venture funds in the age of cryptocurrency. (*Id*.) Finally, Exhibit B shows Investor F personnel analyzing how these challenges affect its decision to invest in the Telegram deal, including how to invest, how much to invest, and when to invest. (*Id*.) This email discussion was kept confidential because Investor F personnel recognized that its expertise on these issues and the strategy it chose to follow constitute valuable business secrets. (*Id*. ¶¶ 5, 6.) Thus, in response to the SEC's request for documents in October 2019, Investor F produced a confidential copy of Exhibit B to the SEC pursuant to the Protective Order. (*Id*. ¶ 5.) Exhibit B was produced to the SEC with stamps that read "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" and "FOIA CONFIDENTIAL TREATMENT REQUEST." If this information were disclosed to its competitors, Investor F would face competitive harm, because those competitors would come to know the details of Investor F's investment and how it evaluated said investment. (*Id*. ¶ 6.)

On February 10, 2020, the SEC lodged a copy of this email with the Court as Exhibit B to the Tenreiro Letter. (ECF No. 181.) Consistent with the Protective Order, the SEC did not file any portion of Exhibit B on the public docket.

## II. ARGUMENT

### A. It is Appropriate to Seal Confidential and Proprietary Information Where Disclosure Would Cause a Party or Non-Party Competitive Harm

Courts are empowered to seal judicial documents where the sealing is "narrowly tailored" to the interests in question and "essential to preserve higher values." *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 82 n. 1 (S.D.N.Y. 2017); *see also* Fed. R. Civ. P. 26(c) (upon a showing of "good cause," courts may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Although there is a general presumption of public access to judicial documents, sealing is appropriate where there are "countervailing factors" which may include "the privacy interests of those resisting

3

disclosure, such as trade secrets and sources of business information that might harm a litigant's competitive standing." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154 (S.D.N.Y. 2015) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)) (sealing information related to "trading strategies, objectives and transactions"); *see also Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018) (granting request to seal private financial materials that would harm the business interests of non-parties).

Courts have repeatedly granted confidential treatment to sensitive business information where disclosure would cause the producing party competitive harm. *See, e.g., In re Digital Music Antitrust Litig.*, 321 F.R.D. at 82 n. 1 (sealing confidential information relating to "competitive pricing" and "strategy"); *Royal Park Investments*, 2017 WL 1331288, at *11 (granting request to seal information including "the terms of private securities transactions involving non-parties").

For each of the reasons outlined above, Exhibit B to the Tenreiro Letter contains commercially sensitive business information: the information contained in it is valuable, and would be valuable to Investor F's competitors. (Investor F Decl. ¶ 6.) If that information were known, Investor F would likely suffer competitive harm. (*Id.*) In particular, disclosure would reveal how Investor F thinks about participation as a validator on a cryptocurrency network, and how Investor F thinks about custody of cryptocurrencies—both novel issues for venture funds. (*Id.* ¶ 4.) Likewise, disclosure would reveal how the above considerations impact Investor F's ultimate investment decisions in the nascent cryptocurrency space, including how to invest, how much to invest, and when to invest. (*Id.*)

Therefore, portions of Exhibit B should remain under seal (and redactions should be allowed) to protect Investor F from harm to its "competitive standing" and from "annoyance, embarrassment, oppression, or undue burden or expense." *Digital Music*, 321 F.R.D. at n. 1; Fed. R. Civ. P. 26(c). Investor F respectfully requests that the SEC (working in conjunction with Investor F) be allowed to redact both the commercially sensitive information contained therein, as well as any identifying information from Exhibit B, including Investor F's name, the names of its employees, and other references throughout the document that would enable Investor F's competition to discern its true identity—consistent with the proposed redactions attached to the concurrently filed Investor F Declaration.

### III. CONCLUSION

For the foregoing reasons, Investor F respectfully requests that the Court enter the attached, proposed Sealing Order for good cause shown.

Dated: New York, New York
February 18, 2020

Respectfully submitted,

*/s/ Philip M. Bowman*
Philip M. Bowman
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

*Attorneys for Non-Party Investor F*