UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
:
**SECURITIES AND EXCHANGE** :
**COMMISSION**, : **FILED UNDER SEAL**
:
Plaintiff, :
:
v. :
: **19 Civ. 09439 (PKC)**
**TELEGRAM GROUP INC. and TON** :
**ISSUER INC.**, : **ECF Case**
:
Defendant. :
:
------------------------------------------------------- X

**NON-PARTY INVESTOR Z'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO SEAL**

## TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................................. 2

    1.    All Unopposed Requests to Seal Should Be Granted ............................................ 2

    2.    The "Balancing Equation" Weighs in Favor of Granting Request No. 3 to Seal Non-Parties' Trade Secrets and Proprietary Information. ............................. 3

        a.    The Disputed Confidential Material Consists of Trade Secrets and Proprietary Information that Courts Routinely Protect from Disclosure. ................................................................................................. 3

        b.    Non-Party Privacy Interests and Interest in Promoting Cooperation with Law Enforcement Weigh Towards Sealing the Disputed Confidential Material. ................................................................................. 7

        c.    The Purported Import of the Disputed Confidential Material Does Not Shift the Balance Towards Disclosure. ............................................... 8

    3.    Investor Z Properly Seeks Sealing of Other Non-Parties' Sensitive Information. ........................................................................................................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bernsten v. O'Reilly*,
   307 F. Supp. 3d 161 (S.D.N.Y. 2018) ................................................................................7, 9

*Cohen v. Gerson Lehrman Grp., Inc.*,
   No. 09 Civ. 4352 (PKC), 2011 WL 4336679 (S.D.N.Y. Sept. 15, 2011) ............................7, 9

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   119 F. Supp. 3d 152 (S.D.N.Y. 2015) .................................................................................2, 5

*Doe v. City of New York*,
   No. 15-cv-117 (AJN), 2019 WL 4392533 (S.D.N.Y. Sept. 13, 2019) .....................................7

*Dorsett v. Cty. of Nassau*,
   762 F. Supp. 2d 500 (E.D.N.Y), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2000),
   *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) .........................7

*Gucci Am., Inc. v. Guess?, Inc.*,
   No. 09 Civ. 4373 (SAS) (JLC), 2010 WL 1416896 (S.D.N.Y. Apr. 8, 2010) ......................6, 7

*Kulig v. Midland Funding, LLC*,
   No. 13 Civ. 4715 (PKC), 2014 WL 8060586 (S.D.N.Y. Aug. 13, 2014) .............................6, 7

*New York v. Actavis, PLC*,
   No. 14 Civ. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014) .............................................5

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ................................................................................................................3

*In re Parmalat Sec. Litig.*,
   258 F.R.D. 236 (S.D.N.Y. 2009) ........................................................................................6, 7

*Saks Inc. v. Attachmate Corp.*,
   No. 14 Civ. 4902 (CM), 2015 WL 1841136 (S.D.N.Y. Apr. 17, 2015) ...........................4, 7, 9

*Salomon Smith Barney, Inc. v. HBO & Co.*,
   No. 98 Civ. 8721 (LAK), 2001 WL 225040 (S.D.N.Y. Mar. 7, 2001) ....................................6

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ................................................................................................3, 9

Non-party "Investor Z" respectfully submits this reply memorandum of law in further support of its Motion to Seal ("Motion" or "Mot."), filed on February 4, 2020.  In its February 13, 2020 omnibus response ("Response") to the various motions to seal filed in this action, the Securities & Exchange Commission ("SEC") concedes that "the names of certain investors and prospective investors who played no role in the Telegram offering other than as investors are not relevant to any judicial determination of the Substantive Motion." Response at 3.  Consistent with that position, the SEC agrees that Investor Z's identifying information as a Grams purchaser and identities of other non-parties referenced in the three documents at issue in the Motion should remain under seal.[1]  The SEC's Response resolves Request Nos. 1 and 2 from the Motion; only a portion of Request No. 3 remains in dispute.[2]

While the SEC agrees to redacting identifying information of non-party Investor Z and other non-parties referenced therein, it disputes redacting from Exhibit PX194 both non-party Investor Z's and the other non-parties' analyses regarding the Grams purchase opportunity (the "Disputed Confidential Material"), contending that redacting identifying information of the various non-parties involved in the communication alone is sufficient to protect their privacy interests.  The SEC is wrong.

