UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                         :

SECURITIES AND EXCHANGE
COMMISSION,
                         :             **FILED UNDER SEAL**

          Plaintiff,        :

     v.                    :             **19 Civ. 09439 (PKC)**

TELEGRAM GROUP INC. and TON
ISSUER INC.,                  :             **ECF Case**

          Defendant.     :

-------------------------------------------------------- X

## NON-PARTY INVESTOR E'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SEAL

# TABLE OF CONTENTS

**Page**

ARGUMENT ....................................................................................................... 2

    1      All Unopposed Requests to Seal Should Be Granted. ........................................... 2

    2      The "Balancing Equation" Weighs in Favor of Sealing Investor E's Financial Information, Trade Secrets and Proprietary Information. ...................... 3

            a      The Disputed Confidential Material Consists of Trade Secrets and Proprietary Information that Courts Routinely Protect from Disclosure. ..................................................................................... 3

            b      Non-Party Privacy Interests Weigh Towards Sealing the Disputed Confidential Material. ................................................................... 6

            c      The SEC's Proposed Redactions are Insufficient ██████████ ██████. ................................................................................................ 7

            d      The Purported Import of the Disputed Confidential Material Does Not Shift the Balance Towards Disclosure. ................................ 8

CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bernsten v. O'Reilly*,
    307 F. Supp. 3d 161 (S.D.N.Y. 2018)...................................................................6, 9

*Chevron Corp. v. Donziger*,
    No. 11 Civ. 0691 (LAK), 2013 WL 646399 (S.D.N.Y. Feb. 21, 2013) ...................7

*Cohen v. Gerson Lehrman Grp., Inc.*,
    No. 09 Civ. 4352 (PKC), 2011 WL 4336679 (S.D.N.Y. Sept. 15, 2011) ............6, 9

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    119 F. Supp. 3d 152 (S.D.N.Y. 2015)..............................................................2, 4, 5

*Doe v. City of New York*,
    No. 15-cv-117 (AJN), 2019 WL 4392533 (S.D.N.Y. Sept. 13, 2019) ................6, 7

*Dorsett v. Cty. of Nassau*,
    762 F. Supp. 2d 500 (E.D.N.Y), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2000), *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) ...............................................................................................................6

*Gucci Am., Inc. v. Guess?, Inc.*
    No. 09 Civ. 4373 (SAS) (JLC), 2010 WL 1416896 (S.D.N.Y. Apr. 8, 2010).......5, 6

*Kulig v. Midland Funding, LLC*
    No. 13 Civ. 4715 (PKC), 2014 WL 8060586 (S.D.N.Y. Aug. 13, 2014)..................6

*New York v. Actavis, PLC*,
    No. 14 Civ. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014) .............................4

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978)..................................................................................................3

*In re Parmalat Sec. Litig.*,
    258 F.R.D. 236 (S.D.N.Y. 2009) .........................................................................5, 6

*Saks Inc. v. Attachmate Corp.*,
    No. 14 Civ. 4902 (CM), 2015 WL 1841136 (S.D.N.Y. Apr. 17, 2015).........3, 4, 6, 9

*Salomon Smith Barney, Inc. v. HBO & Co.*,
    No. 98 Civ. 8721 (LAK), 2001 WL 225040 (S.D.N.Y. Mar. 7, 2001).....................6

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995)..........................................................................................3, 10

*United States v. Silver*,
   No. 15-CR-93 (VEC), 2016 WL 1572993 (S.D.N.Y. Apr. 14, 2016) .......................................7

Non-party "Investor E" respectfully submits this reply memorandum of law in further support of its Motion to Seal ("Motion" or "Mot."), filed on February 4, 2020.  In its February 13, 2020 omnibus response ("Response") to the various motions to seal filed in this action, the Securities & Exchange Commission ("SEC") concedes that "the names of certain investors and prospective investors who played no role in the Telegram offering other than as investors are not relevant to any judicial determination of the Substantive Motion."  Response at 3.  Consistent with that position, the SEC agrees that non-party Investor E's identifying information as a Grams purchaser in the eight documents at issue in the Motion should remain under seal.[1]

The SEC disputes, however, the requested sealing of certain other categories of non-party Investor E's proprietary information, including (i) financial information, (ii) trade secrets, and (iii) the identity of proprietary contacts within non-party Investor E's network (hereinafter, the "Disputed Confidential Material"), contending that redacting non-party Investor E's identifying information alone is sufficient to protect its privacy interests.  The SEC is wrong.  Particularly in light of ███████████████████████████████████████████████ ███████████████████████████████████████████, the SEC's proposed limited redactions are insufficient to protect non-party Investor E's important privacy interests.

