# Skadden, Arps, Slate, Meagher & Flom llp

### four times square

### new york 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3792
DIRECT FAX
917-777-3792
EMAIL ADDRESS
Christopher.Malloy@skadden.com

February 24, 2020

**BY HAND AND ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

RE:    _SEC v. Telegram Group Inc., et al._, 19-cv-9439 (PKC) (S.D.N.Y.)

Dear Judge Castel:

On behalf of defendants in the above-referenced action ("Defendants" or "Telegram"), we respectfully submit this reply to plaintiff Securities and Exchange Commission's (the "SEC" or "Plaintiff") omnibus response to the motions to seal filed by Defendants and certain third parties (collectively, "Pending Motions" (ECF Nos. 105, 135, 138, 139, 142, 143, 148, 152, 157, 158, 190)).[1]

The parties agree that many of the documents at issue should be filed under seal and/or with redactions. Consistent with the three categories set out in the Sealing Motion, Defendants address the remaining disputed documents, including (1) certain internal "investment memoranda" created by third-party investors in the Private Placement; (2) documents containing personally identifying information of Private Placement investors; and (3) other highly confidential business information. As detailed below and in the accompanying modified version of Appendix A to the Sealing Motion ("Modified Appendix A"). Defendants respectfully request that these documents remain under seal in whole or in part.[2]

---

[1]    All references to "Opposition" or "Opp." refer to Plaintiff's omnibus response to Defendants' and third parties' motions to seal (ECF Nos. 189-190). All references to "Sealing Motion" or "Sealing Mot." refer to Defendants' Letter Motion to Seal (ECF No. 158).

[2]    Defendants further seek to: (1) refile certain documents under seal and place them on the public docket with revised redactions; (2) correct a document previously filed in error; (3) amend the Sealing Motion to include certain documents within an additional category or redesignate the

Hon. P. Kevin Castel
February 24, 2020
Page 2

## I.      THIRD PARTY NON-PUBLIC INVESTMENT MEMORANDA

First, the SEC argues that the certain internal investment memoranda of some non-party initial investors "are highly relevant to the SEC's argument that Telegram's offer and sale of Grams was an investment contract under *SEC v. W.J. Howey*, 328 U.S. 293 (1946)."  (Opp. at 4-5.)  As discussed below, the SEC's position is inconsistent with the *Howey* test and inaccurately describes the documents at issue.  Thus, the privacy concerns of the non-parties outweighs any purported relevance cited by the SEC.

The question in this case is what post-launch public consumers, not the Private Placement purchasers, would reasonably expect regarding post-launch Grams as a result of Telegram's promotional or marketing efforts.  (Def. SJ Br., ECF No. 71, at 5-6.)[3]  The SEC argues that "the expectations of profit by the sophisticated investors [in the pre-launch Private Placement] in this case should inform the Court's determination whether there was a reasonable expectation of profits based on Telegram's efforts to develop and launch the blockchain."  (Opp. at 5.)  But the fact that the Private Placement purchasers expected to profit is undisputed, which is in part why the Private Placement was treated as a securities offering.  At launch, by contrast, Telegram's efforts to develop and launch the TON Blockchain will be complete and its obligations with respect to the TON Blockchain will terminate according to the terms of the Purchase Agreements.  (Def. Opp. Br., ECF No. 93, at 13-14.)

To the extent the SEC offers the handful of internal memoranda by certain investors to show what these investors expected of Telegram's efforts after the launch of the blockchain, it again ignores the proper standard.  The *Howey* test is an objective one and focuses on how the instrument is marketed by the promotor.  Thus, the relevant question is whether Defendants have promoted post-launch Grams based on the promise of essential managerial efforts that are "absolutely necessary to the turning of the promised profits."  *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1035 (2d Cir. 1974); *SEC v. Glenn W. Turner Enters., Inc.*, 474 F.2d 476, 482 (9th Cir. 1973).  The internal analyses and subjective "belie[fs]" of a small

---

applicable category; and (4) withdraw its sealing requests as to certain documents.  This information is noted where relevant in Modified Appendix A.

