

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE
200 VESEY STREET, ROOM 400
NEW YORK, NY 10281-1022

**Jorge G. Tenreiro**
WRITER'S DIRECT DIAL
TELEPHONE: (212) 336-9145
TenreiroJ@sec.gov

March 9, 2020

<u>Via ECF and Overnight Delivery</u>
Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:   <u>SEC v. Telegram Group Inc. & TON Issuer Inc., No. 19 Civ. 9439 (PKC)</u>

Dear Judge Castel:

    Plaintiff Securities and Exchange Commission ("SEC") respectfully objects to Defendants' March 6, 2020 Letter, D.E. 225 ("Def. Letter"). The letter, an improper sur-reply relying on *dicta* from a state intermediate appellate court decision, raises arguments that Defendants could have but did not previously make. *See, e.g.*, *Kapiti v. Kelly*, No. 07 Civ. 3782, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow."). Should the Court consider these new arguments, the SEC respectfully requests that the Court consider this substantive response as well. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (party may "file a responsive sur-reply" to new arguments).

    Defendants contend that *Siry Investment, L.P. v. Farkhondehpour*, B277750, 2020 WL 1026822 (Cal. Ct. App. Mar. 3, 2020) "supports [their] position in connection with the pending motions for summary judgment and preliminary injunction." Def. Letter at 1. Defendants' position, which glosses over the actual holding in *Siry*, continues Defendants' erroneous and ultimately fatal reliance on labels over substance. *Siry* involved three principal parties, Siry and two defendants, who entered into a limited partnership agreement to renovate a building. The question before the court was whether it was proper to award attorneys' fees under a California law permitting fees against an unlicensed person who injured another while "performing services for which a license is required." *Siry*, 2020 WL 102682, at *20. Siry argued that the partnership agreement was a "security" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and that his partners were thus unlicensed securities brokers. The court disagreed, noting that Siry was required but had failed to "affirmatively plead its passivity" as an investor within the partnership in order for the partnership interest to qualify as a security. *Id.* at *22. Although not stated explicitly in *Siry*, the "passivity" requirement presumably comes from *Williamson v. Tucker*, 645 F.2d 404, 421-22 (5th Cir. 1981). *Williamson* and cases following it generally explain that limited partnerships are not securities unless they meet several conditions, including, as relevant here, that the limited partner remain a fully "passive" investor. Here, in contrast, Grams investors did not enter into any sort of partnership agreement. *Siry* thus bears no relevance to this case.

    Rather than rely on the holding of *Siry*, Defendants focus on a passage in which the court rejected the plaintiff's contention that language in the partnership agreement prohibiting transfers

of the partnership interests in violation of the Securities Act of 1933 ("Securities Act") meant that the partnership interests were securities. Def. Letter at 2; *see also Siry*, 2020 WL 1026822, at *23. Instead, the court held that, rather than prove useful to the *Howey* analysis, the provision merely "reflect[s] uncertainty on th[e] question" of whether the partnership interests were securities. *Id.* Here, pointing to certain provisions in the Purchase Agreements, Defendants do not merely argue that they merely reflect uncertainty about the applicability of *Howey*, as the *Siri* court commented, but rather try to wield the provisions as a sword. Defendants contend that the provisions affirmatively shows that "the economic reality" of the Purchase Agreements was to ensure that the interests distributed to the public would not be securities. Def. Letter at 2. But this contention is another version of the argument the court rejected in *Siry*. The boilerplate language in the Purchase Agreements does not show, one way or the other, what the parties' intent or the economic reality was. The "economic reality" of the Purchase Agreements comes not from legalese, but from the totality of the economic inducements and the commercial realities of the transaction. *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 352-53 (1943); *see also* SEC MSJ Br. (D.E. 79) at 16-17; SEC MSJ Opp. Br. (D.E. 98) at 11.

Defendants additionally argue, also for the first time in their improper sur-reply, that Rule 144 under the Securities Act will exempt resales of Grams by the Initial Purchasers to the public. Def. Letter at 2 n.1. This argument is both incorrect and irrelevant. First, Rule 144 is not available for a distribution or public offering; it is available to holders of restricted securities, *i.e.*, those "subject to the resale limitations" of Regulation D. 17 C.F.R. § 230.144(a)(3)(ii). As the SEC has shown, Telegram did not comply with Rule 502(d) under Regulation D for two reasons. Not only did Telegram fail to exercise reasonable care when it sold the Grams to the Initial Purchasers—including when confronted with early facts indicating the existence of a secondary market and facts that indicated some purchasers were paying for purchase contracts with funds raised from unknown investors—but Telegram also clearly contemplated delivery of unrestricted Grams. This precludes any reliance on the private offering exemption, either by Telegram or by Initial Purchasers seeking to resell. Second, irrespective of whether initial purchasers may someday be able to sell Grams free of restriction, Rule 144 cannot help Telegram here. Telegram is liable for selling securities in a non-exempt unregistered distribution. Whether initial purchasers in the future make sales in compliance with, or in violation of, the Securities Act is a separate matter.

Defendants' persistent attempts to obscure the actual economic reality and terms of the transactions at issue in this case by pointing to legalese statements about their intent should fail. The SEC's application for a preliminary injunction and motions to strike and for summary judgment should be granted, and Telegram's motion for summary judgment should be denied.

                                              Respectfully submitted,

                                              _____
                                              Jorge G. Tenreiro