SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK 10001-8602
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2129
DIRECT FAX
(917) 777-2129
EMAIL ADDRESS
ALEXANDER.DRYLEWSKI@SKADDEN.COM

March 27, 2020

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

RE:   *SEC v. Telegram Group Inc., et al.*, 19-cv-9439 (PKC)(S.D.N.Y.)

Dear Judge Castel:

      On behalf of Defendants, we write concerning the Court's order, dated March 24, 2020 (the "Order"), which granted Plaintiff's motion for a preliminary injunction on the ground that the Purchase Agreements entered into between Telegram and Private Placement investors in 2018 constituted a distribution of securities for which no exemption from registration applies. (ECF No. 227.) Defendants respectfully seek clarity with respect to the scope of the injunction, *see* Fed. R. Civ. P. 65(d); in particular, that the Order does not apply to Defendants' Purchase Agreements entered into abroad with non-U.S. Private Placement investors not subject to U.S. securities laws. (*See* Third Affirmative Def. (ECF No. 37).)

      The Supreme Court has recognized that there is a "presumption against extraterritorial application" of the U.S. securities laws, which only cover "transactions in securities listed on domestic exchanges, and domestic transactions in other securities." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267-68 (2010); *see also In re Petrobras Sec.*, 862 F.3d 250, 259 (2d Cir. 2017) (applying *Morrison* to claims under the Securities Act of 1933).[1] In the Second Circuit,

---

[1] Although the Dodd-Frank Act excepts SEC securities fraud enforcement actions under Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Exchange Act of 1934 from the extraterritorial limits of *Morrison*, the Dodd-Frank Act does

Hon. P. Kevin Castel
March 27, 2020
Page 2

"transactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012); *see also Sullivan v. Barclays PLC*, No. 13 Civ. 2811 (PKC), 2017 WL 685570, at *28-30 (S.D.N.Y. Feb. 21, 2017). This inquiry must be made on a contract-by-contract basis. *Petrobras*, 862 F.3d at 271-75 (vacating class certification where district court failed to conduct contract-specific inquiry for each putative class member under *Morrison* and *Absolute Activist*); *see also Mori v. Saito*, No. 10 Civ. 6465 (KBF), 2013 WL 1736527, at *5-8 (S.D.N.Y. Apr. 19, 2013) (only individual plaintiffs who "alleged facts suggesting that money changed hands in the United States or that an agreement was executed in the United States" could state a claim, and dismissing claims of other plaintiffs who did not allege such facts).

Here, it is undisputed that only $424.5 million of the $1.7 billion that Telegram raised came through Purchase Agreements with U.S.-based purchasers. (JSF ¶¶ 48-50, 55-56.) The remaining over 70% was raised through Purchase Agreements with foreign purchasers outside the United States. (*Id.*) Defendants (both non-U.S. companies (*id.* ¶¶ 1-2)) entered into these agreements with non-U.S. parties outside of the United States through contracts containing foreign choice-of-law provisions. (*See, e.g.*, PX 96 at 15-16.) Although the location of the parties is not dispositive by itself, here, irrevocable liability under the Purchase Agreements for these non-U.S. parties was not incurred within the United States and thus these transactions fall outside of the reach of the U.S. securities laws. *Absolute Activist*, 677 F.3d at 67.

To the extent the SEC argues that the Order should cover Defendants' Purchase Agreements with non-U.S. Private Placement purchasers because the Grams themselves might one day make their way back into the United States through secondary market activity, this would, at the very most, constitute the "conducts and effects test" that the Supreme Court expressly rejected in *Morrison*. 561 U.S. at 266-68 ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." (emphasis in original)). Regardless, should the Court require, Defendants will implement safeguards to protect against non-U.S. Private Placement purchasers reselling Grams to U.S. purchasers in the future, including but not limited to imposing express contractual prohibitions as a precondition to non-U.S. Private

---

not apply to non-fraud claims brought by the SEC under Section 5 of the Securities Act, such as here. 15 U.S.C. §§ 77y(c), 78aa(b); *see also Liu Meng-Lin v. Siemens AG*, 763 F.3d 175, 181 (2d Cir. 2014).

Hon. P. Kevin Castel
March 27, 2020
Page 3

Placement purchasers receiving Grams upon launch of the TON Blockchain and configuring the TON digital wallet to preclude U.S.-based addresses.

      In light of the above, Defendants respectfully seek to clarify whether the scope of the preliminary injunction set forth in the Order applies only to Purchase Agreements with U.S.-based investors.  We appreciate the Court's attention to this matter and are available should the Court require more information regarding this request.

                                Respectfully,

                                /s/ Alexander C. Drylewski

cc:    All Counsel of Record