

UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE
200 VESEY STREET, ROOM 400
NEW YORK, NY 10281-1022

Jorge G. Tenreiro
TELEPHONE:  (212) 336-9145
TenreiroJ@sec.gov

March 30, 2020

<u>Via ECF and Facsimile</u>
Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

Re:   <u>SEC v. Telegram Group Inc. & TON Issuer Inc.</u>, No. 19 Civ. 9439 (PKC)

Dear Judge Castel:

Plaintiff Securities and Exchange Commission (the "SEC") respectfully opposes Telegram's request for "clarity" (Dkt. 229) ("Letter") regarding the scope of the preliminary injunction entered by the Court (Dkt. 227) ("Order").  The injunction the SEC requested (Dkt. 3) ("App.") and that the Court granted, unambiguously, and properly, applies to Telegram's delivery of Grams to "any person or entity," App. at 1, and requires no clarification.  Telegram's <u>ex post</u> request to improperly narrow its scope is procedurally barred and legally meritless.

In its Application, the SEC sought to "[p]reliminarily enjoin[]" Telegram from "delivering Grams to <u>any</u> person or entity or taking <u>any other steps</u> to effect <u>any</u> unregistered offer or sale of Grams."  <u>Id.</u> (emphasis added).  The parties thus specifically briefed whether Telegram's offers, sales, and delivery of Grams to non-U.S. based purchasers were exempt under the Securities Act of 1933, including under Regulation S ("Reg. S") thereunder.[1]  The Court held that "no exemption" applies to "Telegram's present plan to distribute Grams," Order at 3, noting that "the sale of 2.9 billion Grams to 175 purchasers," <u>id.</u> at 2 (<u>i.e.</u>, <u>all</u> of the purchasers), "are part of a larger scheme to distribute those Grams into a secondary public market."  <u>Id.</u>

Despite the unambiguous language of the Application and the Order, Telegram contends for the first time in this litigation that the injunction should not apply to Grams delivery to non-U.S. underwriters under <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 561 U.S. 247, 267-68 (2010).  Letter at 1.  Alternatively, conceding the correctness of the Order's conclusions, and that Telegram has not taken steps to stop Grams from flowing back into the United States, Telegram offers for the first time to impose "express contractual prohibitions as a precondition to non-U.S. Private Placement purchasers receiving Grams . . . and configuring the TON digital wallet to preclude U.S.-based addresses."  <u>Id.</u> at 2-3.

---

[1]   <u>E.g.</u>, SEC's Reply Br. (Dkt. 98) at 32 (citing 17 C.F.R. § 903(a); SEC Rel. No. 6863, <u>Offshore Offers and Sales</u> (Apr. 24, 1990)); Def. Opp. Br. (Dkt. 71) at 47, n.27.

Hon. P. Kevin Castel                                                                                                                     March 30, 2020
Page 2

      However, from the outset of this lawsuit Telegram understood, or should have understood, that the scope of the Application reached "<u>any</u> person or entity." Thus, though styled as a request for "clarity," Telegram's request is really a motion for reconsideration in disguise. Under Local Rule 6.3, such motions are "not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue." <u>Grabin v. Marymount Manhattan College</u>, No. 12 Civ. 3591, 2014 WL 3639136, at *2 (S.D.N.Y. July 22, 2014) (citation omitted). Nor may "[a] motion for reconsideration . . . be used as a vehicle for relitigating issues already decided by the Court." <u>Id.</u> at *1 (citing omitted). Having not mentioned <u>Morrison</u> in hundreds of pages of briefing or at oral argument, and having already litigated the applicability of Reg. S—as well as in order to discourage piecemeal litigation, multiple interlocutory appeals, and preserve judicial economy—Telegram "cannot assert [this] new argument[] . . . which w[as] not before the court on the original motion." <u>Siino v. Bd. of Trust. of the N.Y. City Teachers' Ret. Sys.</u>, No. 08 Civ. 4529 (PKC), 2009 WL 734076, at *2 (S.D.N.Y. Mar. 13, 2009) (citation omitted).

      Even if the Court were to entertain Telegram's <u>de facto</u> motion for reconsideration, <u>Morrison</u> does not warrant limiting the scope of the injunction and Telegram's request should be summarily denied. <u>Morrison</u> involved so-called "f-cubed" transactions—sales of securities by non-U.S. issuers to non-U.S. purchasers on non-U.S. markets. Here, the SEC has made a substantial showing that Telegram is about to engage in an unregistered sale of securities into United States markets to United States investors, using both foreign and domestic conduit underwriters, rendering <u>Morrison</u> inapplicable. <u>See, e.g.</u>, Order at 40 ("Telegram did not intend for Grams to come to rest with the 175 Initial Purchasers but to reach the public at large via post-launch resales by the Initial Purchasers.").

      Telegram's attempt to re-litigate the sufficiency of purported proposed restrictions fares no better—under <u>Morrison</u> or otherwise. The SEC has shown substantial evidence that, from the outset, Telegram's contractual prohibition on resales was honored more in the breach than the observance. Telegram knew that despite its sotto voce admonitions there was an active grey market for Grams as early as February 2018 (<u>see</u> Dkt. 80, SEC 56.1 at ¶¶ 213-19), and continuing through at least July 2019 (all while claiming not to know the source of the July 2019 resales, even though one of the selling agents told Telegram that Space Investments was involved). And, during the Offering, Telegram paid commissions to foreign brokers to find new investors (<u>id.</u> at ¶¶ 318-31), those brokers solicited investors in the United States (<u>id.</u> at ¶ 325), and Telegram has no idea who those brokers solicited, let alone sold to. <u>See, e.g.</u>, Ex. A (Hyman Dep. at 89:2-18). Bank records for Space Investments and Gem Limited, for example, reveal that they received millions of dollars from investors, including some in the United States, which Space Investments funneled to Telegram purportedly as payments on its purchase agreements. <u>See, e.g.</u>, SEC 56.1 at ¶¶ 133-47; <u>see also</u> Ex. B. The record contains no evidence that Telegram conducted any "Know Your Customer" diligence with respect to those investors or knew if they were U.S.-based. In light of Telegram's proven ignorance about who <u>currently</u> owns Gram interests, its offer to take now some of the steps it should have taken before to prevent flow back into the United States is too little, too late. Too late because Telegram has sold unrestricted Grams to conduits all over the world, some of whom have already resold their interests—consistent with Telegram's plan to ensure the widest distribution of Grams—including to United States investors. And too little because these restrictions will not enable Telegram to enforce provisions preventing foreign-based underwriters from selling Grams after they receive them (as some already have even before launch despite

Hon. P. Kevin Castel                                                                                                          March 30, 2020
Page 3

contractual prohibitions on doing so), including, but not limited to, by selling them on online trading platforms on which investors in the United States can buy Grams.

      The SEC respectfully requests that the Court deny Telegram's attempt to limit the scope of the injunction.

                                                                  Respectfully submitted,

                                                                 Jorge G. Tenreiro

cc: Counsel for Defendants (via ECF and email)