UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,                            19-cv-9439 (PKC)

      -against-                             OPINION AND ORDER

TELEGRAM GROUP INC. and TON ISSUER
INC.,

                      Defendants.
-----------------------------------------------------------------x

CASTEL, U.S.D.J.

        In its Opinion and Order of March 24, 2020, the Court granted the SEC's request for a preliminary injunction.[1] (Doc. 227). That same day, Telegram filed a notice of appeal. (Doc. 228). Telegram now asks the Court to "clarify whether the scope of the preliminary injunction set forth in the [Opinion and] Order of [March 24, 2020] applies only to Purchase Agreements with U.S.-based investors." (Telegram Mar. 27, 2020 Ltr. at 3 (Doc. 229)). In granting the SEC's motion, the Court adopted the exact language of the preliminary injunction proposed by the SEC over five months ago. (Proposed OSC & OSC (Oct. 11, 2019) (Docs. 3 & 6)). In its opposition to the preliminary injunction motion, Telegram had a full and fair opportunity to explain why the relief sought by the SEC was overbroad or otherwise inappropriate.

        Telegram now asserts that the preliminary injunction ought not reach those Initial Purchasers who are not U.S.-based because it would result in the extra-territorial application of the U.S. securities law, citing Morrison v National Australia Bank Ltd., 561 U.S. 247 (2010). Telegram argues that both defendant entities are non-U.S. persons and the majority of Initial

---

[1] Terms used herein have the meaning defined in the Court's Opinion and Order of March 24, 2020.

Purchasers are not U.S. persons and that the Gram Purchase Agreements with these non-U.S. parties were entered into outside the United States through contracts containing foreign choice-of-law provisions.[2]

"[T]ransactions involving securities that are not traded on a domestic exchange are domestic if irrevocable liability is incurred or title passes within the United States."  Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 67 (2d Cir. 2012).  From this unassailable premise, Telegram argues that "irrevocable liability under the Purchase Agreements" to these non-U.S. Initial Purchasers occurred outside the United States.  But focusing upon the Initial Purchasers and their Gram Purchase Agreements misses one of the central points of the Court's Opinion and Order, specifically, that the "security" was neither the Gram Purchase Agreement nor the Gram but the entire scheme that comprised the Gram Purchase Agreements and the accompanying understandings and undertakings made by Telegram, including the expectation and intention that the Initial Purchasers would distribute Grams into a secondary public market.  At the preliminary injunction stage, the intended resale of Grams by Telegram's conduits into the secondary market is likely to involve U.S. purchasers and would likely satisfy Morrison's transactional test.  Morrison, 561 U.S. at 269–70.

To address this hole in its argument, Telegram now proposes for the first time that it "will implement safeguards to protect against non-U.S. Private Placement purchasers reselling Grams to U.S. purchasers in the future, including but not limited to imposing express contractual prohibitions as a precondition to non-U.S. Private Placement purchasers receiving Grams upon

---

[2] A district court's jurisdiction or authority under Rule 62(d), Fed. R Civ. P., to clarify an injunction during the pendency of an appeal "has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo."  Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc., 847 F.2d 1014, 1018 (2d Cir. 1988).  If this Court lacks jurisdiction or authority to definitively rule on Telegram's application during the pendency of Telegram's appeal, then this Court's present ruling should be construed as an indicative ruling.

launch of the TON Blockchain and configuring the TON digital wallet to preclude U.S.-based addresses." (Doc. 229 at 3).  There are several problems with this proposal.  First, Telegram does not explain how the imposition of these new restrictions would be lawful modifications of the Gram Purchase Agreements entered into in 2018.  Second, and more fundamentally, the TON Blockchain was designed and is intended to grant anonymity to those who purchase or sell Grams.  Therefore, any restriction as to whom a foreign Initial Purchaser could resell Grams would be of doubtful real-world enforceability.  As to the TON Wallet, Telegram maintains that the TON Wallet is distinct from the TON Blockchain and is a useful but non-essential feature.  (Doc. 73-3 at 2).  Telegram does not show how withholding the TON Wallet from self-reported U.S. users, who are otherwise anonymous and could simply disclaim having a U.S.-based address, would be efficacious or enforceable.[3]  Further, Telegram's new proposals are raised long after the pre-injunction discovery period has closed and, as such, the SEC has been deprived of the opportunity to challenge their efficacy through expert testimony or other evidence.

Finally, the argument in favor of a clarification is less than straightforward, to be polite.  This is not a case where a motion for preliminary injunction was granted and the Court, *sua sponte*, issued its version of an injunction.  Here, the Court simply stated: "Plaintiff's motion for a preliminary injunction, (Doc. 3), is GRANTED." (Doc. 227 at 43).  The proposed form of the injunction has been known to Telegram since October 11, 2019. (Docs. 3 & 6).  The language including a prohibition on "delivering Grams to any person or entity or taking any other steps to effect any unregistered offer or sale of Grams" has been in the SEC's motion since its inception. (Docs. 3 & 6). One would expect a party opposing a preliminary injunction to include an argument

---

[3] Telegram also has stated that the TON Wallet would be "expected to compete with any other wallet applications designed and offered by third parties." (Doc. 73-3 at 2). Telegram can provide no assurances that these third-party wallets would preclude U.S.-based addresses from receiving Grams.

in its very fulsome submissions that the grant of the requested injunction would be needless, overbroad, unworkable, apply extraterritorially, or any other argument it wished. In its opposition to the preliminary injunction, Telegram raised no objection to the form of the injunction and never cited the Morrison case.[4]

       Telegram's application is DENIED.

       SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 1, 2020

---

[4] The Court acknowledges that Telegram's Answer to the Complaint raises as a defense whether the relief sought in the Complaint would result in the extra-territorial application of the securities laws. (Doc. 37 at 34 ¶¶ 53–55). Telegram has not waived this defense as to the ultimate resolution on the merits. But in opposing the preliminary injunction, it never argued the point despite being placed on fair notice of the nature of the preliminary relief sought by the SEC.