# PX76

Dated: April 10, 2019

**BILLION POWER MANAGEMENT LIMITED.**

**AID PARTNERS CAPITAL II LIMITED**

and

**BSG Cayman Limited**

---

PARTICIPATION AGREEMENT

---

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

836

## TABLE OF CONTENTS

| CLAUSE | CLAUSE HEADING | PAGE |
|---|---|---|
| 1. | INTERPRETATION | 2 |
| 2. | THE PARTICPATION | 3 |
| 3. | PAYMENTS | 4 |
| 4. | REPRESENTATIONS AND WARRANTIES | 5 |
| 5. | THE PURCHASER, THE COMPANY AND THE PARTICIPANT | 7 |
| 6. | AUTHORISATION & RIGHTS | 8 |
| 7. | TAXES | 9 |
| 8. | TERMINATION | 9 |
| 9. | BENEFIT OF AGREEMENT | 10 |
| 10. | CONFIDENTIALITY | 10 |
| 11. | NOTICES | 10 |
| 12. | COSTS AND EXPENSES | 11 |
| 13. | MISCELLANEOUS | 11 |
| 14. | GOVERNING LAW AND JURISDICTION | 12 |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

THIS PARTICIPATION AGREEMENT is made on April 10, 2019

AMONG:-

(1)    **Billion Power Management Limited,** a limited liability company incorporated under the laws of British Virgin Islands, whose principal place of business is at 3rd Floor J & C Building, P.O.Box 933, Road Town, Tortola, British Virgin Islands, VG1110 (the "**Company**");

(2)    **AID PARTNERS CAPITAL II LIMITED,** a company incorporated in Samoa and registered in Hong Kong with principal place of business at 22nd Floor, New World Tower II, 18 Queen's Road Central, Central, Hong Kong (the "**Purchaser**"); and

(3)    **BSG Cayman Limited**, Governors Square, Suite # 5-204, 23 Lime Tree Bay Avenue, P.O. Box 2547, Grand Cayman, KY1-1104, Cayman Islands, (the "**Participant**").

WHEREAS:-

(A)    The Company owns 235 shares of the Purchaser, representing approximately 23.5% of the entire issued share of the Purchaser.

(B)    The Purchaser has entered into a Purchase Agreement dated 6 February 2018 ("**Purchase Agreement**", executed copy of which is attached hereto as Annex A) with TON Issuer Inc., a wholly owned subsidiary of Telegram Group Inc. ("**Issuer**") and Telegram Group Inc. ("**Telegram**") for purchasing and becoming the holder of 66,214,464.25307528 tokens, which are planned to be created and issued by the Issuer and Telegram no later than 31 October 2019 ("**Token**"), following the development and launch of a new blockchain platform ("**TON Network**") for the consideration of US$0.37756101 per token. The total consideration paid by the Purchaser shall be US$25,000,000.

(C)    Telegram is a British Virgin Islands registered limited liability company. Its registered address is Geneva Place, Waterfront Drive, P.O. Box 3469 Road Town, Tortola, British Virgin Islands. Telegram is principally engaged in providing the cloud-based instant messaging service. It has more than 200 million monthly active users, sending more than 70 billion messages per day, with more than 50% annual growth rate.  The Issuer is a British Virgin Islands registered limited liability company. Its registered address is Craigmuir Chambers, Road Town, Tortola VG 1110, British Virgin Islands.

(D)    The Company entered into a co-investment agreement and an amended co-investment agreement (collectively, the "**Co-Investment Agreement**", executed copies of which is attached hereto as Annex B) with the Purchaser and AID Partners Advisors Holding Ltd on 14 February 2018 and 22 March 2018

- 1 -

838

respectively in relating to the investment in Token. The Company is entitled to receive 13,028,471.60 Tokens under the Co-Investment Agreement

(E)     The Company wishes to grant and the Participant wishes to receive a participation in the purchase of 5,297,157.14024602 tokens among the Tokens that the Company will be entitled to by subscribing a total participation amount of US$2,400,000.

NOW IT IS HEREBY AGREED AS FOLLOWS: -

1.     INTERPRETATION

All capital terms used but not otherwise defined herein shall have the meanings given to such terms by the Purchase Agreement.

