# Exhibit C

# Exhibit 4

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, Plaintiff, -against- TELEGRAM GROUP INC. and TON ISSUER INC., Defendants. | 19 Civ. 9439 (PKC) **ECF Case** |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 of the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York ("Local Rules"), Defendants Telegram Group Inc. ("Telegram") and TON Issuer Inc ("TON Issuer" and collectively with Telegram, "Defendants") hereby respond and object to Plaintiff's First Set of Interrogatories to Defendants dated November 1, 2019 (the "Interrogatories"), propounded by Plaintiff United States Securities and Exchange Commission ("Plaintiff") in the above-captioned case ("Action").

**GENERAL RESPONSES AND OBJECTIONS**

The following general objections are hereby incorporated into each of the objections to specific Interrogatories as if they were set forth in full in the specific objection. The objections to specific Interrogatories are intended to amplify the general objections and neither limit the applicability of any of the general objections nor waive any objections that may, in addition to those set forth, be applicable to the specific Interrogatories.

1. Defendants object to the Interrogatories to the extent that they seek discovery of information protected from disclosure by the attorney-client privilege, work-product

doctrine or any other applicable privilege, doctrine, rule, immunity or ground for non-production. Nothing done in relation to the Interrogatories is intended to or shall operate as a waiver by Defendants, intentionally or otherwise, of the attorney-client privilege, work-product doctrine or any other applicable privilege, doctrine, rule, immunity or ground for non-production.

2. Defendants object to the Interrogatories to the extent that they seek information that is protected by foreign law from searches, access, export or production, including, but not limited to, the requirements of the European Commissions, national laws implementing the Directive on Privacy and Electronic Communications (2002/58/EC), the General Data Protection Regulation (2016/679), the United Kingdom's Data Protection Act 2018 or any other similar national privacy law, or that is otherwise protected from discovery or disclosure under any applicable order, rule, law or privilege (together, the "Protected Information"). To the extent that the Interrogatories may be construed as seeking such Protected Information, Defendants claim and invoke all applicable protections available, including, but not limited to, those enumerated in this paragraph. Any inadvertent production or disclosure of any Protected Information shall not be deemed a waiver of any right, privilege or immunity, or of any other ground for objecting to discovery with respect to such disclosure, or of Defendants' right to object at any time, including but not limited to, during the course of the Action, to the use of such Protected Information.

3. Defendants object to the Interrogatories to the extent they seek information that is beyond the jurisdictional reach of Plaintiff and are therefore irrelevant.

4. Defendants object to the Interrogatories, including the Definitions and Instructions, to the extent they purport to impose greater obligations on Defendants than those

imposed by the Federal Rules of Civil Procedure, the Local Rules or any other applicable law or rule applicable to the Action.

5. Defendants object to the Interrogatories to the extent that they purport to require Defendants to produce trade secrets, proprietary, confidential or sensitive business information or personal information concerning any employee or other individual. Defendants will produce such documents only to the extent that they are relevant to any claim or defense of a party to the Action, and only pursuant to the Protective Order to be agreed to by the parties and entered by the Court.

6. Defendants object to the Interrogatories to the extent that they contain vague, ambiguous, undefined or argumentative terms, and to the extent that the Interrogatories assume disputed facts or legal conclusions in connection with the information requested. Defendants hereby deny all such disputed facts and legal conclusions.

7. Defendants object to the Interrogatories to the extent that they purport to require Defendants to disclose information (i) already in Plaintiff's possession, custody or control; (ii) in the public domain; or (iii) available to Plaintiff from a more convenient, less burdensome or less costly source than Defendants, on grounds that such Interrogatories are overbroad and unduly burdensome.

8. Defendants object to the Interrogatories to the extent that they purport to require Defendants to disclose information (i) not in Defendants' actual possession, custody or control; or (ii) created or held by any person or entity other than Defendants themselves, on grounds that such Interrogatories are overbroad and unduly burdensome.

9. Defendants respond to the Interrogatories based upon Defendants' current knowledge and documents and information presently available to Defendants that they have been

able to identify through reasonable efforts. In responding to the Interrogatories, Defendants reserve, and expressly do not waive, the right to present or rely upon subsequently developed legal theories or additional information discovered, obtained or inadvertently omitted at this time.

10. Defendants respond to the Interrogatories based on their reasonably diligent investigation to date and understanding of the facts at this time, and reserve all rights to supplement or amend any of their responses to the Interrogatories as further information becomes available. Defendants submit these responses without conceding, and reserve the right to object to, the relevancy, materiality, competency or admissibility of any information produced in response to the Interrogatories. Defendants also reserve the right to assert additional objections to the Interrogatories, or any other requests for documents or information, if such additional objections become apparent in the future.

11. By providing these responses to the Interrogatories, Defendants in no way waive any rights or defenses in this action, including but not limited to defenses based on personal jurisdiction, all of which are expressly preserved.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Without waiving or departing from the objections above, and specifically incorporating those objections in the Specific Responses and Objections below, the Defendants make the following specific objections to the Interrogatories' Definitions and Instructions:

1. Defendants object to each of the Instructions to the extent they seek to impose requirements beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules. Defendants will comply with the requirements of the Federal Rules of Civil Procedure and the Local Rules.

