# Exhibit D

# Exhibit 5

<u>CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
| : | 19 Civ. 9439 (PKC) |
| Plaintiff, : | |
| : | **ECF Case** |
| -against- : | |
| : | |
| TELEGRAM GROUP INC. and TON ISSUER : | |
| INC., : | |
| : | |
| Defendants. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### **DEFENDANTS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO <u>PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure and the Local Civil Rules for the Southern District of New York ("Local Rules"), Defendants Telegram Group Inc. and TON Issuer Inc (collectively, "Telegram" or "Defendants"), by and through their undersigned counsel, hereby supplement their previous responses and objections to Plaintiff's First Set of Interrogatories to Defendants, dated November 1, 2019, and propounded by Plaintiff United States Securities and Exchange Commission ("Plaintiff" or the "SEC") in the above-captioned case ("Action"). Defendants hereby incorporate by reference their previous general responses and objections, objections to definitions and instructions, and specific responses and objections (not herein modified), dated November 22, 2019.

### **<u>SPECIFIC SUPPLEMENTAL RESPONSES AND OBJECTIONS</u>**

<u>INTERROGATORY NO. 7</u>:

Identify all steps you took to determine whether any initial purchaser of Grams acquired or had acquired Grams for him, her, or itself, or for other persons.

<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7</u>:

Defendants repeat their previous responses and objections to Interrogatory No. 7, and

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

hereby supplement the last paragraph of their response to this Interrogatory based upon their reasonably diligent investigation to date.

Defendants further respond that, from time to time, they have inquired as to whether certain private purchasers had agreed to transfer or sell their interests in Grams, and, in some instances, sought assurances that no transfers or sales had or would take place, advised the purchasers not to make such transfers or sales, and/or canceled the relevant Purchase Agreements.

For example, in January 2018, Ilya Perekopsky reached out to Avolta Partners SAS ("Avolta") stating that Telegram had received information suggesting that Avolta was purporting to be selling Grams. Mr. Perekopsky requested that Avolta confirm whether the information was false. Avolta confirmed that it was not selling Grams and affirmed its compliance with the terms of its Purchase Agreement. *See* TG-007-00000512.

As another example, on January 11, 2020, Telegram reached out to Space Investments Limited ("Space Investments") stating that it became aware of facts suggesting that Space Investments may have had involvement with an entity called Liquid.com (which purports to be a cryptocurrency exchange in Japan) regarding an initial exchange offering of Grams. Telegram referred Space Investments to its representations under the Purchase Agreement and asked Space Investments to confirm that it is not (and has not been) cooperating with Liquid.com in this regard and that it has at all times acted, and will continue to act, in accordance with the terms of the Purchase Agreement. *See* TLGRM-22-00000001; TLGRM-22-00000002; TLGRM-22-00000003.

INTERROGATORY NO. 10:

Identify all members or persons who are or will be associated with the TON Foundation or TON Reserve.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:

Defendants repeat their previous responses and objections to Interrogatory No. 10 and further respond to this Interrogatory as follows:

On January 6, 2020, Telegram published a notice to the public which stated that it "is under no obligation, and makes no promise or commitment, to ever establish a TON Foundation or similar entity in the future." Telegram continues to consider whether to establish the TON Foundation in the future, and would only do so to the extent permitted under all applicable laws and regulations. To the extent the TON Foundation is ever established, it is currently contemplated that it would be governed by a board of directors that would initially consist of: (i) Pavel Durov; (ii) Nikolai Durov; and (iii) at least three independent members that are not affiliated with Telegram, TON Issuer Inc, or the Durovs. The Durovs would establish a process for selecting these three independent members based on objective criteria based on factors such as knowledge and understanding of blockchain platforms, digital assets and cryptocurrencies, and the technical operation of the TON Blockchain. Defendants remain open to modifying any aspect of the TON Foundation, including its existence.

INTERROGATORY NO. 15:

Describe how incentive payments using Grams will be programmed into TON, including but not limited to how the determination of allocation of incentive payments will function, including plans for fixing and adjusting any such payments.

SUPPLEMENTAL INTERROGATORY TO TOPIC NO. 15:

Defendants repeat their previous responses and objections to Interrogatory No. 15 and further respond to this Interrogatory as follows:

It is currently contemplated that, upon launch of the TON Blockchain or immediately thereafter, 5% of the total initial supply of Grams (i.e., 250,000,000 Grams) will be distributed on a first-come, first-served basis to users of Telegram in order to promote the consumptive

adoption of Grams as a currency. The Grams will be offered in an amount that is commensurate with consumptive use based on the market price of Grams (e.g., an amount of Grams totaling a small amount of value as measured in fiat currency). In order to receive Grams, users would need to request them from a bot programmed into Telegram Messenger and provide a valid address for a standalone wallet application (either TON Wallet or a third party wallet) that would not be integrated into Messenger. Defendants remain open to modifying any aspect of these incentive payments in order to comply with applicable laws and regulations.

INTERROGATORY NO. 18:

Describe the amounts of Grams that will be held by each of you (including, for the avoidance of doubt, each of your employees or other entities controlled by or associated with you) upon the launch of Grams.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18:

Defendants repeat their previous objections to Interrogatory No. 18 and further respond to this Interrogatory as follows:

It is currently contemplated that, upon the launch of the TON Blockchain, the initial supply of 5 billion Grams will be allocated as follows. Defendants remain open to modifying any aspect of these allocations in order to comply with applicable laws and regulations.

- **58%** of Grams will be transferred to purchasers in the Private Placement
    - Round 1 Grams will be subject to lock-up restrictions in the Purchase Agreements.
    - Round 2 Grams will not be subject to lock-up restrictions.
- **4%** of Grams will be transferred to the Telegram development and management team.
    - Of this amount, Pavel Durov and Nikolai Durov will each receive 1/4 (i.e., 1% of the initial supply of Grams).
    - All Grams transferred to Telegram's team will be precluded from all voting and validating activities on the TON Blockchain.

- **28%** of Grams will be assigned to a wallet address to be used by the TON Foundation if the TON Foundation is ever established in the future. If the TON Foundation is not established, those Grams would be locked in perpetuity in that wallet. All Grams transferred to the TON Foundation will be precluded from all voting and validating activities on the TON Blockchain.

- **10%** of Grams will be reserved for ecosystem incentive payments. As currently contemplated, half of those Grams (**5%** of the initial supply of Grams) will be distributed to Telegram users at or immediately following the launch of the TON Blockchain as described in Response to Interrogatory No. 15 above. The other half (**5%** of the initial supply) will be held in a wallet address assigned to the TON Foundation in the event that the TON Foundation is ever established in the future. If the TON Foundation is established, the incentive Grams held in its wallet may be distributed by the TON Foundation as incentives to promote the consumptive use of Grams as determined by the TON Foundation's board of directors. For example, the TON Foundation may offer a small amount of Grams to Gram users on the TON Blockchain as a reward for spending Grams as a currency (e.g., if a user spends 10 Grams on goods and services, she may be rewarded one Gram from the TON Foundation). These user incentives would be decided upon and implemented by the TON Foundation's board of directors in the event that the TON Foundation is ever established.

Dated: New York, New York
January 11, 2020

                                                 /s/ Alexander C. Drylewski
George A. Zimmerman
Scott D. Musoff
Alexander C. Drylewski
Christopher P. Malloy
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000

*Attorneys for Defendants*