# Exhibit N

# Exhibit 14

## Agreement

TON Issuer Inc (hereinafter referred to as "A" or "**Telegram**"), Telegram Group Inc. (hereinafter referred to as "**TGI**") and Da Vinci Capital Group Ltd. (hereinafter referred to as "**B**" or "**Company**") (Telegram, TGI and Company each a "**party**" and together the "**parties**") agree as follows.

### Article 1. Purpose

The purpose of this contract is to confirm the terms on which A appoints B, subject to applicable law, to broker the sale of a new cryptocurrency called "Grams" by A to potential investors identified by Company ("**Potential Investors**") located or resident in Russia and certain other jurisdictions as may be agreed between the parties from time to time (the "**Deal**") and to record the parties' responsibilities and obligations in relation thereto.

### Article 2. Responsibilities

1. Telegram will prepare all materials related to closing the Deal, endeavour to answer all questions of investors and reasonably cooperate with Company's instructions.
2. Company shall:
   a. subject to applicable law, identify and introduce Telegram to Potential Investors located or resident in Russia and such other jurisdictions as may be agreed between the parties from time to time;
   b. provide Telegram with information regarding the identity of Potential Investors (including a list of all Potential Investors approached by Company that it shall update each time a new Potential Investor is approached); and
   c. provide Telegram with regular updates on the status of any ongoing negotiations and the progress of the Deal.
3. Company is responsible for supporting the progress of the Deal, including working with investors to obtain all required know-your-client materials and securities law representation letters requested by Telegram, but Company does not guarantee the successful completion of the Deal.

### Article 3. Negotiation

Company will be responsible for negotiating the Deal with Potential Investors on behalf of and pursuant to instructions provided by Telegram.

### Article 4. Fee

1. If Telegram succeeds in signing any purchase agreement(s) for Grams with one or more Potential Investors identified by Company pursuant to this Agreement (each such purchase agreement, a "**Contract**"), Company will receive 10% of the gross proceeds received by Telegram pursuant to each Contract (the "**Fee**").

### Article 5. Transfer

1. TGI shall pay, or procure the payment of the Fee within seven calendar days of receipt by Telegram of cleared funds from the relevant investor pursuant to each Contract, or such other date as may be agreed in writing between the parties, to such account as Company shall have notified to Telegram on or before the Payment Date (as defined in the relevant Contract) or such other date as may be agreed in writing between the parties.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                    TLGRM-015-00001263

2.  Any amount payable under this Agreement by one party to another shall be made in full without any set-off or counterclaim and shall be free and clear of deduction or withholding of any kind other than any deduction or withholding required by applicable law or regulation.

### Article 6. The Obligation to Disclose Materials

Telegram shall provide Company with:

a.  a copy of each signed Contract as soon as practicable following execution of such Contract; and
b.  proof of receipt of the Purchase Amount (as defined in the Contract) by way of account certificate or equivalent as soon as practicable following receipt of cleared funds by Telegram.

### Article 7. Warranties and Undertakings

1.  Company warrants to Telegram and TGI that each of the Company Warranties set out in Schedule 1 of this Agreement is true, accurate and not misleading as at the date hereof and that each of the Company Warranties will remain true, accurate and not misleading as at the date on which any Contract is signed by Telegram and TGI (each a "**Contract Date**") and, for this purpose, each of the Company Warranties will be deemed repeated on each Contract Date as if any express or implied reference in the Company Warranties to the date hereof was replaced by a reference to the relevant Contract Date.

2.  Company undertakes to Telegram and TGI that it:
    a.  shall not solicit, engage with or negotiate with any Potential Investor in any jurisdiction in a manner in which to do so would constitute a violation of the relevant laws or regulations of that jurisdiction;
    b.  shall ensure that any draft Contract includes investor warning statements to the extent required by applicable laws;
    c.  shall not provide a Potential Investor with a draft Contract without the prior written consent of Telegram or TGI; and
    d.  shall, to the extent it is relying on an exemption from securities laws to provide information to a Potential Investor, provide Telegram and TGI with all reasonable information that it may request to confirm that the offer to the Potential Investor falls within the relevant exemption.