As set forth in Investor Z's opening Motion, the Disputed Confidential Material should be filed under seal for three primary reasons:

---

[1] *See* Response, Exhibit A (Dkt. No. 190-1) ("Non-Party Chart") at 10-11 (reflecting SEC's agreement that investor identifying information should be redacted from all documents addressed in the Motion).

[2] According to the SEC's Response, this document was also encompassed by Telegram's motion to seal, but Telegram's proposed public version at Docket No. 171-34 proposed redacting only identifying information.  *See* Non-Party Chart at 11.  For reasons discussed in the Motion and herein, those redactions are inadequate.  Thus, non-party Investor Z further requests that Docket No. 171-34 be kept off of the public docket and, if published, that it be replaced with non-party Investor Z's proposed redacted version at Exhibit 3-A to the Motion, *i.e.*, Docket No. 154-5.

- First, courts of the Second Circuit routinely protect the categories of non-party proprietary information at issue here from public disclosure, including the trade secrets and other proprietary information that non-party Investor Z seeks to seal (Mot. at 6-7);

- Second, where Investor Z is an innocent non-party who voluntarily complied with requests for information from the SEC with an expectation of confidentiality, Investor Z's and other non-parties' privacy concerns supersede the public's right of access to their proprietary information (Mot. at 7); and

- Third, denying the Motion could potentially impair law enforcement by quelling the participation of non-parties in future SEC investigations (Mot. at 7-8).

For these reasons, as well as those further articulated in this reply memorandum of law, this Court should grant the relief sought in non-party Investor Z's Motion in its entirety.

## ARGUMENT

### 1. All Unopposed Requests to Seal Should Be Granted.

As an initial matter, the SEC agrees that all of non-party Investor Z's identifying information should be sealed—consenting to Investor Z's Request Nos. 1 and 2 from the Motion in their entirety. It also does not oppose non-party Investor Z's request that equivalent identifying information and other non-party identifying information be protected from public disclosure in Exhibit PX194 pursuant to Request No. 3, as well as in any subsequent filing or proceeding in this case. *See* Response at 3; Non-Party Chart at 10-11. Because courts routinely seal identifying information of non-parties, *see, e.g., Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015), and this part of the Motion is unopposed, the Court should grant the Motion to seal concerning these documents and order that the parties to the action continue to seal this identifying information on a going-forward basis.

## 2. The "Balancing Equation" Weighs in Favor of Granting Request No. 3 to Seal Non-Parties' Trade Secrets and Proprietary Information.

What remains in dispute is non-party Investor Z's request to seal portions of an email communication between (i) non-party Investor Z and (ii) certain other actual or potential Grams purchasers within its close and trusted network, discussing their respective internal analyses and processes regarding the Grams purchase opportunity. *See* Mot. Appendix A, Request No. 3. This Court should grant in full Request No. 3 of non-party Investor Z's Motion because the privacy interests of these non-parties—and non-party Investor Z's interest in maintaining trust with its critical network—outweigh any right to public access of this information. *See* Mot. at 5-8. The fact-specific "balancing equation" of competing interests weighs heavily in favor of sealing under the facts presented here. *See id.* at 6 (quoting *United States v. Amodeo*, 71 F.3d, 1044, 1050-51 (2d Cir. 1995)); *id.* at 5-6 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)).

### a. The Disputed Confidential Material Consists of Trade Secrets and Proprietary Information that Courts Routinely Protect from Disclosure.

The SEC, in a most conclusory manner, wrongly asserts that information about the non-parties' decision-making process that non-party Investor Z seeks to protect through Request No. 3—including (i) their considerations and potential reasons for purchasing Grams; (ii) the organizational structure of their decision-making process; and (iii) their internal concerns with the Grams purchase—"is not proprietary and confidential information that can overcome the strong presumption of public access here." Response at 6. The SEC's arguments are not supported by the facts of this case or the law.

Specifically, the SEC resists sealing the Disputed Confidential Material based on the incorrect assertion that it contains an analyst's assessment of the Grams offering that was also published online. *See* Response at 8. But the link cited by the SEC to this purported blog post is inactive, making it impossible to confirm this assertion or to assess similarities between the

detailed analysis conveyed in this document and the purported blog.  And even if this small portion of the email (less than one third of the redactions sought in Request No. 3) was reflected publicly at some point, the fact that non-party Investor Z considered this particular analysis in connection with its decision to purchase Grams is not public knowledge, thus sealing is still warranted.

Furthermore, none of the non-parties who provided their Grams analysis in this document are analysts; at the time they were ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████, respectively.  Like non-party Investor Z (and the other ten non-party Grams purchasers who moved to seal this same type of information), the other non-parties involved in this communication are investment firms, and non-party Investor Z expects that their businesses similarly rely upon their proprietary internal decision-making processes for investments and other strategic decisions.  Thus, like non-party Investor Z, the analyses in this document from these non-parties is likely their version of the "formula for Coca Cola or McDonald's Secret Sauce."  *See* Response at 5 (quoting *Saks Inc. v. Attachmate Corp.*, No. 14 Civ. 4902 (CM), 2015 WL 1841136, at *17 (S.D.N.Y. Apr. 17, 2015)).  Such information is thus shared within this close and trusted network with an expectation that it will remain confidential.  Declaration ("Decl.") ¶¶ 4-5.

The SEC's attempt to downplay this Disputed Confidential Material[3] as "not reveal[ing] unique due diligence technologies or proprietary investment strategies or analysis" (Response at 8) is contradicted by the sworn declaration from non-party Investor Z attesting that its "business depends on [its] distinctive approach to investments," which "distinguishes [it] in a highly competitive market," and that its "network, and the information [it] gather[s] and connections [it]

---

[3] Although the Response only purports to make this argument regarding "Internal Investor Memoranda" (*see* Response, Section III. B.1. header), the SEC challenges sealing all proprietary information and trade secrets that non-party Investor Z seeks to seal.  *See* Non-Party Chart at 11.

make[s] from it, are among [its] most valuable confidential proprietary business secrets[.]" Decl. ¶¶ 2, 4. This is precisely the type of information that courts of this District routinely find to overcome the presumption of public access, especially where a non-party's privacy interests are at stake. *See Dodona I,* 119 F. Supp. 3d at 156; *see also New York v. Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) ("[N]on-public strategies and financial information constitute 'confidential commercial information' . . . particularly where the disclosing company is engaged in a highly competitive industry and deliberately has shielded such information from its competitors.").

The SEC's attempts to distinguish *Dodona I* are ineffective. As an initial matter, the *Dodona I* court did not order sealing of *only* "proprietary models, formulas, [and] pricing information[.]" Response at 5. To the contrary, as the SEC concedes, it also ordered sealing of a non-party's "internal corporate documents concerning investment strategies."

The SEC's further attempts to distinguish *Dodona I* through its conclusory assertion that non-party Investor Z's "business could not be affected if competitors had [the Disputed Confidential Material]" also fail. Response at 5. The SEC's conclusory opinion is belied by the ten other non-parties seeking to seal this same type of information on the basis that its disclosure would injure them. It is also directly contradicted by non-party Investor Z's supporting Declaration explaining, under oath, that: (i) "[i]f [its] internal process . . . were disclosed publicly, [it] would suffer significant competitive damage" (Decl. ¶ 5); (ii) its "reputation for confidentiality and discretion among [its] network is critical to [its] business" (*id*. ¶ 4); and (iii) "[t]he analysis and commentary [it] solicit[s] through [its] network of connections is crucial to being provided investment opportunities, [its] investment decisions, and other strategic opportunities and decisions, including [its] decision to enter into the Purchase Agreement for Grams" (*id.*). Thus,

permitting disclosure of sensitive proprietary information provided to it in confidence by its critical network of connections would "damage [its] reputation for discretion and discourage members of [its] network from sharing investment opportunities and frank and detailed investment analysis with [Investor Z,]" "pos[ing] a serious risk to [its] ability to compete[.]" *Id.* ¶¶ 5, 8. The SEC fails to directly address any of these assertions.

In addition, none of the cases cited by the SEC support its position that the Disputed Confidential Material is not the type of proprietary information or trade secrets warranting sealing. To the contrary, in *In re Parmalat Securities Litigation*, the court sealed strategic information based on a showing that the party requesting sealing "require[d] all of its personnel to protect the confidentiality of its marketing strategies both during and after the conclusion of their employment." 258 F.R.D. 236, 249-50 (S.D.N.Y. 2009). In *Gucci America, Inc. v. Guess?, Inc.*, the court denied a clothing manufacturer's "conclusory" request to seal information relating to an employee's termination—not a request, like here, to seal information containing its "Secret Sauce." No. 09 Civ. 4373 (SAS) (JLC), 2010 WL 1416896, at *2 (S.D.N.Y. Apr. 8, 2010). In *Kulig v. Midland Funding, LLC*, the court credited a defendant's assertion that disclosure of proprietary information would be "valuable to [] competitors" but rejected sealing simply because, unlike here (*see* supra at 8-9), the information was "highly likely to be material to the disposition" of significant motions. No. 13 Civ. 4715 PKC, 2014 WL 8060586, at *1 (S.D.N.Y. Aug. 13, 2014). Finally, in *Salomon Smith Barney, Inc. v. HBO & Co.*, the court denied sealing outdated information relating to a proposed transaction because, unlike here, there was no "showing that the disclosure of the information in question would cause some harm, either to the disclosing party or to someone else" and "a reading of the documents makes abundantly clear that [the requesting party's] real concern is the possibility of public embarrassment." No. 98 Civ. 8721 (LAK), 2001

WL 225040, at *2, *3 (S.D.N.Y. Mar. 7, 2001). None of these cases mirror the facts or circumstances here.

> **b.    Non-Party Privacy Interests and Interest in Promoting Cooperation with Law Enforcement Weigh Towards Sealing the Disputed Confidential Material.**

The privacy interests of "innocent third parties" is an important factor that weighs heavily against the presumption of public access here.[4] In its Response, the SEC ignores the distinction between interests of parties and non-parties to the action, relying almost exclusively on case law involving sealing requests made by parties, which is inapposite to non-party Investor Z and the other non-parties whose sensitive information the Motion seeks to seal.[5] Further, in its attempt to address the sealing requests in omnibus form, the Response inappropriately conflates the interest of defendant Telegram with those of the non-parties. The heightened privacy interests arising from Investor Z's and the other non-parties' status as "innocent third parties" cannot be overlooked, and their privacy interests should not be viewed in the same light as parties to this action.

Another factor weighing in favor of granting the Motion, which the SEC ignores, is the interest in promoting cooperation with law enforcement and avoiding circumstances that could quell such cooperation in the future. As explained by non-party Investor Z, disclosure of the

---

[4] *See Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y. 2011) ("[T]he privacy interests of third parties carry great weight in the balancing of interests."), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2000), *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013); *see also Doe v. City of New York*, No. 15-cv-117 (AJN), 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) ("In the redaction analysis, courts take the privacy interests of third-parties seriously.").

[5] *See* Response at 5 (citing *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (rejecting defendant's sealing request); *Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 Civ. 4352 (PKC), 2011 WL 4336679, at *4 (S.D.N.Y. Sept. 15, 2011) (same); *Saks*, 2015 WL 1841136, at *17 (same); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 248-52 (S.D.N.Y. 2009) (same)); Response at 6 (citing *Gucci*, 2010 WL 1416896, at *2 (rejecting plaintiff's sealing request); *Kulig*, 2014 WL 8060586, at *1 (rejecting defendant's sealing request)).

Disputed Confidential Material is likely to quell non-parties from continuing to voluntarily cooperate in this action and in future SEC investigations. *See* Mot. at 7-8. The SEC has an interest in granting the Motion in full to avoid this consequence.

        c.      *The Purported Import of the Disputed Confidential Material Does Not Shift the Balance Towards Disclosure.*

Finally, even if the Disputed Confidential Material "go[es] to the heart" of the SEC's case (Response at 5)—which as discussed below it does not—that does not shift the balance in favor of public disclosure of innocent non-parties' private proprietary information and trade secrets under the facts here. The Disputed Confidential Material constitutes a fraction of over two-hundred exhibits submitted by the SEC to support its summary judgment motion. These documents reflect non-parties' unique diligence and subjective reasons for purchasing or not purchasing Grams, but the SEC acknowledges "the *Howey* test is an objective test . . . ." Response at 5. To the extent that there is a public interest in this type of subjective information because "the expectations of profit by the sophisticated investors in this case should inform the Court's determination whether there was a reasonable expectation of profits based on Telegram's efforts to develop and launch the blockchain" (*id.*), it should be available to the public through "investment memoranda" of four "sophisticated investors" who did not object to their publication. Response at 7. Further, what is important, if at all, to satisfy that prong of the *Howey* test, is the fact of the expectation of profit, not Grams purchasers' analysis (*i.e.* "secret sauce") of why it thought it was a good or bad purchase. Investor Z's and others' analysis of *whether this was the right purchase* for them is not highly relevant, if at all, to the dispute. Rather, the core fact is whether they purchased Grams to make money. Because the Disputed Confidential Material is not critical to either party's case, any presumption of public access to this document should not be given much, if any, weight.

The cases the SEC relies upon do not command a different result. In *Bernsten*, the court

-8-

rejected a defendant's request to seal settlement and arbitration agreements because (1) all parties referred to the agreements in their motion to dismiss briefs, (2) the agreements comprised a significant portion of the record, and (3) resolving the motions to dismiss "relie[d] heavily on a full examination of the Settlement and Arbitration Agreements in question." 307 F. Supp. 3d, at 164-66.  None of those facts are present here with regard to non-party Investor Z.  Similarly, in *Cohen*, the court rejected a request to seal a defendant's compliance guidelines in a case alleging that defendant violated the Fair Labor Standards Act because the "parties' summary judgment motions directly implicate[d]" the guidelines.  2011 WL 4336679, at *3.  And, in *Saks*, the court denied a request to seal documents that related to "a key issue" in the case and were "highly pertinent to the resolution" of one party's claim, but *allowed* sealing of a defendant's decision-making process "about how it chooses which customers to audit and exactly what the auditing process entails."  2015 WL 1841136, at *18, *19.  If anything, *Saks* supports non-party Investor Z's argument to keep information about Investor Z's and other non-parties' decision-making process under seal.

In sum, all of these cases support the unremarkable proposition that the presumption of public access attaches to documents that are at the center of the issues in dispute among the parties in the case.  This reasoning is inapplicable here, where the Disputed Confidential Material is not critical to any party's position.  And, even if aspects of the Disputed Confidential Material were relevant to the parties' dispute, courts routinely acknowledge that privacy interests of innocent non-parties supersedes the presumption of public access.  *See Amodeo*, 71 F.3d at 1050 ("We have previously held that '[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.'").

### 3. Investor Z Properly Seeks Sealing of Other Non-Parties' Sensitive Information.

The SEC further disputes Request No. 3 on the basis that some of the analysis that Investor Z seeks to redact is not non-party Investor Z's confidential material. *See* Non-Party Chart at 11. The SEC does not explain how other innocent non-parties' privacy rights are undermined by Investor Z seeking to protect them. Nor does the SEC provide authority that Investor Z cannot seek to protect information in a document that it produced in this action, which appears on its face to contain sensitive proprietary information of other innocent non-parties. Investor Z has an interest to ensure that it does not breach the trust of its confidential network of informants critical to its business. Furthermore, to the best of Investor Z's knowledge, the SEC has not alerted these other innocent non-parties of its desire to publish their potentially sensitive and proprietary analysis of the Grams opportunity, thus depriving them of the opportunity to protect the information themselves. In turn, Investor Z is the only party capable of protecting these interests.

### CONCLUSION

For the reasons stated above and in the Motion, non-party Investor Z respectfully requests that the Court grant the Motion in full.

Dated: February 24, 2020　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　 /s/Charles A. Brown
　　　　　　　　　　　　　　　　　　　　　　　Charles A. Brown
　　　　　　　　　　　　　　　　　　　　　　　*CBrown@goodwinlaw.com*
　　　　　　　　　　　　　　　　　　　　　　　GOODWIN PROCTER LLP
　　　　　　　　　　　　　　　　　　　　　　　The New York Times Building
　　　　　　　　　　　　　　　　　　　　　　　620 Eighth Avenue
　　　　　　　　　　　　　　　　　　　　　　　New York, NY 10018
　　　　　　　　　　　　　　　　　　　　　　　Tel.: +1 212 813 8800
　　　　　　　　　　　　　　　　　　　　　　　Fax: +1 212 355 3333

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Non-Party Investor Z*