As set forth in non-party Investor E's opening Motion, the Disputed Confidential Material should be filed under seal for four reasons:

- First, courts of the Second Circuit routinely protect the categories of non-party proprietary information at issue here from public disclosure, including the financial information, trade secrets, and other proprietary information that non-party Investor E

---

[1] *See* Response, Exhibit A (Dkt. No. 190-1) ("Non-Party Chart") at 4-7 (reflecting SEC's agreement to redact identifying information from all documents at issue in the Motion).

seeks to seal (Mot. at 8-9);

- Second, where Investor E is an innocent non-party who voluntarily complied with the SEC's requests for information with an expectation of confidentiality, non-party Investor E's privacy concerns supersede the public's right of access to its proprietary information (Mot. at 9-10);

- Third, denying the Motion could potentially impair law enforcement by quelling the participation of non-parties in this case and future SEC investigations (Mot. at 10); and

- Fourth, ███████████████████████████████████████████████ ███████████████████████████████████ renders the SEC's proposed redactions inadequate.[2]

For these reasons, as well as those further articulated in this reply memorandum of law, this Court should grant the relief sought in non-party Investor E's Motion in its entirety.

## ARGUMENT

### 1    All Unopposed Requests to Seal Should Be Granted.

As an initial matter, the SEC agrees that all of non-party Investor E's identifying information should be sealed—thus consenting to Investor E's Request Nos. 2 and 8 in their entirety—and does not oppose non-party Investor E's requests that equivalent identifying information be sealed and/or not disclosed in the other documents at issue, and in any subsequent filing or proceeding in this case.  *See* Response at 3; Non-Party Chart at 4-7.  Because courts routinely seal identifying information of non-parties, *see, e.g., Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015), and this part of the Motion is unopposed, the

---

[2] *See* Mot. at 2-3, 5-8; Response at ████████████████████.

Court should grant the Motion to seal portions of the documents reflected in Exhibit A hereto.

**2      The "Balancing Equation" Weighs in Favor of Sealing Investor E's Financial Information, Trade Secrets and Proprietary Information.**

This Court should also grant the other sealing requests in non-party Investor E's Motion in their entirety because non-party Investor E's interests outweigh any purported public interest in this information. *See* Mot. at 8-11. This is a fact-specific "balancing equation," of competing interests—a balancing that weighs heavily in favor of sealing under the facts presented here. *See id.* at 8 (quoting *United States v. Amodeo*, 71 F.3d, 1044, 1050-51 (2d Cir. 1995)); *id.* (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)).

*a      The Disputed Confidential Material Consists of Trade Secrets and Proprietary Information that Courts Routinely Protect from Disclosure.*

The SEC, in a conclusory manner, wrongly asserts that information about non-party Investor E's analysis in its decision-making process to purchase Grams, including (i) its reasons for purchasing Grams; (ii) its decision-making process; (iii) its internal concerns with the Grams purchase; and (iv) the amount it spent to purchase the Grams "is not proprietary and confidential information that can overcome the strong presumption of public access here."[3] The SEC's arguments are not supported by the facts here or the law. Instead, non-party Investor E is a venture capital firm whose entire business relies on its internal decision-making processes for investments and other strategic decisions. The information it seeks to keep private is its version of the "formula for Coca Cola or McDonald's Secret Sauce." *See* Response at 5 (quoting *Saks Inc. v. Attachmate*

---

[3] The SEC takes issue, in particular with PX28 (Request No. 6). *See* Response at 6. Non-party Investor E seeks to seal only the limited portion of this email revealing specific information that non-party Investor E sought from Telegram in due diligence and deemed important to its decision-making process when assessing the Grams purchase opportunity. The fact that Mr. Hyman (a Telegram employee/affiliate) did not substantively respond to the requests is of no moment because it is the underlying due diligence requests that reflect non-party Investor E's internal analysis. Further, and contrary to the SEC's Response, non-party Investor E does not seek to seal Mr. Hyman's response to that email. *Compare* Response at 6, *with* Motion, Exhibit 6-B.

*Corp.*, No. 14 Civ. 4902 (CM), 2015 WL 1841136, at \*17 (S.D.N.Y. Apr. 17, 2015)).

The SEC's attempt to downplay this Disputed Confidential Material[4] as not "unique[,]" "novel or surprising" is directly contradicted by the sworn declaration from non-party Investor E attesting that: (i) it "operates in a highly competitive market, and it distinguishes itself by its distinctive and creative approach to analyzing and making investment decisions" (Declaration ("Decl.") ¶ 2); (ii) its "internal process for analyzing and making investment decisions is critical to all [of its] investment choices and other strategic decisions, including [its] decision to purchase Grams" (*id.* ¶ 4); and (iii) "[t]hat process is [its] most valuable confidential business secret" (*id.*). This is precisely the type of information that courts routinely find to overcome the presumption of public access, especially where non-party privacy interests are at stake. *See Dodona I,* 119 F. Supp. 3d at 156; *see also New York v. Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 5353774, at \*3 (S.D.N.Y. Oct. 21, 2014) ("non-public strategies and financial information constitute 'confidential commercial information' . . . particularly where the disclosing company is engaged in a highly competitive industry and deliberately has shielded such information from its competitors").

The SEC's attempts to distinguish *Dodona I* are ineffective.  As an initial matter, the *Dodona I* court did not order sealing of *only* "proprietary models, formulas, [and] pricing information[.]"  Response at 5.  To the contrary, as the SEC concedes, it also ordered sealing of a non-party's "internal corporate documents concerning investment strategies"—the same type of materials that non-party Investor E seeks to seal here.  *Id.*; *see also Dodona I*, 119 F. Supp. 3d at 156 (ordering sealing of "internal corporate documents that govern investment strategies").  The

---

[4] Although the Response only purports to make this argument with respect to "Internal Investor Memoranda" (*see* header for Section III. B.1. of Response), the SEC appears to challenge sealing of all financial information, proprietary information, and trade secrets that non-party Investor E seeks to seal. *See* Non-Party Chart at 4-7.

SEC further attempts to distinguish *Dodona I* through its conclusory assertion that non-party Investor E's "business could not be affected if competitors had [these trade secrets]." Response at 5. But the SEC's conclusory opinion is directly contradicted by the ten other non-parties seeking to seal this same type of information on the basis that its disclosure would injure them, and by non-party Investor E's supporting Declaration. As non-party Investor E explained, under oath, "[i]f [its] internal process and/or . . . network were disclosed publicly, [it] would suffer significant competitive damage. The publication of [its] internal process would make it easier for other investors and venture firms to predict and preempt [its] investment choices. It would also damage [its] ability to recruit investment in [its] funds and to compete for deals." Decl. ¶ 5; *see also id.* ¶ 13. The SEC fails to address any of these assertions directly, instead attempting to invalidate the trade secret claims only in broad strokes, applied equally to each movant.[5]

In addition, none of the cases cited by the SEC support its position that the Disputed Confidential Material is not the type of proprietary information or trade secrets warranting protection from public purview. To the contrary, in *In re Parmalat Securities Litigation*, the court sealed strategic information based on a showing that the party requesting sealing "require[d] all of its personnel to protect the confidentiality of its marketing strategies both during and after the conclusion of their employment." 258 F.R.D. 236, 249-50 (S.D.N.Y. 2009). In *Gucci America, Inc. v. Guess?, Inc.*, the court denied a clothing manufacturer's "conclusory" request to seal information relating to an employee's termination—not a request, like here, to seal information containing its "Secret Sauce." No. 09 Civ. 4373 (SAS)(JLC), 2010 WL 1416896, at *2 (S.D.N.Y.

---

[5] The SEC's contention that the various movants seek to seal "summaries of Telegram's marketing materials" (Response at 4) similarly rings hollow and is another byproduct of the SEC's ineffective attempt to lump all of the differently situated movants together. To the contrary, non-party Investor E's Requests are narrowly tailored to seal only non-party Investor E's Disputed Confidential Material and does not seek to seal information received from Telegram. *See, e.g.*, Mot., Exhibit 4-B (Dkt. No. 160-8) (leaving unsealed information relating to offer of Grams).

Apr. 8, 2010).  In *Kulig v. Midland Funding, LLC*, the court credited a defendant's assertion that

disclosure of proprietary information would be "valuable to [] competitors" but rejected sealing

simply because, unlike here (*see* supra at 8-10) the information was "highly likely to be material

to the disposition" of significant motions.  No. 13 Civ. 4715 (PKC), 2014 WL 8060586, at *1

(S.D.N.Y. Aug. 13, 2014).  And finally, in *Salomon Smith Barney, Inc. v. HBO & Co.*, the court

denied sealing outdated information relating to a proposed transaction because, unlike here, there

was no "showing that the disclosure of the information in question would cause some harm, either

to the disclosing party or to someone else[]" and "a reading of the documents makes abundantly

clear that [the requesting party's] real concern is the possibility of public embarrassment."  No. 98

Civ. 8721 (LAK), 2001 WL 225040, at *2, *3 (S.D.N.Y. Mar. 7, 2001).  None of these cases mirror

the facts or circumstances at issue here.

> ### b        Non-Party Privacy Interests Weigh Towards Sealing the Disputed Confidential Material.

The privacy interests of "innocent third parties" is an important factor that weighs heavily

against the presumption of public access here.[6]  In its Response, the SEC ignores the distinction

between interests of parties and non-parties to the action, relying almost exclusively on case law

involving sealing requests made by parties, which is inapposite to non-party Investor E.[7]  Further,

in its attempt to address the sealing requests in omnibus form, the Response inappropriately

---

[6] *See Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y. 2011) ("[T]he privacy interests of third parties carry great weight in the balancing of interests."), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2000), *aff'd sub nom. Newsday LLC v. Cty. of Nassau*, 730 F.3d 156 (2d Cir. 2013); *see also Doe v. City of New York*, No. 15-cv-117 (AJN), 2019 WL 4392533, at *2 (S.D.N.Y. Sept. 13, 2019) ("In the redaction analysis, courts take the privacy interests of third-parties seriously.").

[7] *See* Response at 5 (citing *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (rejecting defendant's sealing request); *Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 Civ. 4352 (PKC), 2011 WL 4336679, at *4 (S.D.N.Y. Sept. 15, 2011) (same); *Saks*, 2015 WL 1841136, at *17 (same); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 248-52 (S.D.N.Y. 2009) (same)); Response at 6 (citing *Gucci*, 2010 WL 1416896, at *2 (rejecting plaintiff's sealing request); *Kulig*, 2014 WL 8060586, at *1 (rejecting defendant's sealing request)).

conflates the interest of defendant Telegram with those of the non-party movants. The heightened privacy interests arising from Investor E's status as an "innocent third party" cannot be overlooked, and its privacy interests should not be viewed in the same light as parties to this action.

   c  ***The SEC's Proposed Redactions are Insufficient*** █████████
█████

   Although the SEC agrees that non-party Investor E's name, status as a Grams purchaser, and personal identifying information should be sealed at this stage of the litigation (*see* Response at 3), the SEC's proposed redactions do not adequately accomplish this agreed-upon goal of protecting a non-party's identifying information. Courts routinely recognize that merely redacting names can be insufficient to preserve anonymity where other information can be used to discern the individual's identity. *See, e.g.*, *United States v. Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *7 (S.D.N.Y. Apr. 14, 2016) (sealing information about the "nature and timeframe" of certain relationships that would "perhaps enabl[e] those familiar with the parties to identify the Jane Does"); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2013 WL 646399, at *13 (S.D.N.Y. Feb. 21, 2013) (agreeing to seal "information that would be likely to lead to [non-parties] identification" and/or would "identify the Does, directly or indirectly"); *City of New York*, 2019 WL 4392533, at *2 (approving sealing of information that "could expose the identities" of non-parties because "the Court will err on the side of caution to protect the interests of innocent third parties"). These concerns are particularly pertinent here where—as the SEC concedes—it made ████████████████████████ in public filings in this case that pertain to non-party Investor E's identifying information. Response at ████ This increases the risk that the public will link other documents containing proprietary information back to non-party Investor E.

   By way of example, █████████████████████████████
████████████████████████████████████████



. *See* Requests 4 and 5 of Appendix A to the Motion.  These exhibits are

rife with highly confidential proprietary information and trade secrets, which the public may be

able to connect to non-party Investor E, in particular.  Similarly, unique information contained ▮

—may be used to indirectly link other documents containing that same unique

information back to non-party Investor E, even if the SEC redacts basic identifying information.

Under these circumstances, non-party Investor E should not be punished by and for

, and the Court should not accept the SEC's limited redaction proposals as sufficient.[8]

> ### d   The Purported Import of the Disputed Confidential Material Does Not Shift the Balance Towards Disclosure.

Finally, even if the Disputed Confidential Material "go[es] to the heart" of the SEC's case

(Response at 5)—which as discussed below it does not—that does not shift the balance in favor of

disclosure of an innocent non-party's private proprietary information and trade secrets under the

facts here.  The Disputed Confidential Material constitutes a fraction of over two-hundred exhibits

submitted by the SEC to support its motion for summary judgment.  These documents reflect non-

party Investor E's unique diligence and subjective reasons for purchasing Grams, but the SEC

acknowledges "the *Howey* test is an objective test . . . ."  Response at 5.  To the extent that there

is a public interest in this type of subjective information because "the expectations of profit by the

sophisticated investors in this case should inform the Court's determination whether there was a

---

[8] The SEC also ignores non-party Investor E's argument that disclosure of the Disputed Confidential Material—particularly given the ▮▮▮—is likely to quell non-parties from continuing to voluntarily cooperate in this action and in future SEC investigations.  *See* Mot. at 10.  This is yet another factor weighing in favor of granting the Motion.

reasonable expectation of profits based on Telegram's efforts to develop and launch the blockchain" (*id.*), it should be available to the public through "investment memoranda" produced to the SEC by four other such "sophisticated investors" who did not object to their publication. Response at 7.  Further, what is important, if at all, to satisfy that prong of the *Howey* test, is the fact of the expectation of profit, not Investor E's analysis (*i.e.* the "secret sauce") of why it thought purchasing Grams may be profitable.  Investor E's analysis of *whether this was the right decision* is not highly relevant, if at all, to the dispute; the core fact is whether it purchased Grams to make money.  Because the Disputed Confidential Material is not critical to either party's case, any presumption of public access attaching to the documents should not be given much, if any, weight.

The cases the SEC relies on do not command a different result.  In *Bernsten*, the court rejected a defendant's request to seal settlement and arbitration agreements because (1) all parties referred to the agreements in their briefing on motions to dismiss, (2) the agreements comprised a significant portion of the record, and (3) resolving the motions to dismiss "relie[d] heavily on a full examination of the Settlement and Arbitration Agreements in question."  307 F. Supp. 3d, at 164-66.  None of those facts are present here with regard to non-party Investor E.  Similarly, in *Cohen*, the court rejected a request to seal a defendant's compliance guidelines in a case alleging that defendant violated the Fair Labor Standards Act because the "parties' summary judgment motions directly implicate[d] . . ." the guidelines.  2011 WL 4336679, at *3.  And, in *Saks*, the court denied a request to seal documents that related to "a key issue" in the case and were "highly pertinent to the resolution" of one party's claim, but *allowed* sealing of a defendant's decision-making process "about how it chooses which customers to audit and exactly what the auditing process entails."  2015 WL 1841136, at *18, *19.  If anything, *Saks* supports Investor E's argument to protect information about its decision-making process, especially in the context of a non-party.

In sum, all of these cases support the unremarkable proposition that the presumption of public access attaches to documents that are at the center of the issues in dispute among the parties in the case.  This reasoning is inapplicable here, where the Disputed Confidential Material is not critical to any party's position.  And, even if aspects of the Disputed Confidential Material were relevant to the parties' dispute, courts routinely acknowledge that an innocent non-party's privacy interests supersedes the presumption of public access.  *See Amodeo*, 71 F.3d at 1050 ("We have previously held that '[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.'").

## CONCLUSION

For the reasons stated above and in the Motion, non-party Investor E respectfully requests that the Court ███████████████████████████████████████████ from the public docket[9] and otherwise grant the Motion in its entirety, in accordance with the proposed redactions specified in Appendix A to the Motion (Dkt. No. 160) and applied the "A" exhibits thereto (excluding Exhibit 7-A which should be sealed in its entirety).

Dated: February 24, 2020                     Respectfully submitted,

                                              /s/Charles A. Brown
                                             Charles A. Brown
                                             *CBrown@goodwinlaw.com*
                                             GOODWIN PROCTER LLP
                                             The New York Times Building
                                             620 Eighth Avenue
                                             New York, NY 10018
                                             Tel.: +1 212 813 8800
                                             Fax: +1 212 355 3333

                                             *Attorneys for Non-Party Investor E*

---

[9] The document at ███████████████████████ ██ requires sealing ████████████████████████ .