[3]      *Howey* is transaction- and offer-specific, meaning that an instrument can be offered in one set of circumstances that constitute a securities offering while offered in another set of circumstances that do not.  (Def. SJ Br., ECF No. 71 at 40-41.)  The CFTC, as well as the SEC's FinHub, Chairman, and other high-ranking officials have all publicly acknowledged as much.  (*Id.*; CFTC Letter to Court dated Feb. 18, 2020, ECF No. 203, at p.2 n.2); Def. Affirmative Def., ECF No. 37, ¶ 17, Times Talks, SEC Chairman Jay Clayton & Andrew Ross Sorkin N.Y. Times (November 29, 2018) (agreement to fund production costs for Broadway show in exchange for tickets may be securities offering, but tickets later sold once the production is "up and running" "should not be securities").

Hon. P. Kevin Castel
February 24, 2020
Page 3

handful of the approximately 170 Private Placement investors simply do not bear on how Grams were being promoted to Private Placement purchasers or, more importantly, are being promoted to post-launch Gram consumers in the market. (SEC Reply Br., ECF No. 113 at 8 (quoting PX30)); *see Davis v. Rio Rancho Estates, Inc.*, 401 F. Supp. 1045, 1050 (S.D.N.Y. 1975) (no investment contract where promoter did not promise to undertake ongoing managerial efforts).

Finally, in its effort to squeeze some relevance from the investment memoranda, the SEC inaccurately characterizes them. These memoranda do not evidence any promise or commitment by Defendants of post-launch essential managerial efforts. At most, they show that investors expected post-launch Grams may appreciate in value as they gained widespread adoption as a cryptocurrency as a result of a wide range of factors, including (1) the consumer demand for a cryptocurrency with sufficient speed and scalability, which the TON blockchain was designed to address (*see, e.g.,* PX 2-E; PX 33 at 1 ¶¶ 1-2); and (2) circumstances that were expected to exist at the time of launch without further significant effort by Defendants, including the "network effect" of adoption of Grams by Telegram's *existing* userbase for its Messenger application and the *existing* ecosystem of developers. (*See, e.g.*, PX 5-A (citing Telegram's existing user base "already familiar" with cryptocurrency); PX 31 at 1-2 (citing Telegram's "[e]xisting bot platforms," "existing user base" and "existing ecosystem of communities, developers, publishers, payment providers, and merchants to drive demand and value for the TON currency."); PX 33 at 1 ¶ 9; PX 77 at 7-8)). Moreover, the investment memoranda also reflect certain purchasers' express understanding that Defendants had *not* committed to stay involved in the TON blockchain (*see, e.g.*, PX 30 at 11 ("A foreseeable risk could be that Telegram uses [Private Placement] funds to propel itself forward and leave TON blockchain by the wayside."), and that Defendants lacked the unilateral ability to change the TON blockchain code, to correct errors or otherwise. (PX 33 at 13.)

The investor memoranda are also irrelevant to the SEC's theory that the Private Placement purchasers are involved in a "distribution" of securities even if post-launch Grams are not securities. That simply makes no sense, as the initial purchasers would be selling post-launch Grams and not securities. For example, the SEC has theorized that the lock-up provisions for the Stage A investors were intended to create demand for the Grams. Not only would this be irrelevant if post-launch Grams are not found to be securities, but it is also wrong because — as recognized by at least one Private Placement investor — the lockup was intended to "stabilize the price of a Gram in its inception [i.e., at launch of the TON Blockchain]

Hon. P. Kevin Castel
February 24, 2020
Page 4

and ensure[] that a large core of the investor base is made up of genuine long-term investors rather than short-term speculators."  (PX 30 at 11.)[4]

For documents in this category, Defendants defer to the submissions of Investors B, E, F, G, H and X for their additional positions.  Defendants withdraw their request to seal PX 30, PX 33, and PX 77 in light of the SEC's representations.  (Opp. at 7.)

## II.   DOCUMENTS CONTAINING IDENTITIES AND PERSONAL INFORMATION OF THIRD PARTY PRIVATE PLACEMENT PURCHASERS

Second, for all other documents reflecting the identities and personal information of Private Placement investors, Defendants' proposed redactions protect the identities and personal information of these third parties, which are not relevant.  Limited redactions to names and email addresses are appropriate where the substance of the communications remain intact.  *See In re SunEdison, Inc. Sec. Litig.*, 2019 WL 126069, at *2 (S.D.N.Y. Jan. 7, 2019) (Castel, J.); *Cohen v. Gerson Lehrman Grp, Inc.*, 2011 WL 4336679, at *2 (S.D.N.Y. Sept. 15, 2011) (Castel, J.).  Here, as in *SunEdison*, Defendants do not propose any redactions to the substance of the documents themselves and request only narrowly tailored redactions of the third parties' identities and other personal information, which do not bear on the issues in this case.

Plaintiff agrees that the identities of many third party purchasers are "not relevant to any judicial determination" and, therefore, the third parties' privacy interests "outweigh the presumption of disclosure at this stage of the litigation."  (Opp. at 3.)  Indeed, Plaintiff sought to redact precisely this type of information in its October 23, 2019 sealing motion.  (ECF No. 28-1 at 7.)  Nonetheless, citing no authority in support, Plaintiff now objects to redacting the identities of certain purchasers and non-purchaser third parties who purportedly "played a further role" in the Private Placement.[5]  (Opp. at 3.)  This is a distinction without a difference.  The specific identities and personal information of the third parties have no bearing on

---

[4]      This particular investment memorandum also describes certain aspects of the project that have long since been modified or eliminated by Telegram, including any contemplated direct sale of Grams by Defendants to the public in March 2018 according to the Reference Price formula.  It is undisputed that Telegram eliminated that concept and that, following launch of the TON Blockchain, the price of Grams will be determined by free market forces of supply and demand, not the Reference Price.  (Joint Stipulation of Undisputed Facts, ECF No. 72, ¶¶ 170, 171.)

[5]      Defendants do not dispute Plaintiff's Opposition with respect to BSG, Koinvestor and Bank to the Future.  Defendants disagree with Plaintiff's position on PX 1-G, PX 97, PX 98, PX 115, PX 117, Exhibits 5 and 10 to the Drylewski Declaration, Exhibits 1, 2, 3, 8, 9, 10, 11, 14, and 15 to the Malloy Declaration, and Exhibits 1 and 5 to the Musoff Declaration.

Hon. P. Kevin Castel
February 24, 2020
Page 5

the issues in this case, regardless of what role they might have played in Private
Placement.  *See SunEdison*, 2019 WL 126069, at *2; *Cohen v. Gerson Lehrman
Group, Inc.*, 2011 WL 4336679, at *2.  The SEC never explains why the names and
personal information of these nonparties are relevant, particularly when no claims
are asserted against them.  In any event, the SEC has never pointed to any evidence
that Defendants marketed Grams based on any efforts of the third parties at issue on
this motion.[6]

  Although Plaintiff contends that these third parties have failed to make their
own sealing motions, this overlooks that several of these third parties are foreign
entities that did not produce documents to Plaintiff and are not subject to the
confidentiality order and the procedure for notice (and some of which are not even
purchasers in the Private Placement).  Thus, it is unclear whether these parties were
given notice by the SEC that their identities were going to be publicly released in
connection with this litigation.

  Finally, as a matter of protecting their own business interests, Defendants
have an obligation to prevent the disclosure of the identities and personal
information of their counterparties in business dealings.  Disclosure of Defendants'
communications involving non-public, potential business opportunities with two of
these third parties, ▮ and ▮, could impact Defendants' relationship with
these entities.  *See Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2015 WL
4298572, at *5 (S.D.N.Y. July 15, 2015).  Furthermore, the SEC agrees that the
names of these two entities should be redacted from their filings; they redacted them
from their own Rule 56.1 Response and Counter-Statement.  (*See* SEC Resp. to Def.
Rule 56.1 Statement (ECF No. 99), refiled on February 13, 2020 with the Opposition
(ECF No. 188-1).)  For these reasons, Defendants request that the names of the
entities listed in Exhibit C to the SEC's Opposition be redacted.

### III. OTHER CONFIDENTIAL BUSINESS INFORMATION

  Finally, Defendants disagree with the SEC's position on certain redactions in
PX 1-B, PX 1-D, PX 55, PX 123, Exhibit 2 to the Drylewski Declaration and Exhibit
4 to the Malloy Declaration.  For all other documents in this category, Defendants
defer to the motions of third parties or consent to the SEC's proposed redactions.

  **PX 1-B** contains a limited redaction to private financial information as well
as agreed-upon redactions to third party identifying information.  The redaction to

---

[6] Plaintiff also takes contradictory positions with respect to these third parties.  *Compare* the
SEC's response to Defendants' proposed redactions to Exhibit 11 of the Malloy Declaration in
Modified Appendix A in which it agrees to redacting the names of investors that ▮ helped enlist
*with* Exhibit C to the Opp. and the SEC's response to Exhibit 5 to the Musoff Declaration in Modified
Appendix A in which the SEC does not agree to redact the names of those very same investors.

Hon. P. Kevin Castel
February 24, 2020
Page 6

information regarding an unnamed individual's investment and stake in foreign entities is proper. *See SEC v. Ahmed*, 2018 WL 4266079, at *2 (D. Conn. Sept. 6, 2018).

**PX 1-D** contains limited redactions to Defendants' irrelevant, commercially sensitive, global business development strategies in specific geographic regions as well as agreed-upon redactions to the personal identifying information of third party purchasers. Allowing competitors to access Defendants' analysis and related information could harm their competitive standing. *See Tropical Sails Corp. v. Yext, Inc.*, 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016). The proposed redactions are narrow and do not obscure access to the information the Court is likely to rely on in making its determination on the relevant issues in this matter.

**PX 55** contains discussion of a potential future promotion and partnership with a digital asset exchange. To the extent Plaintiff is relying on its contention that Defendants' discussions with third-party exchanges somehow evidences their intention to provide an essential post-launch service, they are incorrect. There is no dispute that there are a wide range of cryptocurrency exchanges, so even if Defendants were working with one (and had marketed this service) it would be irrelevant because a promoter's offer to provide assistance with a secondary market is not an essential service where such assistance could be found elsewhere. *See SEC v. Life Partners, Inc.*, 87 F.3d 536, 546 (D.C. Cir. 1996). As SEC Commissioner Peirce has emphasized, the existence of secondary trading on exchanges is necessary for promotion of the consumptive use of digital tokens. (ECF No. 177 Ex. A at 7-8.)

Defendants' proposed redactions to **Drylewski Exhibit 2** protect information relating to Defendants' main banking institution. *See SunEdison*, 2019 WL 126069, at *1 ("Financial records of a wholly owned business . . . and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." (citation omitted)) (Castel, J.). Further, the SEC has agreed to seal the entirety of PX 136, which similarly consists of Telegram's banking records, thus conceding that public access to such banking information is not warranted here.

Defendants' proposed redactions to **PX 123** and **Malloy Exhibit 4** protect information regarding Defendants' use of certain funds. Information about a company's expenditures is the proper subject of redaction. *See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015). Importantly, the statements made in PX 123 and Malloy Exhibit 4 only relate to the expenditure of funds *after* the litigation commenced. Thus, they are not even relevant as to private purchasers' reasons for entering into the Purchase Agreements, much less to the central questions to be resolved in this litigation. If revealed, information about how Telegram spent its funds may provide insight into their current business practices which a competitor could exploit. Because the

6

Hon. P. Kevin Castel
February 24, 2020
Page 7

presumption of access is low, the document should be permitted to be filed in redacted form. *KeyBank Nat'l Ass'n v. Element Transport. LLC*, 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court permit the documents detailed in Modified Appendix A, attached hereto, to be filed under seal with redactions as noted in Modified Appendix A.


Respectfully,

/s/ Christopher P. Malloy


cc:    All Counsel of Record

7