(A)     In this Agreement, and in the Recitals, unless the context otherwise requires, the following expressions shall have the following meanings:-

| Expression | Meaning |
|---|---|
| **"Business Days"** | a day (other than a Saturday) on which commercial banks in Hong Kong, New York, United Kingdom, Cayman Islands, the British Virgin Island or Samoa are open for the transaction of general banking business |
| **"Company Tokens"** | 13,028,471.60 tokens that the Company is entitled to receive under the Co-investment Agreement |
| **"Hong Kong"** | the Hong Kong Special Administrative Region of the People's Republic of China |
| **"Participation Amount"** | US$2,400,000 |
| **"Participation Tokens"** | 5,297,157.14024602 tokens acquired by the Participant through the Company and the Purchaser under this Agreement |
| **"pro rata"** | with respect to any holder of Tokens, it shall refer to a fraction, the numerator of which is the number of Tokens held by such holder and the denominator of which is the total number of Tokens |
| **"Tokens"** | the 66,214,464.25307528 tokens being acquired by the Purchaser under the Purchase Agreement |

- 2 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                     839

| | |
|---|---|
| **"Termination Net Amount"** | the Participant's pro rata share of the Termination Amount returned by the Issuer and/or Telegram due to the termination under Clause 7 of the Purchase Agreement, without any deduction of any nature |
| **"US"** | United States of America |
| **"US Dollars/ US$"** | United States dollars, the lawful currency of the United States of America |

(B)     A reference herein to a statute or statutory provision includes a reference:-

     (i)     to that statute or provision as from time to time modified or re-enacted;

     (ii)    to any repealed statute or statutory provision which it re-enacts (with or without modification); and

     (iii)   to any orders, regulations, instruments or other subordinate legislation made under the relevant statute or statutory provision.

(C)     Unless the context otherwise requires:-

     (i)     words in the singular include the plural, and vice versa;

     (ii)    words importing gender or the neuter include both genders and the neuter; and

     (iii)   a reference to a person includes a reference to a body corporate and to an unincorporated body of persons.

(D)     A reference to a "**Clause**" is to a clause of this Agreement.

(E)     The headings are for convenience only and do not affect the interpretation of this Agreement.

2.     THE PARTICPATION

(A)     The Purchaser and the Company shall enter into an amendment agreement to the Co-investment Agreement ("**Amendment**") with AID Partners Advisors Holdings Ltd. who is the majority shareholder of the Company with 75.1% shareholdings of the Company ("**APAHL**"), pursuant to the terms of which, the Participant shall be entitled to join the distribution list of the Purchaser and to receive the Participation Tokens from the Purchaser upon allocation. The Purchaser and the Company shall ensure the Amendment to be duly executed with APAHL. All consents necessary for the execution and performance of the Amendment shall have been duly obtained, including but not limited to any

- 3 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

840

corporate actions of the Purchaser, the Company and APAHL. The Purchaser and the Company shall ensure that: (i) the Participant is entitled to the pro rata economic rights and benefits in the Participation Tokens, and (ii) the Participant shall be transferred the full legal title and interest attached to the maximum portion of the Participation Tokens that are available and exempted from any lockup requirement or transfer restriction in accordance with the release schedule as set out under Clause 10 of the Purchase Agreement and immediately following the Purchaser is entitled to make such transfer thereunder. For the avoidance of doubt, upon being allocated any Tokens under the Purchase Agreement, the Purchaser shall immediately (in any event, within 24 hours after the Purchaser being allocated any Tokens) allocate the pro rata portion of the Participation Tokens to the Participant (the "**Staged Title Transfer**"). Notwithstanding the foregoing, the Participant may in its sole discretion instruct the Company by written notice to sell all or any portion of such Participation Tokens and decide to receive the cash proceeds from such sales, rather than receiving such Participation Tokens (the "**Proceeds Transfer**"). In the event that the Participant requests the Proceeds Transfer, the relevant Participation Tokens shall be sold by the Participant directly to the buyers, and the Company shall mediate with the potential buyers on behalf of the Participant for equal terms and conditions for the Proceeds Transfer of other requested investors. No preferential treatment shall be provided to any of the requested investors.

(B)     In accordance with Clause 7 of the Purchase Agreement, upon the occurrence of a Dissolution Event or in the event the Network Launch has not occurred as of 31 October 2019, the Purchase Agreement will terminate automatically and the Issuer and/or Telegram shall return the Termination Amount, as defined in the Purchase Agreement, to the Purchaser. The Purchaser and the Company shall be responsible to ensure that the Termination Net Amount shall be paid to the Participant by the Company or the Purchaser within three (3) Business Days upon the occurrence of such termination event under the Purchase Agreement. The Company or the Purchaser shall not be responsible for any bank interest and/or bank charges incur from Participant's original bank in relation to this investment pursuant hereto.

(C)     The Purchaser shall provide to the Issuer a network address comprising the allocation to which the Participation Tokens shall be issued on or prior to the date that is twenty-four months following the Network Launch Date (as defined in the Purchase Agreement). The Purchaser shall notify the Participant immediately upon receiving any notice from the Issuer requesting the network address, and the Participant shall provide its network address before the first Staged Title Transfer (or the corresponding Proceeds Transfer, if applicable).

3.     <u>PAYMENTS</u>

- 4 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                   0841

(A)   The Participant shall pay the Participation Amount by electronic transfer to following bank account within seven (7) Business Days from signing this Participation Agreement.

| Bank: | UBS AG Switzerland |
|---|---|
| Bank Address: | 45 Bahnhofstrasse, 8021 Zurich, Switzerland |
| Account Name: | Billion Power Management Limited |
| SWIFT Code: | ███████████ |
| Beneficiary   IBAN (USD): | ███████████████ |
| Account #: | ██████████ |

(B)   Subject to Clauses 3(C), on each date upon which an amount falls due hereunder from either party hereto, that party shall make such amount available to the other party by payment in US Dollars and in same day funds (or in such other funds as may for the time being be customary in Hong Kong for the settlement in Hong Kong of international banking transactions in dollars) to the account specified by the other party.

(C)   The Company and the Purchaser shall procure payments to be made to the Participant under this Agreement in the same currency in which the Purchaser/Company receives under the Tokens, or in US Dollars or Hong Kong Dollars.   All payments made by the Participant to the Company shall be in US Dollars.

4.   REPRESENTATIONS AND WARRANTIES

(A)   Each of the Company and the Purchaser (the "**Warrantors**") severally and jointly represents and warrants to the Participant that:

   (i)   it is duly organized, validly existing and in good standing under the laws of British Virgin Islands/Hong Kong, and it has all requisite power and authority to enter into this Agreement and to carry out and perform its obligations thereunder, and it has duly authorized the execution, delivery and performance of this Agreement;

   (ii)   its obligations hereunder constitute its legal, valid and binding obligations, enforceable against the Warrantors in accordance with its terms;

- 5 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER   ███████842

(iii) it has not disposed of all or any part of its rights, title and interest in and to the Tokens, and no encumbrance is created or otherwise existing over all or any part of its rights, title and interest in and to the Tokens;

(iv) it has not made, agreed or consented to any modification or amendment of the Tokens or agreed to or sought the cancellation or termination thereof;

(v) it has not granted or agreed to any waiver or release of any obligation of the Issuer or Telegram under the Purchase Agreement;

(vi) no amendment or modification has been made to the Purchase Agreement or the Co-Investment Agreement upon their respective execution that may affect any rights, benefits or obligations of any Warrantor arising therefrom;

(vii) it has not violated any term of the Purchase Agreement or the Co-Investment Agreement;

(viii) the Purchaser has good and valid title to the Tokens upon their issuance, and the Company has good and valid title to the Company Tokens upon the issuance of the Company Tokens, in each case free and clear of any liens. It has not entered into and it is not going to enter into any participation agreement or any other kind of agreements similar in this nature with any third party which may affect the Purchaser or the Company's ability to transfer the Participation Tokens to the Participants in accordance with this Agreement;

(ix) the Participation Tokens, when issued to the Participant, will be duly and validly issued, free from any liens; and

(x) the Purchaser guarantees to the Participant the due and punctual performance of all obligations and liabilities incurred by the Company from time to time under or in connection with this Agreement, undertakes with the Participant that, whenever the Company fails to duly perform or discharge any of its obligations or liabilities under this Agreement, the Purchaser shall immediately on demand do so by itself, as if it were the principal obligor, and further agrees with the Participant that if any obligation guaranteed by it is or becomes unenforceable, invalid or illegal, it will, as an independent and primary obligation, indemnify the Participant immediately on demand against any cost, loss or liability it incurs as a result of the Company not paying any amount which would, but for such unenforceability, invalidity or illegality, have been payable by it under this Agreement on the date when it would have been due.

(B) The Participant represents and warrants to the Company that:

- 6 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

843

(i)    it has power to enter into and has duly authorized the execution, delivery and performance of this Agreement;

(ii)   its obligations hereunder constitute its legal, valid and binding obligations; and

(iii)  it is capable of paying the full Participation Amount owed as described by this Agreement.

(C)    The Participant confirms that (i) it constitutes a professional investor under the relevant securities law in Hong Kong; (ii) it has itself been, and will continue to be, solely responsible for making its own independent appraisal of and investigations into the financial condition, creditworthiness, affairs, status and nature of Telegram and its subsidiaries ("**Telegram Group**"), (iii) it has not relied, and will not hereafter rely, on the Company to appraise or keep under review on its behalf the financial condition, creditworthiness, affairs, status or nature of Telegram Group, and (iv) it has read and has express knowledge of all the terms and conditions of this agreement.

5.    THE PURCHASER, THE COMPANY AND THE PARTICIPANT

(A)    Save as otherwise expressly provided under this Agreement, it is hereby agreed that the Company or the Purchaser is not and shall not be deemed to be acting as the agent or trustee of the Participant in connection with the exercise of, or the failure to exercise, any of its rights or powers arising under or in connection with this Agreement and the Tokens pursuant to the Purchase Agreement.

(B)    Each of the Company and the Purchaser agrees with the Participant that:

(i)    it shall reasonably exercise its rights and powers (including sale or disposal of the Participation Tokens) in accordance with specific written notice given by the Participant to the Company/Purchaser;

(ii)   it shall not, without the prior written consent of the Participant, sell any Participation Tokens, or create any encumbrance over all or any part of its right, title and interest in and to or under the Participation Tokens, or otherwise dispose the Participation Tokens or its right, title and interest in any other manner.

(iii)  it will not assert or seek to assert against any director, or employee of Participant any claim it might have against the Participant in respect of the matters referred to in this Agreement.

(C)    The Participant shall:

- 7 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

(i)    Pay or reimburse to the Company/Purchaser on demand all customary transaction costs (i.e. cost incurred with exchanges or Over-the-Counter vendors, if any) incurred by the Company/Purchaser in connection with the disposing of the Participation Tokens, where the Company/Purchaser acts in accordance with the written notices from the Participant given under Clause 5(B) above, provided that, for the avoidance of doubt, all costs and expenses of a routine administrative nature (if any) incurred by the Company/Purchaser in connection with holding or transferring the Participation Tokens shall be borne by the Company/Purchaser.

(ii)    Indemnify the Company/Purchaser on demand against any and all actual liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements which may be imposed on, incurred by or asserted against the Company/Purchaser arising from the Company/Purchaser' proper and lawful performance of the acts in accordance with the written notices from the Participant given under Clause 5(B) above.

(D)    The Company makes no representation or warranty and assumes no responsibility with respect to (i) the due execution, legality, validity, adequacy or enforceability of the Tokens except for the representations and warranties made under the Clause 4, (ii) the financial condition of the Issuer and Telegram, or (iii) the performance by Telegram of its obligations under the Tokens. In particular, but without limitation, if Telegram or any other person fails to perform any of its obligation under the Tokens, the Participant shall have no recourse to the Company in respect of such failure except for the indemnity as set forth in the Clause 2(B).

(E)    During the term of this Agreement, the Company shall maintain in accordance with its usual practice accounts evidencing (i) the amounts received from the Purchaser or Issuer or Telegram with respect to the Tokens and (ii) the amounts received from and paid to the Participant hereunder, and grant the Participant reasonable access to such accounts. The entries made in such accounts shall, in the absence of manifest error, be prima facie evidence of the existence and amount of the obligations therein recorded.

6.    AUTHORISATION & RIGHTS

(A)    In the event of any dispute on matters relating to the Participation Amount described in Clause 5(E), the Company shall engage an independent auditor acceptable to the Participant to audit the disputed matter and the report so produced by such independent auditor at the conclusion of such audit shall be conclusive and binding on each of the disputed matter, save in the case of manifest or proven error. The cost of the auditor shall be equally borne by the Company and the Participant.

- 8 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER    845

(B)     The Participant hereby ratifies and undertakes to ratify all action taken (or omitted) by the Company under or with respect to or in reliance on this clause, provided that the Company has fully disclosed all the foregoing actions.

(C)     The Participant agrees that it will not assert or seek to assert against any director, officer or employee of the Company any claim it might have against the Company in respect of the matters referred to in this Agreement.

7.     TAXES

(A)     The Participant Amount payable by the Participant hereunder shall be paid free and clear of and without any deduction or withholding for or on account of any set-off, counter-claim or, except to the extent (if any) required by law, any tax or other matter. If the Participant shall be required by law to make any deduction or withholding or payment as aforesaid from or in connection with any payment hereunder, then it will ensure that such deduction or withholding or payment does not exceed the minimum legal liability therefor and will forthwith pay to the Company such additional amount as will result in the receipt by the Company of the full amount which would otherwise have been receivable hereunder had no such deduction or withholding or payment been required or made.

(B)     The Participant shall pay all stamp duty and documentation registration or other taxes if any from time to time imposed on or in connection with this Agreement and shall indemnify the Company against any liability reasonably and properly incurred by it arising by reason of any delay or omission by the Participant to pay such duty or taxes.

(C)     All payments to be made by the Company hereunder shall be made subject to any deductions or withholdings which may be required by any applicable law, and shall be made on pro rata basis amongst all investors/participants of the Company in respect of the Company Tokens.

8.     TERMINATION

This Agreement shall become effective upon execution on the condition that the Amendment is duly executed by all parties thereto on the same date and shall be in effect until:

(A)     it is terminated upon mutual consent of the Participant and the Company;

(B)     all the Tokens have been transferred to the Participant and other investors;

(C)     the date that is twenty-four months following the Network Launch Date if the Purchaser has failed to comply with the requirement under Clause 2(C) by then (unless the Purchase Agreement has been terminated by the Issuer

- 9 -

or Telegram Group earlier due to the same reason), or the Company and/or the Purchaser has failed to perform its obligations under Clause 2(A), in each case where the Company shall and the Purchaser shall cause the Company to return the entire amount of the Participation Amount to the Participant, with an interest at the rate of 8% per annum for the period from the date when the Participant pays the Participation Amount until the date of such repayment; and

(D)   in the event the Issuer or Telegram Group terminates the Purchase Agreement, in which case the Company shall return the Termination Net Amount to the Participant in accordance with Clause 2(B).

9.   BENEFIT OF AGREEMENT

This Agreement shall be binding upon and ensure to the benefit of each of the parties hereto and their respective successors but neither party hereto shall, without the other's prior permission in writing, sell, transfer, assign or otherwise dispose of its rights or liabilities hereunder.

10.   CONFIDENTIALITY

The Participant and the Company agree that it will treat this Agreement and any information supplied by the Participant and the Company in connection herewith as being strictly confidential.

11.   NOTICES

Each notice, demand or other communication given or made under this Agreement shall be in writing and delivered or sent to the relevant party at its address or facsimile number set out below (or such other address or facsimile number as the address has by two (2) days' prior written notice specified to the other party):

To the Company and the Purchaser:
Address:             22nd Floor, New World Tower II, 18 Queen's Road Central, Central Hong Kong
Fax number:          +852 3187 6088
Email:               aqian@aidpartners.com
Attention:           Ms. Alexandra Qian

To the Participant:
Address: 18-121, 18/F Tower B, China Overseas 838 South Huangpi Road, Huangpu District, Shanghai 200025, China
Tel Number: +86 182 0101 8228
Email: <steven@bsg-group.com>
Attention: Steven Y. Ma

- 10 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                          847

Any notice, demand or other communication so addressed to the relevant party shall be deemed to have been delivered (i) if given or made by prepaid registered post or by hand, when actually delivered to the relevant address; or (ii) if given or made by fax, when dispatched upon receipt by the sender of machine printed confirmation of receipt, provided it is received before 5 p.m. (place of receipt) on a Business Day, otherwise it shall be deemed to have been delivered at 9 a.m. (place of receipt) on the next Business Day.

12.    COSTS AND EXPENSES

Each party shall bear its own costs incurred in relation to the negotiation, the preparation and the execution of this Agreement.

13.    MISCELLANEOUS

(A)    Each of the parties undertakes to each of the others to execute or procure to be executed all such documents and to do or procure to be done all such other acts and things as such other may reasonably request to give it or any other party the full benefit of this Agreement.

(B)    The exercise of or failure to exercise any right or remedy in respect of any breach of this Agreement shall not, save as provided herein, constitute a waiver by the relevant party of any other right or remedy it may have in respect of that breach. Each party agrees to indemnify and hold harmless the other party, from and against any and all losses suffered by such party as a result of, or based upon or arising from any inaccuracy in or breach or nonperformance of any of the representations, warranties, covenants or agreements in or pursuant to this Agreement.

(C)    This Agreement and documents referred to herein constitutes the entire agreement between the parties with respect to its subject matter (no party having relied on any representation or warranty made by any other party which is not contained in this Agreement or such documents) and no variation of this Agreement shall be effective unless made in writing and signed by all of the parties.

(D)    This Agreement and documents referred to herein supersede all and any previous agreements, arrangements or understandings between the parties relating to the matters referred to in this Agreement and all such previous agreements, arrangements or understandings (if any) shall cease and determine with effect from the date hereof.

(E)    If at any time any provision of this Agreement is or becomes illegal, void or unenforceable in any respect, the remaining provisions hereof shall in no way be affected or impaired thereby.

(F)    This Agreement may be signed in any number of counterparts, all of which taken together shall constitute one and the same instrument. Any party may enter into this

- 11 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                        848

Agreement by signing any such counterpart. Time shall be of the essence of this Agreement, both as regards the dates and periods specifically mentioned and as to any dates and periods which may, by agreement in writing between the parties hereto, be substituted therefore.

14.   GOVERNING LAW AND JURISDICTION

(A)   This Agreement is governed by and shall be construed in accordance with the laws of Hong Kong.

(B)   Any dispute, controversy or claim arising out of, in connection with or relating to this Agreement, including the interpretation, validity, invalidity, breach or termination thereof, if not resolved within thirty (30) days after the date of delivery of a dispute notice by a party, any party shall be entitled to refer the dispute for final resolution by arbitration administered by the Hong Kong International Arbitration Centre. The arbitration shall be conducted in Hong Kong under the Hong Kong International Arbitration Centre Administered Arbitration Rules in force when the Notice of Arbitration is submitted in accordance with the said Rules. The number of arbitrators shall be three. The arbitration shall be conducted in the English language.

(C)   The costs of arbitration shall be borne by the losing Party, unless otherwise determined by the arbitration tribunal.

(E)   The award of the arbitration tribunal shall be final and binding upon the parties, and the prevailing party may apply to a court of competent jurisdiction for enforcement of such award.

(F)   When any dispute occurs and when any dispute is under arbitration, except for the matters in dispute, the parties shall continue to fulfill their respective obligations and shall be entitled to exercise their rights under this Agreement.

(G)   The Company hereby irrevocably appoints AID Partners Capital II Limited of 22nd Floor, New World Tower II, 18 Queen's Road Central, Central, Hong Kong as its agent to receive and acknowledge on its behalf service of any writ, summons, order, judgment or other notice of legal process in Hong Kong. Such service shall be deemed completed on delivery to the process agent (whether or not it is forwarded to and received by the Company).

- 12 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                   849

AS WITNESS the hands of the duly authorised representatives of the parties hereto the day and year first before written.

| | |
|---|---|
| SIGNED by | ) |
| duly authorised for and on behalf of | ) |
| **Billion Power Management Limited** | ) |
| in the presence of | ) |

| | |
|---|---|
| SIGNED by | ) |
| duly authorised for and on behalf of | ) |
| **AID PARTNERS CAPITAL II LIMITED** | ) |
| in the presence of | ) |

| | |
|---|---|
| SIGNED by | ) |
| duly authorised for and on behalf of | ) |
| **BSG Cayman Limited** | ) |
| in the presence of | ) |

- 13 -

850

ANNEX A
Purchase Agreement

[to be separately attached]

- 14 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

851

ANNEX B
Co-Investment Agreement

[to be separately attached]

- 15 -

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                                                    852