2. Defendants object to the Definition of "Telegram" insofar as it extends to "TON Foundation, TON Labs, TON Reserve, their predecessors, successors, affiliates, an subsidiaries, as well as their current and former officers, employees, directors and any person acting, directly or indirectly, on their behalf including, without limitation, Pavel and Nicholas Durov," as it purports to require a response from persons and entities other than Defendants, including those that are not subject to personal jurisdiction (whether generally or with respect to the Subpoena), which were not themselves named in or served with the Interrogatories, which are established and licensed in countries other than the United States and operate subject to the laws of such countries or which are or may be deemed to be separate legal entities for certain purposes, including all purposes relevant to these responses and objections. Defendants will only respond with knowledge and information within the "possession, custody or control" of Telegram and TON within the meaning of the Federal Rules of Civil Procedure.

3. Defendants object to Definition No. 1 to the extent it purports to broaden the uniform definitions in Local Rule 26.3. Defendants will interpret "or," "and," "and/or," "each," "every," "any" and "all" as set forth in Local Rule 26.3(d).

4. Defendants object to Definition No. 4[1] because the term "Applications" is vague, ambiguous, overbroad and seeks to impose burdens not contemplated by the Federal Rules of Civil Procedure or the Local Rules by including "applications, programs, or services that may be used or that are intended to be used" within its scope.

[1] There are two definitions labeled as Definition No. 4. This objection applies to the second Definition No. 4 regarding the term "Applications."

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## SPECIFIC RESPONSES AND OBJECTIONS

INTERROGATORY NO. 1:

Identify what materials, in whatever format and on whatever medium and if any exist, that you have used to market Grams to US purchasers but you did not use to market Grams to non-US purchasers, or vice-versa.

RESPONSE TO INTERROGATORY NO. 1:

Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 1 seeks information that Defendants previously produced to Plaintiff.

Subject to and without waiving their objections, Defendants respond to this Interrogatory as follows. Defendants used the same materials regarding the TON Blockchain and Grams with U.S. and non-U.S. purchasers in connection with the private placement, which was conducted pursuant to exemptions to registration under Regulation D (for U.S. purchasers) and Regulation S (for non-U.S. purchasers).

INTERROGATORY NO. 2:

Identify all current actual uses of Grams and all contemplated uses for Grams at the time of their anticipated launch.

RESPONSE TO INTERROGATORY NO. 2:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 2 seeks information that is not in Defendants' possession, custody or control. Defendants also object to Interrogatory No. 2 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Grams do not have any "current actual uses" because they not exist yet. As set forth in the purchase agreements entered into with private placement purchasers, Grams will only be created if and when the TON decentralized blockchain platform is successfully launched, which has not occurred. If the TON platform is successfully launched, and Grams are created and distributed pursuant to the purchase agreements, Defendants anticipate that Grams will immediately be useable (i) as tender for commercial transactions and a medium of exchange for users on the TON Blockchain, which will be capable of quickly processing and recording such transactions; (ii) to serve as stakes deposited by third parties in order to be selected to serve as validators to validate transactions on the TON Blockchain and thereby be awarded more Grams; (iii) to serve as capital lent out to validators and others; (iv) to serve as voting power for Gram holders required to support or oppose changes in certain parameters of the TON Blockchain protocol; and (v) in connection with TON Payments, a platform for micropayments that will be available at the time of the anticipated launch of the TON Blockchain.

Defendants further respond that Grams will have additional expected uses on the TON Blockchain, including: (i) to pay for the processing of smart contracts and applications that are developed on the TON Blockchain by third parties, and (ii) to pay for services or the storing of data through TON Storage, which Defendants expect will be available at the time of the anticipated launch of the TON Blockchain, as well as through any other applications that may be built on the TON Blockchain by third parties, including those identified in Defendants' response to Interrogatory No. 5.

In addition, Defendants currently contemplate, subject to further consideration and final confirmation, that Grams may be used by the yet-to-be established TON Foundation: (i) as a means by which to dampen upward market price volatility of Grams in order to promote their usage as a bona fide currency for commercial transactions, and (ii) as potential incentive payments to third-party computer scientists or third-party developers who contribute to or promote the consumptive use of Grams. Defendants have reserved and continue to reserve all rights to change, modify, or eliminate the existence or functions of the TON Foundation.

Further, because the TON Blockchain has not yet launched and Grams do not yet exist, there may be additional uses and functions for Grams of which Defendants are not currently aware and/or will be developed over time based on the efforts of the decentralized community of developers and others.

INTERROGATORY NO. 3:

Identify all individuals and entities outside of Telegram with whom you communicated regarding the development of Applications.

RESPONSE TO INTERROGATORY NO. 3:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because the phrase "regarding the development of Applications" is vague, ambiguous, and overly broad. Defendants also object to Interrogatory No. 3 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. The TON Blockchain's code is entirely open source and is publicly available at: https://test.ton.org/, along with all guidelines

and step-by-step instructions regarding how to create and test applications and smart contracts on the TON Blockchain.[2] Accordingly, anyone in the world can access this code and develop applications and smart contracts for the TON Blockchain. Defendants further respond that, from time to time, they have had communications with numerous parties regarding the potential development of applications and uses for Grams on the TON Blockchain, including TON Labs, Gett (potential integration with TON), Achieve (proposed real-time advertising platform on top of TON Blockchain), DrimSim, Telefonica, Payphone, CryptoBazaar, Beproducer, Everstake, Mercuryo, PrivatBank, KupiBilet, WEBPAY, participants in TON Contests, and purchasers in the private placement, and refer Plaintiff to the ongoing document productions by Defendants and third parties and/or upcoming depositions in this action as a more convenient and practical and less burdensome source for this information.

INTERROGATORY NO. 4:

Identify all individuals and entities outside of Telegram with whom you communicated concerning a validation pool or the validation process for TON.

RESPONSE TO INTERROGATORY NO. 4:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because, as drafted, it is overbroad and would include all communications involving the offering documents from the private placement and seeks the identities of individuals and entities unrelated to the claims and defenses in the Action. Defendants also object to Interrogatory No. 4 as it is duplicative with Plaintiff's prior discovery requests.

---

[2] Further public information about the TON code and activity involving it can be found at: https://github.com/ton-blockchain/ton.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. The TON Blockchain's code is entirely open source and is publicly available at: https://test.ton.org/, along with all guidelines and step-by-step instructions regarding how to become a validator on the TON Blockchain and the validation process. Accordingly, anyone in the world can access this code and follow the instructions to become a validator on the TON Blockchain. Defendants further respond that, from time to time, numerous parties have expressed an interest in validation and/or custody solutions for Grams, including Coinbase, Anchorage, Ledger, TON Labs, Gram Vault, Blockchain.com, Passport, Turiya, P2PPE, European Securitization Company, Draper Dragon, Anzhelika Minkova, Whiteridge, Pacific Liberty, EDAM, and Victor Iarutov, among others, and refer Plaintiff to the ongoing document productions by Defendants and third parties and/or upcoming depositions in this action as a more convenient and practical and less burdensome source for this information.

INTERROGATORY NO. 5:

Describe the stage of development of all Applications.

RESPONSE TO INTERROGATORY NO. 5:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because, as drafted, Interrogatory No. 5 is so vague as to the information it seeks in asking for the "stage of development" and so broad in its definition of "Applications" that it is unanswerable and calls for information that is not in Defendants' possession, custody or control.

Defendants also object to Interrogatory No. 5 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond that Telegram has fully developed the TON Wallet, a cryptographic wallet application designed for storing and transferring Grams. The TON Wallet application will be available at the time of the launch of the TON Blockchain. Upon information and belief, other third parties have also developed cryptographic wallets that will provide functionality to store and transfer Grams (for example, see: https://buttonwallet.com/; https://mercuryo.io/business/ acquiring/; https://atomicwallet.io/ton-wallet).

Defendants further respond that Telegram has successfully completed development of the following components that will be ready and available as part of the TON Blockchain at the time of its anticipated launch: (i) TON DNS – a service for assigning human-readable names to accounts, smart contracts, services and network nodes; (ii) TON Payments – a platform for micropayments; and (iii) TON Services – a platform for third-party services on the TON Blockchain that provides user-friendly interfaces for decentralized applications and smart contracts. Telegram is in the process of completing the development of (i) TON Storage, a distributed file-storage technology for storing files and large amounts of data, and (ii) TON Proxy, a network proxy/anonymizer used to safeguard the identity and IP addresses of TON nodes, both of which Telegram expects will be full developed and available as part of the TON Blockchain at the time of its anticipated launch.

Defendants further respond that the TON Blockchain code is entirely open source and is publicly available at: https://test.ton.org/, along with all guidelines and step-by-step instructions regarding how to create and test applications and smart contracts on the TON

Blockchain. Accordingly, anyone in the world can access this code and develop applications and smart contracts for the TON Blockchain. As of the date of this Response, tens of thousands of parties have downloaded the TON Light Client and TON Light Wallet from the site. Additionally, Defendants hosted a contest on Telegram called "TON Contests," in which 66 parties submitted solutions and 41 parties produced working smart contracts, resulting in at least 50 new smart contracts representing competing versions of four applications (TON DNS; MultiSig Wallet; Asynchronous Payment Channels; and Synchronous Payment Channels). *See* https://contest.com/blockchain. Defendants anticipate that these smart contracts are likely to operate on the TON Blockchain at the time of its anticipated launch.

Defendants further respond that there have been numerous public reports, websites and articles regarding the development of applications and services for the TON Blockchain. Without making any representations as to the accuracy or completeness of the following, Defendants refer Plaintiff to the following public reports, websites and other resources for additional information regarding the development or potential development of applications and uses for Grams and the TON Blockchain:

| Name | Developer | Notes Based on Third Party Description | Link(s) |
|---|---|---|---|
| SOL2TVM compiler | TON Labs | Tool to ensure contract compatibility between Ethereum platform and TON Virtual Machine | https://www.coindesk.com/telegrams-blockchain-will-be-compatible-with-ethereum-ton-labs-says<br><br>https://cryptobriefing.com/telegram-ton-labs/<br><br>https://cointelegraph.com/news/report-telegrams-ton-blockchain-to-be-compatible-with-ethereum-dapps<br><br>https://docs.ton.dev/86757ecb2/p/04a4ba |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| | | | |
|---|---|---|---|
| LLVM compiler | TON Labs | LLVM-based compiler designed to convert sources from multiple high-level languages into its IR and then into TVM bytecode | https://ton.dev/toolchain<br><br>https://docs.ton.dev/86757ecb2/p/04a4ba |
| TON Labs Local Node | TON Labs | TON Labs proprietary implementation of TON Node | https://ton.dev/node-se<br><br>https://docs.ton.dev/86757ecb2/p/04a4ba |
| TON Labs SDK | TON Labs | CLI tool for streamlined usage | https://ton.dev/node-se<br><br>https://docs.ton.dev/86757ecb2/p/04a4ba |
| TON Labs Toolchain | TON Labs | Compiler kit with the latest versions of TON Labs LLVM and Sol2TMV compilers | https://ton.dev/node-se<br><br>https://docs.ton.dev/86757ecb2/p/04a4ba |
| Ton Labs Node SE | TON Labs | Provides a set of developer tools to develop and compile smart contracts in Solidity, C and C ++; run, deploy and test contracts locally using client libraries for Rust, React Native, Web and Node.js; and make various queries to key blockchain objects using GraphQL protocol with subscription options | https://ton.dev/node-se |
| Button Wallet | Button | Wallet that supports BTC, ETH, LTC, BCH, ETC, Waves, Stellar Lumens (XLM) and ERC-20 tokens; will facilitate exchange of Grams for other cryptocurrencies | https://www.forbes.com/sites/billybambrough/2019/08/26/telegrams-300-million-users-could-soon-be-trading-bitcoin-and-cryptodespite-serious-security-warning/#1aa7fb523fe9<br><br>https://buttonwallet.com/ |
| Mercuryo Pay | Mercuryo | Allows customers to pay with BTC & ETH; will process Grams once TON Blockchain launches | https://mercuryo.io/business/acquiring/ |
| AdGram | AdGram | Advertising platform that allows advertisers to create advertising campaigns and channel owners to monetize their audience | https://adgram.io/ |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| | | | |
|---|---|---|---|
| BeProducers | BeProducers | Facilitates production of films for Gram holders | https://beproducer.pro/news-and-analytics/d1f08a5e-262f-48d3-87be-020530e2317d |
| TON dApps Marketplace | CryptoBazar | Includes pre-selected projects to be launched on TON Blockchain | https://ton.cryptobazar.io/ |
| Drimsim SIM | Drimsim Global | Universal SIM and mobile expense card | https://m.facebook.com/334908950536095/posts/432905817403074?d=n&substory_index=0&sfns=mo<br><br>https://twitter.com/drimsimglobal/status/1197175207649304577?s=21<br><br>https://blog.drimsim.com/drimsim-budet-prinimat-crypto-gram |
| Denim | Denim | Dating application for TON Blockchain | https://dcntrlzd.app/2019/11/17/denim/ |
| Unovis | Unovis Forum | Marketplace for art using TON Blockchain | https://dcntrlzd.app/2019/10/23/unovis/ |
| DareApp | Eristica | Mobile video platform | https://dcntrlzd.app/2019/10/13/dareapp/ |
| Posh.space | Posh.space | Digital fashion store | https://dcntrlzd.app/2019/10/12/poshspace/<br><br>https://posh.space/ |
| Pregnancy Tracker | Mobile Dimension LLC | Pregnancy related app | https://dcntrlzd.app/2019/10/10/pregnancy-tracker/<br><br>https://pregnancytracker.app/ |
| U-Robot | u-robot | Chat-bot app; customized online store or personal page | https://dcntrlzd.app/2019/10/09/urobot/<br><br>http://u-robot.net |
| Incognito | Incognito | Mobile network related app | https://dcntrlzd.app/2019/10/08/incognito/ |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| | | | |
|---|---|---|---|
| Kelvpn | Kelvpn | VPN marketplace operating on top of decentralized network | https://dcntrlzd.app/2019/10/07/kelvpn/<br><br>https://kelvpn.com/ |
| EzDapps | Apla | Dapps Marketplace | https://dcntrlzd.app/2019/10/06/ezapps/ |
| Spatium | Spatium | Wallet with enterprise-level security | https://dcntrlzd.app/2019/10/05/spatium/<br><br>https://spatium.net/ |
| Viewst | Viewst | Uses micropayments channel network to accept payments from users on TON Blockchain network as well as from other services; uses file-distributed storage technology for keeping assets and optimizing storage for large video files; provides optimized templates to create digital graphic assets for Telegram channels and other TON Services | https://viewst.com/ |
| Worldwide Hackathon | Optimal.one | Worldwide Hackathon for the promotion of TON Blockchain projects | http://www.optimal.one/ |
| ParJar | Parachute | Allows users to send cryptocurrency tips on Telegram | https://beincrypto.com/cryptocurrency-tips-on-telegram-reach-500000-milestone-in-just-a-year/ |
| TON-based real-time advertising platform | Appreciate | Proposed real-time advertising platform on top of TON Blockchain | |
| copperbits/TON | Copperbits (on GitHub) | R&D group focused on TON Blockchain on GitHub | https://github.com/copperbits/TON<br><br>https://t.me/ton_research |
| TON.Broxus | Finex Future | Java wrapper for TON | https://github.com/broxus/ton-client |
| Atomic TON Wallet | Atomic | Universal cryptocurrency wallet | https://atomicwallet.io/ton-wallet |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| | | | |
|---|---|---|---|
| TON_tokens | Emelyanenko K | Simple tokens for TON | https://github.com/EmelyanenkoK/TON_tokens |
| ton_client | formony | Python API client for TON | https://github.com/formony/ton_client |
| TON Watcher | TON Center | Will allow users to search for addresses or blocks on TON Blockchain | https://tonwatcher.com/ |
| TON.shi Public API | TON.sh | HTTP-based experimental interface for developers; explorer to search for addresses or transactions on TON Blockchain | https://ton.sh/api |

Because the TON Blockchain has not yet launched, the existence and development of all potential applications, smart contracts or other services on the TON Blockchain is not currently known and may not be known unless and until the TON Blockchain is launched.

INTERROGATORY NO. 6:

Identify all persons or entities that were to receive or will receive Grams from you, including the amount of Grams and intended date of receipt, the approximate amount of such receipts, and the entity that will distribute such Grams to such person or entity, including without limitation distributions of Grams to certain purchasers who entered into agreements for Grams in 2018, users of your "Telegram Messenger" application, and others.

RESPONSE TO INTERROGATORY NO. 6:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 6 seeks the identities of persons or entities unknown to Defendants and thus beyond Defendants' possession, custody or control. Defendants also object to Interrogatory No. 6 because such information has already been provided to Plaintiff, including on October 3, 2018, February 27, 2019, October 4, 2019, and November 15, 2019. In addition to



the information already provided, Defendants further respond that (i) not only purchased in Round One for $25MM but also in Round Two for $2.45MM; (ii) purchase in Round One was for $11MM; (iii) purchase in Round Two was for $1MM; and (iv) has assigned its interest in the purchase agreements to

Because the TON Blockchain has not yet launched and Grams have not yet been created, Defendants further respond that beyond the private placement purchasers already identified to Plaintiff and as described in connection with the currently expected allocation of Grams at launch, Defendants do not currently know the identities of anyone else who will obtain Grams if and when the TON Blockchain launches and Grams are created.

INTERROGATORY NO. 7:

Identify all steps you took to determine whether any initial purchaser of Grams acquired or had acquired Grams for him, her, or itself, or for other persons.

RESPONSE TO INTERROGATORY NO. 7:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, includes conclusions of law, and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 7 seeks information regarding the acquisition of Grams, which have not yet been distributed. Defendants also object to Interrogatory No. 7 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Because the TON Blockchain has not yet launched and Grams do not yet exist, no one has "acquired" Grams.

Defendants further respond to this Interrogatory that, in connection with the private placement, they obtained express representations and warranties from all purchasers that included:

(i) "the Purchaser is entering into this Purchaser Agreement and purchasing Tokens on its own behalf and not for the benefit of any other person" (Schedule 2 No. 19);

(ii) "the Purchaser is purchasing the Tokens for its own account and not with a view towards, or for resale in connection with, the sale or distribution thereof (provided, however, that by making the representations and warranties herein, except as set forth in this Purchase Agreement, the Purchaser does not agree to hold any of the Tokens for any minimum or other specific term and reserves the right to dispose of the Tokens at any time in accordance with applicable securities laws and the terms of this Purchase Agreement). The Purchaser does not presently have any agreement or understanding, directly or indirectly, with any Person to distribute any of the Tokens" (*id.* No. 6); and

(iii) "the Purchaser has completed and delivered to the Issuer a KYC Form and the information contained in such KYC Form is true, accurate and not misleading as at the date hereof" (*id.* No. 20).

All private placement purchasers further warranted "that each of the Purchaser's Warranties is true, accurate and not misleading as at the date hereof and as at the Network Launch Date." (Round One Purchase Agreements 6.1.) As a condition precedent to any delivery of Grams pursuant to the Purchase Agreements, each purchaser's warranties must "remain[] true, accurate and not misleading on the Network Launch Date." (*Id.* 3(d).) Moreover, all private placement purchasers warranted that "[i]f the Purchase was formed for the specific purpose of entering into this Purchase Agreement and/or purchasing Tokens, then the Purchaser warrants to the Issuer and the Parent that each of the Purchaser's Warranties is true, accurate and not

misleading as at the date hereof and will be true, accurate and not misleading at the Network Launch Date, in each case in respect of each person who holds an equity interest in the Purchaser (each, a 'Purchaser Investor') as if each such Purchaser Investor was the Purchaser hereunder . . . ." (*Id.* 6.2.)

Defendants further respond that they undertook know-your-customer ("KYC") and anti-money laundering ("AML") processes with respect to all private placement purchasers. For example, Defendants distributed Purchase Agreements alongside a KYC Form that requested information from all purchasers concerning their ownership structure (if they were entities). The KYC Form required natural persons to provide a certified copy of a valid, government-issued photo identification card, such as a driver's license or passport. For purchasers other than natural persons (such as corporations, partnerships and trusts), the KYC From required that they provide the following:

a. a document evidencing legal existence of the entity such as the certified copy of articles of incorporation, a government issued business license, partnership agreement or trust instrument; and

b. a certified copy of a valid, government-issued photo identification card such as a driver's license or passport for at least one of the following:

i. a director of the entity;

ii. persons with 25% or more ultimate beneficial ownership of the entity;

iii. a partner/member of the entity; or

iv. a managing executive of the entity.

Defendants further respond that they engaged Lawson Conner Services Ltd. ("Lawson Conner"), a UK-based provider of regulatory infrastructure and managed compliance services and software in connection with the private placement. Lawson Conner reviewed the

KYC Forms submitted for all purchasers in the private placement (the "KYC/AML Process"). After Lawson Conner conducted its KYC/AML Process, Defendants engaged Credit Suisse to conduct its own KYC process on the KYC Forms.

Defendants further respond that Representation Letter Questionnaires ("Rep Letters") were prepared by U.S. or applicable local counsel and completed by each purchaser in respect of each jurisdiction (a) in which the purchaser resided (if the purchaser was a natural person), (b) in which the purchaser was formed (if the purchaser was an entity), (c) in which the purchaser or its representative(s) received the offer to enter into the Purchase Agreement, and (d) in which the purchaser or its representative(s) would place its buy order. The Rep Letters covered numerous jurisdictions and required the purchaser to represent as to the purchaser's eligibility to participate in the offering pursuant to applicable local law. Certain of the Rep Letters required additional supporting documentation where such supporting documentation was required under applicable law. For example, natural persons who submitted U.S. Rep Letters were also required to submit a letter from a specified third party verifying their status as an "accredited investor" (as defined in the rules and regulations under the U.S. Securities Act of 1933, as amended). In addition, if the purchaser was an entity, the purchaser was required to indicated whether the Purchaser (a) was formed for the purpose of entering into the Purchase Agreement or (b) solicited purchasers to participate in the purchase directly or indirectly through an entity or otherwise. If the purchaser answered affirmatively to either question, the purchaser was required to complete and deliver to the Defendants a Rep Letter for each person that held an equity or similar interest in the purchaser.

Defendants further respond that purchasers in the private placement also expressly agreed that, subject to certain limited exceptions, they would not (a) offer, pledge, sell, contract

to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, or otherwise transfer or dispose of, directly or indirectly, the investment contract represented by the Purchase Agreement or any Grams, or any securities convertible into or exercisable or exchangeable for the investment contract represented by the Purchase Agreement or any Grams, or publicly disclose the intention to make any such offer, sale, pledge or disposition, or (b) enter into any swap or other agreement that transfers, directly or indirectly, in whole or in part, any of the economic consequences of ownership of the investment contract represented by the Purchase Agreement or any Grams, whether any such transaction described in clauses (a) or (b) is to be settled by delivery of the investment contract represented by the Purchase Agreement or any Grams, in cash or otherwise.

Defendants further respond that, in February 2018, they requested that each private placement purchaser confirm in writing that: (1) "the representations and warranties made to you in the Purchase Agreement, including in any Rep Letters delivered by you, remain true, accurate, and not misleading as at the date hereof and will remain true, accurate and not misleading as of the Payment Date"; (2) "you are entering into the Purchase Agreement and purchasing Tokens on your own behalf and not for the benefit of any other person and you did not solicit funds for this investment from any other person (in each case, other than in respect of a Purchaser Investor for whom you have provided a Rep Letter)"; (3) "if you have not delivered a U.S. Rep Letter, you represent and warrant that the offer or sale to you (and any Purchase Investor) in this offering was made in an "offshore transaction" as defined in Regulation S under the U.S. Securities Act of 1933"; and (4) "you acknowledge that (i) there are no registered broker-dealers representing the Parent or the Issuer in this offering and (ii) you have taken advice

from your investment adviser on whether it is appropriate for you to enter into the Purchase Agreement and you are not relying on any such advice from the Parent or the Issuer."

Defendants further respond that, from time to time, they have inquired as to whether certain private purchasers had agreed to transfer or sell their interests in Grams, and, in some instances, sought assurances that no transfers or sales had or would take place, advised the purchasers not to make such transfers or sales, and/or canceled the relevant Purchase Agreements.

INTERROGATORY NO. 8:

Identify all persons who were involved or will be involved with the creation and development of any Application.

RESPONSE TO INTERROGATORY NO. 8:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 8 seeks the identities of persons or entities unrelated to the claims and defenses in the Action, unknown to Defendants, and, thus, beyond Defendants' possession, custody or control. Defendants also object to Interrogatory No. 8 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. The TON Blockchain's code is entirely open source and is publicly available at: https://test.ton.org/, along with all guidelines and step-by-step instructions regarding how to create and test applications and smart contracts on the TON Blockchain. Accordingly, anyone in the world can access this code and develop applications and smart contracts for the TON Blockchain. Defendants further respond that there

have been numerous public reports and articles regarding the development and potential development of applications for the TON Blockchain by third parties and refer to their responses to Interrogatory No. 5.

INTERROGATORY NO. 9:

Identify all persons who are responsible for the integration of TON and Telegram Messenger.

RESPONSE TO INTERROGATORY NO. 9:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 9 seeks the identities of persons unrelated to the claims or defenses in the Action. Defendants also object to Interrogatory No. 9 on the ground that the term "integration" is undefined, vague and ambiguous. Defendants also object to Interrogatory No. 9 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond there is no currently anticipated "integration of TON and Telegram Messenger." Defendants further respond that Telegram and its employees will be responsible for any integration of the TON Wallet and Telegram Messenger, should that occur. Defendants further refer Plaintiff to the third party wallet applications identified in their response to Interrogatory No. 5.

INTERROGATORY NO. 10:

Identify all members or persons who are or will be associated with the TON Foundation or TON Reserve.

RESPONSE TO INTERROGATORY NO. 10:

Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 10 seeks the identities of "members or persons" unrelated to the claims or defenses in the Action. Defendants further object to the phrase "associated with" as overly broad, vague and ambiguous. Defendants also object to Interrogatory No. 10 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Because the TON Blockchain has not yet launched and the TON Foundation and TON Reserve have not been established (and may never be established), there are no persons who are currently "associated" with them. Defendants further respond that they currently contemplate, subject to further consideration and final confirmation, that the TON Foundation will be established prior to the launch of the TON Blockchain, but Defendants have reserved and continue to reserve all rights to change, modify, or eliminate the existence, details or functions of the TON Foundation and TON Reserve. Defendants further respond that they currently contemplate, subject to further consideration and final confirmation, that the TON Foundation will have the following associated members or persons: (i) Pavel Durov; (ii) Nikolai Durov; and (iii) any other member or person selected by Pavel Durov and Nikolai Durov prior to the initial issuance of Grams or the incumbent members of the TON Foundation post-initial issuance.

INTERROGATORY NO. 11:

Identify all other entities that your employees, or any independent contractors you used in connection with Grams, work for, consult with, or have a business or pecuniary interest in.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

RESPONSE TO INTERROGATORY NO. 11:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 11 seeks the employment and financial information of employees and independent contractors outside the possession, custody or control of Defendants. Defendants also object to Interrogatory No. 11 as it is duplicative with Plaintiff's prior discovery requests and refer Plaintiff to the ongoing document productions and/or upcoming depositions in this action as a more convenient and practical and less burdensome source for this information.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Defendants already provided a list of Telegram employees involved with Grams. Telegram has also retained numerous law firms, vendors and/or service providers in connection with the private placement and Grams, including but not limited to Skadden, Arps, Slate, Meagher & Flom LLP; numerous other local counsel in connection with other jurisdictions; Lawson Conner; Credit Suisse; and Navigant Consulting.

INTERROGATORY NO. 12:

Describe the date(s) you learned about existing or planned secondary trading in Grams, including the source of the information.

RESPONSE TO INTERROGATORY NO. 12:

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 12 is vague and ambiguous as to what information it actually seeks in asking for a description of

"date(s)." Defendants also object to Interrogatory No. 12 as it is duplicative with Plaintiff's prior discovery requests and refer Plaintiff to the ongoing document productions and/or upcoming depositions in this action as a more convenient and practical and less burdensome source for this information.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Because the TON Blockchain has not yet launched and no Grams currently exist, there is no "existing [] secondary trading" of Grams.

Defendants further respond that in March 2018, Defendants sent to Plaintiff a spreadsheet listing approximately 60 websites that Telegram believed had been fraudulently offering to sell Grams, and refer Plaintiff to that spreadsheet and all related communications for further details.

Defendants further respond that on May 29, 2019, Liquid sent an email to Telegram which addressed Liquid's apparent intention to "launch an Initial Exchange Offering (IEO) with our partner Gram Asia who will contribute Grams," and refer Plaintiff to previous correspondence in this Action for further details.

Defendants further respond that on November 20, 2019, they sent a letter to "easy DNS Technologies, Inc." requesting that it cease hosting a website, ton-telegram.com, which Defendants believes to be fraudulently offering to sell Grams on behalf of Telegram, and refer Plaintiff to that letter for further details.

Upon information and belief, Defendants further respond that, from time to time, there have been various public reports regarding potential secondary trading of Grams and refer

Plaintiff to those reports as a more convenient, less burdensome or less costly source of such information.

INTERROGATORY NO. 13:

Describe your knowledge as to whether any of your materials used to market, offer, or sell Grams were made available to individuals other than those to whom you directly marketed, offered, or sold Grams, including without limitation the date you obtained such knowledge.

RESPONSE TO INTERROGATORY NO. 13:

Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to any claim or defense in the Action nor proportional to the needs of the Action, including, without limitation, because Interrogatory No. 13 seeks information regarding the actions of third parties that are outside Defendants' possession, custody, or control. Defendants also object to Interrogatory No. 13 as it is duplicative with Plaintiff's prior discovery requests and refer Plaintiff to the ongoing document productions and upcoming depositions in this action as a more convenient and practical and less burdensome source for this information.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Defendants have never intended for any marketing or offering materials directed to purchasers or potential purchasers in the private placement to be made available publicly or to anyone other than those purchasers or potential purchasers. The Round One Purchase Agreements prohibit private purchasers from offering the Purchase Agreement or any Grams or from publicly disclosing the intention to make any such offers. The Round Two Purchase Agreements state that "the Purchaser shall, and shall cause its Affiliates and representatives and any Purchaser Investor to, (i) keep this Purchase Agreement and any other information provided to the Purchaser or its Affiliates or

representatives or any Purchaser Investor by or on behalf of the Issuer or the Parent secret at all times, except with the prior written consent of the Issuer and the Parent, (ii) not disclose such information or allow such information to be disclosed in whole or in part to any third party without the prior written consent of the Issuer and the Parent, (iii) not use such information in whole or in part for any purpose other than in connection with the transactions contemplated by this Purchase Agreement, and (iv) undertake to take all reasonable measures to ensure the confidentiality of this Purchase Agreement and any other information provided to the Purchaser or its Affiliates or representatives or any Purchaser Investor by the Issuer or the Parent."

Upon information and belief, Defendants further respond that it has been publicly reported that, from time to time, certain of the materials sent to purchasers or potential purchasers in the private placement have been leaked online. Defendants did not leak these materials and do not know who did. Defendants further respond that the March 2, 2019 version of the TON Whitepaper is publicly available at: https://test.ton.org/. Defendants further refer Plaintiff to their response to Interrogatory No. 12.

INTERROGATORY NO. 14:

Identify all witnesses with knowledge or information relevant to your defenses to the allegations in the Complaint against Defendants, Pavel Durov or Nikolai Durov, or relevant to the allegations in the Complaint.

RESPONSE TO INTERROGATORY NO. 14:

Defendants object to this Interrogatory on the grounds that it is vague and ambiguous and seeks information that is not proportional to the needs of the Action. Defendants also object to Interrogatory No. 14 as it is duplicative with Plaintiff's prior discovery requests.

Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Defendants are continuing to

reasonably investigate which witnesses may have knowledge or information relevant to the allegations in the Complaint and hereby identify Pavel Durov, the private placement purchasers, and any individuals or entities named or referenced in Plaintiff's Complaint or application for a preliminary injunction; the SEC Commissioners and Staff involved with cryptocurrenices and/or Grams; and any individuals or entities referenced or named in any of Defendants' responses to these Interrogatories.

INTERROGATORY NO. 15:

Describe how incentive payments using Grams will be programmed into TON, including but not limited to how the determination of allocation of incentive payments will function, including plans for fixing or adjusting any such payments.

RESPONSE TO INTERROGATORY NO. 15:

Defendants object to Interrogatory No. 15 as it is duplicative with Plaintiff's prior discovery requests. Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Because the TON Blockchain has not yet launched, Defendants have reserved and continue to reserve all rights to change, modify, or eliminate the existence or details of any incentive payments with respect to the TON Blockchain. Subject to that reservation of rights, Defendants currently contemplate that approximately 10% of the initial supply of Grams will be allocated for incentive payments to TON Blockchain users (the "Incentives Pool"). The Incentives Pool is expected to be managed by the TON Foundation. The Incentives Pool is expected to be used by the TON Foundation to promote the usage of Grams among consumers and strengthen its position as a bona fide currency.

Defendants currently contemplate that more than 50% of the Grams held in the Incentives Pool will be distributed among active users of Telegram Messenger on a first-come,

first-served basis. Grams worth approximately $3 to $7 will be distributed to users as an incentive to download and use the TON Wallet. Users will be required to provide specific identifying information and demonstrate they do not maintain multiple accounts. If a user fails to meet this requirement within a defined period of time, the assigned Grams may be offered to another user who has not yet been assigned any Grams. Independent developers may also purchase Grams on the open market and award Grams in a similar fashion to promote adoption of other wallets.

Defendants currently contemplate that less than 50% of the Grams held in the Incentives Pool may be made available as rewards by the TON Foundation to third-party developers in accordance with the TON Foundation's mission to support the decentralized TON Blockchain and consumptive use of Grams. The parameters of such rewards will be made publicly available on the TON Foundation's website and will be set by the TON Foundation board of directors, described above. The management of the Incentives Pool will be transparent, and the balance, the method of allocation, and the amount of each allocation of Grams will be publicly viewable.

INTERROGATORY NO. 16:

Describe how you will facilitate the price stability of Grams or the utility of Grams as a medium of exchange, including the contours of their "price stabilization" role, under what circumstances they will buy and/or sell Grams, and whether these purchases and/or sales will be automated and, if so, by what means.

RESPONSE TO INTERROGATORY NO. 16:

Defendants object to Interrogatory No. 16 as it is duplicative with Plaintiff's prior discovery requests. Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Defendants will not "facilitate the price stability of Grams" following launch of the TON Blockchain. Although

Telegram may, in its sole discretion, determine whether to develop applications for users on the TON Blockchain, it is under no obligation to do so, and if it does, it will be in the same position as any other third-party developer of applications for the TON Blockchain. Telegram will not have any superior rights or access to any other third party with respect to the TON Blockchain, and will have no ability to alter the TON Blockchain's publicly-viewable code.

Because the TON Blockchain has not yet launched, Defendants have reserved and continue to reserve all rights to change, modify, or eliminate the existence or details of the TON Blockchain, the TON Foundation, or any "price stabilization" functions. Subject to that reservation of rights, Defendants currently contemplate that the TON Foundation will determine whether to sell Grams by comparing the Reference Price (as defined below) and current market price of Grams. The TON Foundation will be responsible for determining which exchanges are utilized for this purpose and how such price determination is being made, and the TON Foundation will make this information publicly available. If the price of Grams on third-party exchanges exceeds the Reference Price, the TON Foundation may, but is not obligated to, sell Grams from the TON Reserve into the market at a price equal to or greater than the Reference Price. Defendants anticipate that the TON Foundation's selling of Grams by the TON Reserve may have the intended effect of lowering the market price of Grams in certain circumstances.

INTERROGATORY NO. 17:

Disclose the "formula-based reference point" to buy and/or sell Grams.

RESPONSE TO INTERROGATORY NO. 17:

Defendants object to Interrogatory No. 17 as it is duplicative with Plaintiff's prior discovery requests. Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. The "Reference

Price" of a Gram at the beginning of each Round of the Private Placement was computed as: 0.1 * e^(n * $10^{-9}$). Here, n denotes the total number of Grams subscribed for prior to that stage. The price of Grams subscribed for in each round of the Private Placement was calculated as: (Total $ Value Raised) / (Total Number of Grams Subscribed For). The Total Number of Grams Subscribed For was calculated as: (109 ) * In(1 + (Total $Value Raised)/ ((109 ) * Pn) ). Here, Pn denotes the Reference Price of a Gram. The Reference Price does not dictate or bear any relationship to the market price for Grams following the launch of the TON Blockchain, which will be subject to forces of market supply and demand (except as provide above with respect to the TON Foundation's currently-contemplated Gram-selling function, which may in certain circumstances have the effect of lowering the market price for Grams).

INTERROGATORY NO. 18:

Describe the amounts of Grams that will be held by each of you (including, for the avoidance of doubt, each of your employees or other entities controlled by or associated with you) upon the launch of Grams.

RESPONSE TO INTERROGATORY NO. 18:

Defendants object to Interrogatory No. 18 as it is duplicative with Plaintiff's prior discovery requests. Subject to and without waiving their objections, and subject to further discovery in this Action, Defendants respond to this Interrogatory as follows. Because the TON Blockchain has not yet launched, Defendants have reserved and continue to reserve all rights to change, modify, or eliminate the existence or details of the allocation of Grams at launch of the TON Blockchain. Subject to that reservation of rights, Defendants currently contemplate that 4% of the initial supply of Grams will be granted to Defendants' development and management team. These Grams are subject to a four-year vesting period following the launch of the TON

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Blockchain. 28% of the initial supply of Grams would be allocated to the TON Reserve to be used by the TON Foundation as described above.

Dated: New York, New York
November 22, 2019

/s/ Alexander C. Drylewski
George A. Zimmerman
Scott D. Musoff
Alexander C. Drylewski
Christopher P. Malloy
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000

*Attorneys for Defendants*