### Article 8. Prohibition of Transfer of Rights and Obligations

No party may assign this Agreement and the rights and obligations arising from this Agreement to third parties without prior written consent from the other parties.

### Article 9. Termination of the Agreement

Any party may immediately terminate all or part of this Agreement by written notice to the other party.

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
TLGRM-015-00001264

### Article 10. Compensation for Damages

1. B shall indemnify A and TGI for damages incurred as a result of a breach of the obligations in this Agreement only if B fails to fulfill its obligation in violation of this contract due to willful or gross negligence.

2. In the case where B is liable for damages against A or TGI, the amount of compensation shall not exceed the Fee.

### Article 11. Effective Period

3. The term of validity of this Agreement shall be one year from the date of this Agreement.

4. Articles 10, 12 and 13 shall survive any termination of this Agreement pursuant to Article 9.

### Article 12. Governing Law

This Agreement and any claim, dispute or difference (including any non-contractual claim, dispute or difference) arising out of, or in connection with, it or its subject matter shall be governed by and interpreted in accordance with English law.

### Article 13. Competent Jurisdiction

The parties agree that the courts of England and Wales shall have exclusive jurisdiction in relation to any claim, dispute or difference (including any non-contractual claim, dispute or difference) arising between the parties in connection with this Agreement or its subject matter. Each of the parties submits to the jurisdiction of the courts of England and Wales.

### Article 14. Modification/Change

Any amendment or modification of this Agreement shall be void unless agreed in writing between each party, three copies of which shall be prepared by B so that each party will receive a copy.


22 June, 2018


A Company name: TON Issuer Inc
Representative: Pavel Durov
Signature: *[signed]*

Company name: Telegram Group Inc.
Representative: Pavel Durov
Signature: *[signed]*

B Company name: Da Vinci Capital Group Ltd.
Representative: Oleg Jelezko
Signature: *[signed]*

3

# SCHEDULE 1
# COMPANY WARRANTIES

Company warrants to Telegram and TGI that:

1. it has the full legal capacity, power and authority to execute and deliver this Agreement and to perform its obligations hereunder;

2. the entry into this Agreement will, when executed, constitute legal, valid and binding obligations of Company, enforceable against Company in accordance with its terms;

3. its entry into this Agreement:
    a. is lawful under the laws of the jurisdiction in which Company is established and the jurisdiction in which it operates (if different); and
    b. will not contravene any law, regulation or regulatory policy applicable to Company;

4. the performance by Company of its obligations hereunder (including identifying and engaging with Potential Investors in connection with the Deal):
    a. is lawful under the laws of: (i) the jurisdiction of Company's incorporation; (ii) the jurisdiction in which it operates (if different); and (iii) each jurisdiction in which each Potential Investor is established or in which it operates (if different) (the "**Relevant Laws**"); and
    b. will not contravene any law, regulation or regulatory policy applicable to Company or any Potential Investor (including, without limitation, the Relevant Laws);

5. it has:
    a. obtained (or procured the obtaining of) and will maintain (or procure the maintenance of) all regulatory licences, authorisations, approvals and registrations (each a "**Consent**"); and
    b. filed (or procured the filing) with all appropriate regulatory bodies such notifications,

    that are required for Company to perform its obligations under this Agreement; and

6. it is in compliance with all Money Laundering Laws applicable to it, where "**Money Laundering Laws**" means the applicable laws, rules and regulations of all jurisdictions in which Company is located, resident, organised or operates concerning or related to anti-money laundering, including but not limited to those contained in the Bank Secrecy Act and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 and the rules and regulations thereunder, and any related or similar rules, regulations or guidelines, issued, administered or enforced by any Governmental Authority (as defined below)).

4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER